IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| RACHEL RAMSBOTTOM, <br> ALEXIS BOWLING, <br> JENNA HOUSTON, <br> JANE DOE #1 <br><br> Plaintiffs, <br><br> v. <br><br> LORIN ASHTON, <br> AMORPHOUS MUSIC, INC., <br> BASSNECTAR TOURING, INC., <br> REDLIGHT MANAGEMENT, INC., <br> C3 PRESENTS, L.L.C., <br> INTERACTIVE GIVING FUND, <br> GNARLOS INDUSTRIES, LLC, : <br> CARLOS DONOHUE; ABC : <br> CORPORATIONS, ONE THROUGH <br> TEN (said Names Being Fictitious), <br> JOHN DOES, ONE THROUGH TEN <br> (said Names Being Fictitious) <br> Defendants. | CIVIL ACTION <br><br> No. 3:21-cv-00272 <br><br> JURY TRIAL DEMANDED |

### C3 PRESENTS, L.L.C.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

C3 Presents, L.L.C. ("C3 Presents") respectfully submits the following Memorandum of Law in support of its Motion to Dismiss Plaintiffs' Amended Complaint against it with prejudice pursuant to Fed. R. Civ. P. 12(b)(3) and (b)(6).

### INTRODUCTION AND SUMMARY OF THE ALLEGATIONS

Plaintiffs, former fans of EDM artist Lorin Ashton, known by his stage name Bassnectar (hereinafter "Bassnectar"), allege that Bassnectar abused his position of fame and power to engage in sex-trafficking and to solicit child pornography from them when they were minors.

1

They seek compensatory, punitive, and other damages from Bassnectar for his allegedly exploitive conduct. They also seek compensatory, punitive, and other damages from C3 Presents, which is a live event promoter,[1] based upon the allegation that it worked with Bassnectar in its capacity as a concert promoter and benefitted from Bassnectar's alleged sex-trafficking venture in violation of Sections 1595 and 1591(a)(2) of the Trafficking Victims Protection Reauthorization Act ("TVPRA").[2]

Despite Plaintiffs' threadbare allegations that C3 Presents knowingly benefitted from participation in Bassnectar's sex-trafficking venture, the crux of Plaintiffs' sex-trafficking allegation is that Bassnectar's exploitive conduct was secretive. Plaintiffs painstakingly document the measures Bassnectar took to shield his alleged victims and his conduct from exposure, but within the Amended Complaint's 235 paragraphs provide no explanation for how C3 Presents should have known of Bassnectar's alleged sex trafficking—let alone benefitted from it. This deficiency is fatal to Plaintiffs' TVPRA beneficiary claim. Further, Plaintiffs make no effort to plead C3 Presents' specific involvement in the alleged sex-trafficking venture, making their TVPRA claim against C3 Presents fundamentally flawed. Simply stated, the

---

[1] C3 Presents is a concert and live event promoter and promotes, among other things, the Music City Wine and Food Festival, Austin City Limits, and the Lollapalooza festivals worldwide. For more information on C3 Presents, *see* https://www.c3presents.com/.

[2] It is difficult to assess Plaintiffs claims against C3 Presents as Plaintiffs inconsistently define the "Bassnectar Companies" throughout the Amended Complaint. Plaintiffs first define the "Bassnectar Companies" as Bassnectar Touring and the Interactive Giving Fund. (Am. Compl. ¶ 29.) Plaintiffs later define the "Bassnectar Companies" as Amorphous Music, Inc., Bassnectar Touring, Red Light Management, Inc., C3 Presents LLC, and the Interactive Giving Fund. (*Id.* ¶ 64.) Upon information and belief, Plaintiff either did not mean to include C3 Presents in the later definition and/or meant to refer to the later grouping by a title other than the "Bassnectar Companies" as there is no reason to refer to C3 Presents as a "Bassnectar Company"— Bassnectar does not own, operate, or otherwise control C3 Presents. Rather, C3 Presents is a limited liability company whose sole member is Live Nation Worldwide, Inc. Live Nation Worldwide, Inc. is a wholly-owned subsidiary of Live Nation Entertainment, Inc., a publicly traded corporation. In addition, Plaintiffs have not and cannot alleges that Bassnectar is an employee or an agent of C3 Presents, Live Nation Worldwide, Inc., or Live Nation Entertainment, Inc.

Amended Complaint provides absolutely no factual or legal basis to hold C3 Presents liable for Bassnectar's alleged—and in Plaintiffs' own words "secret"—sex trafficking.

Moreover, Plaintiffs have not demonstrated that this Court is a proper venue for this action. It is simply untrue that a "substantial part of the events or omissions giving to the claims asserted in this action" occurred in the Middle District of Tennessee. Instead, the Amended Complaint demonstrates that only one of the four Plaintiffs interacted with any of the Defendants in Tennessee.

Accordingly, C3 Presents respectfully requests that this Court dismiss the sole claim Plaintiffs assert against it for failure to state a claim upon which relief can be granted and, to the extent it does not dismiss the entirety of the Amended Complaint, dismiss or transfer the claims filed here that occurred elsewhere due to their improper venue.

## **LEGAL STANDARD**

### A. Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a complaint must state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). A claim is plausible when the plaintiff pleads facts that allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Hutchison v. Metro. Gov't of Nashville & Davidson, Cnty.*, 685 F. Supp. 2d 747, 751 (M.D. Tenn. 2010). The plausibility standard requires more than a "sheer possibility" of unlawful action. *Id.* at 749. "If a complaint pleads facts that are merely consistent with liability, it stops short of the line between possibility and plausibility of relief." *Id.* at 751 (internal quotations omitted).

Additionally, "the complaint must contain either direct or inferential allegations respecting all material elements [of a claim] to sustain a recovery under some viable legal

3

theory." *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 903 (6th Cir. 2009) (citing *Eidson v. State of Tenn. Dep't of Children's Servs.,* 510 F.3d 631, 634 (6th Cir. 2007). "Threadbare recitals of the elements of a cause of action" will not suffice. *El-Amin v. Clarksville Police Dep't*, No. 3:12-CV-00342, 2013 WL 1130884, at *2 (M.D. Tenn. Feb. 12, 2013), *report and recommendation adopted*, No. 3:12-CV-342, 2013 WL 1130876 (M.D. Tenn. Mar. 18, 2013). And those allegations addressing "all material elements" of a claim cannot comprise mere "conclusory allegations or legal conclusions masquerading as factual conclusions" or otherwise "unwarranted factual inferences." *S & M Brands, Inc. v. Summers*, 393 F. Supp. 2d 604, 611 (M.D. Tenn. 2005), *aff'd sub nom. S & M Brands, Inc. v. Summers*, 228 F. App'x 560 (6th Cir. 2007). Such allegations need not be accepted as true when determining whether to grant a motion to dismiss for failure to state a claim. *See Balboa v. Bell Atl. Mobile Sys., Inc.*, No. 3:16-CV-00757, 2017 WL 3387045, at *3 (M.D. Tenn. Aug. 7, 2017), *report and recommendation adopted*, No. 3:16-CV-00757, 2017 WL 3712911 (M.D. Tenn. Aug. 25, 2017).

Finally, to survive a motion to dismiss, "[p]laintiff's complaint must specifically identify each defendant against whom relief is sought and must give each defendant notice of the claims against him or her. *Keel v. Metro Gov't*, No. 3:14-CV-00456, 2014 WL 4979341, at *2 (M.D. Tenn. Oct. 2, 2014); *Jenkins v. Hardeman Cnty., Tenn.*, No. 13-2054, 2013 WL 5593048, at *6 (W.D. Tenn. Oct. 10, 2013).

### B. Fed. R. Civ. P. 12(b)(3)

On a 12(b)(3) motion, "the burden is on the plaintiff to prove venue is proper" in the district where the case was filed. *Bd. of Forensic Doc. Exam'rs, Inc. v. Am. Bar Ass'n*, 16-CV-2641-JPM-TMP, 2017 WL 549031, at *10 (W.D. Tenn. Feb. 9, 2017); *Gone To The Beach, LLC v. Choicepoint Servs., Inc.,* 434 F. Supp. 2d 534, 536-37 (W.D. Tenn. 2006). In a case with

4

multiple parties and multiple claims, the plaintiff "must show that venue is proper for *each* claim and as to *each* defendant in order for the court to retain the action*." Pioneer Surgical Tech. v. Vikingcraft Spine, Inc.*, No. 2:10-cv-251, 2011 WL 64239 at *2 (quoting *Verbis v. Iowa Dep't of Human Servs.*, 18 F.Supp. 2d 770, 774 (W.D. Mich. 1998)) (emphasis added); *see also Adams v. Tenn. Dep't of Corr.*, No. 1:15-cv-00115, 2017 WL 3276397 *8-9 (M.D. Tenn. July 13, 2017) (holding that venue was proper only against one defendant). If a court finds that venue is improper, it has the discretion to either dismiss the action or transfer the action to a district in which venue is proper. *Gone to the Beach*, 434 F.Supp. 2d at 536 (citing *First Mich. Corp. v. Bramlet*, 1411 F.3d 260, 262 (6th Cir. 1998)).

## ARGUMENT

I.  **PLAINTIFFS' THREADBARE RECITATION OF THE ELEMENTS OF A CLAIM FOR BENEFICIARY TVPRA LIABILITY FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.**

Plaintiffs fail to allege a sufficient TVPRA beneficiary claim against C3 Presents, thus this claim must be dismissed. While the TVPRA does provide a mechanism by which a beneficiary of a sex-trafficking venture may be found criminally or civilly liable, Plaintiffs do not—and cannot—make out such a claim here.

Two TVPRA sections expressly provide for a "beneficiary theory" of liability, but the sweep of such provisions is not without limit. Section 1591(a)(2) provides criminal penalties for the knowing beneficiaries of a sex-trafficking venture, providing that:

> Whoever knowingly ... benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act [of recruiting, enticing, harboring, transporting, providing, obtaining ... [or] maintaining ... by any means a person] ... [while] knowing, or in reckless disregard of the fact, that means of force, threats of force, fraud, coercion ..., or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

5

18 U.S.C. § 1591(a)(2). Section 1595 provides a civil remedy for the victims of sex-trafficking, and states, in part, that an alleged victim may bring a claim against the knowing beneficiary of a sex-trafficking venture. To state a TVPRA claim (whether brought as a criminal action under Section 1591(a)(2) or a civil action under Section 1595(a)), the plaintiff must allege sufficient facts to plausibly infer the defendant (1) knowingly benefitted financially or by receiving anything of value (2) from participation in a venture, (3) that it knew or should have known engaged in sex trafficking. *See* 18 U.S.C. § 1591(a)(2); § 1595(a). Failure to sufficiently and plausibly demonstrate any of these elements is fatal to a TVPRA beneficiary claim. *See Rodman v. Stryker Sales Corp.*, No. 14-CV-1102 JMF, 2014 WL 5002095, at *2 (S.D.N.Y. Oct. 7, 2014), aff'd, 604 F. App'x 81 (2d Cir. 2015) (failing to sufficiently "nudge[ ][the elements of] claims across the line from conceivable to plausible" is "fatal" when facing a motion to dismiss).

    A.    **At the outset, Plaintiffs fail to demonstrate that C3 Presents participated in a sex-trafficking venture.**

        1.    **Plaintiffs have not alleged that C3 Presents took part in a *sex-trafficking* venture.**

As an initial matter, C3 Presents does not believe the allegations against Bassnectar in the Amended Complaint state a claim for "sex-trafficking" so the beneficiary claim against C3 Presents must also fail. Notwithstanding, assuming that the Amended Complaint sufficiently pleads a claim against artist Bassnectar, Plaintiffs' claim against C3 Presents still fails as Plaintiffs have not demonstrated that C3 Presents participated in a *sex-trafficking* venture. The Sixth Circuit has carefully noted that the "venture" a party must participate in as a prerequisite for TVPRA liability must be a *sex-trafficking* venture, not a "venture" generally. *United States v. Afyare*, 632 F. App'x 272, 284–85 (6th Cir. 2016) ("[T]he venture must promote the offense underlying the conspiracy (here, sex trafficking) and that mere association in a gang or some other endeavor (criminal or otherwise) is not enough."). As the Sixth Circuit in *Afyare* explained,

6

the reason that the venture must be a sex-trafficking venture (and not just a venture generally) is multi-fold. *Id.* First, the TVPRA is not intended to punish "guilt by association." *Id.* at 285. Second, the language of the TVPRA, when read in its entirety, supports this interpretation of the venture requirement. *Id.* at 284–85 ("[W]hile § 1591(e)(5) defines 'venture' as 'any group of two or more individuals associated in fact,' we also consider 'venture' in the context of § 1591(a)(2), which specifies 'a venture which has engaged in an act described in violation of paragraph (1),' *i.e.*, sex trafficking. That is, its 'placement and purpose' in § 1591(a)(2) modify its 'bare meaning' in § 1591(e)(5)."). Third, allowing any venture—whether sex-trafficking related or not—to serve as the basis for TVPRA liability would produce adverse, unintended consequences: it would "create a 'vehicle to ensnare conduct that the statute never contemplated.'" *Id.* at 286 (citing *United States v. Cain,* 583 F.3d 408, 414 (6th Cir. 2009).

As an example, the court in *Afyare* provided a hypothetical venture that would patently fail to satisfy the requirements of the TVPRA: the "hypothetical defendant who joins a soccer team with some sex traffickers," but "turn[s] a blind eye" to those sex traffickers' activities. *Id.* The court iterated that simply being on a soccer team—or joining in any other generic venture with alleged sex traffickers—would not establish TVPRA beneficiary liability. *Id.* This is because the venture was not a *sex-trafficking* venture, even if some individuals involved in the venture also engaged in sex-trafficking. *Id.* Holding this type of hypothetical defendant liable would be quintessential "guilt by association" and turn the TVPRA into a powerful, dangerous tool that Congress did not intend. *See id.* at 285.

Much like the example venture provided in *Afyare*, Plaintiffs have demonstrably failed to allege that C3 Presents participated in a *sex-trafficking* venture with Bassnectar. Plaintiffs outright refer to C3 Presents' interaction with Bassnectar as a generic "venture"—not a sex-

7

trafficking venture. (Am. Compl. ¶ 31) ("C3 participated in managing, promoting, recruiting, and profiting from its venture with Bassnectar."). And Plaintiffs' factual allegation that C3 Presents "managed Bassnectar and produced large festivals where Bassnectar performed, including Electric Daisy Carnival, Camp Bisco, and Lalapalooza" (*id.*) does not transform this standard business venture into a sex-trafficking venture. This is patently insufficient to state a beneficiary claim under the TVPRA and is exactly the type of generic venture—like a soccer player who joins a team funded by sex-traffickers—that the Sixth Circuit in *Afyare* held to be insufficient to state a claim. *See* 632 F. App'x at 286. At best, Plaintiffs have alleged a "mere association" between Bassnectar and C3 Presents through the events it managed and produced on behalf of Bassnectar and dozens of other artists, which is simply "not enough" to state a TVPRA beneficiary claim. *See id.* at 283–84.

### 2. Plaintiffs fail to allege specific acts or participation by C3 Presents to further the alleged venture.

Even if Plaintiffs sufficiently alleged that C3 Presents was engaged in a sex-trafficking venture with Bassnectar—which they have not—Plaintiffs nonetheless fail to demonstrate that C3 Presents committed specific acts that furthered the sex-trafficking aspect of the venture. Mere passive participation or "negative acquiescence" is insufficient to establish liability under the TVPRA. *Id.* at 286 (noting that the TVPRA does not criminalize one who "turn[s] a blind eye" to a sex-trafficking venture). In *Noble v. Weinstein*, the court emphasized that in order to survive a motion to dismiss, a plaintiff bringing a TVPRA beneficiary claim must supply "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018). There, plaintiff's "conclusory allegations" that the defendant "facilitated" a sex-trafficking venture and "knowingly benefitted from sex trafficking" failed to satisfy this standard. *Id.* Accordingly, the *Noble* court granted the

8

defendant's motion to dismiss as the plaintiff failed to allege specific conduct evidencing participation in a sex-trafficking venture. *Id.* at 523–25.

Much like *Noble*, Plaintiffs here fail to supply the needed "factual content" that would allow this Court to draw the reasonable inference that C3 Presents is liable for Bassnectar's alleged sex trafficking. *See id.* Plaintiffs' only "factual" allegations linking C3 Presents to Bassnectar do not in fact link C3 Presents to a sex-trafficking venture at all. (Am. Compl. ¶ 31) (asserting that C3 Presents "participated in managing, promoting, recruiting, and profiting from its venture with Bassnectar.") Nor do Plaintiffs' other factual allegations necessarily demonstrate that C3 Presents was involved in a *sex-trafficking* venture with Bassnectar. (*See, e.g.*, *id.* ¶¶ 64, 75.) Simply put, it is "irrelevant" that C3 Presents was professionally associated with or had a "continuous business relationship with" an alleged sex trafficker (*id.* ¶ 31) as Plaintiffs cannot and do not establish any specific participation by C3 Presents in a sex-trafficking venture. *See Afyare*, 632 F. App'x at 286 (finding it irrelevant for a § 1591(a)(2) claim that a defendant, for example, "frequented a restaurant with [traffickers] or carpooled with them").

Plaintiffs' other generalized allegations likewise fail to demonstrate that C3 Presents participated in a sex-trafficking venture. Plaintiffs make allegations against the Bassnectar Companies, but those allegations could not conceivably include C3 Presents, a company in which Bassnectar has no direct or indirect ownership interest or control. (*See, e.g.*, Am. Compl. ¶ 67) (noting that Bassnectar was the founder of the Bassnectar Companies and "intimately involved in their day-to-day operations.") Regardless, those general allegations are just the type of threadbare, conclusory, and non-specific allegation that the court in *Noble* held to be insufficient to state a claim under § 1591(a)(2). *See* 335 F. Supp. 3d at 524. In addition, this threadbare allegation exemplifies impermissible group pleading—treating all defendants as the

same. Plaintiffs cannot utilize group pleading to establish the individualized factual connections to the sex-trafficking venture that are necessary to state a claim under § 1591(a)(2). *See Doe v. Indyke*, 465 F. Supp. 3d 452, 466 (S.D.N.Y. 2020) (noting that a plaintiff may not "impermissibly lump the [] Defendants' alleged conduct [serving as the basis for TVPRA liability] together"); *see also Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013) ("The Rules of Civil Procedure set up a system of notice pleading. Each defendant is entitled to know what he or she did that is asserted to be wrongful. A complaint based on a theory of collective responsibility must be dismissed."). Instead, the party bringing the TVPRA claim must "separate the conduct of the various defendants and make clear what [that party] alleges each specific [] Defendant did." *Id.* Here, Plaintiffs fail to separate out C3 Presents' conduct, other than in paragraph 31 of the Amended Complaint, which contains nothing to show C3's participation in a sex-trafficking venture.

**B. Plaintiffs fail to allege that C3 Presents knew or should have known that Bassnectar was engaged in a sex-trafficking venture, but rather repeatedly emphasize the secrecy of Bassnectar's exploitative conduct.**

While civil liability may be imposed on a party who knowingly benefitted from its participation in a venture that it "*knew or should have known*" engaged in sex-trafficking (18 U.S.C. § 1595(a)) (emphasis added), this does not provide a carte blanche for Plaintiffs. Here, Plaintiffs allege the contrary. Plaintiffs repeatedly and painstakingly allege that Bassnectar told them to keep their encounters secret and assert that they complied with Bassnectar's demands for the utmost secrecy. For example, Plaintiffs allege that:

- Bassnectar was able to conceal yet maintain consistent contact with these underage girls through secretive messaging apps which he required all communication to be funneled through… (Am. Compl. ¶ 10);

10

- Bassnectar would…mandate that [Plaintiffs'] contact with him be hidden from their parents and the public. (*Id.* ¶ 12);

- Bassnectar maintained tight control over Plaintiffs, requiring them to follow certain rules including… [k]eeping the relationship secret; this included avoiding being seen in public together; (*Id.* ¶ 53);

- Bassnectar required that [Co-Plaintiff] not tell anyone about Bassnectar's contact with her, physical or otherwise. Bassnectar also ensured and required that he was not be seen in public with [Co-Plaintiff] and vice versa. (*Id.* ¶ 124);

- Bassnectar would not allow them [himself and Co-Plaintiff] to be seen in public together (*Id.* ¶ 149);

- Bassnectar made Plaintiffs download the application, Wickr, which would delete any message sent and alert the other party if any screenshots were taken. (*Id.* ¶ 170);

- Bassnectar…prohibited [Co-Plaintiff] from telling anyone about the sexual nature of their interactions. (*Id.* ¶ 179.)

This Court must assume that these factual allegations asserting the secrecy of Bassnectar's allegedly exploitive conduct are true. *See Mulvey v. Perez*, No. 3:14-CV-1835, 2015 WL 5697318, at *2 (M.D. Tenn. Sept. 28, 2015) ("The court must assume that all of the factual allegations are true, even if they are doubtful."). Therefore, assuming the truth of such allegations, there is no basis for C3 Presents to know or even be on notice of Bassnectar's alleged misconduct. (*See, e.g.*, Am. Compl. ¶¶ 10, 12, 53, 74, 106, 124–25, 133, 148–49, 170, 177, 179, 183, 185.) It would defy logic that C3 Presents "knew or should have known" of Bassnectar's alleged sex-trafficking given Plaintiffs' repeated factual assertions alleging the secrecy of the venture. (*See id.*)

Even if Plaintiffs did not go to such lengths to demonstrate the secrecy of Bassnectar's alleged sex-trafficking venture, Plaintiffs still would fail to demonstrate that C3 Presents satisfied the "knew or should have known" standard because they have not alleged knowledge of

11

particular sex-trafficking activity. For example, in *S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp 3d 147, 154 (E.D.N.Y. 2020), the victim alleged that the defendant-hotel franchisors knew of a "general sex trafficking problem in low-budget lodgings." *Id.* The court held that this "abstract awareness of sex trafficking in general" was insufficient to establish TVPRA beneficiary liability and granted the defendant-hotel franchisors' motion to dismiss the TVPRA claim against them. *Id.* at 159. The court recognized that a defendant must have known or should have known about a ***particular*** sex trafficking venture.

> The real issue is not, then, actual-versus-constructive knowledge but whether a defendant satisfies the knowledge element as to a *particular* sex trafficking venture. The statutory text speaks in singular terms — "participation in *a* venture which that person . . . should have known *has* engaged in *an* act in violation of this chapter." 18 U.S.C. § 1595(a) (emphases added).

*Id.* at 154. Sixth Circuit courts have agreed that abstract, general knowledge is insufficient, and that knowledge of a ***particular*** sex trafficking venture is required:

> …this Court concludes that in order to state a viable TVPRA claim, a plaintiff must allege, among other things, that the defendant knew or should have known of sex trafficking by **the particular sex-trafficking venture** in which the defendant is alleged to have participated. The Court agrees with the court in *Choice Hotels* that a defendant's "knowledge or willful blindness of a general sex trafficking problem ... does not satisfy the mens rea requirements" of a claim under the financial beneficiary prong. *Choice Hotels*, 2020 U.S. Dist. LEXIS 127436, 2020 WL 4059569, at *5.

*H.G. v. Inter-Continental Hotels Corp.*, 489 F. Supp. 3d 697, 707 (E.D. Mich. 2020) (emphasis added).

Here, Plaintiffs' beneficiary claim patently fails to provide sufficiently detailed factual allegations demonstrating that C3 Presents "knew or should have known" of any of Bassnectar's "particular" alleged sex trafficking involving the four individual Plaintiffs. *Id.* Plaintiffs do not

12

Case 3:21-cv-00272   Document 51   Filed 06/01/21   Page 12 of 20 PageID #: 286

even establish that C3 Presents had an "abstract awareness of sex trafficking in general." *See id.* Plaintiffs here provide even less than *S.J.*, where the victim at least stated that the defendant-hotel franchisors were aware of a "general sex trafficking problem in low-budget lodgings." *See* 473 F. Supp 3d at 154. Plaintiffs do not even do that. Instead, Plaintiffs provide a threadbare recitation of the "knew or should have known" element but provide no factual allegations to support its knowledge of particular alleged sex trafficking. (*See, e.g.*, Am. Compl. ¶¶ 18, 31, 201, 209, 212.) This is an unsupported legal conclusion couched as a factual allegation and thus insufficient to plausibly allege a TVPRA beneficiary claim. *See id.*; *Lawson v. Rubin*, No. 17-CV-6404 (BMC), 2018 WL 2012869, at *12 (E.D.N.Y. Apr. 29, 2018) (dismissing TVPRA claim that simply "repeat[ed] [] [an] element of the offense, without any further factual elaboration or support").

### C. Plaintiffs have not pled sufficient facts to demonstrate that C3 Presents "knowingly benefitted" from a sex-trafficking venture.

Plaintiffs likewise fail to state a TVPRA beneficiary claim because they fail to allege that C3 Presents benefitted financially or in any other way, let alone *knowingly* benefitted, from Bassnectar's alleged sex-trafficking venture. *See Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 168–69 (S.D.N.Y. 2019) (noting that a failure to allege benefits received by defendants for their participation in a sex-trafficking venture is "fatal" to a TVPRA claim). To survive a motion to dismiss, a complaint requires more than couched legal conclusions that the defendant benefitted from a sex-trafficking venture as the court need not accept such conclusions as true. *See Mulvey*, 2015 WL 5697318, at *2 ("Legal conclusions are not entitled to the presumption of truth."). A recitation of the "knowingly benefitted" element of a TVPRA claim—without more—is thus insufficient to withstand a motion to dismiss. *See id.* Instead, a plaintiff must provide *specific factual support* to demonstrate that a defendant "knowingly benefitted"

13

from a sex-trafficking venture. *See Geiss*, 383 F. Supp. 3d at 168–69. In *Geiss*, for example, the court granted defendants' motion to dismiss for failure to state a claim as the plaintiff "pleaded no facts that would plausibly support the conclusion that the sex trafficker [Harvey Weinstein] provided benefits to the defendants *because of* defendants' facilitation of his sex trafficking." *Id.* at 169–70. Merely pleading that the defendants benefited from Weinstein's continued employment with their companies and that he generated revenue for them was thus insufficient to establish defendants' "knowing benefit." *Id.*

Much like *Geiss*, here Plaintiffs provide only conclusory allegations about the defendants' collective "knowing benefit" from Bassnectar's sex-trafficking venture.[3] For example, the Amended Complaint provides:

- Defendants, in violation of 18 U.S.C. § 1595, knowingly participated in or benefited from facilitating a venture that they knew, or should have known, to be engaging in sex trafficking in violation of 18 U.S.C. § 1591(a) (Am. Compl. ¶ 18);

- The Bassnectar Companies also directly violated the TVPA because they knowingly benefitted from participation in Ashton's venture with knowledge, or in reckless disregard of the fact, that Bassnectar used means of force, threats of force, fraud, and coercion to force children and women into engaging in commercial sex acts. (*Id.* ¶ 72);

- Defendants have financially benefitted[4] as a result of these acts, omissions, and/or commissions by their participation in managing,

---

[3] As noted above, Plaintiffs may not utilize deficient group pleading to establish the factual connections to the sex-trafficking venture that are necessary to state a claim under the TVPRA, including the knowing benefit element. *See Doe*, 465 F. Supp. 3d at 466 (noting that a Plaintiff may not "impermissibly lump the [] Defendants…together [when asserting a TVPRA claim]). C3 Presents is "entitled to know what [it] did that is asserted to be wrongful." *Bank of Am., N.A*, 725 F.3d at 818.

[4] Receiving a financial benefit is not enough to establish TVPRA liability. Instead, to state a TVPRA claim (whether brought as a criminal action under Section 1591(a)(2) or a civil action under Section 1595(a)), the plaintiff must allege sufficient facts to plausibly infer the defendant (1) **knowingly benefitted financially or by receiving anything of value** (2) from participation in a venture, (3) that it knew or should have known engaged in sex trafficking. *See* 18 U.S.C. § 1591(a)(2); § 1595(a). A financial benefit, without the "knowing" element, is insufficient to state a TVPRA claim.

14

- promoting, recruiting, and profiting off the success of the Bassnectar brand. (*Id.* at 204);

- Defendants knowingly benefited from participation in what they knew or should have known was a sex trafficking venture, in violation of 18 U.S.C. §§ 1591(a)(2) and 1595(a). (*Id.* at 209);

- Defendants knowingly benefited from, and/or received something of value for their participation in the venture, in which Defendants knew, should have known, or were in reckless disregard of the fact that the Plaintiffs were engaged in commercial sexual acts while under the age of eighteen. (*Id.* at 210).

These largely repetitious allegations—all of which treat the defendants as one collective entity—provide no factual support to "nudge" Plaintiffs' TVPRA beneficiary claim from "conceivable to plausible." *See Rodman*, 2014 WL 5002095, at *2. Plaintiffs' generic allegations are similar to those allegations held insufficient in *Geiss* where plaintiff merely (and deficiently) pled that defendants benefited from Weinstein's continued employment with their companies and that he generated revenue for them. *See* 383 F. Supp. 3d at 168–69.

## II. PLAINTIFFS' VAGUE AND UNARTICULATED ATTEMPTS TO CONNECT C3 PRESENTS TO THE FEW ALLEGED EVENTS OCCURRING IN TENNESSEE FAIL TO ESTABLISH PROPER VENUE BY ANY STANDARD.

This Court should dismiss Plaintiffs' claim against C3 Presents for the additional reason that Plaintiffs fail to establish that venue is proper in the Middle District of Tennessee in relation to C3 Presents. In a case with multiple defendants and multiple claims, a plaintiff "must show that venue is proper for *each* claim and as to *each* defendant in order for the court to retain the action." *Pioneer*, 2011 WL 64239, at *2 (quoting *Verbis*, 18 F. Supp. 2d at 774) (emphasis added). A plaintiff can establish proper venue in three ways. First, venue is proper in a district in which "any defendant resides," but only if all defendants reside in the forum state. 28 U.S.C. § 1391(b)(1). The Amended Complaint correctly alleges that C3 Presents is a Texas corporation. (Am. Compl. ¶ 31.) However, C3 Presents' principal place of business is in Beverly Hills,

15

California, not Texas or Tennessee. *See* https://businesssearch.sos.ca.gov/CBS/Detail. As a result, venue as to C3 Presents is not appropriate under this standard. Second, venue is proper in a district in which "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). Finally, venue is proper in a district in which the defendant "is subject to the court's personal jurisdiction with respect to such action," but only if there is no suitable district through the other two standards. 28 U.S.C. § 1391(b)(3). If the plaintiff fails to establish proper venue, the court should exert its discretion to dismiss the action. *Gone to the Beach*, 434 F. Supp. 2d at 536 (W.D. Tenn. 2006) (citing *First Mich.*, 1411 F.3d at 262). This includes when a plaintiff fails to demonstrate that venue is proper as to some, but not all, of the defendants. *See, e.g.*, *Adams*, 2017 WL 3276397, at *9 (granting several (but not all) defendants' motion to dismiss for improper venue as plaintiffs failed to establish that venue was proper as to those defendants).

Here, venue is improper in the Middle District of Tennessee, and dismissal is most appropriate for the sole claim asserted against C3 Presents. Plaintiffs assert that venue in the Middle District of Tennessee is proper pursuant to 28 U.S.C. § 1391(b)(2), as "a substantial part of the events or omissions giving rise to the claims asserted in this action occurred in [this district]." (Am. Compl. ¶ 41). Plaintiffs' Amended Complaint demonstrates otherwise. Plaintiffs simply restate the "substantial part" standard and fail to assert any factual allegations to connect any of the defendants, let alone C3 Presents, to the venue. The Tennessee-specific events alleged in the Amended Complaint fail to connect C3 Presents to the present action in any meaningful or significant way—these events are correspondence between Bassnectar and one plaintiff (*Id.* at ¶¶ 80, 82), and three meetings between Bassnectar and the same plaintiff. (*Id.* at ¶¶ 83–91, 94.) Nowhere in these averments is C3 Presents explicitly or impliedly mentioned or connected to

these interactions. (*See id.*) Further, such allegations do not demonstrate that a "substantial part" of the events or omissions occurred in the Middle District of Tennessee as Plaintiffs do not plead any events or omissions related to the remaining three Plaintiffs that occurred in the Middle District—which makes sense as those Plaintiffs are not from Tennessee, nor did they interact with Bassnectar (or C3 Presents) in Tennessee.

This Court should sever and dismiss Plaintiffs' claim against C3 Presents for improper venue as Plaintiffs fail to meet their burden of establishing proper venue by any standard. Transferring this action against C3 Presents to another venue would be futile, because Plaintiffs failed to plead any facts that meaningfully, significantly, or sufficiently connect C3 Presents to any of the alleged violations against any of the Plaintiffs. Accordingly, the Court should dismiss this claim against C3 Presents pursuant to Fed. R. Civ. P. 12(b)(3).

## **CONCLUSION**

C3 Presents respectfully requests that this Court dismiss Plaintiffs' claims against it pursuant to Fed. R. Civ. P. 12(b)(3) and (b)(6) for improper venue and failure to state a claim upon which relief can be granted.

Respectfully submitted,

*/s/ Russell B. Morgan*

Russell B. Morgan (BPR No. 20218)
Jason C. Palmer (BPR No. 036146)
Rachel L. Sodée (BPR. No. 038391)
BRADLEY ARANT BOULT CUMMINGS LLP
1600 Division Street, Suite 700
P.O. Box 34002
Nashville, Tennessee 37203
Phone: (615) 252-2311
Fax: (615) 252-6311

*/s/ Scott McCullough*
R. Scott McCullough (BPR No. 19499)
MCNABB, BRAGORGOS, BURGESS & SORIN, PLLC
81 Monroe, Sixth Floor
Memphis, Tennessee 38103
Phone: (901) 624-0640
Fax: (901) 624-0650
smccullough@mbbslaw.com

*Attorneys for Defendant C3 Presents, L.L.C.*

18

**CERTIFICATE OF SERVICE**

   The undersigned hereby certifies that a true and correct copy of the foregoing document is being served through the Court's Electronic Filing System, or via U.S. Mail, first class postage prepaid, to all other parties on June 1, 2021:

Phillip Miller
631 Woodland Street
Nashville, TN 37206

Brian Kent
M. Stewart Ryan
Alexandria MacMaster
LAFFEY, BUCCI & KENT, LLP
1100 Ludlow Street, Suite 300
Philadelphia, PA 19107

*Attorneys for Plaintiffs*

Robert A. Peal
Mark W. Lenihan
Grace A. Fox
SIMS/FUNK, PLC
3322 West End Ave., Suite 200
Nashville, TN 37203

Kimberly S. Hodde
HODDE & ASSOCIATES
40 Music Square East
Nashville, TN 37203

Stacey M. Ashby
Mitchell Schuster
MEISTER SEELIG & FEIN LLP
125 Park Avenue, 7th Floor
New York, NY 10017

*Attorneys for Defendants Lorin Ashton,*
*Amorphous Music, Inc., and*
*Bassnectar Touring, Inc.*

Brian T. Boyd
Bennett J. Wills
LAW OFFICE OF BOYD & WILLS

214 Overlook Cir., Ste. 275
Brentwood, TN 37027

*Attorneys for Interactive Giving Fund*

Paige W. Mills
Ashley Karnell
BASS, BERRY & SIMS PLC
150 Third Avenue South, Suite 2800
Nashville, TN 37201

*Attorneys for Red Light Management, Inc.*

Gnarlos Industries, L.L.C.
3337 NE 79th Ave.
Portland, OR 97203

Carlos Donohue
3337 NE 79th Ave.
Portland, OR 97203

                                          */s/ Russell B. Morgan*
                                          Russell B. Morgan