**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**

| | | |
|---|---|---|
| RACHEL RAMSBOTTOM, et al. | ) | |
| | ) | |
| *Plaintiffs*, | ) | Case No. 3:21-cv-272 |
| | ) | |
| v. | ) | JURY TRIAL DEMAND |
| | ) | |
| LORIN ASHTON, et al. | ) | JUDGE ALETA A. TRAUGER |
| | ) | |
| *Defendants*. | ) | |

---

**INTERACTIVE GIVING FUND'S MEMORANDUM OF LAW IN SUPPORT OF ITS RULE 12(b)(2), 12(b)(3) and 12(b)(6) MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

---

Defendant Interactive Giving Fund ("IGF") respectfully moves this Court to dismiss Counts II and IV of the First Amended Complaint (the "FAC") filed against it by Plaintiffs Rachel Ramsbottom ("Ramsbottom"), Alexis Bowling ("Bowling"), Jenna Houston ("Houston") and Jane Doe #1 (collectively, the "Plaintiffs") pursuant to (i) Fed. R. Civ. P. 12(b)(2), because this Court lacks personal jurisdiction over IGF, (ii) Fed. R. Civ. P. 12(b)(3) on the grounds that venue in this Court is improper, (iii) Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can be granted, and (iv) for all such other and further relief as the Court may deem just and proper.

**Introduction**[1]

Defendant Lorin Ashton ("Ashton") is a music artist and one of the leading performers in the genre known as Electronic Dance Music ("EDM"). FAC ¶ 1-2. Ashton is more widely known by his stage name -- "Bassnectar." *Id.* Ashton has a large following throughout the United States, where he performs shows and holds music festivals. *Id.* at ¶¶ 2-3.

---

[1] The FAC's plausibly pleaded allegations are accepted as true, as Rule 12(b)(6) requires, only for purposes of this motion. In the event any of Plaintiffs' claims against IGF proceed, IGF will demonstrate that Plaintiffs' substantive allegations are false.

The FAC alleges that IGF is a charity developed by Ashton which encouraged his fans to register to vote and to work at local food shelters. FAC ¶ 6. It is further alleged that IGF is a California corporation with headquarters in Culver City, CA. FAC ¶ 28. However, the FAC does not plead any contacts subjecting IGF to the personal jurisdiction of this Court.

The FAC alleges that Ashton, through his popularity and large following among young women, solicited and victimized underage girls by entering into relationships and engaging in sexual relations with them. FAC ¶¶ 10-13. Specifically, the FAC alleges that Ashton engaged in sexual relations with each of the Plaintiffs while they were minors, and that Ashton's actions constitute illegal sex trafficking in violation of the Trafficking Victims Protection Act ("TVPA"), 18 U.S.C. §§ 1591, 1595. *See generally* FAC ¶¶ 76-186.

The FAC generally alleges that Ashton "utilized [IGF] to target, recruit and ultimately victimize young girls, like Plaintiffs, for sexual exploitation" and that IGF "had a continuous business relationship with [Ashton] that enabled [Ashton] to engage in predatory behavior toward underage girls during the times that each Plaintiff was harmed." FAC ¶¶ 28. Yet the FAC does not allege any direct contact or interaction between IGF and any of the Plaintiffs.

After improperly grouping IGF with co-defendants Amorphous Music, Inc. ("AMI"), Bassnectar Touring, Inc. ("BTI"), Red Light Management, Inc., and C3 Presents LLC under the defined term "Bassnectar Companies", FAC ¶ 64, the FAC alleges without any detail that the "Bassnectar Companies" violated the TVPA. *See* FAC ¶¶ 65-72. There are no specific allegations as to how IGF knowingly benefited from and/or participated in an alleged commercial sex trafficking venture. *Id.*

Two claims are asserted against IGF. Count II alleges that IGF (along with all other defendants) benefitted from a sex trafficking venture in violation of Sections 1591 and 1595 of the

TVPA. *See* FAC ¶¶ 198-213. Count IV alleges that IGF, along with other defendants Ashton, AMI, BTI and unnamed fictitious corporations and individuals, are liable under Tennessee law via a negligence *per se* theory for their alleged actions set forth in the FAC. *See* FAC ¶¶ 220 -235.

For all the reasons set forth below, the Court should dismiss the FAC as against IGF.

## ARGUMENT

## I. THE COURT LACKS PERSONAL JURISDICTION OVER IGF

### A. The Court Lacks General Jurisdiction over IGF

The Supreme Court has made clear that general jurisdiction exists only where a defendant is a citizen. *Bristol-Meyers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017), *citing Goodyear Dunlap Tires Operations S.A. v. Brown*, 564 U.S. 915, 924 (2011). The party invoking the court's jurisdiction bears the burden of establishing that a defendant has the requisite minimum contacts with the forum state to justify the court's jurisdiction. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991); *see also CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1261–62 (6th Cir. 1996). Personal jurisdiction is an essential element of the jurisdiction of a court, without which the court is powerless to proceed to an adjudication. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999).

The FAC alleges that IGF is a California corporation with its principal place of business in California. (FAC ¶ 28). A corporation's citizenship is determined by the place of incorporation and principal place of business. *See Branstetter v. Holland America Line N.V.*, 430 F. Supp.3d 364 (W.D. Tenn., Western Div. 2019) (stating that "a corporation's principal place of business and place of incorporation are 'paradigm … bases for general jurisdiction'") (*citing Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Only in the "exceptional case" will a court exercise general jurisdiction over a corporation in a forum other than its place of incorporation or principal place

of business. *Id*. No such exceptional circumstances exist here (nor do Plaintiffs allege any such circumstances) and thus the Court lacks general jurisdiction over IGF.

## B. The Court Lacks Specific Jurisdiction Over IGF

The Court does not have specific personal jurisdiction over IGF in this case, because, among other things, Plaintiffs causes of action do not arise from IGF's actions in Tennessee. The Supreme Court has noted that specific jurisdiction is the preferred method to exercise personal jurisdiction in federal courts. "Since *International Shoe*, 'specific jurisdiction has become the centerpiece of modern jurisdiction theory, while general jurisdiction [has played] a reduced role.'" *Daimler*, 571 U.S. at 128 (*quoting Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)). "[A] corporation's 'continuous activity of some sorts within a state is not enough to support the demand that the corporation be amenable to suits unrelated to that activity'" and that where a corporation is not "at home," neither the corporation nor its subsidiaries could be "required to submit to the general jurisdiction of that State's courts." *Id*. at 132 (*quoting International Shoe Co. v. State of Wash.*, 326 U.S. 310, 318 (1945)).

Plaintiffs bear the burden of establishing that the Court has personal jurisdiction over each defendant. *Air Prod. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007). Personal jurisdiction exists over a non-resident defendant only in accordance with the forum state's long-arm statute and the limitations of due process. *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1115 (6th Cir. 1994). "[I]f the defendant is amenable to service of process under the [forum] state's long-arm statute and if the existence of personal jurisdiction would not deny the defendant [ ] due process,'" jurisdiction is proper. *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002). Tennessee's long-arm statute "extends the personal jurisdiction of Tennessee courts to the limits of the Due Process Clause." *Williams v. Firstplus Loan Owner Trust 1998-4*, 310 F. Supp.2d

4

981 (W.D. Tennessee 2004) (*citing* Tenn. Code Ann. § 20-2-214(a)(6) (2004)).

Specific jurisdiction requires suit-related conduct: an "affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum state." *Bristol-Meyers Squibb Co.*, 137 S. Ct. at 1781, *citing Goodyear Dunlap Tires Operations S.A.*, 564 U.S. at 919. Although a defendant may have some contact with the forum state, there is no specific jurisdiction where the contacts are unrelated to the claims in the lawsuit. *Bristol-Meyers Squibb Co.* 137 S. Ct. at 1781. "[T]he plaintiff cannot be the only link between the defendant and the forum." *Walden v. Fiore*, 571 U.S. 277, 285 (2014).

The Sixth Circuit applies a three-part test to determine whether a nonresident defendant is subject to the court's specific personal jurisdiction:

1. The non-resident defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state;

2. the claim must be one which arises from the defendant's forum-related activities; and

3. the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1263 (6th Cir. 1996). The failure to meet any one of the above means that a court may not invoke personal jurisdiction. *Conti v. Pneumatic Products Corp.*, 977 F.2d 978, 983 (6th Cir. 1992).

Plaintiffs have not alleged any suit-related conduct by IGF in Tennessee or directed to Tennessee. Thus, Plaintiffs have failed to plead that IGF has "purposefully availed itself" of the privilege of conducting activities in Tennessee. This requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of "fortuitous" or "attenuated" contacts. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). Although Plaintiffs allege that defendant Ashton

met Ramsbottom while playing a show in Nashville (FAC ¶ 79) and thereafter engaged in a relationship with Ramsbottom in Nashville and in Memphis (FAC ¶¶ 79-94), none of these allegations connect IGF to Ashton's alleged conduct and thus are insufficient to satisfy this prong of the specific jurisdiction test. The only alleged connection between this lawsuit and Tennessee is Plaintiff Ramsbottom's residence, which is inadequate. None of the other Plaintiffs are alleged to reside in or have any other connection to Tennessee. The FAC alleges that IGF's place of incorporation and headquarters are both in California. FAC ¶ 28. There are no specific allegations connecting IGF to Tennessee.

Even assuming Plaintiffs could satisfy the first prong of the specific jurisdiction test (which they cannot), the FAC lacks any allegation that IGF was involved, in any fashion, with the Nashville concert referred to in paragraph 79 of the FAC or with any of the other contacts alleged to have taken place between Plaintiff Ramsbottom and defendant Ashton. Each such contact and interaction are alleged to have been between Ramsbottom and Ashton – there is no allegation that IGF had any interaction with Ramsbottom in Tennessee (or anywhere else). *See* FAC ¶¶ 76-107.

Plaintiffs also do not allege that their claims arise out of IGF's purported activities in Tennessee. In fact, Plaintiffs do not allege **any** plausible suit-related conduct by IGF connecting them to Tennessee. Except for alleging that Ashton is the "founder and former chairman, figurehead, chief executive, and icon" of IGF (FAC ¶ 28), the FAC makes no allegations that would tie IGF to the claims Plaintiffs make against Ashton. The mere fact that an employee – even a principal – of a corporation engages in conduct in a forum does not give a plaintiff specific jurisdiction over the corporation if there is no allegation that the conduct was committed in a corporate capacity. *See*, *e.g., American Copper & Brass, Inc. v. Mueller Europe, Ltd.*, 452 F. Supp.2d 821, 828 (W.D. Tenn. 2006) (stating that "a company does not purposefully avail itself

6

of the forum merely" as a result of its relationship with the defendant that is subject to jurisdiction; "personal jurisdiction must be based on something that the defendant has done involving the forum….") (citations omitted).

Moreover, the allegations in the FAC do not demonstrate a substantial connection between IGF and Tennessee to make the exercise of jurisdiction over them reasonable, as required by the third prong of *Patterson*. IGF's alleged activities have no connection to Tennessee and therefore cannot be "substantial enough" to make the exercise of personal jurisdiction "reasonable."

For all these reasons, the FAC should be dismissed as against IGF for lack of personal jurisdiction.

## II. PLAINTIFFS FAIL TO ESTABLISH THAT VENUE IS PROPER IN THIS COURT

The FAC also fails to establish that venue in this Court is proper. Whether venue is proper or improper is generally governed by 28 U.S.C. §1391. *Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 56-57 (2013). When venue is challenged, the court must determine whether the case falls within one of the three categories set forth in §1391(b). *Gone to the Beach, LLC v. Choicepoint Services, Inc.*, 434 F. Supp.2d 534, 538 (W.D. Tenn. 2006). Thus, venue is proper in a district (i) where any defendant resides, but only if all defendants reside in the forum State; (ii) "in which a substantial part of the events or omissions giving rise to the claim occurred"; or (iii) where any defendant is subject to the Court's personal jurisdiction, but only if there is no other district in which the action may be brought. 28 U.S.C. § 1391(b). "On a Rule 12(b)(3) motion to dismiss, the plaintiff bears the burden of proving that venue is proper. The Court may examine facts outside the complaint but must draw all reasonable inferences and resolve factual conflicts in favor of the plaintiff." *Moore v. Indus. Maintenance Serv. of Tenn., Inc.*, No. 11-2938-STA-tmp, 2012 WL 1951896, at *2 (W.D. Tenn. May 30, 2012) (granting motion).

7

Here, Plaintiffs solely depend on the second prong of § 1391(b) to establish venue, *i.e.*, that "a substantial part of the events or omissions giving rise to the claims asserted in this action occurred in" this district. FAC ¶ 41. However, the FAC contains no specific factual allegations connecting IGF to this District. While the allegations contained in paragraphs 76-107 of the FAC attempt to detail defendant Ashton's alleged interactions with plaintiff Ramsbottom, there are no allegations that: (a) his purported misconduct had anything to do with IGF; or (b) his alleged interactions with Ramsbottom or Tennessee involved IGF. *Id.* Further, the FAC does not allege that any of the "events or omissions giving rise to the claims" of the other three plaintiffs occurred in Tennessee (other than in general, conclusory fashion in ¶ 41). Thus, Plaintiffs' allegations fail to meet the "substantial part" test of § 1391(b).

Venue, therefore, is not proper here, and dismissal is warranted.

## III.    THE FAC FAILS TO STATE A CLAIM AGAINST IGF UNDER RULE 12(b)(6)

### A.  Legal Standard

When reviewing a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citation omitted). However, to survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the factual allegations do "not nudge [the pleaded] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* "Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (emphasis added); *accord 16630*

*Southfield L.P. v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013). The factual allegations must be more than speculative − the plaintiff has an obligation to provide more than labels and conclusions, and a formulaic recitation of the elements of a cause of action is not enough. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Although *Twombly* does not "require heightened fact pleading of specifics," a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

To establish the "facial plausibility" required to "unlock the doors of discovery," the *plaintiff cannot rely on "legal conclusions" or "[threadbare] recitals of the elements* of a cause of action," but, instead, the plaintiff must plead "*factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678 (emphasis added). "In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are *no more than conclusions*, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they *must be supported by factual allegations.*" *Id*. at 679 (emphasis added). As this Court has explained, "[t]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Patel v. Hughes*, 2014 WL 4655285, at *1 (M.D. Tenn. Sept. 16, 2014) (*quoting Iqbal*, 556 U.S. at 678 and *Twombly*, 550 U.S. at 555)). The plaintiff must show a basis for relief, not merely assert a claim for it. *Id*.

## B.    BeInteractive Did Not Exist Until July 2018 and IGF is Not a Viable Entity

The FAC alleges that IGF is a California corporation and a charity formerly known as "BeInteractive." (FAC ¶¶ 6, 28).

The California nonprofit public benefit corporation BeInteractive was not formed until July

2018. (Sridharan Decl., Ex. A). The actions referred to in the FAC are alleged to have occurred *prior to 2018* (*i.e.*, prior to BeInteractive's existence), except for one allegation that Ashton "continued to have sex with" Plaintiff Doe until an unspecified time in "2018." (FAC ¶ 180). However, there is no allegation that connects any conduct of BeInteractive to Plaintiff Doe's purported sexual encounters with Ashton in 2018. Accordingly, even assuming BeInteractive was a defendant herein, (which it is not) the FAC fails to state a claim against that (now dissolved) entity.

As for IGF, it is neither a corporation nor an entity formed in any jurisdiction. (Sridharan Decl. ¶ 6). Contrary to the FAC's allegations, IGF was not "formally known as" BeInteractive. BeInteractive was properly dissolved in 2020. (Sridharan Decl., Ex. B). Instead, IGF is the name in which charitable monies are held in a section 503(c)(3) donor-advised fund maintained by Vanguard Charitable. (Sridharan Decl. ¶ 5). "One may not sue a name unless someone is doing business under that name, in which case the party or parties doing business may be sued individually as trading under said name or by the trade name as provided in Rule 17(b)." *In re Midwest Athletic Club*, 161 F.2d 1005, 1008 (7th Cir. 1947). Here, even assuming Ashton is alleged to be "doing business" under the name "Interactive Giving Fund," (which he is not) only he can be (and has been) sued individually. IGF cannot be sued. *See Frison v. Ryan Homes*, No. Civ. AW-04-350, 2004 WL 3327904, at *3 (D. Md. Oct. 29, 2004) (dismissing claims against "Ryan Homes" because it "is not a separate legal entity but rather merely a trade name" which "are not jural persons and cannot sue or be sued.").

### C. Count II of the FAC Alleging that IGF Benefitted From a Sex Trafficking Venture in Violation of 18 U.S.C. §§ 1591 and 1595 Fails to State a Claim

Chapter 18 of the United States Code makes it a criminal offense to engage in or benefit

from a sex trafficking venture. Specifically, 18 U.S.C. § 1591(a) states:

>   (a)     Whoever knowingly –
>
>   (1)     in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or
>
>   (2)     benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),
>
>   knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

18 U.S.C. § 1591(a). Thus, the first prong of § 1591(a) imposes liability on the parties that recruit, entice, harbor, transport, provide, obtain, advertise, maintain, patronize or solicit a person to engage in a commercial sex act, while the second prong applies to those who benefit from participation in a sex trafficking venture. *Id*. Pursuant to 18 U.S.C. § 1595, a victim of a violation of § 1591 may bring a civil action against someone who violates that section. Specifically, 18 U.S.C. § 1595(a) provides in relevant part that an action may be brought against:

>   "… whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter…."

18 U.S.C. § 1595(a).

Thus, unlike a direct claim against a perpetrator of sex trafficking, Section 1595 permits a victim to pursue recovery against a person or entity who participates in and benefits from the sex trafficking venture. In Count II of the FAC, Plaintiffs asserts a claim against IGF pursuant to Section 1595, alleging IGF "benefitted" from its "participation" in a sex trafficking venture. FAC

¶¶ 198-213.

To state a claim under a section 1595(a) beneficiary theory, a plaintiff must allege facts beyond mere conclusions allowing it to be plausibly inferred that the defendants (1) "knowingly benefit[ted], financially or by receiving anything of value"; (2) from "participation in a venture"; (3) it "knew or should have known has engaged in" sex trafficking under section 1591. *H.G. v. Inter-Continental Hotels Corp.*, 489 F. Supp.3d 697, 704 (E.D. Mich., Southern Div. 2020); *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp.3d 959, 964 (S.D. Ohio, Eastern Div. 2019). Failure to plausibly set forth allegations in support of any of these elements requires the dismissal of a Section 1595 beneficiary claim. *See Rodman v. Stryker Sales Corp.*, 2014 WL 5002095, at * 2 (S.D.N.Y. Oct. 7, 2014, *aff'd* 604 F. App'x 81 (2d Cir. 2015).

The allegations against IGF are wholly conclusory and simply track the language of the various sections of the statute. *See*, *e.g.*, FAC, ¶¶ 64-72. Paragraph 64 is the sole portion of the FAC that even attempts to connect IGF to the alleged misconduct of Ashton. The pleading first improperly groups IGF together with the entity defendants (and defines them as the "Bassnectar Companies") and then claims that "at least one of the employees hired by the Bassnectar Companies would even place hotel room keys in hiding places for [Ashton's] 'girls' on a regular basis." FAC ¶ 64. However, a pleading's generic references to the actions of all defendants, or a group of defendants, is insufficient to meet the notice-pleading requirements of Rule 8 of the Federal Rules of Civil Procedure. *See Bondex Int'l, Inc. v. Hartford Accident and Indem. Co.*, 667 F.3d 669, 681 (6th Cir. 2011). Even if the allegations specified certain defendants, they would still be insufficient because of the general and conclusory nature of such allegations – such as the failure to name the employee, the hotel(s) and the "girls"[2] referred to in paragraph 64. Such pleading

---

[2] Plaintiffs could have alleged – but did not allege – that any Plaintiff was given a room key by IGF or any other "Bassnectar Defendant."

does not meet the plausibility standard required by *Twombley*.

### 1. The FAC Fails to Adequately Allege that IGF
   ### Knowingly Benefitted From Any Sex Trafficking Venture

To satisfy the first element of a claim under Section 1595's "beneficiary theory" -- that the defendants knowingly benefitted from the alleged sex trafficking venture -- Plaintiffs must plausibly allege IGF "knowingly benefit[ted] financially or by receiving anything of value" from the trafficking venture. *A.B. v. Marriott Int'l, Inc.,* 455 F. Supp. 3d 171, 190 (E.D. Pa. 2020). Plaintiffs utterly fail to allege facts that are even close to satisfying this element of their claim.

Essentially, there are only conclusory allegations directed at satisfying the "knowingly benefits" element of their TVPA beneficiary claim. *See, e.g.*, FAC ¶¶ 18, 72, 204, 209-210. In fact, the only allegation in Plaintiffs' 235-paragraph FAC that even attempts to make any allegation of benefits received by IGF from its alleged "participation" in the venture is contained in paragraph 65, which states that "the Bassnectar Companies knowingly benefit from their participation in Bassnectar's venture *by the continued promotion of the Bassnectar brand*." FAC ¶ 65 (emphasis added). Such allegation does not even approach the specificity needed to satisfy the plausible pleading requirements of this element. First, this allegation again contains the aforementioned infirmity with respect to paragraph 64 – improperly grouping IGF with other defendants and simply calling the group the "Bassnectar Companies." FAC ¶ 65. Such shot-gun pleading is clearly insufficient. *See Doe v. Indyke*, 465 F. Supp.3d 452, 466 (S.D.N.Y. 2020).

Second, Plaintiffs do not explain how "the continued promotion of the Bassnectar brand" is connected with the alleged sex trafficking venture or, more simply, how the "Bassnectar brand" was continually promoted. Of course, Plaintiffs cannot be claiming that any promotion of the alleged sex trafficking venture somehow aided the Bassnectar brand. Stated differently, the FAC does not allege how the purported venture had any relationship or effect on any promotion

conducted by IGF. It is clear, that Plaintiffs have named IGF as a defendant in an attempt to exploit the provisions of the TVPA because they deem the remedies under the statute to be "very favorable."[3]

In sum, the FAC does not allege any facts that IGF benefitted from the alleged sex trafficking venture. Most of the Section 1595 cases finding an entity liable for benefitting from a sex trafficking venture involve the receipt of actual monetary compensation for actions involving the venture, such as a hotel or motel receiving payments for a rental room used to house the venture. *See*, *e.g.*, *H.H. v. G6 Hospitality, LLC*, 2019 WL 6682152 (S.D. Ohio, Eastern Div. Dec. 6, 2019); *M.A. v. Wyndham Hotels & Resorts, Inc*., 425 F. Supp.3d 959 (S.D. Ohio, Eastern Div. 2019). Here, the benefit alleged – the "continued promotion of the Bassnectar brand" – is so vague and undefined that it cannot possibly meet the pleading requirement for IGF to have benefitted financially or received something of value from the venture.

Even in cases where a direct payment is alleged to have been made, courts have found such payments to be insufficient to meet the "benefits" prong of a Section 1595 claim. *See*, *e.g.*, *Kolbek v. Twenty First Century Holiness Tabernacle Church, Inc*., 2013 WL 6816174, at *16 (W.D. Ark. Dec. 23, 2013) (stating that "[t]he fact that sexual abuse was committed by the ministry's leader and that members of the ministry had their expenses paid for through ministry funds is simply not sufficient to establish a violation of 18 U.S.C. § 1591"). Plaintiffs' failure to allege a plausible causal connection between the alleged venture and the alleged benefit to IGF is fatal to their claim.

### 2. The FAC Fails to Adequately Allege that IGF Had Knowledge of Any Sex Trafficking Venture

A defendant cannot be liable under Section 1595's "beneficiary" theory unless it is alleged

---

[3] Julie Dahlstrom, *Trafficking to the Rescue?*, 54 U.C. Davis Law Review 1, n. 104 (2020) (reference to a telephone interview with Plaintiffs' attorney, Brian Kent and quoting him to say, "[t]he remedies that are available under the Federal Trafficking Act….are very favorable….").

that the defendant "knew or should have known" that the alleged venture was engaged in sex trafficking. *See H.H. v. G6 Hosp., LLC*, 2019 WL 6682152, at *3 (S.D. Ohio, Dec. 6, 2019). The standard under this section, based on the "should have known" language in the statute, is a negligence standard of constructive knowledge. *Id*. The FAC, however, fails to meet this pleading requirement.

Plaintiffs attempt to satisfy this element against IGF by alleging that "[t]he Bassnectar Companies have actual knowledge of Bassnectar's unlawful commercial sex acts through him, as he is the founder of the Bassnectar Companies and intimately involved in their day-to-day operations." FAC ¶ 67. However, other than this conclusory allegation, which once again improperly groups several defendants into one umbrella term, the FAC contains no allegations that IGF was involved in, or had any connection to, Ashton's actions involving any of the Plaintiffs. *See Russell Barnett Ford of Tullahoma, Inc. v. H&S Bakery, Inc.*, 398 F. Supp.3d 287, 289 (E.D. Tenn. 2019) ("There is a presumption that a corporation is a distinct entity, separate from its shareholders, officers, directors or affiliated corporations, and the party wishing to negate the existence of such separate entity has the burden of proving facts sufficient to justify piercing the corporate veil.") (citations omitted).

Similarly, the FAC does not allege a causal link between IGF and the alleged sex trafficking venture that would satisfy the "should have known" language in the statute. The FAC fails to plead *any* connection between Plaintiffs and IGF at all. Thus, Plaintiffs have failed to properly allege this element of a Section 1595 claim.

3. **The Complaint Fails to Adequately Allege that IGF Participated in Any Sex Trafficking Venture**

The third element of a Section 1595 claim here is that the defendant "participated" in a sex trafficking venture. "The participation giving rise to the benefit must be participation in a sex-

trafficking venture, not participation in other activities engaged in by the sex traffickers that do not further the sex-trafficking aspect of the venture." *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp.3d 156, 169 (S.D.N.Y. 2019), *citing U.S. v. Afyare*, 632 F. App'x 272, 286 (6th Cir. 2016) (stating that "§ 1591(a)(2) targets those who participate in sex trafficking; it does not target [those] who turn a blind eye to the source of their financial sponsorship"). To impose liability under Section 1595 the venture must be a sex trafficking venture – otherwise it would "create a 'vehicle to ensnare conduct the statute never contemplated.'" *Afyare*, 632 F. App'x 272, 286 (*citing United States v. Cain*, 583 F.3d 408, 414 (6th Cir. 2009).

Some courts have interpreted the above language from *Afyare* to require allegations of specific, overt acts on the part of the defendant that furthers the sex trafficking aspect of the venture in order to satisfy the "participation" element. *See*, *e.g.*, *Noble v. Weinstein*, 335 F. Supp.3d 504, 524 (S.D.N.Y. 2018) (requiring factual allegations implicating the defendant as a participant in the perpetrator's conduct toward the victim); *Doe 1 v. Red Roof Inns, Inc.*, 2020 WL 1872335, at * 3 (N.D. Georgia, April 13, 2020) (stating that "[a]ssociation alone cannot establish liability; instead, knowledge and "some participation in the sex trafficking act itself must be shown") (citations omitted).

Other courts have distinguished *Afyare* as only applying to participation in a venture in connection with a claim made under Section 1591 of the statute. *See*, *e.g.*, *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp.3d 959, 969 (S.D. Ohio, 2019); *S.Y. v. Naples Hotel Co.*, 476 F. Supp.3d 1251, 1256 (M.D. Fla., 2020); *J.C. v. Choice Hotels Int'l, Inc.*, 2020 WL 3035794, at *1, fn. 1 (N.D. Cal., June 5, 2020). Those courts have held that actual knowledge of participation in the sex trafficking itself is not required if the defendant had constructive knowledge of the sex

16

trafficking act. *Id*.

Here, Plaintiffs have not alleged IGF either actually or constructively participated in the purported sex trafficking venture. As stated above, there are no allegations whatsoever that IGF participated in the sex trafficking acts described in the FAC. IGF is not even mentioned in the individual Plaintiffs' allegations. Thus, under the *Afyare* requirement that an overt act on behalf of the defendant be alleged to satisfy the participation element, the FAC is woefully insufficient.

Even if the Court determines that only constructive knowledge of participation in the sex trafficking act is required, the FAC is still deficient. The FAC does not allege IGF was aware or should have been aware of Ashton's purported contacts with Plaintiffs or committed specific acts that furthered the purported sex trafficking venture. There are no allegations that IGF assisted or facilitated the interactions between Ashton and Plaintiffs. Plaintiffs do not allege that IGF supplied Plaintiffs with concert tickets or backstage passes, transportation or money – all such allegations were made against Ashton alone. *See*, *e.g.*, FAC ¶¶ 87, 111, 115, 116-117, 126, 128, 142-143, 153-154, 168, 178. While Plaintiffs allege that IGF's knowledge should be imputed from Ashton, who, it is alleged, was "intimately involved in their day-to-day operations" (FAC ¶ 67), such conclusory allegations are insufficient to state a claim under § 1591(a)(2). *See Noble*, 335 F. Supp.3d at 524. *H&S Bakery, Inc.*, 398 F. Supp.3d at 299. In sum, Plaintiffs have failed to sufficiently allege that IGF participated in the alleged sex trafficking venture.

For these reasons, Count II of the FAC should be dismissed as against IGF.

### D.    Count IV of the FAC Alleging Negligence Per Se as Against IGF Fails to State a Claim

In Count IV of the FAC, plaintiff Ramsbottom asserts a "negligence *per se*" claim against defendants AMI, BTI, Ashton, IGF and fictitious corporations and individuals based on her allegations that defendant Ashton committed (i) aggravated statutory rape in violation of T.C.A. §

39-13-506(C), and (ii) statutory rape by an authority figure in violation of T.C.A. § 39-13-532. FAC ¶¶ 220-235.  Thus, Ramsbottom alleges that Ashton's alleged actions constitute negligence *per se* – not only against Ashton – but also against other defendants, including IGF.  However, there can be no negligence *per se* claim against IGF based on Ashton's alleged actions.  Therefore, Count IV should be dismissed as against IGF.

To establish negligence *per se*: (1) "the defendant must have violated a statute or ordinance that imposes a duty or prohibition for the benefit of a person or the public"; (2) "the injured party must be within the class of persons intended to benefit from or be protected by the statute"; and (3) "the injured party must show that the negligence was the proximate cause of the injury." *Slowik v. Lambert*, No. 3:19-CV-00501-DCLC, 2021 WL 1176075, at *5 (E.D. Tenn. Mar. 29, 2021) (quoting *Shaw v. Metro. Gov't of Nashville & Davidson Cty.*, 596 S.W.3d 726, 734 (Tenn. Ct. App. 2019)).  "The Tennessee Supreme Court has, over the years, been quick to invoke the negligence *per se* doctrine with regard to violations of penal statutes designed to protect the public." *Rains v. Bend of the River*, 124 S.W.3d 580, 592 (Tenn. Ct. App. 2003) (citation omitted).

Here, the FAC fails to meet the requirement of the first prong above – that the defendant must have violated a statute or ordinance that imposes a duty or prohibition for the benefit of a person or the public.  The FAC does not allege that any defendant – including Ashton – has been convicted of a violation of the two statutes cited in Count IV, or that any defendant has even been charged therewith.  The lack of a charge or conviction is a dispositive basis to dismiss a negligence *per se* claim.  *See Ware v. Tow Pro Custom Towing & Hauling, Inc.*, No. 3:04-0528, 2007 WL 108885, at *7 (M.D. Tenn. Jan. 12, 2007), *aff'd*, 289 F. App'x 852 (6th Cir. 2008).  In *Ware*, a plaintiff alleged that a towing company was negligent *per se* by violating Tennessee's criminal prohibition of extortion codified in Tennessee Code Annotated § 39-14-112.  *Id*.  In its summary

judgment motion, the defendant, a towing company, argued that "because it has never been adjudged guilty of the crime of extortion, it cannot be liable as alleged." *Id.* Noting that "[d]efendant has never been charged with or convicted of the crime of extortion," the court found that "[p]laintiffs cannot establish the threshold element necessary to a claim of negligence *per se*, i.e., that Defendant violated a statute or ordinance." *Id.*

Even assuming it was sufficient to allege that a defendant's conduct violated the statutes (but that the defendant has not been convicted), negligence *per se* is still an inappropriate claim against IGF because only Ashton (and not IGF) is alleged to have violated the statutes.[4] FAC ¶¶ 222, 224. *See also Slowik*, 2021 WL 1176075, at *5 (stating that to establish negligence per se "*the defendant* must have violated a statute of ordinance…") (emphasis added).

Here, though Count IV is titled as "negligence *per se*," it is ultimately a general negligence claim that attempts to impute a standard of care from the criminal code. However, the criminal statute must identify an applicable standard of care. *See Slowik*, 2021 WL 1176075, at *6. Though the FAC alleges conduct by Ashton that may or may not violate Tennessee's statutory rape penal statute, the statutes cited in the FAC do not establish any standard of care for third parties to prevent or report any violations of those statutes. *Cf. Doe v. Coffee Cty. Bd. of Educ.*, 852 S.W.2d 899, 909 (Tenn. Ct. App. 1992) (noting that a failure to report sexual abuse of a minor as required by Tennessee law, did not provide a basis for negligence claim). The lack of a statutory standard of care makes negligence *per se* inapplicable to the other defendants, including IGF. *See Slowik*, 2021 WL 1176075, at *6 (noting that the criminal statute must identify a standard of care to provide a basis for a negligence *per se* claim).

If plaintiff Ramsbottom is trying to allege some sort of civil conspiracy or aiding and

---

[4] For reasons that should be obvious, the FAC makes no attempt to explain how a corporate entity could commit statutory rape, under any facts.

abetting liability theory, she has not stated this in the FAC.  Nevertheless, the fundamental issue is whether Count IV states a negligence claim under any standard of care.  *See, e.g.*, *Sheila C. ex rel. Doe v. Povich*, 768 N.Y.S.2d 571, 578 (Sup. Ct. 2003), *aff'd as modified sub nom. Sheila C. v. Povich*, 11 A.D.3d 120 (2004) (discussing the need to establish the standard of care owed to a minor under New York law in negligence case arising from rape of a minor following her appearance on the *Maury* show).  Here, the cited statutes do not outline any standard of care for defendants other than the alleged actor – defendant Ashton -- making the negligence *per se* theory inapplicable as to the other defendants.  The failure to identify a standard of care for the other defendants, including IGF, must result in the dismissal of Count IV as against IGF.

> ### E.     Count IV of the FAC Alleging Negligence Per Se as Against IGF is Barred by the Applicable Statute of Limitations

In addition, the statute of limitations has run against IGF on Ramsbottom's negligence *per se* claim.  In general, personal injury torts, as determined by the "gravamen of the complaint," must be brought within one year of the accrual of the action.  Tenn. Code Ann. § 28-3-104(a)(1)(A); *Redwing v. Cath. Bishop for Diocese of Memphis*, 363 S.W.3d 436, 457 (Tenn. 2012).  When the plaintiff is a minor or incapacitated, the statute of limitations is tolled until the age of majority.  Tenn. Code Ann. § 28-1-106(a).  Accrual occurs when the plaintiff "has actual knowledge of a claim" or "actual knowledge of 'facts sufficient to put a reasonable person on notice that he [or she] has suffered an injury as a result of wrongful conduct,'" which is sometimes called constructive or inquiry notice.  *Redwing*, 363 S.W.3d at 459 (quoting *Carvell v. Bottoms*, 900 S.W.2d 23, 29 (Tenn. 1995)).  For example, the Tennessee Supreme Court has concluded that a victim of sexual abuse was on inquiry notice of his tort claims when he "knew he was abused, knew the identity of the abuser, and knew the abuser was an employee of the employer."  *Id.* at 464.

Here, Ramsbottom alleges that she has "suffered substantial physical and psychological injuries and emotional distress as a result of being sexually abused, exploited and trafficked." FAC ¶ 107. Such personal injuries, based on the gravamen of the claim, provide a one-year statute of limitations. *See Redwing*, 363 S.W.3d at 463 (concluding that claims arising from alleged sexual abuse of a minor were personal injury claims with a one-year statute of limitations). As a result, the statute of limitations ran on May 23, 2014, one year after she turned 18. *See id.* at 464.

## IV.    <u>CONCLUSION</u>

For all the foregoing reasons, Plaintiffs' claims against IGF should be dismissed with prejudice.

Respectfully submitted,

*/s/Brian T. Boyd*
Brian T. Boyd (#023521)
Bennett J. Wills (#034831)
Law Office of Boyd & Wills
214 Overlook Cir., Ste. 275
Brentwood, TN 37027
T: 615-861-1936
F: 615-523-2595
brian@boydwills.com
bennett@boydwills.com

21

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 28th day of June 2021, a copy of the foregoing Motion to Dismiss and Supporting Memorandum were served on the following parties via the Court's electronic case management system:

| | |
|---|---|
| Phillip Miller<br>621 Woodland St.<br>Nashville, TN 37206<br>615-356-2000<br>pmillar@seriousinjurylaw.com<br>*Counsel for Plaintiffs*<br>SERVED VIA CM/ECF | Brian Kent<br>M. Stuart Ryan<br>Alexandria MacMaster<br>1100 Ludlow St., Ste. 300<br>Philadelphia, PA 19107<br>215-399-9255<br>bkent@lbk-law.com<br>sryan@lbk-law.com<br>amacmaster@lbk-law.com<br>*Counsel for Plaintiffs*<br>SERVED VIA CM/ECF |
| Robert A. Peal<br>Mark W. Lenihan<br>Grace A. Fox<br>Sims \|Funk<br>3322 West End Ave., Ste. 200<br>Nashville, TN 37203<br>615-292-9335<br>rpeal@simsfunk.com<br>mlenihan@simsfunk.com<br>gfox@simsfunk.com<br>*Counsel for Ashton, Amorphous Music, Inc.,*<br>*Bassnectar Touring, Inc.*<br>SERVED VIA CM/ECF | Kimberly Hodde<br>40 Music Square East<br>Nashville, TN 37203<br>615-242-4200<br>*Counsel for Ashton, Amorphous Music, Inc.,*<br>*Bassnectar Touring, Inc.*<br>SERVED VIA CM/ECF |
| Russell B. Morgan<br>Jason C. Palmer<br>Rachel Sodee<br>1600 Division St., Ste. 700<br>Nashville, TN 37203<br>615-252-2311<br>morgan@bradley.com<br>*Counsel for C3 Presents, L.L.C.*<br>SERVED VIA CM/ECF | R. Scott McCullough<br>McNabb, Bragorgos, Burgess & Sorin, PLLC<br>81 Monroe Avenue, Sixth Floor<br>Memphis, Tennessee 38103-5402<br>(901) 924-0640<br>(901) 624- 0650 (fax)<br>Smccullough@mbbslaw.com<br>*Counsel for C3 presents, LLC* |

| | |
|---|---|
| Stacy M. Ashby<br>Mitchell Schuster<br>125 Park Ave., 7th Fl.<br>New York, NY 10017<br>212-655-3562<br>sma@msf-law.com<br>ms@msf-law.com<br>*Counsel for Ashton, Amorphous Music, Inc.,*<br>*Bassnectar Touring, Inc.*<br>SERVED VIA EMAIL | Davis Fordham Griffin<br>Cynthia A Sherwood<br>Sherwood Boutique Litigation, PLLC<br>201 4th Avenue North<br>Suote 1130<br>Nashville, Tennessee 37219<br>(615) 873-5670<br>(615) 900- 2312 (fax)<br>davis@sherwoodlitigation.com<br>cynthia@sherwoodlitigation.com<br>*Counsel for Gnarlos Industries, LLC. And Carlos*<br>*Donohue* |
| Ashleigh D. Karnell<br>Paige Waldrop Mills<br>Bass, Berry & Sims (Nashville Office)<br>150 Third Avenue South<br>Suite 2800<br>Nashville, Tennessee 37201<br>(615) 742- 7914<br>(615) 742- 0453<br>Ashleigh.karnell@bassberry.com<br>pmills@bassberry.com<br>*Counsel for Redlight Management, Inc.* | Jason C. Palmer<br>Bradley Arant Boult Cummings LLP (Nashville,<br>TN Office)<br>1600 Division Street, Suite 700<br>P.O. Box 340025<br>Nashville, Tennessee 37203-0025<br>(615) 252-3898<br>(615) 252-6380<br>jpalmer@bradley.com<br>*Counsel for C3 presents, LLC* |

/s/Brian T. Boyd
Brian T. Boyd