IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| RACHEL RAMSBOTTOM, et al., | ) |
| Plaintiffs, | ) CIVIL ACTION |
| v. | ) No.: 3:21-CV-00272 |
| LORIN ASHTON, et al. | ) JURY TRIAL DEMANDED |
| Defendants. | ) |

**DEFENDANT RED LIGHT MANAGEMENT, LLC'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

Defendant Red Light Management, LLC, ("Red Light"),[1] by counsel, and pursuant to Federal Rule of Civil Procedure 12(b)(6), states as follows for its Memorandum in Support of its Motion to Dismiss Plaintiffs' Amended Complaint (the "Complaint"):

## I. INTRODUCTION AND FACTUAL BACKGROUND

The Complaint alleges that Lorin Ashton ("Ashton"), a music entertainer, was the perpetrator of various crimes (a "Perpetrator") outlined in the Trafficking Victims Protection Reauthorization Act, 18 U.S.C. § 1591(a) and § 1595 (the "TVPRA"). The TVPRA creates a private right of action for victims, allowing them to seek damages from a Perpetrator and certain "participants" who knowingly provide services to a venture they knew or should have known was engaged in sex trafficking in exchange for a benefit they know is derived from the venture (the "Participants").

---

[1] The Complaint alternatively refers to "Redlight Management, Inc." and "Red Light Management, L.L.C." (Compl. ¶¶ 30, 64, and 75) To be clear, the correct entity is Red Light Management, LLC.

Red Light managed Ashton's career from 2017 through 2020. Based solely on this association, the Complaint contends Red Light was a Participant and is therefore liable to the Plaintiff-victims for damages related to Ashton's alleged crimes. Three elements must be satisfied before a person is deemed a Participant under the Act, none of which the Complaint plausibly alleges against Red Light in the Complaint:

1. The Participant knowingly and actively assisted in, supported, or facilitated the perpetrator's actions in a business venture that is sex trafficking;

2. The Participant knowingly received a benefit from its participation in the business venture based on the sex trafficking; and

3. The Participant knew or should have known the business venture was engaged in sex trafficking as defined in the Act.

As to Red Light, the Complaint does not allege two of these facts at all and as to the third, it simply alleges a misplaced legal conclusion. Because the Complaint fails to state a plausible TVPRA claim against Red Light, Count II (the only claim alleged against Red Light) must be dismissed with prejudice.

## II. STANDARD OF REVIEW

To survive Red Light's Motion to Dismiss, the Complaint must allege facts that "state a claim to relief that is plausible on its face" and, if accepted as true, are sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Id.* at 663.

Additionally, to withstand a motion to dismiss, a complaint must "provide the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Lee v. Ohio Educ. Ass'n*, 951 F.3d 386, 393 (6th Cir. 2020) (internal citations omitted). A complaint that fails to do what a complaint, at its most fundamental level, should do – articulate certain claims against certain defendants – is deficient and should be dismissed. *Roane County, Tennessee v. Jacobs Eng'g Group, Inc.*, 2020 WL 5836553, at *7 (E.D. Tenn. Sept. 30, 2020) (dismissing claim where plaintiffs "made no attempt to expound on their conclusory assertions").

### III. ARGUMENT

Red Light adopts and incorporates by reference the arguments asserted by co-Defendant C3 Presents, LLC in its Memorandum in Support of its Motion to Dismiss. (Dkt. 51.) In further support of its Motion to Dismiss, Red Light states the following.

The applicable provision of the TVPRA states:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (*or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter*) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C. § 1595(a) (emphasis added).

The Complaint alleges Plaintiffs were Ashton's victims under the TVPRA, and that Red Light somehow participated in Ashton's venture that profited from his violations of the Act (the "Illegal Venture"). But the Complaint ultimately fails to state a claim upon which relief can be granted against Red Light because:

(i) It does not plead—and cannot plead—a single affirmative act by Red Light specifically to facilitate or otherwise assist, *i.e.*, participate in, the alleged Illegal Venture and therefore, the Complaint also fails to include a single allegation that Red Light undertook such act knowingly;

3

(ii) It does not include a single allegation that Red Light benefitted, financially or by receiving anything of value, from the alleged Illegal Venture and therefore, the Complaint also fails to include a single allegation that Red Light knowingly accepted benefits arising from the alleged Illegal Venture;

(iii) It states, in impermissibly conclusory terms, that Red Light knew or should have known Ashton was committing violations under the Act. Even accepting this allegation as true, it wholly fails to state a plausible TVPRA claim against Red Light because there are no facts even remotely suggesting Red Light knew or should have known that the venture it allegedly knowingly supported and allegedly knowingly benefited from was sex trafficking.

In the only paragraph (out of the lawsuit's 235 paragraphs) that discusses Red Light individually, instead of lumped together with all of the other corporate defendants, the Complaint states:

> 30. … Red Light Management participated in a venture with [Ashton] in which it managed, promoted, recruited and profited from its' [sic] venture with [Ashton] Red Light knew, or should have known, [Ashton] was engaging in the trafficking of and unlawful conduct with minors. Red Light had a continuous business relationship with [Ashton] that enabled [Ashton] to engage in predatory behavior toward underage girls during the times that each Plaintiff was harmed.

(Compl. ¶ 30) The Complaint only mentions Red Light in two other paragraphs, but in both paragraphs the Complaint simply lists all of the corporate defendants without identifying which specific defendant did any specific act. Specifically, the Complaint alleges:

> 64. Defendants Amorphous Music, Inc., Bassnectar Touring, Inc, Red Light Management, Inc., C3 Presents LLC, and Interactive Giving Fund (hereinafter referred to as "Bassnectar Companies")[2] also facilitated [Ashton]'s illegal acts in other ways. While it was best practice for crew members to check the identification of artists' guests, this was not done by the Bassnectar crew. At least one of the employees hired by the Bassnectar Companies would even place hotel room keys in hiding places for [Ashton]'s "girls" on a regular basis. When questioned by anyone about [Ashton]'s requests, the employee would willfully ignore any concern, stating "it's none of my business," and/or "I'm just doing my job."
>
> …

---

[2] As discussed in more detail in Section D below, the Complaint inconsistently defines the term "Bassnectar Companies" but such a term cannot include Red Light because Red Light was not founded by Ashton, Ashton was not intimately involved in Red Light's day-to-day operations, and Ashton does not provide Red Light with resources—as the Complaint defines "Bassnectar Companies" in Paragraphs 67 and 69.

4

> 75. The Bassnectar Companies, Red Light Management, Inc [sic], and C3 Presents, LLC also took steps to silence other women who could expose their transgressions. The Defendants used their legal counsel to contact several women in an attempt to persuade them to remain quiet about [Ashton]'s sexual misconduct after the #MeToo movement was under way in 2016 and again in 2020 after [Ashton]'s illegal conduct was exposed.

(Compl. ¶¶ 64, 75)

These allegations are incoherent and incomplete. Assuming the Complaint is referring to a sex trafficking venture, it does not say what actions Red Light itself allegedly performed that assisted, supported, or facilitated the alleged venture. Instead, the Complaint provides a formulaic recital of the required elements with no facts to support such allegations or simply lumps all of the unrelated corporate defendants together without specifying which defendant committed which act. These threadbare allegations are unsurprising since it would be impossible for the Complaint to plead any facts establishing Red Light's involvement in purported acts that occurred while the Plaintiffs were underage ***because Red Light did not represent Ashton at any time when any of the Plaintiffs were underage***.

Even if the Court is not persuaded by this and finds that the Complaint sufficiently alleged that Red Light could have acted in support of the alleged venture that took place before Red Light represented Ashton, the Complaint still fails to state when those actions occurred, whether or how profit was received from any Illegal Venture, and whether Red Light profited from the Illegal Venture and knew the profit arose from illegal activity. Such threadbare allegations cannot survive a motion to dismiss.

Additionally, the Complaint baldly claims that Red Light "knew, or should have known, [Ashton] was engaging in the trafficking of and unlawful conduct with minors." (Compl. ¶ 30) The Complaint does not support this outrageous allegation with a single fact and the allegation does not address the third element of a TVPRA claim. The issue is not whether a Participant knew

or should have known that the Perpetrator was committing crimes under the Act, but whether the Participant knew or should have known <u>the venture</u> it is knowingly participating in and profiting from is engaged in sex trafficking. *See Geiss v. Weinstein Co. Holdings LLC*, 2019 WL 1746009 (S.D.N.Y. Apr. 18, 2019). And, as previously noted, the Complaint fails to plead Red Light possessed such knowledge here. In fact, as described further in Section C below, the Complaint belies any argument that Red Light should have known of Ashton's illegal activity. The Complaint explains with factual detail the great lengths Ashton took to hide his alleged illegal activity such that only he and Plaintiffs knew or could have known about it.

Given that there is not a single factual allegation that Red Light (i) knowingly participated in an Illegal Venture; (ii) received a benefit arising from knowingly assisting the alleged Illegal Venture; (iii) knew it received such benefit and that the benefits arose from the Illegal Venture; or (iv) that Red Light could or should have known the alleged venture was based on sex trafficking, the Complaint should be dismissed as to Red Light with prejudice.

**A. The Complaint Does Not and Cannot Allege Red Light "Participated in a Venture."**

Under the TVPRA, a "venture" is "any group of two or more individuals associated in fact," and "participation in a venture" means "knowingly assisting, supporting, or facilitating [sex trafficking]." 18 U.S.C. §§ 1591 (e)(4), (e)(6). The TVPRA condemns "sex trafficking of ***children*** or by force, fraud, or coercion[.]" 18 U.S.C. § 1591 (emphasis added). The Complaint bases its claims under the TVPRA on allegations that Ashton allegedly trafficked the Plaintiffs while they were children, which is defined as a "person [that] has not attained the age of 18 years[.]" 18 U.S.C. § 1591(a). The Complaint does not and cannot allege that Red Light "participated" in the purported venture because (1) Red Light did not represent Ashton at any point of time when the Plaintiffs were underage children and were allegedly damaged by Ashton and (2) even if Red Light had

6

represented Ashton during the relevant time period, none of the Complaint's allegations amount to "participation" as it is defined under the TVPRA.

> **1. Red Light could not have participated in the alleged venture to traffic the Plaintiffs because Red Light did not represent Ashton when Plaintiffs were underage.**

The only paragraph that addresses Red Light's purported participation without lumping all defendants together in impermissible shotgun pleadings, states in relevant part that, "Red Light *had a continuous business relationship* with [Ashton] that enabled [Ashton] to engage in predatory behavior *toward underage girls during the times that each Plaintiff was harmed*." (Compl. ¶ 30) These threadbare and formulaic allegations lacking any factual support are unsurprising because Red Light did not represent Ashton at any point in time when any of the Plaintiffs were "underage girls[.]" The youngest Plaintiff, Ms. Bowling, turned 18 on August 20, 2014. (Compl. ¶ 109) Red Light began representing Ashton approximately three years later in 2017. Therefore, Red Light could not have engaged in any acts that enabled Ashton to allegedly traffic the Plaintiffs when they were underage. As the Supreme Court has established such "threadbare recitals of a cause of action's elements, supported by mere conclusory statements" are insufficient to survive a motion to dismiss. *Ashcroft*, 556 U.S. at 663. Because the Complaint cannot allege factual support for such threadbare allegations, the claim against Red Light should be dismissed.

> **2. The Complaint's allegations as to Red Light's purported behavior do not amount to "participation" as it is defined under the TVPRA.**

Even if Red Light had represented Ashton while the Plaintiffs were underage (which it did not), the Complaint still fails to allege any facts establishing that Red Light "participated in a venture" as the TVPRA and case law define and interpret the phrase. A contractual or other business relationship (like managing an entertainer) cannot provide the basis for a TVPRA claim

7

because a lawful relationship unrelated to trafficking is not a "venture" within the meaning of the statute. *United States v. Ayfare*, 632 F. App'x 272, 286 (6th Cir. 2016). In *Ayfare*, the Sixth Circuit rejected the argument that a "venture" for purposes of the TVPRA encompasses any two or more associated people, even if the association is for legal or innocuous reasons. *Id.* Instead, a "venture" means, specifically, a "sex-trafficking venture" and exists only where "[t]wo or more people [] engage in sex trafficking together" or "associated for the purpose of furthering the sex trafficking." *Id.*; *cf. United States v. Coppin*, 1 F. App'x 283, 288 (6th Cir. 2001) (explaining that "mere association with conspirators is not enough to establish participation in a conspiracy").

Further, "participation" in a venture requires an overt act. Nonfeasance or failure to prevent a crime does not constitute "participation" under the TVPRA. *Ayfare*, 632 F. App'x at 286 ("mere negative acquiescence" is not enough). Even passive participation is insufficient to state a TVPRA claim under a beneficiary theory. *Ratha v. Phatthana Seafood Co., Ltd.*, 2017 WL 8293174 at *4 (C.D. Cal. Dec. 21, 2017) (plaintiffs failed to demonstrate defendants knowingly participated in human trafficking venture where they "presented no evidence that [defendants] took some action to operate or manage the venture."). Construing the TVPRA otherwise "would create a vehicle to ensnare conduct that the statute never contemplated." *Ayfare*, 632 F. Appx. at 286. While *Ayfare* was a criminal case, a civil TVPRA claim likewise requires active participation in the illegal activities at issue. *See Noble v. Weinstein*, 335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018) ("Because . . . liability[] cannot be established by association alone, *Plaintiff must allege specific conduct that furthered the sex trafficking venture . . . some participation in the sex trafficking act itself must be shown*.") (emphasis added); *Geiss*, 2019 WL 1746009 at *7 ("The participation giving rise to the benefit must be participation *in a sex trafficking venture*, not participation in other activities . . .") (emphasis in original).

8

Here, the Complaint utterly fails to allege Red Light "participated in a venture" at all, much less "participated in a venture which that person knew or should have known has engaged in [sex trafficking]." The Complaint only mentions Red Light three times. None of the threadbare allegations in those three paragraphs is sufficient to survive a motion to dismiss. First, Paragraph 30 simply offers the insufficient legal conclusion that Red Light "participated in a venture with [Ashton] in which it managed, promoted, recruited and profited from its' [sic] venture with [Ashton]." (Compl. ¶ 30) The allegation is so incomplete as to be meaningless. First, it's not clear if this is referring to Ashton's career or to the Illegal Venture contemplated by the Act. As established above, Red Light's business relationship representing Ashton alone cannot be a "venture" as contemplated under the TVPRA and, even if it could, Red Light did not have a business relationship with Ashton during the time of the Complaint's allegations. Furthermore, Paragraph 30 does not identify the time or place of Red Light's alleged involvement in even the most general terms. This formulaic recitation of the elements is insufficient.

Second, Paragraph 64 simply states that Red Light, along with the other corporate defendants, "facilitated [Ashton]'s illegal acts[.]" However, the only specified act pleaded in Paragraph 64 was allegedly committed by "one of the employees hired by the Bassnectar Companies[.]" While the Complaint inconsistently defines the term "Bassnectar Companies," such a term cannot include Red Light because Red Light was not founded by Ashton, Ashton was not intimately involved in Red Light's day-to-day operations, and Ashton does not provide Red Light with resources—as the Complaint defines "Bassnectar Companies" in Paragraphs 67 and 69. Therefore, none of the alleged acts specified in Paragraph 64 can be attributed to Red Light and the threadbare allegation that Red Light somehow facilitated Ashton's illegal acts cannot survive a motion to dismiss.

Finally, Paragraph 75 is similarly vague and formulaic in that it lumps all of the corporate defendants together without identifying which defendant allegedly called some identified "other women" (not Plaintiffs) at some unidentified time. As discussed in detail in Section D, such "shotgun" pleadings that impermissibly group Defendants and make collective allegations violate the Federal Rules of Civil Procedure and are grounds for dismissal. *See Lee*, 951 F.3d at 392-93; *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015). However, even if Paragraph 75 specified who from Red Light made such calls, when such calls were made, and who the "other women" were, this allegation does not establish how such calls facilitated Ashton's allegedly illegal acts that injured the Plaintiffs. The Complaint's utter failure to identify a single specific act that Red Light purportedly engaged in that qualifies as "participation" under the TVPRA to the detriment of the Plaintiffs during the time they were underage is fatal to the claim against Red Light and, therefore, the claim should be dismissed.

**B. The Complaint Fails to Allege Red Light "Knowingly Benefitted" From a Sex Trafficking Venture.**

While failure to allege a single instance of a financial or other benefit to Red Light from the alleged Illegal Venture is grounds for dismissal on its own, case law applying the TVPRA is clear that a plaintiff must allege more than a financial benefit by a defendant. To state a claim under the TVPRA, a plaintiff must additionally allege the defendant "knowingly benefitted" from the specific alleged venture. Incidental receipt from a separate activity with a sex trafficker is not enough. To allege that a defendant "knowingly benefitted" from alleged trafficking, a plaintiff must establish "a causal relationship" between a defendant's "*affirmative conduct furthering the sex-trafficking venture* and receipt of a benefit, with actual or . . . constructive knowledge of that causal relationship." *Geiss*, F. Supp. 3d at 169 (emphasis added). In *Geiss*, plaintiffs sued The Weinstein Company Holdings, LLC ("TWC") under the TVPRA as the employer of the accused

10

sex trafficker, Harvey Weinstein ("Weinstein"). *Id.* While TWC "undoubtedly benefitted" from Weinstein's continued employment with TWC because Weinstein's "movies and influence generated revenue, and some of that revenue flowed to the TWC's officers and directors," that flow of revenue was incidental, rather than knowing, and could not provide a basis for liability under the TVPRA. *Id.* at 169-70. Since plaintiffs failed to allege any facts to suggest Weinstein "provided any of those benefits to TWC *because of* TWC's facilitation of [Weinstein's] sexual misconduct," rather than by virtue of his employment with TWC alone, the court granted TWC's motion to dismiss. *Id.* (emphasis added).

Here, the Complaint fails even to use the words "knowingly benefitted" regarding Red Light. The Complaint claims only that Red Light "participated in a venture" and "knew or should have known" of Ashton's alleged illegal activity. (Compl. ¶ 30.) There is no allegation of a benefit to Red Light and therefore no allegation that Red Light knew of this benefit and that it arose from its assistance to the specific alleged venture.

### C. The Complaint Fails to Allege Facts that Red Light "Knew or Should Have Known" The Alleged Venture was Sex Trafficking.

While the Complaint states that Red Light "knew or should have known" of Ashton's alleged actions, it fails to say a single other word to support or explain that statement. Further, the statement does not address the third prong, which requires not just that a Participant knew or should have known that illegal acts were occurring, but that the venture it was knowingly supporting and knowingly benefiting from was sex trafficking. These allegations cannot support any plausible inference that the third prong has been met as to Red Light. Courts have explained that allegations must be factually specific to support a TVPRA claim. *See Florida Abolitionist v. Backpage.com, LLC*, 2018 WL 1587477, at *5 (M.D. Fla. Mar. 31, 2018) (dismissing TVPRA claim where complaint did "not include a plausible allegation that Defendants saw the ad concerning Plaintiff

11

Doe and knew it related to illegal sex trafficking); *H.G. v. Inter'Cont'l Hotels Corp.*, 489 F. Supp. 3d 697, 707 (E.D. Mich. 2020) (holding that "a plaintiff must allege . . . that the defendant knew or should have known of sex trafficking by the *particular* sex-trafficking venture in which the defendant is alleged to have participated" and that "knowledge or willful blindness of a general sex trafficking problem" is insufficient).

The Complaint does not allege even generalized knowledge on Red Light's part. Simply put, the Complaint alleges no facts to suggest that Red Light knew or should have known there was a sex trafficking venture that it was part of or benefitting from. Moreover, the Complaint's own allegations establish that Ashton concealed his alleged crimes, rendering it impossible for Red Light or any defendant other than Ashton to know or have reason to know of the underlying crimes, much less the alleged venture.

According to the Complaint, Ashton "was able to conceal" his contact with Plaintiffs; "mandate[d] that their contact with him be hidden"; interacted with them through a Twitter account over which he "maintained control" and through other "secretive communication apps," and did not allow them to be seen with him in public or to leave or answer the phone in the hotel rooms he shared with them. *See, e.g.*, Compl. ¶¶ 10, 12, 44, 46, 53, 90, 124, 148, 150, 158, 163. Although the Complaint alleges Red Light should have known of the alleged secret, illegal activity, it never specifically alleges Red Light was present, near, or otherwise how it should have known of that activity. According to the Complaint's allegations, Ashton allegedly took extreme measures to keep everyone—including his managers—in the dark as to the alleged actions taken to harm the Plaintiffs. Therefore, the Complaint's own allegations establish that Red Light had no reasonable way of knowing of Ashton's purported illegal activities and the claim against Red Light should be dismissed.

### D. The Complaint is Impermissibly Vague.

The Complaint's allegations against Red Light are not only lacking as a matter of law but are also impermissibly garbled because of the Complaint's disorganized pleading. The Complaint alleges legal conclusions, but not the facts necessary to reach or support those conclusions. (Compl. ¶¶ 17-18, 36, 64-65, 75) This type of pleading merits dismissal. *See Bush v. Godwin*, 2018 WL 576850, at *12 (E.D. Tenn. Jan. 26, 2018), *aff'd sub nom. Bush v. Chancery Court of Knox County, Tennessee*, 2018 WL 7504832 (6th Cir. Oct. 25, 2018) (dismissing a complaint that failed to provide "sufficient notice to defendants of the precise claims against them *and the factual allegations that prove the elements of those claims*." (emphasis added)).

As an example of this disorganized pleading, the Complaint inconsistently defines "the Bassnectar Companies." It initially states this term refers to the entities founded and owned by Ashton. (Compl. ¶ 29) Then, the Complaint adds Red Light and co-defendant C3 Presents, LLC ("C3") to that same definition. (*Id.* ¶ 64.) As C3 likewise points out in its Motion to Dismiss (Dkt. 51 at n.2), the Complaint's more expansive definition of "Bassnectar Companies" to include Red Light and C3 must be a drafting error given the Complaint later contradicts the newly expanded definition. For example, three paragraphs after alleging the "Bassnectar Companies" include Red Light and C3, the Complaint states "[t]he Bassnectar Companies have knowledge of [Ashton's] unlawful commercial sex acts through him, as *he is the founder of the Bassnectar Companies* and intimately involved in their day-to-day activities," (Compl. ¶ 67 (emphasis added)), and that "[Ashton] always provided Bassnectar Companies' resources . . . ." (*Id.* ¶ 69.) Of course, Ashton is not Red Light's founder nor does he provide it "resources." The Complaint also refers to Red Light, appropriately, as distinct from the Bassnectar Companies, (*Id.* ¶ 75), thus admitting that the

13

term "Bassnectar Companies" does not include Red Light. The Complaint's internally inconsistent allegations are a far cry from stating a plausible TVPRA claim against Red Light.

Even if the Court does not agree that the definition of "Bassnectar Companies" contains numerous inconsistencies, the allegations in paragraphs 64-65, 68, and 70-72[3] against Bassnectar Companies are impermissibly vague and could never satisfy the first and second elements of a TVPRA claim. These allegations are so indeterminate that they do not inform the defendants of what is alleged against them. And despite the Complaint's exceedingly broad "scattershot" approach, it never states the third element of the claim as to the Bassnectar Companies, which requires that the Complaint allege that the Participant knew or should have known that the venture it was knowingly involved in and benefiting from was sex trafficking. The Complaint fails totally to make this accusation or to allege even the slightest factual support for it. These insufficiencies are fatal to any claim against Red Light.

As the Sixth Circuit recognized, "shotgun" pleadings violate Rule 8(a)(2) of the Federal Rules of Civil Procedure and therefore are subject to dismissal under Rule 12(b)(6). *See Lee*, 951 F.3d at 392-93 (citing *Weiland*, 792 F.3d at 1313, 1323). Shotgun pleadings impermissibly group, as the Complaint does here, multiple defendants together and make allegations against them collectively "without specifying which of the defendants are responsible for which acts or omissions." *Weiland*, 792 F.3d at 1323. "Shotgun" pleadings are "flatly forbidden" by Rule 8(a)(2) because they are "calculated to confuse the 'enemy,' and the court, so that theories for relief not provided by law . . . can be masked." *Id.* at 1320. The Complaint makes practically no allegations specific to Red Light relating to Plaintiffs' alleged trafficking beyond the general allegation that

---

[3] Paragraphs 66 and 69 of the Complaint only describe Ashton's actions. Paragraph 67 internally defines "Bassnectar Companies" as the entities founded by Ashton. Thus, at a minimum, in this paragraph the term is a typographical error.

14

Plaintiffs were trafficked by Ashton and Red Light somehow should have known about it. However, no facts buttress this conclusion. Instead, the Complaint makes allegations generally against several unrelated Defendant entities as a group, the "Defendants," or against the "Bassnectar Companies"—entities having nothing to do with Red Light. (Compl. ¶¶ 64-65, 67-68, 70-72, 75) If a good-faith basis to allege facts that would support a TVPRA claim against Red Light exists, the Complaint is required to state those facts. The Complaint does not and cannot do so. It must be dismissed.

## V. CONCLUSION

For these reasons, Red Light respectfully requests that the Court dismiss the Complaint's claim against Red Light pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

Respectfully submitted,

**RED LIGHT MANAGEMENT, LLC**

*/s/ Paige W. Mills*
Paige W. Mills
pmills@bassberry.com
Ashleigh D. Karnell
ashleigh.karnell@bassberry.com
BASS, BERRY & SIMS PLC
150 Third Avenue South, Suite 2800
Nashville, TN 37201
T: 615-742-7770
F: 615-742-0429

OF COUNSEL:

Philip Goodpasture
pgoodpasture@williamsmullen.com
Brendan D. O'Toole
botoole@williamsmullen.com

Meredith M. Haynes
mhaynes@williamsmullen.com
Williams Mullen
200 South 10th Street
Richmond, VA 23219
T: 804-420-6000
F: 804-420-6507
*Counsel for Red Light Management, LLC*

**CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that a true and correct copy of the foregoing document is being served through the Court's Electronic Filing System, or via U.S. Mail, first class postage prepaid, to all other parties on July 12, 2021:

Phillip Miller
631 Woodland Street
Nashville, TN 37206
pmiller@seriousinjurylaw.com

Brian Kent
M. Stewart Ryan
Alexandria MacMaster
LAFFEY, BUCCI & KENT, LLP
1100 Ludlow Street, Suite 300
Philadelphia, PA 19107
bkent@lbk-law.com
sryan@lbk-law.com
amacmaster@lbk-law.com

*Counsel for Plaintiffs*

Robert A. Peal
Mark W. Lenihan
Grace A. Fox
SIMS/FUNK, PLC
3322 West End Ave., Suite 200
Nashville, TN 37203
rpeal@simsfunk.com
mlenihan@simsfunk.com
gfox@simsfunk.com

Kimberly S. Hodde
HODDE & ASSOCIATES
40 Music Square East
Nashville, TN 37203

Stacey M. Ashby
Mitchell Schuster
MEISTER SEELIG & FEIN LLP
125 Park Avenue, 7th Floor
New York, NY 10017
sma@msf-law.com
ms@msf-law.com

*Counsel for Lorin Ashton,
Amorphous Music, Inc., and
Bassnectar Touring, Inc.*

| | |
|---|---|
| Russell B. Morgan<br>Jason C. Palmer<br>Rachel L. Sodée<br>BRADLEY ARANT BOULT CUMMINGS LLP<br>1600 Division Street, Suite 700<br>P.O. Box 34002<br>Nashville, Tennessee 37203<br>morgan@bradley.com | Brian T. Boyd<br>Bennett J. Wills<br>LAW OFFICE OF BOYD & WILLS<br>214 Overlook Cir., Ste. 275<br>Brentwood, TN 37027<br><br>*Counsel for Interactive Giving Fund* |
| R. Scott McCullough<br>MCNABB, BRAGORGOS, BURGESS & SORIN, PLLC<br>81 Monroe Avenue, Sixth Floor<br>Memphis, Tennessee 38103<br>smccullough@mbbslaw.com | Davis Fordham Griffin<br>Cynthia A. Sherwood<br>Sherwood Boutique Litigation, PLLC<br>201 4th Avenue North<br>Suite 1130<br>Nashville, Tennessee 37219<br>davis@sherwoodlitigation.com<br>cynthia@sherwoodlitigation.com |
| Jason C. Palmer<br>Bradley Arant Boult Cummings LLP<br>1600 Division Street, Suite 700<br>Nashville, Tennessee 37203<br>jpalmer@bradley.com<br><br>*Counsel for C3 Presents, LLC* | *Counsel for Gnarlos Industries, LLC and Carlos Donohue* |

                                                                            */s/ Paige W. Mills*
                                                                            Paige W. Mills