# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| RACHEL RAMSBOTTOM, | ) | |
| ALEXIS BOWLING, | ) | |
| JENNA HOUSTON, JANE DOE #1 | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | **CIVIL ACTION NO. 3:21-cv-00272** |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| LORIN ASHTON, AMORPHOUS | ) | |
| MUSIC, INC., BASSNECTAR | ) | **JUDGE ALETA A. TRAUGER** |
| TOURING, INC., REDLIGHT | ) | |
| MANAGEMENT, INC., C3 PRESENTS, | ) | |
| L.L.C, INTERACTIVE GIVING FUND, | ) | |
| GNARLOS INDUSTRIES, LLC, | ) | |
| CARLOS DONOHUE, ABC | ) | |
| CORPORATIONS, ONE THROUGH | ) | |
| TEN (said Names Being Fictitious), | ) | |
| JOHN DOES, ONE THROUGH TEN | ) | |
| (said Names Being Fictitious), | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

---

**AMORPHOUS MUSIC, INC.'S AND BASSNECTAR TOURING, INC.'S
MEMORANDUM OF LAW IN SUPPORT OF THEIR RULE 12(b)(2), 12(b)(3) AND
12(b)(6) MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

---

Defendants Amorphous Music, Inc. ("AMI") and Bassnectar Touring, Inc. ("BTI") respectfully move this Court to dismiss Counts II and IV of the First Amended Complaint (the "FAC") filed against them by Plaintiffs Rachel Ramsbottom ("Ramsbottom"), Alexis Bowling ("Bowling"), Jenna Houston ("Houston") and Jane Doe #1 ("Doe,[1]") (collectively, the "Plaintiffs") pursuant to: (i) Fed. R. Civ. P. 12(b)(2), because this Court lacks personal jurisdiction over AMI or BTI; (ii) Fed. R. Civ. P. 12(b)(3), because venue in this Court is improper; and (iii) Fed. R. Civ. P. 12(b)(6), because Plaintiffs have failed to state a claim upon which relief can be granted.

## INTRODUCTION[2]

Defendant Lorin Ashton ("Ashton") is a musical artist and one of the leading performers in the Electronic Dance Music ("EDM") genre. (FAC ¶ 1-2.) Ashton is more widely known by his stage name – "Bassnectar." (*Id.*) Ashton has a large following throughout the United States, where he performs shows and holds music festivals. (*Id.* at ¶¶ 2-3.)

AMI is a record label founded by Ashton. AMI is a California corporation with, according to the FAC, its principal office located in New York City. (FAC ¶ 26.) BTI is a concert touring company founded by Ashton. BTI is a Delaware corporation with, according to the FAC, its principal office located in New York City. (FAC ¶ 27.) The FAC does not make any allegations of contacts between either AMI or BTI and Tennessee. (*See generally*, FAC.)

The FAC alleges that Ashton, through his popularity and large following among young women, solicited and victimized underage girls by entering into relationships and engaging in sexual relations with them. (FAC ¶¶ 10-13.) Specifically, the FAC alleges that Ashton engaged in

---

[1] On June 28, 2021, the Court ordered Jane Doe #1 to file a notice regarding her true name by July 12, 2021. (Dkt. 59.) On July 13, 2021, Doe filed a Notice of Voluntary Dismissal of Claims Related to Jane Doe #1 Only Pursuant to F.R.C.P. 41(a)(1)(A)(i). (Dkt. 65.)

[2] As Rule 12(b)(6) requires, the FAC's plausibly pleaded allegations are accepted as true for the purposes of this motion only. If any of the Plaintiffs' claims proceed, AMI and BTI will show that the FAC's substantive allegations are false.

sexual relations with each of the Plaintiffs while they were minors and that Ashton's actions constitute illegal sex trafficking in violation of the Trafficking Victims Protection Reauthorization Act ("TVPA"), 18 U.S.C. §§1591, 1595. (*See generally* FAC ¶¶ 76-186.)

The FAC contains two claims directed against AMI and BTI. Count II of the FAC alleges that AMI and BTI (along with all of the other defendants) benefitted from a sex trafficking venture in violation of Sections 1591 and 1595 of the TVPA. (*See* FAC ¶¶ 198-213.) Count IV of the FAC alleges that AMI and BTI, along with the other defendants, are liable under Tennessee law via a negligence *per se* theory. (*See* FAC ¶¶ 220-235.) The FAC generally alleges that AMI and BTI "had a continuous business relationship with [Ashton] that enabled [Ashton] to engage in predatory behavior toward underage girls during the times that each Plaintiff was harmed." (FAC ¶¶ 26-27, 65.) Notably, the FAC does not make any allegations of direct contact or interaction between either AMI or BTI, on the one hand, and any of the Plaintiffs, on the other hand. Instead, the FAC groups AMI and BTI with co-defendants Red Light Management, Inc., C3 Presents LLC, and Interactive Giving Fund, defining this group collectively as the "Bassnectar Companies." (FAC ¶ 64.) The FAC then alleges in conclusory fashion, and without any supporting factual allegations, that the Bassnectar Companies violated the TVPA. (*See* FAC ¶¶ 65-72.) The FAC does not allege that either AMI or BTI knowingly benefited from and/or participated in an alleged commercial sex trafficking venture. (*Id.*)

The FAC against AMI and BTI should be dismissed because this Court lacks personal jurisdiction over AMI and BTI. And what is more, Plaintiffs have not established that this Court is the proper venue for the action. But even if those insurmountable jurisdictional defects were nonexistent, Count II should be dismissed because its conclusory allegations fail to state a TVPA claim against AMI and BTI. Count IV also fails, because there has been no predicate charge or

conviction and, in any event, such claim is barred by the applicable statute of limitations. (*See* FAC ¶¶ 220 -235.)

**ARGUMENT**

## I. THE COURT LACKS PERSONAL JURISDICTION OVER AMI and BTI.

Personal jurisdiction is "an essential element of the jurisdiction of a court, without which the court is powerless to proceed to an adjudication." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583, 584 (1999) (citing *Employers Reinsurance Corp. v. Bryant*, 299 U.S. 374, 382 (1937)). When a defendant challenges personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), the plaintiff bears the burden of establishing jurisdiction. *ACH Food Companies, Inc. v. Wiscon Corp.*, No. 04–2589 Ml/V, 2005 WL 2114056, at *3 (W.D. Tenn. 2005). "[I]n the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleading but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). A district court, in its discretion, "may decide the motion upon the affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions." *Id.*

In order to determine whether personal jurisdiction exists over a non-resident defendant, the Court must apply the law of the state in which it sits, subject to due process limitations. *See Welsh v. Gibbs*, 631 F.2d 436, 439 (6th Cir. 1980). Tennessee's long-arm statute is coextensive with the limits of Federal due process. *See* Tenn. Code Ann. § 20-2-214(6); *Gomberg v. Shosid*, No. 1:05-CV-356, 2006 WL 1881229, at *3 (E.D. Tenn. July 6, 2006) (citations omitted). Because Tennessee's long–arm statute reaches to the federal constitutional limits, "the two inquiries merge, and the Court need only determine whether the exercise of personal jurisdiction violates constitutional due process." *Gomberg*, 2006 WL 1881229, at *3 (citations omitted). The Supreme Court has held that an exercise of personal jurisdiction over a non-resident defendant satisfies

constitutional due process if the defendant has "certain minimum contacts with [the state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotations omitted). Under the "minimum contacts" test there are two types of personal jurisdiction: (1) "general" or "all-purpose" jurisdiction, and (2) "specific" or "case-linked" jurisdiction. *First Cmty. Bank, N.A. v. First Tenn. Bank*, 489 S.W.3d 369, 384–85 (Tenn. 2015) (citing *Int'l Shoe Co.*, 326 U.S. at 317–18).

Here, the Plaintiffs First Amended Complaint against AMI and BTI should be dismissed because Plaintiff have not demonstrated and cannot demonstrate that AMI or BTI had minimum contacts with Tennessee sufficient to establish either general or specific jurisdiction.

## A.  The Court Lacks General Jurisdiction over AMI and BTI.

Courts determine general jurisdiction by looking to whether the defendant's "affiliations with the State in which suit is brought are so constant and pervasive 'as to render [it] essentially at home in the forum State.'" *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). In other words, the defendant's contacts with the forum state must be "of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state." *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005) (internal quotation marks and citation omitted).

Plaintiffs allege that (1) AMI is a California corporation with its principal place of business in New York, and (2) BTI is a Delaware corporation with its principal place of business in New York. (FAC ¶¶ 26-27.) A corporation's citizenship is determined by the place of incorporation and principal place of business. *See Branstetter v. Holland America Line N.V.*, 430 F. Supp.3d 364, 365 (W.D. Tenn., Western Div. 2019) (stating that "a corporation's principal place of business and

place of incorporation are 'paradigm . . . bases for general jurisdiction'") (quoting *Daimler*, 571 U.S. at 137, 139). Only in the "exceptional case" will a court exercise general jurisdiction over a corporation in a forum other than its place of incorporation or principal place of business. *Id*. There are no such exceptional circumstances here, nor do Plaintiffs allege such circumstances. Therefore, the Court lacks general jurisdiction over AMI and BTI. (*See* Schuster Decl.,[3] Exs. A & C.)

### B. The Court Lacks Specific Jurisdiction Over AMI and BTI.

What is more, this Court also does not have specific personal jurisdiction over AMI or BTI in this case, because, among other reasons, Plaintiffs' causes of action do not arise from any alleged actions of AMI or BTI's in Tennessee.

The Supreme Court has noted that specific jurisdiction is the preferred method to exercise personal jurisdiction in federal courts. "Since *International Shoe*, 'specific jurisdiction has become the centerpiece of modern jurisdiction theory, while general jurisdiction [has played] a reduced role.'" *Daimler*, 571 U.S. at 128 (*quoting Goodyear*, 564 U.S. at 924-925).[4]

Specific jurisdiction requires suit-related conduct. "In other words, there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum state.'" *Bristol-Meyers Squibb Co.*, 137 S. Ct. at 1781 (citing *Goodyear*, 564 U.S. at 919). There is no specific jurisdiction where the defendant's contacts with the state are unrelated to the claims in the lawsuit. *Bristol-Meyers Squibb Co.*, 137 S. Ct. at 1781. "[T]he plaintiff cannot be the only link between the defendant and the forum." *Walden v.*

---

[3] References to the accompanying declaration of Mitchell Schuster are referred to as "Schuster Decl."

[4] "'[A] corporation's 'continuous activity of some sorts within a state is not enough to support the demand that the corporation be amenable to suits unrelated to that activity,'" and where a corporation is not "at home," neither the corporation nor its subsidiaries can be "required to submit to the general jurisdiction of that State's courts." *Daimler*, 571 U.S. at 132 (*quoting International Shoe Co. v. State of Wash.*, 326 U.S. 310, 318 (1945)).

*Fiore*, 571 U.S. 277, 285 (2014).

The Sixth Circuit applies a three-part test to determine whether a nonresident defendant is subject to the court's specific personal jurisdiction:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum to make the exercise of jurisdiction over the defendant reasonable.

*CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1263 (6th Cir. 1996) (quotations omitted). The failure to meet any one of the above means that a court may not invoke personal jurisdiction. *Conti v. Pneumatic Products Corp.*, 977 F.2d 978, 983 (6th Cir. 1992). Where, as here, the only tie between AMI or BTI and Tennessee stem from the Plaintiff's connection to this forum, and where the Plaintiffs have failed to plead any facts whatsoever that specific jurisdiction over AMI and BTI is proper, the FAC against them should be dismissed.

### 1. AMI and BTI did not take any overt actions to purposefully avail themselves of the privilege of acting in Tennessee.

The first prong, purposeful availment, examines "whether the defendant has engaged in some overt actions connecting the defendant with the forum state." *Fortis Corporate Ins. v. Viken Ship Mgmt.*, 450 F.3d 214, 218 (6th Cir. 2006) (citations and quotation marks omitted). The focus of this inquiry turns on whether the defendant's contacts with the forum state "proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State," *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985), and whether the defendant's conduct and connection with the forum are such that he "'should reasonably anticipate being haled into court there.'" *Id.* at 474 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). This requirement ensures that a defendant will not be hauled into a jurisdiction solely as a result of "fortuitous" or "attenuated" contacts. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462,

472, 480 (1985).

Plaintiffs have failed to plead that either AMI or BTI has "purposefully availed itself" of the privilege of conducting activities in Tennessee. Plaintiffs have not alleged any suit-related conduct by AMI or BTI in Tennessee or directed to Tennessee. While Plaintiffs allege that defendant Ashton met Ramsbottom while playing a show in Nashville (FAC ¶ 79) and thereafter engaged in a relationship with Ramsbottom in Nashville and in Memphis (FAC ¶¶ 79-94), none of these allegations connect AMI or BTI to Tennessee.

In fact, the only alleged connection between this lawsuit and Tennessee is Ramsbottom's residence, which is not enough. None of the other Plaintiffs are alleged to reside in or have any other connection to Tennessee. Both AMI's and BTI's state of incorporation, principal place of business, and operations establish there is no specific (or general) jurisdiction in Tennessee. (Schuster Decl., Exs. A–D.) The FAC alleges that AMI is a California corporation with headquarters in New York and BTI is a Delaware corporation with headquarters in New York. (*Id*.; *see also* FAC ¶¶ 26-27.) The FAC contains no specific allegations connecting either AMI or BTI to Tennessee.

Furthermore, the FAC is completely devoid of any allegation that either AMI or BTI had anything to do with the Nashville concert referenced in paragraph 79 of the FAC or with any of the other contacts alleged to have taken place between Plaintiff Ramsbottom and defendant Ashton in Tennessee. Each such contact and interaction were alleged to have been between Ramsbottom and Ashton – there is no claim whatsoever that either AMI or BTI had any interaction with Ramsbottom in Tennessee (or anywhere else). (*See* FAC ¶¶'s 76-107.)

> **2.** *There is no nexus, much less a causal one, between the AMI and BTI's nonexistent contacts with Tennessee and Plaintiffs' claims against them.*

The second prong of the test requires Plaintiffs to "demonstrate a causal nexus between the

defendant's contacts with the forum state and the plaintiff's alleged cause of action." *Beydoun v. Wataniya Restaurants Holding, Q.S.C.*, 768 F.3d 499, 506–07 (6th Cir. 2014) (recognizing "the cause of action must . . . have a substantial connection with the defendant's in-state activities"). There must be a sufficient link between the non-resident defendant's purposeful availment and the underlying lawsuit. *Walden*, 571 U.S. at 284. When that causal link does not exist, "specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1781 (citations omitted). The Sixth Circuit has also emphasized that this causation prong requires more than but-for causation. *Beydoun*, 768 F.3d at 508 (internal citations and quotations omitted).

Here, Plaintiffs fail to allege that their claims against AMI or BTI arise out of or are in any way connected to AMI's or BTI's activities in Tennessee. In fact, Plaintiffs do not allege **any** plausible suit-related conduct by AMI or BTI connecting them to Tennessee. Other than alleging that defendant Ashton is the "founder, chairman, figurehead, chief executive and icon" of AMI and BTI (FAC ¶¶ 26-27), the FAC makes no other allegations that would tie AMI or BTI to the claims Plaintiffs make against Ashton. The mere fact that an employee – even a principal – of a corporation engages in conduct in a forum does not give a plaintiff specific jurisdiction over the corporation if there is no allegation that the conduct was committed in a corporate capacity. *See, e.g., American Copper & Brass, Inc. v. Mueller Europe, Ltd.*, 452 F. Supp.2d 821, 828 (W.D. Tenn. 2006) ("Corporate ownership alone is insufficient for the exercise of personal jurisdiction.") (citations and quotations omitted).

### 3. *Exercising personal jurisdiction over AMI and BTI would be unreasonable.*

Courts consider the following four factors when determining whether exercise of jurisdiction over the defendant is reasonable: "(1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in

securing the most efficient resolution of the controversy." *Intera Corp.*, 428 F.3d at 618 (citing *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1268 (6th Cir. 1996)).

First, the burden on AMI and BTI to travel to and defend this action in Tennessee is significant, given that their business operations are based hundreds of miles away.

Second, Tennessee does not have a strong interest in resolving the dispute between Plaintiffs and AMI and BTI, particularly regarding Bowling and Houston. *See*, *Sampson-El v. Georgia*, No. 1:12-CV-285, 2013 WL 12250015, at *5 (E.D. Tenn. May 3, 2013) (recognizing that an out-of-state federal court would just as capably protect a Tennessee citizen's rights).

Third, and similarly, although Plaintiffs' interest in obtaining relief (to the extent they are entitled to any relief) is significant, "there is again no reason to suppose such relief could not be had in a federal court in [New York or California]." *See id*.

Finally, New York or California have at least an equal interest as Tennessee in securing the most efficient resolution of the controversy. *See, e.g.*, *Intera Corp.*, 428 F.3d at 619.

While AMI and BTI are convinced that they can demonstrate that Plaintiffs' threadbare claims lack merit, they should not be forced to do so in Tennessee. For all these reasons, the FAC should be dismissed as against AMI and BTI for lack of personal jurisdiction.

## II.    PLAINTIFFS FAIL TO ESTABLISH THAT VENUE IS PROPER IN THIS COURT.

Plaintiffs FAC also fails to establish that venue in this Court is proper. Whether venue is proper is generally governed by 28 U.S.C. §1391. *Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 56-57 (2013). When venue is challenged, the court must determine whether the case falls within one of the three categories set forth in Section 1391(b). *Gone to the Beach, LLC v. Choicepoint Services, Inc.*, 434 F. Supp.2d 534, 538 (W.D. Tenn. 2006). Thus, venue is proper in a district (i) where any defendant resides, but only if all defendants reside

in the forum State; (ii) "in which a substantial part of the events or omissions giving rise to the claim occurred"; or (iii) where any defendant is subject to the Court's personal jurisdiction, but only if there is no other district in which the action may be brought. 28 U.S.C. § 1391(b). "On a Rule 12(b)(3) motion to dismiss, the plaintiff bears the burden of proving that venue is proper. The Court may examine facts outside the complaint but must draw all reasonable inferences and resolve factual conflicts in favor of the plaintiff." *Moore v. Indus. Maintenance Serv. of Tenn., Inc.*, No. 11-2938-STA-tmp, 2012 WL 1951896, at *2 (W.D. Tenn. May 30, 2012) (granting motion).

Here, Plaintiffs rely solely on the second prong of § 1391(b) to establish venue, *i.e.*, that "a substantial part of the events or omissions giving rise to the claims asserted in this action occurred in" this district. (FAC ¶ 41.) However, the FAC contains no specific factual allegations connecting either AMI or BTI to this District. While the allegations contained in paragraphs 76-107 of the FAC attempt to detail defendant Ashton's interactions with Ramsbottom, nowhere in those allegations - or anywhere else in the FAC – is it alleged that Ashton's purported actions had anything to do with his relationship with AMI and/or BTI or that his alleged interactions with Ramsbottom or Tennessee had anything to do with AMI and/or BTI. (*Id*.) Further, the FAC does not allege that any of the "events or omissions giving rise to the claims" of the other three plaintiffs occurred in Tennessee. The failures to meet the "substantial part" test of § 1391(b) makes venue improper and thus, warrants dismissal.

## III.    THE FAC FAILS TO STATE A CLAIM AGAINST DEFENDANTS AMI OR BTI UNDER RULE 12(b)(6).

When reviewing a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citation omitted). However, in order

to survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the factual allegations do "not nudge [the pleaded] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* The factual allegations must be more than speculative − the plaintiff has an obligation to provide more than labels and conclusions, and a formulaic recitation of the elements of a cause of action is not enough. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are *no more than conclusions*, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they *must be supported by factual allegations.*" *Id*. at 679 (emphasis added). As this Court has explained, "[t]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Patel v. Hughes*, 2014 WL 4655285, at *1 (M.D. Tenn. Sept. 16, 2014) (*quoting Iqbal*, 556 U.S. at 678 and *Twombly*, 550 U.S. at 555)). The plaintiff must show a basis for relief, not merely assert a claim for it. *Id.*

A. **Count II of the FAC Alleging that Defendants AMI and/or BTI Benefitted From a Sex Trafficking Venture in Violation of 18 U.S.C. §§ 1591 and 1595 Fails to State a Claim.**

Chapter 18 of the United States Code makes it a criminal offense to engage in or benefit from a sex trafficking venture. Specifically, 18 U.S.C. § 1591(a) states:

(a) Whoever knowingly –

(1) in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States*,* recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or

(2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),

knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

18 U.S.C. § 1591(a). Thus, the first prong of § 1591(a) imposes liability on the parties that recruit, entice, harbor, transport, provide, obtain, advertise, maintain, patronize or solicit a person to engage in a commercial sex act, while the second prong applies to those who benefit from participation in a sex trafficking venture. *Id*. Pursuant to 18 U.S.C. § 1595, a victim of a violation of § 1591 may bring a civil action against someone who is not the direct perpetrator under § 1591 but is instead a beneficiary from a violation under § 1591. Specifically, 18 U.S.C. § 1595(a) provides in relevant part that an action may be brought against:

… whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter….

18 U.S.C. § 1595(a).

Thus, unlike a direct claim against a perpetrator of sex trafficking, Section 1595 permits a victim to pursue recovery against a person or entity who participates in and benefits from the sex trafficking venture. Here, through Count II of their FAC, Plaintiffs are asserting claims against AMI and BTI based on the allegations that these entities benefitted from their participation in a sex trafficking venture. (*See* FAC ¶¶ 198-213.)

Thus, to state a claim under a section 1595(a) beneficiary theory, a plaintiff must allege facts beyond mere conclusions allowing it to be plausibly inferred that the defendants (1) "knowingly benefit[ted], financially or by receiving anything of value"; (2) from "participation in a venture"; (3) it "knew or should have known has engaged in" sex trafficking under Section 1591. *H.G. v. Inter-Continental Hotels Corp.*, 489 F. Supp.3d 697, 704 (E.D. Mich. 2020); *M.A. v.*

*Wyndham Hotels & Resorts, Inc.*, 425 F. Supp.3d 959, 964 (S.D. Ohio 2019) ("*M.A.*"). Failure to plausibly set forth allegations in support of any of these elements requires the dismissal of a Section 1595 beneficiary claim. *See Rodman v. Stryker Sales Corp.*, No. 14–CV–1102 (JMF), 2014 WL 5002095, at * 2 (S.D.N.Y. Oct. 7, 2014), *aff'd* 604 F. App'x 81 (2d Cir. 2015).

Plaintiffs' allegations as against AMI and BTI (and the other entity defendants) are wholly conclusory and simply track the language of the various sections of the statute. (*See*, *e.g.*, FAC, ¶¶ 64-72.) The only specific conduct allegation in the FAC even attempting to tie defendants AMI and BTI to the alleged actions of defendant Ashton are grouped with defendants Red Light Management, C3 Presents, and IGF (whom Plaintiffs have collectively defined as the "Bassnectar Companies") wherein it is alleged that "at least one of the employees hired by the Bassnectar Companies would even place hotel room keys in hiding places for [Ashton's] 'girls' on a regular basis." (FAC ¶ 64.) Generic references in a complaint to the action of all defendants, or a group of defendants, is insufficient to meet the notice-pleading requirements of Rule 8 of the Federal Rules of Civil Procedure.[5] *See Bondex Int'l, Inc. v. Hartford Accident and Indem. Co.*, 667 F.3d 669, 681 (6th Cir. 2011). Even if an individual entity defendant had been identified in these allegations, they would still be insufficient because of the general and conclusory nature of such allegations – such as the failure to allege the name of the employee referred to, the location of the hotel(s), and the identity of the "girls"[6] referenced in paragraph 64. Such group pleading does not meet the plausibility standard required by *Twombly*.

> ## 1. The FAC Fails to Adequately Allege that Defendants AMI and BTI Knowingly

---

[5] Any assertion that "group pleading" is only applicable in analyzing fraud claims is not an accurate statement of the law. Courts have indicated that "general shot gun allegations" in a TVPA case will be considered on a motion to dismiss. See *A.B. v. Marriott Int'l, Inc.,* 455 F. Supp. 3d 171, 194 (E.D. Pa. 2020).

[6] Plaintiffs could have alleged – but tellingly did not – that any Plaintiff was given a room key by AMI or BTI, or any other "Bassnectar Defendant."

*Benefitted from Any Sex Trafficking Venture.*

To satisfy the first element of a claim under Section 1595's "beneficiary theory" – that the defendants knowingly benefitted from the alleged sex trafficking venture – Plaintiffs must plausibly allege AMI and BTI "knowingly benefit[ted] financially or by receiving anything of value" from the trafficking venture. *A.B. v. Marriott Int'l, Inc.,* 455 F. Supp. 3d 171, 190 (E.D. Pa. 2020) (*"A.B."*).

For the most part, Plaintiffs' plead only conclusory allegations directed at the "knowingly benefits" element of their TVPA beneficiary claim. (*See, e.g.,* FAC ¶¶ 18, 72, 204, 209-210.) The FAC fails to identify what nature of business AMI and BTI conduct,[7] let alone to attribute specific actions to these entities. There are no allegations as to how AMI, a record label, or BTI, a touring company, were involved in or benefited from the alleged sex trafficking venture.

In fact, paragraphs 65 and 204 contain the only allegations in Plaintiffs' 235-paragraph FAC that even address any allegation of benefits received by AMI or BTI. Paragraphs 65 and 204 allege that the Bassnectar Companies financially benefitted from their participation in managing, promotion, recruiting, and profiting off of the Bassnectar brand. Such allegations do not approach the specificity needed to satisfy the plausible pleading requirements for this element. This allegation also contains the same infirmity as discussed above with respect to paragraph 64 – improperly grouping AMI and BTI with other defendants and calling the group the "Bassnectar Companies." (FAC ¶ 65.) Such a shot-gun pleading that does not delineate between each defendant's conduct cannot put each defendant on notice of their respective conduct and is facially insufficient. *See Doe v. Indyke*, 465 F. Supp.3d 452, 466 (S.D.N.Y. 2020).

Furthermore, Plaintiffs do not allege how "the continued promotion of the Bassnectar

---

[7] Paragraphs 26 and 27 of the FAC merely allege the states of incorporation and that these entities had a "continuous business relationship with Bassnectar."

brand" has anything to do with the alleged sex trafficking venture or what the "continued promotion of the Bassnectar brand" even means. Plaintiffs cannot contend with a straight face that the alleged sex trafficking venture helped in the promotion of the Bassnectar brand. While it is true that the "promotion of the Bassnectar brand" would be a benefit to both AMI or BTI, the FAC does not contain any allegations that would show how the alleged sex trafficking venture had any relationship or effect on such promotion. In fact, the allegations in the FAC made against Ashton may suggest that AMI and/or BTI benefitted in spite of such allegations, which could have exposed the companies to liability and notoriety. *See Geiss v. Weinstein Co. Holdings, LLC*, 383 F. Supp.3d 156, 169-170 (S.D.N.Y. 2019) (recognizing that the "plaintiffs' allegations suggest that H. Weinstein [the defendant] benefited TWC [his associated entity] in spite of his alleged predations, which caused many women not to work with TWC, diverted company resources toward supervision of H. Weinstein and away from business activities, and exposed TWC to potential liability.") Here, the benefit alleged – the "continued promotion of the Bassnectar brand" – is so vague and undefined as to be meaningless.

In contrast to the conclusory facts alleged in the instant case, in *M.A.* and *A.B.*, the Plaintiffs included factual allegations regarding the rental payments received for rooms that were used to traffic the victims, which the courts found satisfied the financially-benefited element. *See*, *M.A.*, 425 F.Supp.3d at 965; and *A.B.*, 455 F. Supp. 3d at 188-91. Here, Plaintiffs have not tied any dollars received by AMI and BTI to the alleged sex trafficking venture, unlike a hotel receiving money for the use of its rooms in facilitating the illicit sexual activity. And even in cases where a direct payment unrelated to the sex trafficking venture is alleged to have been made, courts have found such payments insufficient to meet the "benefits" prong of a Section 1595 claim. *See*, *e.g.*, *Kolbek v. Twenty First Century Holiness Tabernacle Church, Inc*., No. 10–CV–4124, 2013 WL

6816174, at *16 (W.D. Ark. Dec. 24, 2013) (stating that "[t]he fact that sexual abuse was committed by the ministry's leader and that members of the ministry had their expenses paid for through ministry funds is simply not sufficient to establish a violation of 18 U.S.C. § 1591"). Here, Plaintiffs' failure to allege a plausible causal connection between the alleged venture and the alleged benefit to the defendants is fatal to their claim.

### 2. The Complaint Fails to Adequately Allege that Defendants AMI and BTI Participated in Any Sex Trafficking Venture.

The second element of a Section 1595 claim here is that the defendant "participated" in a sex trafficking venture. "The participation giving rise to the benefit must be participation in a sex-trafficking venture, not participation in other activities engaged in by the sex traffickers that do not further the sex-trafficking aspect of the venture." *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp.3d 156, 169 (S.D.N.Y. 2019) (citing *U.S. v. Afyare*, 632 F. App'x 272, 286 (6th Cir. 2016) (stating that "§ 1591(a)(2) targets those who participate in sex trafficking; it does not target [those] who turn a blind eye to the source of their financial sponsorship")). To impose liability under Section 1595, the venture must be a sex trafficking venture – otherwise it would "create a 'vehicle to ensnare conduct the statute never contemplated.'" *Afyare*, 632 F. App'x at 286 (quoting *United States v. Cain*, 583 F.3d 408, 414 (6th Cir. 2009)).

Although no reported cases on this issue have been found from this district, courts around the country have been split on what is required to sufficiently allege participation. Some courts have interpreted the above language from *Afyare* to require allegations of specific, overt acts on the part of the defendant that furthers the sex trafficking aspect of the venture in order to satisfy the "participation" element. *See*, *e.g.*, *Noble v. Weinstein*, 335 F. Supp.3d 504, 524 (S.D.N.Y. 2018) (requiring factual allegations implicating the defendant as a participant in the perpetrator's conduct toward the victim); *Doe 1 v. Red Roof Inns, Inc.*, Civil Action No. 1:19-cv-03840-WMR,

2020 WL 1872335, at * 3 (N.D. Ga. April 13, 2020) (stating that "[a]ssociation alone cannot establish liability; instead, knowledge and "some participation in the sex trafficking act itself must be shown") (citations omitted).

Other courts have distinguished *Afyare* as only applying to participation in a venture in connection with a claim made under Section 1591 of the statute and not Section 1595 beneficiary claims due to Section 1595's "knew or should have known" language. *See*, *e.g.*, *M.A.*, 425 F. Supp.3d at 969; *S.Y. v. Naples Hotel Co.*, 476 F. Supp.3d 1251, 1256 (M.D. Fla., 2020); *J.C. v. Choice Hotels Int'l, Inc.*, Case No. 20-cv-00155-WHO, 2020 WL 3035794, at *1 n.1 (N.D. Cal., June 5, 2020). Those courts have held that actual overt acts of sex trafficking are not required as long as the defendant had constructive knowledge of the sex trafficking act. *Id.*

Here, Plaintiffs have failed to allege either actual or constructive participation on the part of either AMI or BTI in the alleged sex trafficking venture. As stated above, there are no allegations whatsoever that AMI or BTI participated in the sex trafficking acts described in the allegations of each of the Plaintiffs in the FAC. Neither AMI nor BTI is ever mentioned in any of the individual Plaintiffs' allegations. Thus, considering the *Afyare* requirement that a plaintiff must allege an overt act of the defendant in order to satisfy the participation element, the FAC is clearly insufficient.

Should the Court decide that only constructive participation in the sex trafficking act is required, the FAC is equally deficient. Nowhere in the FAC do Plaintiffs allege that AMI or BTI were aware or should have been aware of Ashton's alleged contacts with the Plaintiffs or that they committed specific acts that furthered the purported sex trafficking venture. In fact, there are no allegations that AMI or BTI assisted or facilitated in any manner any of the alleged interactions between Ashton and the Plaintiffs. Plaintiffs do not allege that AMI or BTI supplied Plaintiffs

with concert tickets or backstage passes, transportation or money – all such allegations were made against Ashton alone. (*See*, *e.g.*, FAC ¶¶ 87, 111, 115, 116-117, 126, 128, 142-143, 153-154, 168, 178.) While Plaintiffs allege that AMI's and BTI's knowledge should be imputed from Ashton, who, it is alleged, was "intimately involved in their day-to-day operations" (FAC ¶ 67), such conclusory allegations are insufficient to state a claim under § 1591(a)(2). *See Noble*, 335 F. Supp.3d at 524; *Russell Barnett Ford of Tullahoma, Inc. v. H&S Bakery, Inc.*, 398 F. Supp.3d 287, 299 (E.D. Tenn. 2019). Plaintiffs have failed to sufficiently allege that AMI or BTI participated in the alleged sex trafficking venture.

### 3. The FAC Fails to Adequately Allege that Defendants AMI and BTI Had Knowledge of Any Sex Trafficking Venture.

A defendant cannot be liable under Section 1595's "beneficiary" theory unless it is alleged that the defendant "knew or should have known" that the alleged venture was engaged in sex trafficking. *See H.H. v. G6 Hosp., LLC*, Case No. 2:19-CV-755, 2019 WL 6682152, at *3 (S.D. Ohio, Dec. 6, 2019). The standard under this section, based on the "should have known" language in the statute, is a negligence standard of constructive knowledge. *Id*. The FAC, however, fails to meet this low pleading requirement.

Plaintiffs attempt to satisfy this element of their claim against AMI and BTI by alleging that "[t]he Bassnectar Companies have actual knowledge of Bassnectar's unlawful commercial sex acts through him, as he is the founder of the Bassnectar Companies and intimately involved in their day-to-day operations." (FAC ¶ 67.)[8] However, other than this conclusory allegation that once again improperly groups several defendants into one umbrella term, the FAC contains no allegations that either AMI or BTI were involved in or had any connection to any of Ashton's

---

[8] The FAC does not allege any actual or apparent agency relationship between AMI and BTI, on the one hand, and Ashton, on the other.

actions involving any of the Plaintiffs. *See H&S Bakery, Inc.*, 398 F. Supp.3d at 299 ("There is a presumption that a corporation is a distinct entity, separate from its shareholders, officers, directors or affiliated corporations, and the party wishing to negate the existence of such separate entity has the burden of proving facts sufficient to justify piercing the corporate veil.") (citations omitted).

Both *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F.Supp.3d 959 (S.D. Ohio 2019) and *A.B. v. Marriott Int'l, Inc.*, 455 F. Supp. 3d 171 (E.D. Pa. 2020), contained allegations that created a reasonable inference of a sex trafficking venture: i) a constant stream of male visitors to the rented rooms where the victim was held hostage; ii) the prepayment of rooms by the traffickers for weeks at a time; iii) the absence of the victim's luggage or identification; iv) the litter of broken objects and used condoms and other sex paraphernalia, which hotel staff would notice; and v) abuse and loud altercations directed at the plaintiff and/or visible injuries on the plaintiff. In direct contrast to those cases, here the FAC fails to identify any similar activity that would trigger any reasonable "should have known" inference. In fact, as noted above, the FAC fails to plead any direct connection between any Plaintiff and AMI or BTI.

For all of these reasons, Count II of the FAC should be dismissed as against AMI and BTI.

**B. Count IV of the FAC Alleging Negligence *Per Se* as Against Either AMI or BTI Fails to State a Claim.**

In Count IV of the FAC, plaintiff Ramsbottom asserts a "negligence *per se*" claim against defendants AMI, BTI, Ashton, IGF, and fictitious corporations and individuals based on her allegations that defendant Ashton committed (i) aggravated statutory rape in violation of T.C.A. § 39-13-506(C), and (ii) statutory rape by an authority figure in violation of T.C.A. § 39-13-532. FAC ¶¶ 220-235. AMI and BTI incorporates by reference the arguments regarding the deficiencies in Plaintiffs' Count IV as outlined in detail in Ashton's Motion to Dismiss and Memorandum in Support (collectively "Ashton's Motion to Dismiss") (Dkts. 67-68).

In addition to those arguments raised in Ashton's Motion to Dismiss (Dkts. 67-68), even if it were enough to simply allege that the Ashton's conduct violated the statutes,[9] negligence *per se* is still not an appropriate claim against defendants AMI and BTI, since only Ashton, and not AMI and BTI, is alleged to have violated the statutes. (FAC ¶¶ 222, 224.) *See also Slowik*, 2021 WL 1176075, at *5 (stating that to establish negligence per se "*the defendant* must have violated a statute of ordinance…") (emphasis added).

Further, Count IV fails because the two statutes do not provide the applicable standard of care to third parties that are not alleged to have committed the actual violations of the statutes. For a negligence *per se* claim based on a criminal statute, the criminal statute must identify an applicable standard of care. *See Slowik*, 2021 WL 1176075, at *6. The statutes cited in the FAC do not establish any standard of care for third parties. *Cf. Doe v. Coffee Cty. Bd. of Educ.*, 852 S.W.2d 899, 909 (Tenn. Ct. App. 1992) (noting that a failure to report sexual abuse of a minor as required by Tennessee law, did not provide a basis for negligence claim). Because the cited statutes do not outline any standard of care for defendants other than the alleged actor, Ashton, the negligence *per se* theory inapplicable to AMI and BTI. As a result, Count IV against AMI and BTI should be dismissed as a matter of law.

### C. <u>Count IV of the FAC is Barred by the Applicable Statute of Limitations.</u>

AMI and BTI incorporate by reference the arguments regarding the untimeliness of Count IV in Ashton's concurrently-filed Motion to Dismiss. (Dkts. 67-68.)

### <u>CONCLUSION</u>

For all the foregoing reasons, Plaintiffs' claims should be dismissed with prejudice.

---

[9] The FAC makes no attempt to explain how a corporate entity could commit statutory rape.

Dated: July 16, 2021                    Respectfully Submitted,

                                        *s/ Robert A. Peal*
                                        Robert A. Peal (No. 25629)
                                        Mark W. Lenihan (No. 36286)
                                        Grace A. Fox (No. 37367)
                                        Sims|Funk, PLC
                                        3322 West End Ave, Suite 200
                                        Nashville, TN 37203
                                        (615) 292-9335
                                        (615) 649-8565 (fax)
                                        rpeal@simsfunk.com
                                        mlenihan@simsfunk.com
                                        gfox@simsfunk.com

                                        Kimberly S. Hodde (No. 20128)
                                        Hodde & Associates
                                        40 Music Square East
                                        Nashville, TN 37203
                                        (615) 242-4200
                                        (615) 242-8115 (fax)
                                        kim.hodde@hoddelaw.com

                                        Mitchell Schuster, Esq. (admitted *pro hac vice*)
                                        Stacey M. Ashby, Esq. (admitted *pro hac vice*)
                                        Meister Seelig & Fein, LLP
                                        125 Park Avenue, 7th Floor
                                        New York, NY 10017
                                        (212) 655-3500
                                        (212) 655-3535 (fax)
                                        ms@msf-law.com
                                        sma@msf-law.com

                                        *Counsel for Defendant Lorin Ashton, Amorphous*
                                        *Music, Inc., and Bassnectar Touring, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and exact copy of the foregoing was served on the following counsel via the Court's CM/ECF system on this 16th day of July, 2021:

Phillip H. Miller
631 Woodland Street
Nashville, TN 37206
(615) 356-2000
phillip@seriousinjury.com

Alexandria MacMaster
M. Stewart Ryan
LAFFEY, BUCCI & KENT, LLP
1100 Ludlow Street
Suite 300
Philadelphia, PA 19107
(215) 399-9255
amacmaster@lbk-law.com
sryan@lbk-law.com

Brian Kent
Laff, Whitesel, Conte & Saret, Ltd.
401 N. Michigan Avenue
Suite 1700
Chicago, IL 60611-4212
(215) 399-9255
bkent@lbk-law.com

*Counsel for Plaintiffs*

Ashleigh D. Karnell
Paige Waldrop Mills
Bass, Berry & Sims (Nashville Office)
150 Third Avenue South
Suite 2800
Nashville, TN 37201
(615) 742-7914
(615) 742-0453 (fax)
ashleigh.karnell@bassberry.com
pmills@bassberry.com

*Attorneys for Defendant Redlight Management,
Inc.*

Russell B. Morgan
Jason C. Palmer
Rachel Sodée
Bradley Arant Boult Cummings LLP
1600 Division Street
Suite 700
P.O Box 340025
Nashville, TN 37203-0025
(615) 252-2311
 (615) 252-6311 (fax)
rmorgan@bradley.com
jpalmer@bradley.com
rsodee@bradley.com

R. Scott McCullough
McNabb, Bragorgos, Burgess & Sorin, PLLC
81 Monroe Avenue
Sixth Floor
Memphis, TN 38103-5402
(901) 924-0640
(901) 624-0650 (fax)
smccullough@mbbslaw.com

*Counsel for Defendant C3 Presents, L.L.C.*

Cynthia A. Sherwood
Davis Fordham Griffin
Sherwood Boutique Litigation, PLC
201 Fourth Avenue, N
Suite 1130
Nashville, TN 37219
(615) 873-5670
(615) 873-5671 (fax)
cynthia@sherwoodlitigation.com
davis@sherwoodlitigation.com

*Attorneys for Defendants Gnarlos Industries,
LLC and Carlos Donohue*

Bennett James Wills
Brian T. Boyd
Law Office of Brian T. Boyd
214 Overlook Cir.
Suite 275
Brentwood, TN 37027
(615) 861-1936
(615) 523-2595 (fax)
bennett@boydlegal.co
brian@boydlegal.co

*Attorneys for Defendant Interactive Giving
Fund*

*s/ Robert A. Peal*