IN THE UNITED STATE DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| RACHEL RAMSBOTTOM | ) | |
| ALEXIS BOWLING | ) | |
| JENNA HOUSTON | ) | |
| JANE DOE #1 | ) | CIVIL ACTION |
| | ) | |
| Plaintiffs | ) | No. 3:21-cv-00272 |
| | ) | |
| v. | ) | JURY TRIAL DEMANDED |
| | ) | |
| LORIN ASHTON, | ) | JUDGE ALETA A. TRAUGER |
| AMORPHOUS MUSIC, INC., | ) | |
| BASSNECTAR TOURING, INC., | ) | |
| C3 PRESENTS, L.L.C., | ) | |
| INTERACTIVE GIVING FUND, | ) | |
| GNARLOS INDUSTRIES, LLC, | ) | |
| CARLOS DONOHUE; ABC | ) | |
| CORPORATIONS, ONE THROUGH | ) | |
| TEN (said Names Being Fictitious), | ) | |
| JOHN DOES, ONE THROUGH TEN | ) | |
| (said Names Being Fictitious) | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR RESPONSE IN OPPOSITION TO DEFENDANT INTERACTIVE GIVING FUND'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

### I.     INTRODUCTION

This case arises from the solicitation and sexual victimization of underaged Plaintiffs who were coerced and/or defrauded into engaging in commercial sex acts and the manufacture and dissemination of child pornography. Plaintiffs were targeted, groomed, and sexually exploited by electronic dance music ("EDM") musician "Bassnectar" (Defendant Lorin Ashton), who utilized his fame, shows, and organizations, including Defendant Interactive Giving Fund (hereinafter

"IGF" or "Moving Defendant"), to engage in recruitment of underaged females, including Plaintiffs, for the purposes of grooming and, ultimately, sexual abusing, victimizing, and trafficking.

Defendant IGF is a successor organization to "Be Interactive" a charitable nonprofit organization founded by Bassnectar. *Id.* at ¶ 28. Bassnectar used the "amBassador" program of Be Interactive, and then Defendant IGF, to recruit minor female fans for the purpose of sexually abuse and trafficking. *Id.* at ¶¶ 6 – 7, 10, 55 – 63.

## II. <u>ARGUMENT</u>

### A. Defendant IGF's Motion to Dismiss: Fed. R. Civ. P. 12(b)(2)

#### i. Standard of Review

As it relates to jurisdiction, the principles espoused in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), remain canonical. Under *International Shoe*, a court's authority depends on the defendant having such "contacts" with the forum State that "the maintenance of the suit" is "reasonable, in the context of our federal system of government," and "does not offend traditional notions of fair play and substantial justice." *Id* at 316–317. Jurisdiction may be general or specific. *See Ford Motor Co. v. Montana Eighth Judicial Dist.*, 141 S. Ct. 1017, 1024 (U.S. 2021).

Under general jurisdiction, a defendant may be sued for "virtually any claim, even if unrelated to the defendant's contacts with the forum" provided "the defendant's activities in can be characterized as 'continuous and systematic' contacts." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984).

A lesser standard is required to sustain specific jurisdiction, and the test to be met is whether the defendant has "purposely avail[ed] itself of the privilege of conducting activities

within the forum state." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 – 75 (1985). A court can exercise specific jurisdiction over a non-resident defendant if the defendant "purposely directs [his] activities to the forum, and the litigation results from the alleged injuries that arise out of or relate to those activities." *Hughes v. Balemaster, Inc.*, 652 F.Supp. 1350, 1351–52 (E.D. Mo. 1987). The defendant must "purposefully avail[] itself of the privilege of conducting activities" in the forum such that the defendant can reasonably anticipate being sued in this State. *Burger King Corp.*, 471 U.S. at 75. A single act can support jurisdiction, so long as the defendant created a substantial connection with the forum. *Burger King,* 471 U.S. at 476 n. 18.

It is "black-letter law" that jurisdiction over corporations, which can act through their agents (be those individuals or other corporations), may be established by the actions or conduct of their agents in any particular forum. *International Shoe*, 326 U.S. 310, 316 (1945); *Grand Entertainment Group v. Star Media Sales, Inc.,* 988 F.2d 476, 483 (3d Cir. 1993).

Thus, personal jurisdiction may be asserted against a defendant based on a single act in the forum and regardless of whether the tortious act is negligent or intentional. *Id*. A nonresident defendant whose agent commits a tortious act in any forum can reasonably anticipate being haled into court in that same forum based on the commission of that act. *Rosenblatt v. American Cyanamid Co.*, 382 U.S. 110 (1965) (quoting *Hess v. Pawloski*, 274 U.S. 352, (1927)).

### ii.  This Court maintains jurisdiction over Defendant IGF

As alleged in Plaintiffs' FAC, and specifically with regard to IGF: "Bassnectar is the founder and former chairman, figurehead, chief executive, and icon of IGF. Bassnectar utilized IGF to target, recruit and ultimately victimize young girls, like Plaintiffs, for sexual exploitation. IGF had a continuous business relationship with Bassnectar that enabled Bassnectar to engage in predatory behavior toward underage girls during the times that each Plaintiff was harmed." *See*

Exhibit A at ¶ 28. In this regard the actions of Bassnectar were the actions of IGF, particularly when it came to his predatory behavior and utilizing IGF to target and ultimately abuse young females fans such as Plaintiffs.

Defendant IGF knew or should have known that this systematic targeting of young girls was being perpetrated by Bassnectar, with the support and accommodation of IGF and the other Defendants, and that it was occurring at shows and concerts being promoted by defendant IGF through its call to "philanthropy," and served by its "ambassador" network. By participating in a business venture with Bassnectar (indeed a business venture designed by Bassnectar) and the remaining Defendants IGF knowingly received a financial benefit and other things of value. *Id*. at ¶¶ 54 – 68, 72, 191, 201 – 204, 210 – 212. Therefore, Defendant IGF received a knowing benefit from their participation in a venture that they knew or should have known was engaged in sex trafficking and other offenses in violation of the Trafficking Victim Protection Reauthorization Act (TVPRA).

Plaintiffs have alleged that Bassnectar, IGF, and its agents all knowingly participated in a venture to traffic Plaintiffs and other underage girls for the purpose of having of sexual intercourse. *See* Ex. "A" ¶¶ 54–64, 68. This venture was organized and operated in broad daylight at shows, concerts, and venues all with the participation and assistance of Moving Defendant. This venture operated for *years* while Bassnectar was utilizing IGF and its predecessor Be Interactive as a pipeline of new and vulnerable females to victimize. This also included instances of abuse that occurred within the state of Tennessee. *Id*. at ¶¶ 74 – 89, 221 – 225.

Each and every act of abuse undertaken by Bassnectar, including those acts that took place in this judicial district, are also the acts of Defendant IGF for the purposes of the FAC. It is well settled that in Tennessee, a principal may be held vicariously liable for the negligence of his or her

4

agent, where the agent is acting within the actual or apparent scope of the agency. *Boren ex rel. Boren v. Weeks,* 251 S.W.3d 426, 432 (Tenn. 2008). Whether an agency relationship exists between two persons is a question of fact "and is determined by examining the agreement between the parties or the parties' actions." *Id.* It is nonsense for Moving Defendant to suggest that there are not any, let alone sufficient, allegations in the Plaintiffs' FAC directed at the conduct of IGF, by and through Defendant Bassnectar, its agent and figurehead, to establish jurisdiction before this Court.

### iii. To the extent that jurisdiction is not clearly established by the pleadings, this Court should order a period of jurisdictional discovery

While the allegations and supporting facts in Plaintiffs' FAC are sufficient to establish personal jurisdiction over Defendants, in the event that the Court disagrees, Plaintiff should be permitted to conduct discovery. A district court ruling on a 12(b)(2) motion before trial has the discretion to, *inter alia*, permit discovery which would aid in resolution of the motion. *Serras v. First Tenn. Bank Nat'l Ass'n.*, 875 F.2d 1212, 1214 (6th Cir. 1989).

### B. Defendant IGF's Motion to Dismiss: Fed. R. Civ. P. 12(b)(3)

### i. Standard of Review

A defendant may move to dismiss a claim under Fed. R. Civ. P. 12(b)(3) for improper venue. Under 28 U.S.C. § 1391(b), "the plaintiff may file [her] complaint in any forum where a substantial part of the events or omissions giving rise to the claim arose; this includes any forum with a substantial connection to the plaintiff's claim." *First of Mich. Corp. v. Bramlet*, 141 F.3d 260, 263 (6th Cir. 1998); *see also* 28 U.S.C. § 1391(b)(2). Plaintiffs are not required to file a complaint in the district where the most substantial events giving rise to the claim occurred. *See Capitol Specialty Ins. Corp. v. Splash Dogs, LLC*, 801 F. Supp. 2d 657, 671 (S.D. Ohio 2011). In other words, venue may be proper in more than one district even though most of the events

occurred in only one of the districts. *Id.* at 672. Nevertheless, "only those acts or omissions with substantial, rather than tangential, connections to a plaintiff's claims can establish venue." *Reilly v. Meffe*, 6 F. Supp. 3d 760, 765 (S.D. Ohio 2014).[1] Courts consider both the plaintiff's and defendant's activities in analyzing whether venue is proper under § 1391(b)(2). *Id.* at 767. In addressing a 12(b)(3) motion to dismiss, "[t]he Court may examine facts outside the complaint but must draw all reasonable inferences and resolve factual conflicts in favor of the plaintiff." *Good v. City of Southhaven*, No. 16-02029, 2017 WL 11316500, at *5 (W.D. Tenn. Mar. 30, 2017) (citing *Gone to the Beach, LLC v. Choicepoint Servs., Inc.,* 434 F. Supp. 2d 534, 536–37 (W.D. Tenn. 2006) (quotation marks omitted).

### ii. Venue is Proper in the Middle District of Tennessee

Defendant IGF asserts that venue in the Middle District of Tennessee is improper pursuant to Fed. R. Civ. P. 12(b)(3). With regard to tortious conduct occurring in Tennessee, it is alleged in the FAC that: (1) Bassnectar solicited, enticed, and coerced Plaintiff Ramsbottom to meet him at his show in Nashville (*See* Ex. "A" at ¶ 79); (2) Bassnectar engaging in a commercial sex act with Plaintiff Ramsbottom, who was a minor at the time, by paying her $1,000 for sex at a hotel in Memphis (*Id.* at ¶¶ 83–87); and (3) Bassnectar engaging in commercial sex acts with Plaintiff Ramsbottom, while still a minor, in a Nashville hotel for four days (*Id.* at ¶¶ 88–90). The solicitation and sexual abuse of underage Plaintiff Ramsbottom in Nashville are substantial parts of the events or omissions giving rise to Plaintiffs' claims.

"The Sixth Circuit has held that [28 U.S.C. § 1391(b)(2)] does not require the court to determine where the most substantial events giving rise to the claim occurred; rather, venue is

---

[1] "Substantiality" is intended to preserve fairness so that a defendant is not forced to defend litigation in a remote district with no relationship to the dispute. *Sazerac Co. v. Hood River Distillers, Inc.*, No. 3L12CV-79-S, 2012 WL 6645730, at *3 (W.D. Ky. Dec. 20, 2012).

proper in 'any forum with a substantial connection to the plaintiff's claim.'" *See Am. Earth Sols., LLC v. Peacock,* No. 3:13-CV-1097, 2014 WL 1007285, at *2 (M.D. Tenn. Mar 14, 2014) (quoting *First of Mich. Corp. v. Bramlet*, 141 F.3d 260, 263 (6th Cir. 1998)). Plaintiffs' FAC pleads that a substantial part of the events, which apply to all defendants and all claims, occurred in Nashville, Tennessee. Therefore, the pleaded facts properly establish venue.

### C. Defendant IGF's Motion to Dismiss: Fed. R. Civ. P. 12(b)(6)

#### i. Standard of Review

A motion to dismiss pursuant to the Federal Rules of Civil Procedure rule 12(b)(6) challenges the legal sufficiency of a complaint specifically arguing that a plaintiff "fail[ed] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). However, such a motion should not be brought as "a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958-59 (6th Cir. 2005). When presented with a motion to dismiss, a court must construe the complaint in the light most favorable to the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008).[2] The Sixth Circuit has provided a three-step process for determining a complaint's sufficiency under 12(b)(6), in which the trial court must: (1) accept all of plaintiff's factual allegations as true; (2) draw all reasonable inferences in plaintiff's favor; and (3) determine whether the alleged facts and inferences plausibly give rise to an entitlement to relief. *Doe v. Baum*, 903 F.3d 575, 581 (6th Cir. 2018).

#### ii. Plaintiff's Claims related to violations of the TVPRA

---

[2] The Court is not required to accept mere legal conclusions unsupported by factual allegations, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and a complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The plausibility standard "is not akin to a probability requirement" but is a "context-specific" inquiry drawing on our "judicial experience and common sense." *Iqbal*, 556 U.S. at 678, 679, (citing *Twombly*, 550 U.S. at 556, 557) (internal quotations omitted).

### 1. Defendant IGF is a viable entity

Defendant IGF is a successor organization to "Be Interactive" a charitable nonprofit organization founded by Bassnectar. *Id.* at ¶ 28. Bassnectar used the "amBassador" program of Be Interactive, and then Defendant IGF, to recruit minor female fans for the purpose of sexually abuse and trafficking. *Id.* at ¶¶ 6 – 7, 10, 55 – 63.

The former web address for Be Interactive, http://beinteractivehq.org, now re-routes a user to the website for Defendant IGF, https://interactivegivingfund.org. According to its website, the work of IGF (through its predecessor Be Interactive) began in July 2010. *See* A true and correct copy of Defendant IGF's website, "Giving," attached hereto as Exhibit "B" at 23. The "amBassador" program itself was founded shortly thereafter in October 2010. *Id.* at 22 – 23. Eventually, Be Interactive began to host self-entitled fundraising concert events which featured Bassnectar, the man who ultimately controls Defendant IGF (as he did its predecessor), as the headlining artist. The second "Be Interactive" concert was hosted in Nashville, TN. It was at this event that 100% of proceeds went to charities selected by Defendant IGF's predecessor organization and fans "donated 16,547 health supplies to Community Achieves, a Nashville public schools initiative." *Id.* at 3. In or around July 2020, as the truth about Bassnectar began to emerge,[3] Bassnectar announced he would be "stepping back" from his career and position of power and that his nonprofit Be Interactive was being "handed off to a diverse team to continue without my involvement moving forward."[4] The truth of this statement is unknown.

---

[3] In June 2020, an Instagram account was created titled "@evidenceagainstbassnectar" where dozens of young and underage women detailed the ways in which they were victimized by Bassnectar.

[4] https://www.instagram.com/p/CCMhDGyhT9S/?utm_source=ig_embed&ig_rid=080ce76b-d38e-4bed-9007-2628d02b6540

Soon thereafter, the Interactive Giving Fund was founded. The stated purpose of Defendant IGF was to "carry[] on the charitable work of . . . Be Interactive." *See* Defendant IGF website, *available at* https://interactivegivingfund.org. When it was founded, Defendant IGF named Nancy Rubin as its Executive Director. She was responsible for "the strategic planning, financial management, policy implementation and grant review process at Interactive Giving Fund." *See* a true and correct copy of Defendant IGF's website, "About," April 2, 2021, attached hereto as Exhibit "C." Rubin brought with her, according to Defendant IGF's website, thirty-five years of senior executive leadership for nonprofit organizations. *Id.*

Moving Defendant has attached to its Motion an affidavit with exhibits which allegedly support their claim that Defendant IGF is in fact a "section 501(c)(3) donor advised fund" or financial account administered by Vanguard Charitable that is simply used for the disbursement of charitable funds.[5] There is, however, no such thing as a "section 501(c)(3) donor advised fund." *See* a true and correct copy of the description of "Donor Advised Funds" from the Internal Revenue Service attached hereto as Exhibit "D." Instead, a donor advised fund may be maintained and operated by section 501(c)(3) organization, which is called a sponsoring organization. In the case of a donor advised fund, the donor maintains only advisory privileges to suggest where contributions may be made. In support of this contention, Moving Defendant attaches a document

---

[5] The inclusion of materials outside the pleadings is not appropriate when, as here, those supporting materials do not "facilitate the disposition of the action." 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1366, at 493 (2d ed. 1990). Under Rule 12(b)(6) a court may either exclude the additional submissions and decide the motion on the pleadings only or convert the motion to one for summary judgment. *See Fonte v. Board of Managers of Continental Towers Condominium,* 848 F.2d 24, 25 (2d Cir.1988). "When the extra-pleading material is comprehensive and will enable a rational determination of a summary judgment motion, the court is likely to accept it; when it is scanty, incomplete, or inconclusive, the court probably will reject it." *Id.; see also Isquith v. Middle South Utilities, Inc.,* 847 F.2d 186, 193 n. 3 (5th Cir. 1988). Here, the materials attached to Moving Defendant's Motion fall into the latter category.

from Vanguard Charitable which purports to show a contribution of funds from "Be Interactive" to an account named "The Interactive Giving Fund" from February 2021. The document does not identify account advisors or any other information to suggest this account is a donor advised fund. The document itself makes clear that it does not even substantiate that a contribution has been made. Instead, and even after this contribution was made, the website for Moving Defendant identified that it maintained an Executive Director responsible for "the strategic planning, financial management, policy implementation and grant review process at Interactive Giving Fund." The responsibilities of this Executive Director, and any others assisting her, directly conflict with any claim that Moving Defendant is simply a bank account being administered by Vanguard Charitable. The very nature of donor advised funds, and the very words of the declaration attached in support of Moving Defendant's motion, make clear that there must be a sponsoring nonprofit directing the work of such a fund, which upon information and belief is Interactive Giving Fund.

### 2. Plaintiffs have sufficiently pled their claims under the Trafficking Victim Protection Reauthorization Act

The Trafficking Victim Protection Reauthorization Act (TVPRA), 18 U.S.C. § 1591, *et seq.,* criminalizes the sex trafficking of children and the sex trafficking of adults by force, fraud, or coercion. Separately, § 1595 of the TVPRA provides victims of sex trafficking with a civil remedy against the perpetrators or beneficiaries of sex trafficking. *See* 18 U.S.C. § 1595(a). Count Two of the FAC explicitly and unequivocally states a beneficiary theory of liability against Moving Defendant pursuant to § 1595 of the TVPRA, not a perpetrator theory of liability pursuant to § 1591. *See* Plaintiffs' FAC at ¶¶ 198–213. The references to § 1591(a) in this count are directed toward the Plaintiffs' status as "victims" of human trafficking, *Id.* at ¶¶ 205–208, and Defendant IGF's participation in a venture which it knew or should have known was engaged in sex trafficking. *See Id.* At ¶ 201–204, 209–212. Despite Defendant IGF's efforts to conflate the

Plaintiffs' factual allegations pursuant to their stated beneficiary liability cause of action with a perpetrator liability cause of action, the FAC clearly and sufficiently states a claim for relief under § 1595 of the TVPRA.

### a. The Relevant History of the TVPRA

Congress passed the Victims of Trafficking and Violence Protection Act in 2000 ("TVPA"). Pub. L. No. 106–386, 114 Stat. 1466 (2000) (codified as amended in Title 22, Chapter 78, and Title 18, Chapter 77, of the U.S. Code). In 2008, 18 U.S.C. 1595(a) was intentionally amended with substantially different language that created a category of defendants that could be held liable civilly even in the absence of criminal culpability. *See* Amended Pub. L. No. 110–457, title II, § 221(2), Dec. 23, 2008 (the TVPRA was amended "by inserting '(or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter)' after 'perpetrator'"). This amendment to our nation's human trafficking legislation necessitated a paradigm shift in the music and entertainment industry.[6] Since this amendment to the TVPRA, some businesses have elected to comply with § 1595, as amended, while others have chosen not to comply.

The significance of this change in the statutory language is supported by well-established principles of statutory interpretation. As a general rule, when interpreting a statute, one must

---

[6] For example, Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, *et seq.*, introduced an even broader paradigm shift by requiring change nationally across all business sectors. Employers could no longer discriminate on the basis of race, religion, sex, or national origin. *Id.* Employers were of course free to maintain the status quo and continue to discriminate against their employees, but because of the new law they were liable for damages on a going forward basis for continuing to discriminate after discrimination was prohibited by law. Similarly, businesses within the music and entertainment industry are free to maintain the status quo pre-2008 and do nothing to determine whether they benefit financially from sex trafficking being perpetrated at concerts, shows, or festivals they organize, manage, and promote or from sex trafficking perpetrated by musical artists, their agents, employees, or associates such businesses manage, promote, or otherwise partner. However, choosing to maintain this status quo post-2008 following the amendment to § 1595 of the TVPRA exposes businesses in the music and entertainment industry to liability for their purposeful inaction and noncompliance with the law.

"consider not only the bare meaning of the critical word or phrase but also its placement and purpose in the statutory scheme." *Holloway v. United States*, 526 U.S. 1, 6 (1999) (internal citation and quotations omitted); *see also Williams v. Taylor*, 529 U.S. 362, 364 (2000) ("In light of the cardinal principles of statutory construction that courts must give effect to every clause and word of a statute."). There is "a canon of construction that remedial statutes should be liberally construed." *Peyton v. Rowe*, 391 U.S. 54, 65 (1968). This canon of statutory construction is especially applicable to the TVPRA considering that the language of 18 U.S.C. §1595(a) was amended in 2008 to be even broader, for when a "statute is remedial in nature, its terms must be construed in a liberal fashion." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 499 (1985).

### b. Defendant IGF knowingly benefitted financially in violation of § 1595

The Congressionally mandated mechanism to civilly enforce the TVPRA is explicitly stated in § 1595. Since 2008, victims of sex trafficking have been empowered to bring civil claims against whoever financially benefits from what they should have known was a sex trafficking venture. The Plaintiffs have plausibly alleged this Defendant knew or should have known it financially benefitted from their participation in a sex trafficking venture. *See* Ex. "A" at ¶¶ 17–18, 28, 54 –72, 75, 191, 201–204, 209–212. Defendant Bassnectar served as the founder and former chairman, figurehead, chief executive, and icon of IGF. *Id.* at ¶ 28. Bassnectar utilized IGF to target, recruit and ultimately victimize young girls, like Plaintiffs, for sexual exploitation.[7] *Id.* Moving Defendant's knew or should have known of, *inter alia*, Bassnectar utilizing his fame, fortune, celebrity, live events, and "philanthropic" AmBASSadors program to recruit and groom

---

[7] Defendant IGF contends generally that Plaintiffs have improperly "grouped" the Defendants. "Group pleading," which is a term of art that applies in fraud cases within the framework of Rule 9(b) and does not apply here. *See, e.g., Gamrat v. Allard*, 320 F. Supp. 3d 927, 942 (discussing "group pleading" as a term of art in the context of fraud cases); *United States ex rel. Takemoto v. Nationwide Mut. Ins. Co.*, 674 Fed. Appx. 92, 95 (2d Cir. 2017).

underage female fans for the ultimate purposes of sexual abuse and manufacture of child pornography. *See* Plaintiffs' FAC at ¶¶ 54 – 68. As alleged in the FAC: "Defendants' employees and agents had actual knowledge or should have known that they were facilitating and participating in a scheme to profit from a venture involved in commercial sex acts with minor children." *See* Ex. "A" at ¶ 211. As such Plaintiffs' have clearly, and sufficiently, alleged a beneficiary theory of liability against Defendant IGF for purposes of a claim under the TVPRA.

Since 2008 there have been at least three distinct causes of action under § 1595 to include § 1595 financial beneficiary claims against a civil defendant who has not violated § 1591 at all, but who "knowingly benefits, financially or by receiving anything of value from participation in a venture which that *person knew or should have known* has engaged in an act in violation of this chapter." *See* 18 U.S.C.A. § 1595(a) (emphasis added).

The distinction between the knowledge requirement in a financial beneficiary claim as opposed to other § 1595 claims is significant in this case. To state either a perpetrator trafficking claim or a perpetrator financial beneficiary claim, a victim must allege actual knowledge and knowing participation in the sex trafficking venture itself because the plaintiff must prove the criminal violation of § 1591. In the 2008 amendment to the TVPRA, however, Congress determined that civil liability would attach to a financial beneficiary if that person or entity knew or should have known the venture in which it was engaged involved a violation of the TVPRA. A financial beneficiary claim, therefore, need not allege knowing assistance or actual knowledge that the venture in which it participated violated the TVPRA, only that the entity should have known the venture from which it benefitted violated the TVPRA.

Criminal cases under the TVPRA such as *United States v. Afyare*, 632 F. App'x 272, 286 (6th Cir. 2016) are inapposite to civil financial beneficiary claims because in *Afyare* the Sixth

Circuit considered only the type of participation which Congress criminalized under § 1591(a)(2). As discussed, perpetrator claims alleging a criminal violation of § 1591(a)(1)–(2) do require actual knowing participation in the sex trafficking venture. A financial beneficiary claim does not require actual knowing participation in the sex trafficking venture.

Unlike *Afyare*, the case of *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959 (S.D. Ohio Oct. 7, 2019), a civil case in this very jurisdiction dealing with civil liability under the TVPRA, is directly on point. In *M.A.*, the corporate defendants' motions to dismiss were denied when they advanced essentially identical arguments to those of Moving Defendant. The court in *M.A.* distinguished *Afyare* especially given its reliance on criminal, and not the more "salient" civil, concepts in the law. *M.A.*, 425 F. Supp. at 969.

In *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 959, 965–66 (S.D. Ohio 2019), the court acknowledged that "collecting money through sponsorships, licensing, grants, [and] publicity" satisfied the "knowing benefit" element of the § 1595(a) standard. *Wyndham Hotels*, 425 F. Supp. at 966 (quoting *Gilbert v. United States Olympic Comm.*, 423 F. Supp. 3d 1112, 1138–1139 (D. Colo. 2019).[8] Further, in *M.A.* the court held that "[i]n the absence of a direct association, Plaintiff must allege at least a showing of a continuous business relationship between the trafficker and the [other entity] such that it would appear that the trafficker and the [other entity] have established a pattern of conduct or could be said to have a tacit agreement." *Id.* at 970. The court in *M.A.* determined that the plaintiff made sufficient allegations to survive a Motion to Dismiss and that, in fact, a plaintiff need not allege knowledge of a specific or particular sex trafficking venture. *Id.* at 970 – 71 ("Having found that 'participation' under § 1595 does not require actual knowledge of participation in the sex trafficking itself, this Court must then examine

---

[8] The *Wyndam Hotels* court also held that the Plaintiff's allegation that defendant Wyndam Hotels' rental of rooms to a human trafficker constituted a knowing benefit for purposes of § 1595(a). *Wyndam Hotels*, 425 F. Supp. at 966.

whether there was 'participation in a venture' here. . . . Defendants need not have actual knowledge of the sex trafficking in order to have participated in the sex trafficking venture for civil liability under the TVPRA, otherwise the 'should have known' language in § 1595(a) would be meaningless.").

This is precisely what Plaintiffs have alleged here as it relates to Moving Defendant and Bassnectar. *See* Plaintiffs' FAC at ¶¶ 28, 65, 201 – 04, and 210 – 12. Similar results have obtained in other jurisdictions as well. *See A.B. v. Marriott Int'l, Inc.*, 455 F. Supp. 3d 171, 192 ("we are persuaded the clear language of section 1595 favors the approach taken by Judge Marbley [in *M.A.*] focusing on a hotel's possible civil liability best conforms to Congress's intent in amending the Act to include a civil remedy provision[.]")

### c. Defendant IGF knew or should have known of their respective participation in a sex trafficking venture

Moving Defendant misconstrues the legal standard of knowledge the Plaintiffs must allege in this case. The legal standard stated in *Ayfare* and *Noble v. Weinstein*, 335 F. Supp. 3d 504 (S.D.N.Y. 2018), as cited by Defendant IGF is not applicable to this case. The source of the appropriate legal standard in this case is 18 U.S.C. § 1595, as cited in the title of Count Two of the Plaintiffs' Amended Complaint and as outlined in *M.A.* and *A.B.* Defendant IGF are liable for Plaintiffs' damages if they: (1) knowingly benefitted; (2) from participation in a venture; (3) that it knew *or should have known* engaged in sex trafficking. 18 U.S.C. § 1595(a) (emphasis added).

The plain language of § 1595 irrefutably demonstrates that the definition of "participation in a venture" from § 1591(e)(4) cannot apply to "participation in a venture" as used in § 1595(a). If the definition from § 1591 did apply, civil liability would be limited only against a criminal perpetrator and most of § 1595(a)—everything in parentheses—would be rendered meaningless. That is because if a person knowingly supports or facilitates a violation of § 1591(a)(1) as the

definition in § 1591(e)(4) provides, that person has criminally violated § 1591(a)(2) and is in fact a perpetrator. Thus, if the definition from § 1591 applied to § 1595, a civil cause of action would only be available against "the perpetrator" and the parenthetical in § 1595(a) would mean nothing. This interpretation cannot apply because courts must "avoid a reading which renders some words altogether redundant*." Gustafson v. Alloyd Co.*, 513 U.S. 561, 574–75 (1995) The words "should have known" in § 1595(a) were not intended by Congress to be meaningless.

Moving Defendant also argues Plaintiffs cannot show IGF "either actually or constructively participated in the purported sex trafficking venture." As discussed herein, in order to state a financial beneficiary claim, Plaintiffs do not have to show that the Defendant IGF participated in any specific sex trafficking act. Again, Defendant IGF attempts to blur the lines between the civil and criminal statutes and blur the lines between very different cases.

Defendant IGF argues that Plaintiffs must allege that IGF knew or should have known about a particular or specific sex-trafficking venture—abstract awareness of sex trafficking in general is insufficient. While the holding in *M.A.* runs counter to this claim, the reality is that Plaintiffs have alleged that Defendant IGF knew or should have known about the sex trafficking *of Plaintiffs* and other similarly situated minor females who were recruited and groomed through Bassnectar's operation and which was supported and aided by Moving Defendant. Defendant IGF erroneously alleges that *all* of Bassnectar's exploitative conduct was highly secretive. Plaintiffs have alleged that Bassnectar, Carlos Donohue, Chris Madrigal, "Bri," "Dom," John Does 1 – 10, and other employees, agents, or servants of Defendant Bassnectar Companies and IGF all knowingly participated in a venture to traffic Plaintiffs and other underage girls for the purpose of having of sexual intercourse. *See* Ex. "A" ¶¶ 58–64, 68. This venture was organized and operated in broad daylight at shows, concerts, and venues that IGF assisted in managing and used to further

recruit "amBASSadors." Plaintiffs have sufficiently alleged facts which illustrate that Defendant IGF, who benefitted financially from its partnership and participation in this business venture with Bassnectar and the other Bassnectar Companies, knew or should have known that the *specific* sexual exploitation and trafficking of Plaintiffs was occurring. Bassnectar made a concerted effort to keep his direct communications with Plaintiffs as private as possible, but Defendant IGF's specious assertion that all of the conduct violative of the TVPRA alleged by Plaintiffs was highly secretive is belied by factual averments in Plaintiffs' FAC. Plaintiffs have pled specific and sufficient facts to demonstrate that trafficking of underage Plaintiffs for commercial sex acts was known or should have been known to IGF and the remaining Defendants.

### 3. Count IV, Negligence per se, has been properly pled

#### a. Plaintiffs' FAC properly states the claim of negligence *per se*

In Count IV of Plaintiffs' FAC, Plaintiff Rachel Ramsbottom alleges that Defendant Bassnectar and numerous other defendants, including IGF, violated Tennessee state law as it relates to Aggravated Sexual Assault, T.C.A. § 39-13-506(C), and Statutory Rape by an Authority Figure, T.C.A. § 39-13-532. *See* Exhibit A at ¶¶ 221 – 223. These violations occurred when Defendant Bassnectar, who maintained a position of authority over Plaintiff Ramsbottom by way of his self-admitted position of power and fame, sexually abused Plaintiff Ramsbottom when she was under the age of 18. *Id.* at ¶¶ 224 – 225. Defendant Bassnectar not only admitted to the sexual abuse, but admitted that he was able to commit the abuse as a result of his position of power, authority, and fame. *Id.* ¶¶ 98 – 106. In his Answer and Affirmative defenses filed on July 15, 2021, Defendant Bassnectar admitted to the authenticity of the lawfully recorded telephone call referred to in Plaintiffs' FAC. As argued above, and as it relates to Moving Defendant, Bassnectar utilized IGF to facilitate the abuse and IGF is therefore vicariously liable for his conduct. *Cox v.*

*M.A. Primary and Urgent Care Clinic*, 313 S.W.2d 240, 251 (Tenn. 2010); *Abshure v. Methodist Healthcare-Memphis Hospitals*, 325 S.W.3d 98, 105 – 06 (Tenn. 2010); *Boren ex rel. Boren v. Weeks,* 251 S.W.3d 426, 432 (Tenn. 2008).

In order to survive a claim of negligence *per se* at the pleadings stage a plaintiff must allege: (1) the defendant violated a statute or ordinance which "imposes a duty or prohibits an act for the benefit of a person or the public;" (2) that the injured party was within the class of persons whom the legislative body intended to benefit and protect by the enactment of that particular statute or ordinance; and (3) such negligence was the proximate cause of the injury. *Smith v. Owen*, 841 S.W. 2d 828, 831 (Tenn. Ct. App. 1992).

Moving Defendant first argues that it cannot be liable based on a theory of negligence *per se* because no defendant has been charged or convicted of the crimes pled in the FAC. For support they cite to *Ware v. Tow Pro Custom Towing & Hauling, Inc.*, No. 3:04-0528, 2007 WL 108885, at *7 (M.D. Tenn. Jan. 12, 2007), a case decided at summary judgment. The decision turned on the fact that the plaintiffs were not able to support their initial allegation that the defendant towing company had made an improper demand of money that would constitute extortion. The court went on to state an undisputed fact, which is that the defendant towing company had not been charged with or convicted of a crime. But this by no means created a principle of law that in order to prove negligence *per se* that there must be a conviction for a crime. Indeed, such a requirement would turn the civil law concept of negligence per se on its head. Instead, Tennessee law is clear that all a plaintiff must prove is that there was a violation of an ordinance or statute with competent evidence (at least as of summary judgement, which is not where this case stands). *McCracken v. City of Millington,* 1999 WL 142391 (Tenn. Ct. App. 1999) (violation of the statutory maximum speed limit where there was no arrest or conviction); *Smith v. Owen,* 841 S.W.2d 828 (Tenn. Ct.

App. 1992) (housing code violation where there was no formal governmental finding of liability); *Kingsul Theatres v. Quillen,* 29 Tenn.App. 248, 196 S.W.2d 316, 318 (Tenn.     Ct.     App. 1946) (violation of a municipal regulation where there was no formal governmental finding of liability).

Furthermore, the law in Tennessee related to the statute of limitations, addressed below, also clearly contemplates causes of action being brought against individuals or entities that are not a perpetrator; a claim of negligence *per se* is no different. T.C.A. § 28-3-116(e) (If an action is brought against someone other than the alleged perpetrator of the child sexual abuse, and if the action is brought more than one (1) year from the date the injured person attains the age of majority, the injured person must offer admissible and credible evidence corroborating the claim of abuse by the alleged perpetrator.).

### b. Count IV is not barred by the applicable statute of limitations

Moving Defendant next argues that the claim advanced at Count IV is barred by the applicable statute of limitations. Moving Defendant is mistaken. Pursuant to T.C.A. § 28-3-116(b)(1), "[f]or child sexual abuse that occurred before July 1, 2019, but was not discovered at the time of the abuse, within three (3) years from the time of discovery of the abuse by the injured person." Here Plaintiff Ramsbottom was sexually abused by Defendant Bassnectar before her eighteenth birthday and before July 1, 2019. As alleged in the FAC it was not until 2019 that Plaintiff Ramsbottom fully appreciated the injury from the abuse when she began uncovering same during therapy. *See* Exhibit A at ¶ 96. Thereafter she confronted Defendant Bassnectar. *Id.* at ¶ 97. Then, it was not until June 2020 that Plaintiff Ramsbottom appreciated the true and full scope of Defendant Bassenctar's abuse, including the fact that he had abused numerous other women, including females who were minors. At that time Plaintiff Ramsbottom confronted Defendant

Bassnectar via telephone and recorded Defendant Bassnectar making damaging and incriminating admissions, including that he abused many women in part by exploiting the position of power, fame, and authority he possessed. *Id.* at ¶¶ 98 – 105.

Under the "discovery rule" applicable in tort actions, the cause of action accrues and the statute of limitations begins to run when the injury occurs or is discovered, or when in the exercise of reasonable care and diligence, it should have been discovered. *McCroskey v. Bryant Air Conditioning Co.,* 524 S.W.2d 487, 491 (Tenn. 1975); *see also Teeters v. Currey,* 518 S.W.2d 512 (Tenn. 1974). The discovery rule applies only in cases where the plaintiff does not discover and reasonably could not be expected to discover that he had a right of action. Furthermore, the statute is tolled only during the period when the plaintiff had no knowledge at all that the wrong had occurred and, as a reasonable person, was not put on inquiry. *Hoffman v. Hospital Affiliates, Inc.,* 652 S.W.2d 341, 344 (Tenn. 1983).

Critically, the question of whether a plaintiff "exercised reasonable diligence to discover [her] claims . . . **is a question of fact**." *Redwig v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 466 (Tenn. 2012). Considering that this is a question of fact, and in light of the sufficient factual allegations made in Plaintiff's FAC, this cause of action cannot be dismissed at this stage and Plaintiff Ramsbottom must be permitted to proceed forward with discovery.

### D.  Alternative Relief

To the extent the Court has any reservations about any aspect of the Plaintiffs' FAC and is inclined to grant some or all of the Movants' requested relief, Plaintiffs respectfully request that the Court grant any dismissals without prejudice and with leave to amend.

RESPECTFULLY SUBMITTED:

**MILLER LAW OFFICES**                    **LAFFEY, BUCCI & KENT, LLP**

/s/ Phillip Miller_____              /s/ Brian Kent_____
Phillip Miller, #006873                   Brian Kent*
631 Woodland Street                       M. Stewart Ryan*
Nashville, TN  37206                      Alexandria MacMaster*
(T): 615-356-2000                         LAFFEY, BUCCI & KENT, LLP
(F): 615-242-1739                         1100 Ludlow Street, Suite 300
pmiller@seriousinjury.com                 Philadelphia, PA 19107
                                          (T): (215) 399-9255
                                          (F): (215) 241-8700
                                          bkent@lbk-law.com
                                          sryan@lbk-law.com
                                          amacmaster@lbk-law.com
                                          *admitted pro hac vice*

                                                    *Attorneys for the Plaintiffs*

Dated: July 28, 2021

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of July 2021, I electronically filed the foregoing Plaintiffs'

Opposition to Defendant's Motion to Dismiss and Supporting Memorandum of Law with the Clerk of Court

using CM/ECF system, which will send notification of such filing to the following:

Russell B. Morgan
Jason C. Palmer
Rachel Sodée
BRADLEY ARANT
BOULT CUMMINGS LLP
1600 Division Street, Suite 700
Nashville, Tennessee 37203

Scott McCullough
McNABB, BRAGORGOS,
BURGESS & SORIN, PLLC
81 Monroe, Sixth Floor
Memphis, TN 38103

*Attorneys for Defendant C3 Presents, L.L.C.*

Grace A. Fox
Robert A. Peal
Mark W. Lenihan
SIMS FUNK, PLC
3322 West End Avenue
Suite 200
Nashville, TN 37203
(615) 292-9335
Fax: (615) 649-8565
Email: gfox@simsfunk.com

Kimberly S. Hodde
HODDE & ASSOCIATES
40 Music Square East
Nashville, TN 37203
(615) 242-4200
Fax: (615) 242-8115
Email: kim.hodde@hoddelaw.com

Mitchell Schuster
Stacey M. Ashby
MEISTER, SEELIG & FEIN, LLP

Bennett James Wills
Brian T. Boyd
LAW OFFICE OF BRIAN T. BOYD
214 Overlook Cir.
Suite 275
Brentwood, TN 37027
(615) 861-1936
Fax: (615) 523-2595
Email: bennett@boydlegal.com

*Attorneys for Defendant Interactive Giving
Fund*

Paige Mills, Esq.
Ashleigh Karnell, Esq.
BASS, BERRY & SIMS PLC
150 Third Avenue South, Suite 2800
Nashville, TN 37201
615-742-7770
615-742-0429 fax
PMills@bassberry.com
ashleigh.karnell@bassberry.com

*Attorneys for Defendant Red Light Management*

Cynthia A. Sherwood, Esq.
Davis F. Griffin, Esq.
201 Fourth Avenue North, Suite 1130
Nashville, TN 37219
(615) 873-5670
(615) 900-2312 (fax)
cynthia@sherwoodlitigation.com

*Attorneys for Defendants Carlos Donohue
and Gnarlos Industries, LLC*

125 Park Avenue, 7th Floor
New York, NY 10017

*Attorneys for Defendants Lorin Ashton,*
*Amorphous Music Inc.,*
*and Bassnectar Touring, Inc.*

**MILLER LAW OFFICES**

By:    /s/ Phillip Miller
        Phillip Miller, #006873
        *Attorney for the Plaintiff*
        631 Woodland Street
        Nashville, TN 37206
        615-356-2000 phone
        615-242-1739 fax
        pmiller@seriousinjury.com

**LAFFEY, BUCCI & KENT, LLP**

Brian Kent*
M. Stewart Ryan*
Alexandria MacMaster*
LAFFEY, BUCCI & KENT, LLP
1100 Ludlow Street, Suite 300
Philadelphia, PA 19107
(T): (215) 399-9255
(E): bkent@lbk-law.com
     sryan@lbk-law.com
     amacmaster@lbk-law.com

*admitted pro hac vice*

Dated: July 28, 2021