**IN THE UNITED STATE DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| RACHEL RAMSBOTTOM | ) | |
| ALEXIS BOWLING | ) | |
| JENNA HOUSTON | ) | |
| JANE DOE #1 | ) | CIVIL ACTION |
| | ) | |
| Plaintiffs | ) | No. 3:21-cv-00272 |
| | ) | |
| v. | ) | JURY TRIAL DEMANDED |
| | ) | |
| LORIN ASHTON, | ) | |
| AMORPHOUS MUSIC, INC., | ) | |
| BASSNECTAR TOURING, INC., | ) | |
| C3 PRESENTS, L.L.C., | ) | |
| INTERACTIVE GIVING FUND, | ) | |
| GNARLOS INDUSTRIES, LLC, | ) | |
| CARLOS DONOHUE; ABC | ) | |
| CORPORATIONS, ONE THROUGH | ) | |
| TEN (said Names Being Fictitious), | ) | |
| JOHN DOES, ONE THROUGH TEN | ) | |
| (said Names Being Fictitious) | ) | |
| | ) | |
| Defendants. | ) | |

<u>**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR RESPONSE IN OPPOSITION TO DEFENDANT RED LIGHT MANAGEMENT LLC's MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**</u>

**I.     INTRODUCTION**

This case arises from the solicitation and sexual victimization of underaged Plaintiffs who were coerced and/or defrauded into engaging in commercial sex acts and the manufacture and dissemination of child pornography. Plaintiffs were targeted, groomed, and sexually exploited by electronic dance music ("EDM") musician "Bassnectar" (true name Lorin Ashton), who utilized his fame, shows, and organizations to engage in recruitment of underaged females, including

Plaintiffs, for the purposes of grooming and, ultimately, sexually abusing, victimizing, and trafficking. With the funding and accommodation of the Defendant companies, including Defendant Red Light Management, LLC (hereinafter "Red Light" or "Moving Defendant"), who knew or should have known that Bassnectar was trafficking minor females, Bassnectar used his position of power not only to coerce Plaintiffs into having sexual intercourse with him for money and other things of value, but insisted that Plaintiffs take sexually explicit and/or pornographic photos of themselves and send them to Bassnectar for his sexual gratification. Bassnectar would utilize the services, funds, and support of Defendants to engage in this illegal sex trafficking venture.

At the outset of their motion, Moving Defendant misstates the legal elements of the statute at the heart of this case, the Trafficking Victims Protection Reauthorization Act, 18 U.S.C. 1591(a) and 1595 (hereinafter "TVPRA"). In doing so, Red Light fails to recognize that Plaintiffs' well-pled First Amended Complaint (hereinafter "FAC") clearly and sufficiently states a claim for relief under 1595 of the TVPRA against Red Light. Red Light goes on to further claim that they were not participating in a venture with Bassnectar at any of the times Bassnectar trafficked Plaintiffs. To the contrary, and as pled in the FAC, Red Light was continuously promoting Bassnectar at all times relevant to the FAC. Regardless of Red Light's unsupported contentions distancing itself from Bassnectar in its Motion to Dismiss, Plaintiff's well pled FAC sufficiently states claims against Red Light and Plaintiffs must be permitted to move forward into discovery.

Moving Defendant also repeatedly refers to Plaintiff's FAC as having "threadbare allegations" claiming they are unclear of the allegations against it in the FAC. However, Plaintiffs' FAC articulates in excruciating detail Bassnectar's trafficking of Plaintiffs and how Red Light (and other Defendants) received a knowing benefit from their participation in a venture that they

knew or should have known was engaged in sex trafficking. *Id* at ¶¶ 30, 17 – 18, 64 – 68, 72, 75, 191, 201 – 204, 210 – 212.

Bassnectar, with the aid, participation, and assistance of employees of the other Defendants named in Plaintiffs' FAC, including Moving Defendant, would target and recruit underage girls to come to Bassnectar's shows including shows being promoted and managed by Moving Defendant at all relevant times. The solicitation of minors for the sexual gratification of Bassnectar was happening within the view and assistance of Moving Defendant who had access to Bassnectar, and the ability and responsibility to learn of Bassnectar's transgressions. *Id* at ¶¶ 30, 17 – 18, 64 – 68, 72, 75, 191, 201 – 204, 210 – 212. Defendant Red Light knew or should have known that this systematic targeting of young girls was being perpetrated by Bassnectar, with the support and accommodation of Red Light and the other Defendants. In partnering with Bassnectar—by participating in a business venture with him and the remaining Defendants—Red Light knowingly received a financial benefit and other things of value from their partnership with Bassnectar. *Id* at ¶¶ 64 – 68, 72, 191, 201 – 204, 210 – 212. Therefore, Defendant Red Light received a knowing benefit from their participation in a venture that they knew or should have known was engaged in sex trafficking and other offenses in violation of the TVPRA.

For the reasons discussed above and below, Plaintiffs respectfully request this Honorable Court to deny Defendant Red Light's motion to dismiss Plaintiff's First Amended Complaint.

## II.     <u>STANDARD OF REVIEW</u>

A motion to dismiss pursuant to the Federal Rules of Civil Procedure rule 12(b)(6) challenges the legal sufficiency of a complaint specifically arguing that a plaintiff "fail[ed] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). However, such a motion should not be brought as "a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404

F.3d 950, 958-59 (6th Cir. 2005). When presented with a motion to dismiss, a court must construe the complaint in the light most favorable to the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008).[1] The Sixth Circuit has provided a three-step process for determining a complaint's sufficiency under 12(b)(6), in which the trial court must: (1) accept all of plaintiff's factual allegations as true; (2) draw all reasonable inferences in plaintiff's favor; and (3) determine whether the alleged facts and inferences plausibly give rise to an entitlement to relief. *Doe v. Baum*, 903 F.3d 575, 581 (6th Cir. 2018).

### III.    ARGUMENT

The Trafficking Victim Protection Reauthorization Act (TVPRA), 18 U.S.C. § 1591, *et seq.,* criminalizes the sex trafficking of children and the sex trafficking of adults by force, fraud, or coercion. Separately, § 1595 of the TVPRA provides victims of sex trafficking with a civil remedy against the perpetrators or beneficiaries of sex trafficking. *See* 18 U.S.C. § 1595(a). Count Two of the Plaintiffs' Amended Complaint, i.e., "COUNT II: Benefitting from a Sex Trafficking Venture in Violation of the Trafficking Victims Protection Reauthorization Act, 18 U.S.C. §§ 1591 and 1595 (All Plaintiffs and All Defendants)" explicitly and unequivocally states a beneficiary theory of liability against Moving Defendant pursuant to § 1595 of the TVPRA, not a perpetrator theory of liability pursuant to § 1591 as Red Light would have the Court believe. *See* Plaintiffs' FAC at ¶¶ 198–213. The references to § 1591(a) in this count are directed toward the Plaintiffs' status as "victims" of human trafficking, *Id.* at ¶¶ 205–208, and Defendant Red Light's

---

[1] The Court is not required to accept mere legal conclusions unsupported by factual allegations, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and a complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The plausibility standard "is not akin to a probability requirement" but is a "context-specific" inquiry drawing on our "judicial experience and common sense." *Iqbal*, 556 U.S. at 678, 679, (citing *Twombly*, 550 U.S. at 556, 557) (internal quotations omitted).

4

participation in a venture which it knew or should have known was engaged in sex trafficking. *Id.* At ¶ 201–204, 209–212. Despite Defendant Red Light's efforts to conflate the Plaintiffs' factual allegations pursuant to their stated beneficiary liability cause of action with a perpetrator liability cause of action, the FAC clearly and sufficiently states a claim for relief under § 1595 of the TVPRA. Understanding these important differences between § 1591 and § 1595 of the TVPRA turns Red Light's argument that Plaintiff fails to state a plausible TVPRA claim on its head.

### 1. <u>The Relevant History of the TVPRA</u>

Congress passed the Victims of Trafficking and Violence Protection Act in 2000 ("TVPA"). Pub. L. No. 106–386, 114 Stat. 1466 (2000) (codified as amended in Title 22, Chapter 78, and Title 18, Chapter 77, of the U.S. Code). In 2008, 18 U.S.C. 1595(a) was intentionally amended with substantially different language that created a category of defendants that could be held liable civilly even in the absence of criminal culpability. *See* Amended Pub. L. No. 110–457, title II, § 221(2), Dec. 23, 2008 (the TVPRA was amended "by inserting '(or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter)' after 'perpetrator'"). This amendment to our nation's human trafficking legislation necessitated a paradigm shift in the music and entertainment industry. Since this amendment to the TVPRA, some businesses have elected to comply with § 1595, as amended, while others have chosen not to comply.

The significance of this change in the statutory language is supported by well-established principles of statutory interpretation. As a general rule, when interpreting a statute, one must "consider not only the bare meaning of the critical word or phrase but also its placement and purpose in the statutory scheme." *Holloway v. United States*, 526 U.S. 1, 6 (1999) (internal citation

and quotations omitted); *see also Williams v. Taylor*, 529 U.S. 362, 364 (2000) ("In light of the cardinal principles of statutory construction that courts must give effect to every clause and word of a statute."). There is "a canon of construction that remedial statutes should be liberally construed." *Peyton v. Rowe*, 391 U.S. 54, 65 (1968). This canon of statutory construction is especially applicable to the TVPRA considering that the language of 18 U.S.C. §1595(a) was amended in 2008 to be even broader, for when a "statute is remedial in nature, its terms must be construed in a liberal fashion." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 499 (1985).

## 2. Defendant Red Light Knowingly Benefitted Financially in Violation of § 1595

The Congressionally mandated mechanism to civilly enforce the TVPRA is explicitly stated in § 1595. Since 2008, victims of sex trafficking have been empowered to bring civil claims against any entity that financially benefits from what they should have known was a sex trafficking venture. The Plaintiffs have plausibly alleged this Defendant knew or should have known it financially benefitted from their participation in a sex trafficking venture. *See* Plaintiffs' First Amended Complaint Referenced as Ex. "A" at ¶¶ 17–18, 30, 54 –72, 75, 203–204, 209–212. Defendant Red Light, while managing Bassnectar, profited from their business venture and relationship with him and from the shows and concerts he performed, some of which were also promoted and managed by Red Light, all while Bassnectar and the other Defendants were in violation of the TVPRA. Simply put, the Plaintiffs' theory of beneficiary liability related to Defendant Red Light is expressed in their Amended Complaint as follows: "Defendants' employees and agents had actual knowledge or should have known that they were facilitating and participating in a scheme to profit from a venture involved in commercial sex acts with minor children." *Id* at ¶ 211. As alleged, Moving Defendant's knew or should have known of, *inter alia*, Bassnectar utilizing his fame, fortune, celebrity, live events, and "philanthropic" AmBASSadors

program to recruit and groom underage female fans for the ultimate purposes of sexual abuse and manufacture of child pornography. *Id* at ¶¶ 54 – 68.

Since 2008 there have been at least three distinct causes of action under § 1595: (1) § 1595 perpetrator trafficking claims against a person who directly violates § 1591(a)(1); (2) § 1595 perpetrator financial beneficiary claims against a person who directly violates § 1591(a)(2); and (3) § 1595 financial beneficiary claims against a civil defendant who has not violated § 1591 at all, but who "knowingly benefits, financially or by receiving anything of value from participation in a venture which that *person knew or should have known* has engaged in an act in violation of this chapter." *See* 18 U.S.C.A. § 1595(a) (emphasis added).

To state either a perpetrator trafficking claim or a perpetrator financial beneficiary claim, a victim must allege actual knowledge and knowing participation in the sex trafficking venture itself because the plaintiff must prove the criminal violation of § 1591. She must prove the defendant is a perpetrator. A perpetrator trafficking claim requires knowing participation in the direct sex trafficking activities listed in § 1591(a)(1). A perpetrator financial beneficiary claim requires allegations the defendant "knowingly assist[ed], support[ed], or facilitate[ed]" the direct sex trafficking violation of § 1591(a)(1) and financially benefitted therefrom.

A financial beneficiary claim however, as alleged in this case with respect to Defendant Red Light, differs from the perpetrator claims in important ways. In the 2008 amendment to the TVPRA, Congress determined that civil liability would attach to a financial beneficiary if that person or entity knew or should have known the venture in which it was engaged involved a violation of the TVPRA. A financial beneficiary claim, therefore, need not allege knowing assistance or actual knowledge that the venture in which it participated violated the TVPRA, only that the entity should have known the venture from which it benefitted violated the TVPRA. By

7

providing an explicit constructive knowledge standard, Congress determined the definition of "participation in a venture" from § 1591(e)(6) did not apply to financial beneficiary claims under § 1595. Thus, a financial beneficiary claim has three elements: (1) a knowing benefit; (2) participation in a venture; (3) that the person or entity knew or should have known the venture engaged in a violation of the TVPRA. *See* 18 U.S.C. § 1595(a).

The availability of both a financial beneficiary claim and a perpetrator financial beneficiary claim has created confusion as litigants have stretched for cites from the scant case law applying the novel statutory scheme. However, the distinction between the knowledge requirement in a perpetrator claim as compared to a financial beneficiary claim is significant in this case. Criminal cases under the TVPRA such as *United States v. Afyare*, 632 F. App'x 272, 286 (6th Cir. 2016) are inapposite to civil financial beneficiary claims because in *Afyare* the Sixth Circuit considered only the type of participation which Congress criminalized under § 1591(a)(2). As discussed, perpetrator claims alleging a criminal violation of § 1591(a)(1)–(2) do require actual knowing participation in the sex trafficking venture. A financial beneficiary claim does not require actual knowing participation in the sex trafficking venture.

Indeed the reliance of Moving Defendant on the *Afyare* case, which is a criminal, not civil, case, is quite telling. In fact, nowhere in their briefing does Moving Defendant discuss, attempt to distinguish, or even cite to *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959 (S.D. Ohio Oct. 7, 2019), a civil case in this very jurisdiction dealing with civil liability under the TVPRA for a defendant such as Red Light. In *M.A.*, the corporate defendants' motions to dismiss were denied when they advanced essentially identical arguments to those of Moving Defendant. The court in *M.A.* distinguished *Afyare* especially given its reliance on criminal, and not the more "salient" civil, concepts in the law. *M.A.*, 425 F. Supp. at 969.

In *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 959, 965–66 (S.D. Ohio 2019), the court acknowledged that "collecting money through sponsorships, licensing, grants, [and] publicity" satisfied the "knowing benefit" element of the § 1595(a) standard. *Wyndham Hotels*, 425 F. Supp. at 966 (quoting *Gilbert v. United States Olympic Comm.*, 423 F. Supp. 3d 1112, 1138–1139 (D. Colo. 2019).[2] Further, in *M.A.* the court held that "[i]n the absence of a direct association, Plaintiff must allege at least a showing of a continuous business relationship between the trafficker and the [other entity] such that it would appear that the trafficker and the [other entity] have established a pattern of conduct or could be said to have a tacit agreement." *Id.* at 970. The court in *M.A.* determined that the plaintiff made sufficient allegations to survive a Motion to Dismiss and that, in fact, a plaintiff need not allege knowledge of a specific or particular sex trafficking venture. *Id.* at 970 – 71 **("Having found that 'participation' under § 1595 does not require actual knowledge of participation in the sex trafficking itself, this Court must then examine whether there was 'participation in a venture' here. . . . Defendants need not have actual knowledge of the sex trafficking in order to have participated in the sex trafficking venture for civil liability under the TVPRA, otherwise the 'should have known' language in § 1595(a) would be meaningless.")** (emphasis added).

This is precisely what Plaintiffs have alleged here as it relates to Moving Defendant and Bassnectar and the other Defendants. *See* Plaintiffs' FAC at ¶¶ 30, 64-68, 201 – 204, and 210 – 12. Similar results have occurred in other jurisdictions as well. *See A.B. v. Marriott Int'l, Inc.*, 455 F. Supp. 3d 171, 192 ("we are persuaded the clear language of section 1595 favors the approach taken by Judge Marbley [in *M.A.*] focusing on a hotel's possible civil liability best conforms to Congress's intent in amending the Act to include a civil remedy provision[.]")

---

[2] The *Wyndam Hotels* court also held that the Plaintiff's allegation that defendant Wyndam Hotels' rental of rooms to a human trafficker constituted a knowing benefit for purposes of § 1595(a). *Wyndam Hotels*, 425 F. Supp. at 966.

Red Light benefitted from its participation in managing, promoting, recruiting, and profiting off the success of the Bassnectar brand which was a continuous business relationship. Therefore, by knowingly receiving a benefit, financial and otherwise, as a participant in a venture with Bassnectar and the remaining Defendants, Defendant Red Light's conduct, as alleged in Plaintiffs' FAC, satisfies the first two elements of civil liability under § 1595 of the TVPRA.

   i. **Moving Defendant's Unsupported Claim That They Did Not Represent Defendant Bassnectar Is Of No Moment At This Stage In The Litigation.**

Plaintiffs' FAC sufficiently pled factual allegations that Red Light participated in a business venture that it knew or should have known was engaged in sex trafficking under the TVPRA of which Plaintiffs were the victims. The FAC explicitly alleges that Red Light had a continuous business relationship with Bassnectar that enabled Bassnectar to engage in predatory behavior toward underage girls during the times that each Plaintiff was harmed. See Ex. A at ¶ 30. As previously addressed, "such a motion [to dismiss] should not be brought as "a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958-59 (6th Cir. 2005). When presented with a motion to dismiss, a court must construe the complaint in the light most favorable to the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). Red Light seeks to change the standard for a Motion to Dismiss to one akin to a Motion for Summary Judgement, but cannot get around the fact that Plaintiffs stated the necessary information in their FAC.

Red light's improper challenge at this stage to Plaintiffs' factual allegations are example of why the case should proceed to the discovery phase. Red Light claims that they only first began representing Bassnectar in 2017. This is inaccurate. Red Light's own website suggests they were promoting, supporting and managing Bassnectar and his events and shows for years prior to 2017,

all while Bassnectar was engaged in sex trafficking, including the sex trafficking of Plaintiffs.[3] Red Light's own website, makes clear it was promoting Bassnectar's forthcoming albums and shows as early as 2014. Red Light attacks Plaintiff's well plead and supported FAC without producing anything beyond their own hollow and self-serving claims. At this stage, and based on the allegations made in Plaintiff's FAC, the case against Red Light must proceed forward with discovery.

### 3. Defendant Red Light Knew or Should Have Known of their Respective Participation in a Sex Trafficking Venture

Moving Defendant misconstrues the legal standard of knowledge the Plaintiffs must allege in this case. The legal standard stated in *Noble v. Weinstein*[4] and cited by Defendant Red Light is not applicable to this case. The source of the appropriate legal standard in this case is 18 U.S.C. § 1595, as cited in the title of Count Two of the Plaintiffs' Amended Complaint and as outlined in *M.A.* and *A.B.* Defendant Red Light is liable for Plaintiffs' damages if it: (1) knowingly benefitted; (2) from participation in a venture; (3) that it knew *or should have known* engaged in sex trafficking. 18 U.S.C. § 1595(a) (emphasis added).

*Noble* is inapposite because the plaintiff in *Noble* did not allege that any defendant in that case "should have known" anything. *Noble* brought only perpetrator claims against the defendants in that case.[5] The plaintiff in *Noble* did not allege a single financial beneficiary claim under § 1595.

---

[3] *See* "Artist Bio" *available at*
*https://web.archive.org/web/20170606003125/https://www.redlightmanagement.com/artists/bassnectar/* ("In 2014, Bassnectar shows no signs of slowing down. On June 24, he will release his follow-up record, Noise vs Beauty, with features from Rye Rye, Fashawn & Zion I, and Donnis among others. Lorin will also kick off the summer with two sold out shows at Red Rocks, his fourth sold-out appearance in as many years. Additionally he will play headlining sets at Tomorrowland, The Hudson Project, North Coast Music Festival, TomorrowWorld, EDC New York and Paradiso Festival, among others."). It should be noted here that Moving Defendant has done nothing to support their claim that they did not represent or promote Bassnectar at times relevant to the FAC and has not submitted any materials outside the pleadings. Given this, the Court must rely on the allegations contained in Plaintiffs' FAC.
[4] 335 F. Supp. 3d 504 (S.D.N.Y. 2018).
[5] The counts pled in *Noble* were specifically: (1) "Violation of 18 U.S.C. § 1591"; (2) Participation in a Venture in Violation of 18 U.S.C. § 1591"; (3) Participation in a Venture in Violation of 18 U.S.C. § 1591"; (4) Aiding and

As discussed above, perpetrator claims are separate and distinct from financial beneficiary claims. *See, e.g., Barrientos v. CoreCivic, Inc.*, 332 F. Supp. 3d 1305, 1312 (M.D. Ga. 2018) ("...Plaintiffs' Complaint arguably alleges a cause of action against CoreCivic as both a perpetrator and as a financial beneficiary."). Because the plaintiffs' claims in *Noble* alleged only that the defendants were the actual perpetrators of violations of § 1591, the plaintiff had to prove those violations against the defendants. To do so, § 1591, a criminal statute, explicitly requires a showing of at least "reckless disregard."

Section 1595 explicitly does not require a showing of "reckless disregard" and does not restrict civil suits only against defendants who have actually violated § 1591 themselves. "Reckless disregard" and "should have known" are not interchangeable levels of scienter. Reckless disregard is conscious indifference, while "should have known" is the well-known standard of knowledge, also referred to as constructive knowledge. *See Brewster v. La Quinta Inns, Inc.*, 142 F.3d 432 (6th Cir. 1998) (analyzing a hotel's duty of care under Louisiana negligence law, the Sixth Circuit explained the standard as "should have known (i.e., had constructive knowledge)"). Constructive knowledge is the "[k]nowledge that one using reasonable care or diligence should have, and therefore that is attributed by law to a given person." *Constructive Knowledge*, Black's Law Dictionary (11th ed. 2019).

A defendant's knowledge of the nature of the sex trafficking venture is required for a criminal conviction under § 1591. This *mens rea* standard is referenced explicitly in the definition of § 1591(e)(4): "The term 'participation in a venture' means knowingly assisting, supporting, or facilitating a violation of subsection (a)(1)." All of the definitions in § 1591 are expressly limited

---

Abetting Violation of 18 U.S.C. § 1591"; (5) Aiding and Abetting Violation of 18 U.S.C. § 1591". See Pl. Ex. 3, Compl., *Noble v. Weinstein*, No. 1:17-cv-09260-RWS (Feb. 20, 2018).

to the criminal context at issue in § 1591 by subsection § 1591(e) which begins, "In this *section*..."
(emphasis added).

Furthermore, while courts at times may "presume that the same term has the same meaning when it occurs here and there in a single statute," that is not an "irrebuttable" presumption, but instead "readily yields whenever there is such variation in the connection in which the words are used as reasonably to warrant the conclusion that they were employed in different parts of the act with different intent." *See Envtl. Def. v. Duke Energy Corp.*, 549 U.S. 561, 574 (2007) (quoting *Atlantic Cleaners and Dyers, Inc. v. United States*, 286 U.S. 427, 433 (1932)). The Supreme Court has unanimously agreed that it "understand[s] that '[m]ost words have different shades of meaning and consequently may be variously construed, not only when they occur in different statutes, but when used more than once in the same statute or even in the same section.'" *Id.* (quoting *Atlantic Cleaners and Dyers, Inc. v. United States*, 286 U.S. at 433). The Supreme Court further explained:

> The point is the same even when the terms share a common statutory definition, if it is general enough, as we recognized in *Robinson v. Shell Oil Co.*, 519 U.S. 337, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997). There the question was whether the term "employees" in § 704(a) of Title VII of the Civil Rights Act of 1964 covered former employees. Title VII expressly defined the term "employee," 42 U.S.C. § 2000e(f), but the definition was "consistent with either current or past employment," 519 U.S., at 342, 117 S.Ct. 843, and we held that **"each section" of Title VII "must be analyzed to determine whether the context gives the term a further meaning that would resolve the issue in dispute,"** *id.*, at 343–344, 117 S.Ct. 843.

*Id.* (emphasis added). These principles are especially true when "the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case. Our inquiry must cease if the statutory language is unambiguous and 'the statutory scheme is coherent and consistent.'" *Robinson*, 519 U.S. 337, 340 (1997) (quoting *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 240 (1989)).

13

The plain language of § 1595 irrefutably demonstrates that the definition of "participation in a venture" from § 1591(e)(4) cannot apply to "participation in a venture" as used in § 1595(a). If the definition from § 1591 did apply, civil liability would be limited only against a criminal perpetrator and most of § 1595(a)—everything in parentheses—would be rendered meaningless. That is because if a person knowingly supports or facilitates a violation of § 1591(a)(1) as the definition in § 1591(e)(4) provides, that person has criminally violated § 1591(a)(2) and is in fact a perpetrator. Thus, if the definition from § 1591 applied to § 1595, a civil cause of action would only be available against "the perpetrator" and the parenthetical in § 1595(a) would mean nothing. This interpretation cannot apply because courts must "avoid a reading which renders some words altogether redundant*." Gustafson v. Alloyd Co.*, 513 U.S. 561, 574 (1995). For example,

> If "communication" included every written communication, it would render "notice, circular, advertisement, [and] letter" redundant, since each of these are forms of written communication as well. Congress with ease could have drafted § 2(10) to read: "The term 'prospectus' means any communication, written or by radio or television, that offers a security for sale or confirms the sale of a security." **Congress did not write the statute that way, however, and we decline to say it included the words "notice, circular, advertisement, [and] letter" for no purpose.**

*Gustafson v. Alloyd Co.*, 513 U.S. 561, 574–75 (1995) (emphasis added). *See also United States v. Ballinger*, 395 F.3d 1218, 1236 (11th Cir.2005) ("statutes should be construed so that 'no clause, sentence, or word shall be superfluous, void, or insignificant.'" (quoting *United States v. Aldrich*, 566 F.3d 976, 978–79 (11th Cir. 2009)). The words "should have known" in § 1595(a) were not intended by Congress to be meaningless.

Defendant Red Light repeatedly elides the specific and clear differences between criminal liability and associated civil claims against perpetrators under § 1591 and civil liability of beneficiaries under § 1595. In order to state a claim, Plaintiffs must merely allege that Defendants

14

should have known they were benefitting financially from a venture with someone who was involved in sex trafficking. Plaintiffs have so alleged.

Moving Defendant also argues Plaintiffs cannot show "some participation in the sex trafficking act itself[.]" *Noble v. Weinstein*, 335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018). As discussed herein, in order to state a financial beneficiary claim, Plaintiffs do not have to show that Defendant Red Light participated in any sex trafficking act itself. Again, Defendant Red Light attempts to blur the lines between the civil and criminal statutes and very different cases.

The two cases from the Southern District of New York involving Harvey Weinstein (the "Weinstein Cases") are completely inapposite to the case at hand, particularly with regard to the standards of knowledge or participation in a sex trafficking venture required for civil liability in this case.[6] As discussed herein regarding *Noble*, the Weinstein Cases allege only perpetrator claims, which require alleging a direct violation of § 1591, criminal conduct. A direct violation of § 1591 requires knowledge or reckless disregard. A financial beneficiary claim under § 1595, however, requires only that the financial beneficiary "should have known" (or had constructive knowledge) the venture was violative of § 1591, i.e., that the venture involved unlawful sex trafficking. There are no claims in the Weinstein Cases that allege a defendant is civilly liable for the criminal conduct of another solely because the defendant benefitted financially from a venture the entity should have known was involved in sex trafficking.

Moving Defendant also points to *H.G. v. Inter-Continental Hotels Corporation*, 489 F. Supp. 3d 697 (E.D. Mich. 2020) to support their claim that a participant in a sex trafficking venture must have knowledge of the specific sex trafficking at issue. *H.G.* involved trafficking claims against a hotel franchisor where the plaintiff failed to sufficiently allege control by the franchisor

---

[6] *See Noble v. Weinstein*, No. 1:17-cv-09260-RWS (filed Feb. 20, 2018); *Canosa v. Ziff*, No. 1:18-cv-04115-PAE (filed Oct. 4, 2018).

of its franchisee hotels. The plaintiff's claims in that matter were also largely time-barred as they arose prior to the 2008 amendment of the TVPRA. In its analysis of the TVPRA, however, the court fell into the same trap as the court in the Weinstein cases by incorrectly analyzing the *mens rea* element of the statute and essentially eviscerating the "should have known" standard. *See M.A.*, 425 F. Supp. at 971 ("Defendants need not have actual knowledge of the sex trafficking in order to have participated in the sex trafficking venture for civil liability under the TVPRA, otherwise the 'should have known' language in § 1595(a) would be meaningless."); *See A.B.*, 455 F. Supp. 3d at 192 ("we are persuaded the clear language of section 1595 favors the approach taken by Judge Marbley [in *M.A.*] focusing on a hotel's possible civil liability best conforms to Congress's intent in amending the Act to include a civil remedy provision[.]"). Instead the analysis in *M.A.*, and as adopted in *A.B.* should control here.

Defendant Red Light argues that Plaintiffs must allege that Red Light knew or should have known about a particular or specific sex-trafficking venture—and that it was "impossible" for Red Light to know of the sex trafficking. While the holding in *M.A.* runs counter to this claim, the reality is that Plaintiffs have alleged that Defendant Red Light knew or should have known about the sex trafficking *of Plaintiffs* and other similarly situated minor females who were recruited and groomed through Bassnectar's operation which was supported and aided by Moving Defendant. Defendant Red Light erroneously alleges that *all* of Bassnectar's exploitative conduct was highly secretive. Plaintiffs have alleged that Bassnectar, Carlos Donohue, Chris Madrigal, "Bri," "Dom," John Does 1 – 10, and other employees, agents, or servants of Defendants, including Red Light, all knowingly participated in a venture to traffic Plaintiffs and other underage girls for the purpose of having sexual intercourse. *See* Ex. "A" ¶¶ 58–64, 68.

This venture was organized and operated both in secret and in broad daylight at shows, concerts, and venues that Red Light managed and promoted by a person that was under the direct management, care, control, and supervision of Moving Defendant, considering that Moving Defendant helped manage the career of Bassnectar. Plaintiffs were flown to concerts, given backstage passes, put up in hotels, and then paid for sex with Bassnectar with funds from the Defendants. Plaintiffs have sufficiently alleged facts which illustrate that Defendant Red Light, who benefitted financially from its partnership and participation in this business venture with Bassnectar and the Bassnectar Companies, knew or should have known that the *specific* sexual exploitation and trafficking of Plaintiffs was occurring. At the same time, Bassnectar's suspicious, guarded conduct, including directly recruiting and communicating openly with minor females about personal matters, inviting minor females to his shows his hotel room, providing funds and tickets to minor females, hiding minors in hotel rooms or instructing them to try and conceal communications, should have been a red flag to the Defendants who were enabling Bassnectar to hide his trafficking from the public. Plaintiffs have pled specific and sufficient facts to demonstrate that trafficking of underage Plaintiffs for commercial sex acts was known or should have been known to Red Light and the remaining Defendants.

### 4. __The First Amended Complaint has put Defendant Red Light on specific Notice of the precise factual allegations and claims against Red Light.__

In addition to their specific TVPRA arguments, Defendant Red Light contends Plaintiff's FAC is "disorganized," largely focusing on certain areas where the Defendants are "grouped" together, therefore consisting of "shotgun pleadings." Moving party attempts to conflate the legal standard of "shotgun pleadings" with a more heightened standard used in fraud cases. *See, e.g., Gamrat v. Allard*, 320 F. Supp. 3d 927, 942 (discussing "group pleading" as a term of art in the context of fraud cases and the heightened pleadings standards imposed by Rule 9(b), even though

the Plaintiff does not allege fraud in this matter); *United States ex rel. Takemoto v. Nationwide Mut. Ins. Co.*, 674 Fed. Appx. 92, 95 (2d Cir. 2017) (discussing "group pleading" as a term of art in fraud cases and noting that the statutory language at issue required individualized pleading, unlike some fraud statutes which do not).

Plaintiff's FAC puts Red Light on adequate notice of the claims against them and should not be dismissed as a "shotgun pleading" in violation of Federal Rule 8(a)(2) or Rule 10(b) of Civil Procedure. "'Shotgun' pleadings, calculated to confuse the "enemy," and the court, so that theories for relief not provided by law and which can prejudice an opponent's case, especially before the jury, can be masked, are flatly forbidden by the [spirit], if not the [letter], of these rules." *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015) "A dismissal under Rules 8(a)(2) and 10(b) is appropriate where "it is *virtually impossible* to know which allegations of fact are intended to support which claim(s) for relief." *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313,1325 citing *Anderson,* 77 F.3d at 366).

For example, in *Lee v. Ohio Education Association*, the appellant listed seven causes of action and concluded the sentence with "and any other state-law cause of action that offers relief." *Lee v. Ohio Education Association*, 951 F.3d 386, 392. While the court in *Lee* dismissed the claims, the court ultimately set aside these deficiencies and relied on the claim failing as a matter of law under conversion theory to ultimately dismiss the claims. *Id.* In *Weiland*, despite the court recognizing a portion of the complaint as being "not a model of efficiency or specificity," when it referenced multiple paragraphs in the complaint without specification of which ones supported the claim, the court ultimately held that the complaint as a whole "adequately put Fleming and Johnson on notice of the specific claims against them and the factual allegations that support those claims." *Weiland*, at 1324.

Red Light is on notice of the specific facts that give detailed information about each party involved in the lawsuit, defining the business relationships of each Defendant with Bassnectar, including Red Light. Similar to the Complaint in *Weiland*, Plaintiff's FAC adequately puts the Defendant Red Light on notice with claims that are factually supported throughout. Plaintiff's FAC gives specific details of how Bassnectar was able to traffic minor girls as a part of his business venture with the Defendants (including Red Light), describes how each Plaintiff was trafficked one by one, and gives several examples throughout how and why the Defendants either knew or should have known the venture was engaged in sex trafficking. *Ex. 1* at ¶¶ 30, 17 – 18, 64 – 68, 72, 75, 191, 201 – 204, 210 – 212. Unlike *Lee,* Plaintiff's FAC goes on to clearly list one cause of action, Count II- Benefitting from a Sex Trafficking Venture in Violation of the TVPRA that Red Light is clearly aware of. See ex. A ¶¶ 198-213.

Additionally, Plaintiff's FAC is not "calculated to confuse the 'enemy'" as Red Light claims. Defendant Red Light's argument concerning the different roles the Defendant companies played in Bassnectar's career is immaterial for the reasons stated above concerning Red Light's beneficiary liability under § 1595 of the TVPRA. Plaintiffs' well-pled FAC alleges specific and plausible facts illustrating that all Defendant businesses were engaged in a venture they knew or should've known was engaging in sex trafficking. The fact that Interactive Giving Fund had a different role with respect to the venture—as outlined in Plaintiffs' FAC—than Red Light does not negate the fact that Red Light had a role in the venture as well. Plaintiffs specifically name Defendant Red Light as the corporation that managed, promoted, recruited, and profited from its venture with Bassnectar and produced large festivals where Bassnectar performed—festivals, concerts, and events Bassnectar also used to solicit, target, and sexually exploit Plaintiffs and other underage girls. *See* Ex. "A" ¶¶ 30, 54, 60, 64-75, 201–204, 209–213.  While Red Light may be

confused about the TVPRA, Plaintiffs have put Defendant Red Light on sufficient, unquestionable notice of the conduct for which it is liable with no desire to confuse anyone.

Finally, what Red Light misconstrues as improper shotgun pleadings do not prejudice Red Light at this phase of litigation, or any time before trial. The parties will have a full and fair opportunity to conduct discovery where even more specific details (that Red Light likely possesses already) of Red Light's participation and financial benefit in what it should have known was Bassnectar's sex trafficking venture.

### 5. Alternative Relief

To the extent the Court has any reservations about any aspect of the Plaintiffs' First Amended Complaint and is inclined to grant some or all of the Movants' requested relief, Plaintiffs respectfully request that the Court grant any dismissals without prejudice and with leave to amend.

### IV. CONCLUSION

The Plaintiffs' First Amended Complaint thoroughly and robustly states the factual bases for their claims and otherwise properly states their claim for relief pursuant to § 1595 of the TVPRA. To the extent the Court has any reservations about any aspect of the Plaintiffs' First Amended Complaint and is inclined to grant some or all of the Movants' requested relief, Plaintiffs respectfully request that the Court grant any dismissals without prejudice and with leave to amend. However, as the Plaintiffs have asserted throughout this Response, Defendant Red Light's requests for dismissal are unfounded and premature and contradicted by the face of the First Amended Complaint. Accordingly, their motion to dismiss is due to be denied in its entirety.

WHEREFORE, Plaintiffs move for an order denying Red Light Management's Motion to Dismiss Plaintiff's Amended Complaint.

RESPECTFULLY SUBMITTED:

**MILLER LAW OFFICES**

/s/ Phillip Miller
Phillip Miller, #006873
631 Woodland Street
Nashville, TN  37206
(T): 615-356-2000
(F): 615-242-1739
pmiller@seriousinjury.com

**LAFFEY, BUCCI & KENT, LLP**

/s/ Brian Kent
Brian Kent*
M. Stewart Ryan*
Alexandria MacMaster*
LAFFEY, BUCCI & KENT, LLP
1100 Ludlow Street, Suite 300
Philadelphia, PA 19107
(T): (215) 399-9255
(F): (215) 241-8700
bkent@lbk-law.com
sryan@lbk-law.com
amacmaster@lbk-law.com
*admitted pro hac vice*

*Attorneys for the Plaintiffs*

Dated: August 11, 2021

21