**IN THE UNITED STATE DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| RACHEL RAMSBOTTOM | ) | |
| ALEXIS BOWLING | ) | |
| JENNA HOUSTON | ) | |
| JANE DOE #1 | ) | CIVIL ACTION |
| | ) | |
| Plaintiffs | ) | No. 3:21-cv-00272 |
| | ) | |
| v. | ) | JURY TRIAL DEMANDED |
| | ) | |
| LORIN ASHTON, | ) | |
| AMORPHOUS MUSIC, INC., | ) | |
| BASSNECTAR TOURING, INC., | ) | |
| C3 PRESENTS, L.L.C., | ) | |
| INTERACTIVE GIVING FUND, | ) | |
| GNARLOS INDUSTRIES, LLC, | ) | |
| CARLOS DONOHUE; ABC | ) | |
| CORPORATIONS, ONE THROUGH | ) | |
| TEN (said Names Being Fictitious), | ) | |
| JOHN DOES, ONE THROUGH TEN | ) | |
| (said Names Being Fictitious) | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR RESPONSE IN OPPOSITION TO DEFENDANTS AMORPHOUS MUSIC, INC.'S AND BASSNECTAR TOURING, INC.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

## I.    INTRODUCTION

This case arises from the solicitation and sexual victimization of underaged Plaintiffs who were coerced and/or defrauded into engaging in commercial sex acts and the manufacture and dissemination of child pornography. Plaintiffs were targeted, groomed, and sexually exploited by electronic dance music ("EDM") musician "Bassnectar" (Defendant Lorin Ashton), who utilized his fame, shows, and organizations, including Defendants Amorphous. Music, Inc. (hereinafter

"AMI") and Bassnectar Touring, Inc. (hereinafter "BTI"), to engage in recruitment of underaged females, including Plaintiffs, for the purposes of grooming and, ultimately, sexually abusing, victimizing, and trafficking.

Bassnectar used AMI and BTI (hereinafter "Moving Defendants") and others to recruit minor female fans for the purpose of sexual abuse and trafficking. *See* A true and correct copy of Plaintiffs' FAC attached hereto as Exhibit "A" at ¶¶ 26–27, 17–18, 64–68, 72, 75, 191, 201–204, 210–212.

## II.    ARGUMENT

### A.  Defendants AMI's and BTI's Motion to Dismiss: Fed. R. Civ. P. 12(b)(2)

#### i.  Standard of Review

As it relates to jurisdiction, the principles espoused in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), remain canonical. Under *International Shoe*, a court's authority depends on the defendant having such "contacts" with the forum State that "the maintenance of the suit" is "reasonable, in the context of our federal system of government," and "does not offend traditional notions of fair play and substantial justice." *Id.* at 316–317. Jurisdiction may be general or specific. *See Ford Motor Co. v. Montana Eighth Judicial Dist.*, 141 S. Ct. 1017, 1024 (U.S. 2021).

Under general jurisdiction, a defendant may be sued for virtually any claim, even if unrelated to the defendant's contacts with the forum provided the defendant's activities in can be characterized as "continuous and systematic" contacts. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984).

A lesser standard is required to sustain the exercise of specific jurisdiction, and the test to be met is whether the defendant has "purposely avail[ed] itself of the privilege of conducting

2

activities within the forum state." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–75 (1985). A court can exercise specific jurisdiction over a non-resident defendant if the defendant "purposely directs [his] activities to the forum, and the litigation results from the alleged injuries that arise out of or relate to those activities." *Hughes v. Balemaster, Inc.*, 652 *F.Supp.* 1350, 1351–52 (E.D. Mo. 1987). The defendant must "purposefully avail[] itself of the privilege of conducting activities" in the forum such that the defendant can reasonably anticipate being sued in this State. *Burger King Corp.*, 471 U.S. at 75.

Furhtermore, in this case, because Plaintiffs have brought federal statutory claims under 18 U.S.C. §§ 1591, 2252 and 2252A, which provide for nationwide service of process and, therefore, the personal jurisdiction analysis is governed by the Fifth Amendment's Due Process Clause and whether the Defendants have sufficient contacts *with the United States* and not specifically with Tennessee. It is well settled that "[w]hen a federal statute provides for nationwide service of process, it becomes the statutory basis for personal jurisdiction." *Kammona v. Onteco Corp.*, 587 F. App'x 575, 579 (11th Cir. 2014) (quoting *U.S. Sec. & Exch. Comm'n v. Carrillo*, 115 F.3d 1540, 1544 & n.4 (11th Cir. 1997)). When the plaintiff's claims are brought under such federal statutes, the statutory "nationwide service-of-process provision grants district courts nationwide personal jurisdiction over <u>any defendant that has minimum contacts with the United States</u>. . . . In such an instance, the constitutional limits of the court's jurisdiction are fixed by the Due Process Clause of the Fifth Amendment, rather than the Fourteenth Amendment, and <u>the applicable forum for a minimum contacts analysis is the United States.</u>" *Kammona*, 587 F. App'x at 579-80

It is "black-letter law" that jurisdiction over corporations, which can act through their agents (be those individuals or other corporations), may be established by the actions or conduct of their agents in any particular forum. *International Shoe*, 326 U.S. 310, 316 (1945); *Grand*

*Entertainment Group v. Star Media Sales, Inc.,* 988 *F.*2d 476, 483 (3d Cir. 1993).

Thus, personal jurisdiction may be asserted against a defendant based on a single act in the forum and regardless of whether the tortious act is negligent or intentional. *Id*. A nonresident defendant whose agent commits a tortious act in any forum can reasonably anticipate being haled into court in that same forum based on the commission of that act. *Rosenblatt v. American Cyanamid Co.*, 86 S.Ct. 1, 4 (1965) (citing *Hess v. Pawloski*, 274 U.S. 352 (1927)).

### ii.  This Court maintains jurisdiction over Defendants AMI and BTI

As alleged in Plaintiffs' FAC, and specifically with regard to AMI: "Bassnectar is the founder, chairman, figurehead, chief executive, and icon of Amorphous Music, Inc. Amorphous had a continutous business relationship with Bassnectar that enabled Bassnectar to engage in predatory behavior toward underage girls during the times that each Plaintiff was harmed." *See* Ex. "A" at ¶ 26. Additionally, the FAC alleges, with respect to BTI: "Bassnectar is the founder, chairman, figurehead, chief executive, and icon of Bassnectar Touring Inc. Bassnectar utilized Bassnectar Touring to target, recruit, and ultimately victimize young girls, like Plaintiffs, for sexual exploitation. Bassnectar Touring had a continuous business relationship with Bassnectar that enabled Bassnectar to engage in predatory behavior toward underage girls during the times that each Plaintiff was harmed." *Id.* at 27. In this regard the actions of Bassnectar were the actions of AMI and BTI, particularly when it came to his predatory behavior and utilizing Moving Defendants to target and ultimately abuse young female fans such as Plaintiffs. In addition, it is apparent that Bassnectar, his companies, and even the other corporate defendants that support Bassnectar and his enterprise, all do business throughout the United States.

First, in this case, Plaintiffs have brought federal statutory claims under (1) the TVPRA, 18 U.S.C. § 1591 and (2) the federal child pornography statute, 18 USC §§ 2252 and 2252A. 18

U.S.C. § 2255(a) specifically authorizes victims *who were minors* at the time certain sex trafficking and child pornography offenses were committed to bring civil actions for such criminal violations, including for violations of the very statutes on which Plaintiffs assert their claims in this action (i.e., 18 U.S.C. § 1591 and 18 U.S.C. § 2252/2252A).[1] Also, 18 U.S.C. § 2255(c)(2) provides that "[i]n an action brought under subsection [2255](a), process may be served in any district in which the defendant -- (A) is an inhabitant; or (B) may be found." And it is well accepted that this statutory language authorizes nationwide service of process. *C.T. v. Red Roof Inns, Inc.*, 2021 WL 2942483, *7 (S.D. Ohio July 1, 2021) ("18 U.S.C. § 2255 . . . confers nationwide service of process for minors bringing TVPRA suits" under 18 U.S.C. §1591); *Turner v. Sedgwick Claims Mgmt. Servs., Inc.*, 2015 WL 225495, at *4 (N.D. Ala. Jan. 16, 2015) (Coogler, J.) (similar language in ERISA § 502(e)(2) authorizes nationwide service and "effectively preclude[s] virtually all objections based on personal jurisdiction" in case against Missouri corporate defendant).

For these reasons, it is clear that all Defendants have sufficient minimum contacts with the United States such that this Court has personal jurisdiction over Defendants to adjudicate Plaintiffs' claims under 18 U.S.C. § 1591 and 18 U.S.C. § 2252/2252A.

Alternatively, Moving Defendants knew or should have known that this systematic targeting of young girls was being perpetrated by Bassnectar, with the support and accommodation of Moving Defendants and the other Defendants, and that it was occurring at shows and concerts being scheduled, promoted, and managed by Moving Defendants. By participating in a business venture with Bassnectar (indeed a business venture designed by Bassnectar) and the remaining Defendants, Moving Defendants knowingly received a financial benefit and other things of value.

---

[1] In addition, 18 U.S.C. § 1595(a) provides a civil right of action to victims of violations of the TVPRA, including 18 U.S.C. § 1591, regardless of the victim's age at the time of the violation.

*Id*. at ¶¶ 54–68, 72, 191, 201–204, 210–212. Therefore, both AMI and BTI received a knowing benefit from their participation in a venture that they knew or should have known was engaged in sex trafficking and other offenses in violation of the Trafficking Victim Protection Reauthorization Act (TVPRA).

Plaintiffs have alleged that Bassnectar, AMI, BTI, and their agents all knowingly participated in a venture to traffic Plaintiffs and other underage girls for the purpose of having of sexual intercourse. *See* Ex. "A" ¶¶ 54–68. This venture was organized and operated in broad daylight at shows, concerts, and venues all with the participation and assistance of Moving Defendants. This venture operated for *years* while Bassnectar was utilizing AMI, BTI, and the other Defendant Bassnectar Companies as a pipeline of new and vulnerable females to victimize. This also included numerous instances of abuse that occurred within the state of Tennessee. *Id*. at ¶¶ 74–89, 221–225.

Each and every act of abuse undertaken by Bassnectar, including those acts that took place in this judicial district are also the acts of Defendants AMI and BTI for the purposes of the FAC. It is well settled that in Tennessee, a principal may be held vicariously liable for the negligence of his or her agent, where the agent is acting within the actual or apparent scope of the agency. *Boren ex rel. Boren v. Weeks,* 251 S.W.3d 426, 432 (Tenn. 2008). Whether an agency relationship exists between two persons is a question of fact "and is determined by examining the agreement between the parties or the parties' actions." *Id.* It is nonsense for Moving Defendants to suggest that there are not any, let alone sufficient, allegations in the Plaintiffs' FAC directed at the conduct of AMI and BTI, by and through Defendant Bassnectar, its agent and figurehead, to establish jurisdiction before this Court.[2]

---

[2] Moreover, both AMI and BTI purposefully availed themselves to the forum state. "Purposeful availment" is established when the defendant's contacts with the forum "proximately result from actions by the defendant himself

### iii. To the extent that jurisdiction is not clearly established by the pleadings, this Court should order a period of jurisdictional discovery

While the allegations and supporting facts in Plaintiffs' FAC are sufficient to establish personal jurisdiction over Defendants, in the event that the Court disagrees, Plaintiff should be permitted to conduct discovery. A district court ruling on a 12(b)(2) motion before trial has the discretion to, *inter alia*, permit discovery which would aid in resolution of the motion. *Serras v. First Tenn. Bank Nat'l Ass'n.*, 875 F.2d 1212, 1214 (6th Cir. 1989).

## B. Defendantds AMI's and BTI's Motion to Dismiss: Fed. R. Civ. P. 12(b)(3)

### i. Standard of Review

A defendant may move to dismiss a claim under Fed. R. Civ. P. 12(b)(3) for improper venue. Under 28 U.S.C. § 1391(b), "the plaintiff may file [her] complaint in any forum where a substantial part of the events or omissions giving rise to the claim arose; this includes any forum with a substantial connection to the plaintiff's claim." *First of Mich. Corp. v. Bramlet*, 141 F.3d 260, 263 (6th Cir. 1998); *see also* 28 U.S.C. § 1391(b)(2). Plaintiffs are not required to file a complaint in the district where the most substantial events giving rise to the claim occurred. *See Capitol Specialty Ins. Corp. v. Splash Dogs, LLC*, 801 F. Supp. 2d 657, 671 (S.D. Ohio 2011). In other words, venue may be proper in more than one district even though most of the events

---

that create a 'substantial connection' with the forum state," and when the defendant's conduct and connection with the forum are such that he "should reasonably anticipate being haled into court there." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1263 (6th Cir. 1996) (quoting *Burker King Corp. v. Rudzewicz*, 471 U.S. 462, 474–75 (1985). This requirement can be met and personal jurisdiction established met so long as a commercial actor's efforts are purposefully directed toward residents of another state. *Compuserve*, 89 F.3d at 1264. There is no question that Bassnectar purposefully availed himself to Tennessee by regularly and repeatedly performing music in the state over the course of his career. However, both AMI and BTI, by and through its agents, including Bassnectar, also directed its business activites towards Tennessee. AMI sold Bassnectar merchandise and with BTI, scheduled, promoted, and managed concerts, shows, and music festvals for Bassnectar in Tennessee—including annual New Year's Eve concerts in Nashville (attended by Plaintiff Ramsbottom in 2012) and festivals in Memphis and Manchester. *See* Ex. "A" at ¶ 79, 83–87. Thus, Moving Defendants' commercial efforts were directed towards residents of Tennessee. The cause of action involving Plaintiff arose out of Bassnectar's solicitation and sexual abuse of Plaintiff in Tennessee. Thus, the exercise of personal jurisdiction over Moving Defendants is reasonable.

occurred in only one of the districts. *Id.* at 672. Nevertheless, "only those acts or omissions with substantial, rather than tangential, connections to a plaintiff's claims can establish venue." *Reilly v. Meffe*, 6 F. Supp. 3d 760, 765 (S.D. Ohio 2014).[3] Courts consider both the plaintiff's and defendant's activities in analyzing whether venue is proper under § 1391(b)(2). *Id.* at 767. In addressing a 12(b)(3) motion to dismiss, "[t]he Court may examine facts outside the complaint but must draw all reasonable inferences and resolve factual conflicts in favor of the plaintiff." *Good v. City of Southhaven*, No. 16-02029, 2017 WL 11316500, at *5 (W.D. Tenn. Mar. 30, 2017) (citing *Gone to the Beach, LLC v. Choicepoint Servs., Inc.,* 434 F. Supp. 2d 534, 536–37 (W.D. Tenn. 2006) (quotation marks omitted).

### ii. Venue is Proper in the Middle District of Tennessee

Defendants AMI and BTI assert that venue in the Middle District of Tennessee is improper pursuant to Fed. R. Civ. P. 12(b)(3). With regard to tortious conduct occurring in Tennessee, it is alleged in the FAC that: (1) Bassnectar solicited, enticed, and coerced Plaintiff Ramsbottom to meet him at his show in Nashville (*See* Ex. "A" at ¶ 79); (2) Bassnectar engaged in a commercial sex acts with Plaintiff Ramsbottom, who was a minor at the time, by paying her $1,000 for sex at a hotel in Memphis (*Id*. at ¶¶ 83–87); and (3) Bassnectar engaged in commercial sex acts with Plaintiff Ramsbottom, while still a minor, in a Nashville hotel for four days (*Id*. at ¶¶ 88–90). The solicitation and sexual abuse of underage Plaintiff Ramsbottom in Nashville are substantial parts of the events or omissions giving rise to Plaintiffs' claims.

"The Sixth Circuit has held that [28 U.S.C. § 1391(b)(2)] does not require the court to determine where the most substantial events giving rise to the claim occurred; rather, venue is

---

[3] "Substantiality" is intended to preserve fairness so that a defendant is not forced to defend litigation in a remote district with no relationship to the dispute. *Sazerac Co. v. Hood River Distillers, Inc.*, No. 3L12CV-79-S, 2012 WL 6645730, at *3 (W.D. Ky. Dec. 20, 2012).

proper in 'any forum with a substantial connection to the plaintiff's claim.'" *See Am. Earth Sols., LLC v. Peacock,* No. 3:13-CV-1097, 2014 WL 1007285, at *2 (M.D. Tenn. Mar 14, 2014) (quoting *First of Mich. Corp. v. Bramlet*, 141 F.3d 260, 263 (6th Cir. 1998)). Plaintiffs' FAC pleads that a substantial part of the events, which apply to all defendants and all claims, occurred in Nashville, Tennessee. Therefore, the pleaded facts properly establish venue.

### C. Defendants AMI's and BTI's Motion to Dismiss: Fed. R. Civ. P. 12(b)(6)

#### i. Standard of Review

A motion to dismiss pursuant to the Fed. R. Civ. P. 12(b)(6) challenges the legal sufficiency of a complaint specifically arguing that a plaintiff "fail[ed] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). However, such a motion should not be brought as "a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958-59 (6th Cir. 2005). When presented with a motion to dismiss, a court must construe the complaint in the light most favorable to the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008).[4] The Sixth Circuit has provided a three-step process for determining a complaint's sufficiency under 12(b)(6), in which the trial court must: (1) accept all of plaintiff's factual allegations as true; (2) draw all reasonable inferences in plaintiff's favor; and (3) determine whether the alleged facts and inferences plausibly give rise to an entitlement to relief. *Doe v. Baum*, 903 F.3d 575, 581 (6th Cir. 2018).

#### ii. Plaintiffs have sufficiently pled their claims under the Trafficking Victim Protection Reauthorization Act

---

[4] The Court is not required to accept mere legal conclusions unsupported by factual allegations, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and a complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The plausibility standard "is not akin to a probability requirement" but is a "context-specific" inquiry drawing on our "judicial experience and common sense." *Iqbal*, 556 U.S. at 678, 679, (citing *Twombly*, 550 U.S. at 556, 557) (internal quotations omitted).

The Trafficking Victim Protection Reauthorization Act (TVPRA), 18 U.S.C. § 1591, *et seq.,* criminalizes the sex trafficking of children and the sex trafficking of adults by force, fraud, or coercion. Separately, § 1595 of the TVPRA provides victims of sex trafficking with a civil remedy against the perpetrators or beneficiaries of sex trafficking. *See* 18 U.S.C. § 1595(a). Count Two of the the FAC explicitly and unequivocally states a beneficiary theory of liability against Moving Defendants pursuant to § 1595 of the TVPRA, not a perpetrator theory of liability pursuant to § 1591. *See* Plaintiffs' FAC at ¶¶ 198–213. The references to § 1591(a) in this count are directed toward the Plaintiffs' status as "victims" of human trafficking, *Id.* at ¶¶ 205–208, and Moving Defendants' participation in a venture which it knew or should have known was engaged in sex trafficking. *See Id.* At ¶ 201–204, 209–212. Despite Moving Defendants' efforts to conflate the Plaintiffs' factual allegations pursuant to their stated beneficiary liability cause of action with a perpetrator liability cause of action, the FAC clearly and sufficiently states a claim for relief under § 1595 of the TVPRA.

## 1. The Relevant History of the TVPRA

Congress passed the Victims of Trafficking and Violence Protection Act in 2000 ("TVPA"). Pub. L. No. 106–386, 114 Stat. 1466 (2000) (codified as amended in Title 22, Chapter 78, and Title 18, Chapter 77, of the U.S. Code). In 2008, 18 U.S.C. 1595(a) was intentionally amended with substantially different language that created a category of defendants that could be held liable civilly even in the absence of criminal culpability. *See* Amended Pub. L. No. 110–457, title II, § 221(2), Dec. 23, 2008 (the TVPRA was amended "by inserting '(or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter)' after 'perpetrator'"). This amendment to our nation's human trafficking legislation necessitated a

paradigm shift in the music and entertainment industry.[5] Since this amendment to the TVPRA, some businesses have elected to comply with § 1595, as amended, while others have chosen not to comply.

The significance of this change in the statutory language are supported by well-established principles of statutory interpretation. As a general rule, when interpreting a statute, one must "consider not only the bare meaning of the critical word or phrase but also its placement and purpose in the statutory scheme." *Holloway v. United States*, 526 U.S. 1, 6 (1999) (internal citation and quotations omitted); *see also Williams v. Taylor*, 529 U.S. 362, 364 (2000) ("In light of the cardinal principles of statutory construction that courts must give effect to every clause and word of a statute."). There is "a canon of construction that remedial statutes should be liberally construed." *Peyton v. Rowe*, 391 U.S. 54, 65 (1968). This canon of statutory construction is especially applicable to the TVPRA considering that the language of 18 U.S.C. §1595(a) was amended in 2008 to be even broader, for when a "statute is remedial in nature, its terms must be construed in a liberal fashion." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 499 (1985).

## 2. Defendants AMI and BTI Knowingly Benefitted Financially in Violation of § 1595

The Congressionally mandated mechanism to civilly enforce the TVPRA is explicitly stated in § 1595. Since 2008, victims of sex trafficking have been empowered to bring civil claims

---

[5] For example, Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, *et seq.*, introduced an even broader paradigm shift by requiring change nationally across all business sectors. Employers could no longer discriminate on the basis of race, religion, sex, or national origin. *Id.* Employers were of course free to maintain the status quo and continue to discriminate against their employees, but because of the new law they were liable for damages on a going forward basis for continuing to discriminate after discrimination was prohibited by law. Similarly, businesses within the music and entertainment industry are free to maintain the status quo pre-2008 and do nothing to determine whether they benefit financially from sex trafficking being perpetrated at concerts, shows, or festivals they organize, manage, and promote or from sex trafficking perpetrated by musical artists, their agents, employees, or associates such businesses manage, promote, or otherwise partner. However, choosing to maintain this status quo post-2008 following the amendment to § 1595 of the TVPRA exposes businesses in the music and entertainment industry to liability for their purposeful inaction and noncompliance with the law.

against whoever financially benefits from what they should have known was a sex trafficking venture. The Plaintiffs have plausibly alleged these Defendants knew or should have known they financially benefitted from their participation in a sex trafficking venture. *See* Ex. "A" at ¶¶ 17–18, 26–27, 54–72, 75, 191, 201–204, 209–212. Defendant Bassnectar served, and continues to serve, as the founder, chairman, figurehead, chief executive, and icon of both AMI and BTI. *Id.* at ¶ 26–27. Bassnectar utilized AMI and BTI to target, recruit and ultimately victimize young girls, like Plaintiffs, for sexual exploitation.[6] *Id.* Moving Defendants knew or should have known of, *inter alia*, Bassnectar utilizing his fame, fortune, celebrity, live events, brand, and other employees and/or agents of AMI and BTI to recruit and groom underage female fans for the ultimate purposes of sexual abuse and manufacture of child pornography. *See Id.* at ¶¶ 54–70. As alleged in the FAC: "Defendants' employees and agents had actual knowledge or should have known that they were facilitating and participating in a scheme to profit from a venture involved in commercial sex acts with minor children." *See Id.* at ¶ 211. As such Plaintiffs' have clearly, and sufficiently, alleged a beneficiary theory of liability against Moving Defendants for purposes of a claim under the TVPRA.[7]

---

[6] Moving Defendants contend generally that Plaintiffs have improperly "grouped" the Defendants. "Group pleading" is a term of art that applies in fraud cases within the framework of Rule 9(b) and does not apply here. *See, e.g., Gamrat v. Allard*, 320 F. Supp. 3d 927, 942 (discussing "group pleading" as a term of art in the context of fraud cases); *United States ex rel. Takemoto v. Nationwide Mut. Ins. Co.*, 674 Fed. Appx. 92, 95 (2d Cir. 2017). Moreover, Moving Defendants' assertion that the FAC contains "shotgun" allegations is also of no merit. *A.B. v. Marriott International, Inc.*, 455 F. Supp. 3d 171 (E.D. Pa. 2020), the case cited by AMI and BTI in support of this contention, actually held that plaintiff's complaint was *not* a "shotgun" pleading violative of Rule 8(a). *Id.* at 194. "Shotgun" pleadings fail to give defendants adequate notice of the claims against them and the grounds upon which each cleaim rests. *Id.* at 194 n. 118. Plaintiffs' FAC gives all Defendants, including AMI and BTI, sufficient notice of the claims against them *and* the grounds upon which each claim rests as the FAC: (1) does not containtain multiple counts where each count adopts the allegations of all preceding counts; (2) is not replete with conclusory, vage, or immaterial facts not connected to any particular cause of action; (3) separates into a different count each cause of action or claim for relief; and (4) does not assert multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against. *Id.*

[7] Defendants AMI and BTI even acknowledge in their motion that the "promotion of the Bassnectar brand" would be a benefit to them—it is not that the sex trafficking itself benefitted Moving Defendants, but the fact that AMI and BTI knowingly benefitted from a venture that Moving Defendants knew or should have known was engaged in sex trafficking.

Since 2008 there have been at least three distinct causes of action under § 1595 to include § 1595 financial beneficiary claims against a civil defendant who has not violated § 1591 at all, but who "knowingly benefits, financially or by receiving anything of value from participation in a venture which that *person knew or should have known* has engaged in an act in violation of this chapter." *See* 18 U.S.C.A. § 1595(a) (emphasis added). The distinction between the knowledge requirement in a perpetrator claim as compared to a financial beneficiary claim is significant in this case. To state either a perpetrator trafficking claim or a perpetrator financial beneficiary claim, a victim must allege actual knowledge and knowing participation in the sex trafficking venture itself because the plaintiff must prove the criminal violation of § 1591. In the 2008 amendment to the TVPRA, however, Congress determined that civil liability would attach to a financial beneficiary if that person or entity knew or should have known the venture in which it was engaged involved a violation of the TVPRA. A financial beneficiary claim, therefore, need not allege knowing assistance or actual knowledge that the venture in which it participated violated the TVPRA, only that the entity should have known the venture from which it benefitted violated the TVPRA.

Criminal cases under the TVPRA such as *United States v. Afyare*, 632 F. App'x 272, 286 (6th Cir. 2016) are inapposite to civil financial beneficiary claims because in *Afyare* the Sixth Circuit considered only the type of participation which Congress criminalized under § 1591(a)(2). As discussed, perpetrator claims alleging a criminal violation of § 1591(a)(1)–(2) do require actual knowing participation in the sex trafficking venture. A financial beneficiary claim does not require actual knowing participation in the sex trafficking venture. Unlike *Afyare*, the case of *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959 (S.D. Ohio Oct. 7, 2019), a civil case in this very jurisdiction dealing with civil liability under the TVPRA, is directly on point. In *M.A.*, the

corporate defendants' motions to dismiss were denied when they advanced essentially identical arguments to those of Moving Defendants. The court in *M.A.* distinguished *Afyare* especially given its reliance on criminal, and not the more "salient" civil, concepts in the law. *M.A.*, 425 F. Supp. at 969.

In *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 959, 965–66 (S.D. Ohio 2019), the court acknowledged that "collecting money through sponsorships, licensing, grants, [and] publicity" satisfied the "knowing benefit" element of the § 1595(a) standard. *Wyndham Hotels*, 425 F. Supp. at 966 (quoting *Gilbert v. United States Olympic Comm.*, 423 F. Supp. 3d 1112, 1138–1139 (D. Colo. 2019).[8] Further, in *M.A.* the court held that "[i]n the absence of a direct association, Plaintiff must allege at least a showing of a continuous business relationship between the trafficker and the [other entity] such that it would appear that the trafficker and the [other entity] have established a pattern of conduct or could be said to have a tacit agreement." *Id.* at 970. The court in *M.A.* determined that the plaintiff made sufficient allegations to survive a Motion to Dismiss and that, in fact, a plaintiff need not allege knowledge of a specific or particular sex trafficking venture. *Id.* at 970–71 ("Having found that 'participation' under § 1595 does not require actual knowledge of participation in the sex trafficking itself, this Court must then examine whether there was 'participation in a venture' here. . . . Defendants need not have actual knowledge of the sex trafficking in order to have participated in the sex trafficking venture for civil liability under the TVPRA, otherwise the 'should have known' language in § 1595(a) would be meaningless.").

This is precisely what Plaintiffs have alleged here as it relates to Moving Defendants and Bassnectar. *See* Ex. "A" at ¶¶ 25–26, 65, 201–04, and 210–12. Similar results have obtained in

---

[8] The *Wyndam Hotels* court also held that the Plaintiff's allegation that defendant Wyndam Hotels' rental of rooms to a human trafficker constituted a knowing benefit for purposes of § 1595(a). *Wyndam Hotels*, 425 F. Supp. at 966.

other jurisdictions as well. *See A.B. v. Marriott Int'l, Inc.*, 455 F. Supp. 3d 171, 192 ("[W]e are persuaded the clear language of section 1595 favors the approach taken by Judge Marbley [in *M.A.*] focusing on a hotel's possible civil liability best conforms to Congress's intent in amending the Act to include a civil remedy provision[.]").

### 3. Defendants AMI and BTI Knew or Should Have Known of their Respective Participation in a Sex Trafficking Venture.

Defendants AMI and BTI misconstrue the legal standard of knowledge the Plaintiffs must allege in this case. The legal standard stated in *Ayfare* and the *Weinstein* cases[9] as cited by Moving Defendants is not applicable to this case. The source of the appropriate legal standard in this case is 18 U.S.C. § 1595, as cited in the title of Count Two of the FAC and as outlined in *M.A.* and *A.B.* Moving Defendants are liable for Plaintiffs' damages if they: (1) knowingly benefitted; (2) from participation in a venture; (3) that it knew *or should have known* engaged in sex trafficking. 18 U.S.C. § 1595(a) (emphasis added).

The plain language of § 1595 irrefutably demonstrates that the definition of "participation in a venture" from § 1591(e)(4) cannot apply to "participation in a venture" as used in § 1595(a). If the definition from § 1591 did apply, civil liability would be limited only against a criminal perpetrator and most of § 1595(a)—everything in parentheses—would be rendered meaningless. That is because if a person knowingly supports or facilitates a violation of § 1591(a)(1) as the definition in § 1591(e)(4) provides, that person has criminally violated § 1591(a)(2) and is in fact a perpetrator. Thus, if the definition from § 1591 applied to § 1595, a civil cause of action would only be available against "the perpetrator" and the parenthetical in § 1595(a) would mean nothing. This interpretation cannot apply because courts must "avoid a reading which renders some words

---

[9] *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156 (S.D.N.Y. 2019); *Noble v. Weinstein*, 335 F. Supp. 3d 504 (S.D.N.Y. 2018).

altogether redundant*." Gustafson v. Alloyd Co.*, 513 U.S. 561, 574–75 (1995) (emphasis added). The words "should have known" in § 1595(a) were not intended by Congress to be meaningless.

Moving Defendants also argue that Plaintiffs cannot show AMI or BTI "either actually or constructively participated in the purported sex trafficking venture."  As discussed herein, in order to state a financial beneficiary claim, Plaintiffs do not have to show that AMI and BTI participated in any sex trafficking act itself. Again, Moving Defendants attempt to blur the lines between the civil and criminal statutes and blur the lines between very different cases.

Moving Defendants claim that Plaintiffs have failed to allege sufficient facts that would trigger a reasonable inference that AMI and BTI knew or should have known about the sex trafficking of Plaintiffs and other similarly situated minor females who were recruited and groomed through Bassnectar's operation. Moving Defendants erroneously ignore the fact that a substantial portion of Bassnectar's exploitative conduct was conducted out in the open and assisted by the Bassnectar Companies, including AMI and BTI. Plaintiffs have alleged that Bassnectar, Carlos Donohue, Chris Madrigal, "Bri," "Dom," John Does 1 – 10, and other employees, agents, or servants of Defendant Bassnectar Companies, including AMI and BTI, all knowingly participated in a venture to traffic Plaintiffs and other underage girls for the purpose of having sexual intercourse. *See* Ex. "A" ¶¶ 58–64, 68. This venture was organized and operated in broad daylight at shows, concerts, and venues that AMI and BTI assisted in scheduling, managing, and promoting, and used to further recruit young girls for Bassnectar. It is absurd that Moving Defendants assert complete ignorance of Bassnectar's solicitation and exploitation of young girls when it was so rampant and intertwined with his musical career and actions at these shows, concerts, and festivals.

Additionally, Bassnectar, the perpetrator of said sex trafficking in the venture, was and remains the founder, chairman, figurehead, chief executive, and icon of both AMI and BTI. Because Bassnectar himself clearly knew of his own behavior violative of the TVPRA, his knowledge is imputed to the Moving Defendants as he is a "high managerial agent" of AMI and BTI who "ratified" or "tolerated" the at-issue activity. *See In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 483 (6th Cir. 2014) (holding that, under the court's formulation of collective corporate scienter, the knowledge of a corporation's Vice President regarding a fraudulent statement could be imputed to the corporation); *Wigington v. Metro. Nashville Airport Auth.*, 374 F. Supp. 3d 681, 694 (M.D. Tenn. 2019) ("An agent's knowledge is imputed to the principal even if not specifically communicated.") (citing *Griffith Motors, Inc. v. Parker*, 633 S.W.2d 319, 322 (Tenn. Ct. App. 1982)). In this regard, the actions and knowledge of Bassnectar were the actions and knowledge of AMI and BTI, particularly when it came to his predatory behavior and utilizing Moving Defendants to target and ultimately abuse young female fans such as Plaintiffs.

Plaintiffs have sufficiently alleged facts which illustrate that Defendants AMI and BTI, who benefitted financially from its partnership and participation in this business venture with Bassnectar and the other Bassnectar Companies, knew or should have known that the *specific* sexual exploitation and trafficking of Plaintiffs was occurring. Bassnectar made a concerted effort to keep his direct communications with Plaintiffs as private as possible, but the conduct violative of the TVPRA alleged by Plaintiffs certainly establishes knowledge—or, at the very least, a reasonable "should have known" inference—on the part of AMI and BTI. Thus, Plaintiffs have pled specific and sufficient facts to demonstrate that trafficking of underage Plaintiffs for commercial sex acts was known or should have been known to AMI, BTI and the remaining Defendants.

### iii.   Count IV, Negligence per se, has been properly pled[10]

#### 1. Plaintiffs did not faile to state a claim

In Count IV of Plaintiffs' FAC, Plaintiff Rachel Ramsbottom alleges that Defendant Bassnectar and numerous other defendants, including AMI and BTI, violated Tennessee state law as it relates to Aggravated Sexual Assault, T.C.A. § 39-13-506(C), and Statutory Rape by an Authority Figure, T.C.A. § 39-13-532. *See* Ex. "A" at ¶¶ 221–223.

In order to survive a claim of negligence *per se* at the pleadings stage a plaintiff must allege: (1) the defendant violated a statute or ordinance which "imposes a duty or prohibits an act for the benefit of a person or the public;" (2) that the injured party was within the class of persons whom the legislative body intended to benefit and protect by the enactment of that particular statute or ordinance; and (3) such negligence was the proximate cause of the injury. *Smith v. Owen*, 841 S.W. 2d 828, 831 (Tenn. Ct. App. 1992).

These violations occurred when Defendant Bassnectar, who maintained a position of authority over Plaintiff Ramsbottom by way of his self-admitted position of power and fame, sexually abused Plaintiff Ramsbottom when she was under the age of 18. *Id.* at ¶¶ 224–225. Defendant Bassnectar not only admitted to the sexual abuse, but admitted that he was able to commit the abuse as a result of his position of power, authority, and fame. *Id.* ¶¶ 98–106. In his Answer and Affirmative defenses filed on July 15, 2021, Defendant Bassnectar admitted to the authenticity of the lawfully recorded telephone call referred to in Plaintiffs' FAC. As argued above, and as it relates to Moving Defendants, Bassnectar utilized both AMI and BTI to facilitate the

---

[10] Moving Defendant does not develop this argument but instead relies on the substance of the argument advanced by Defednant Bassnectar only as to the alleged "untimeliness" of this claim. Because Moving Defendant does not specify what arguments they incorporate, for example by referring to the particular sections of Defendant Bassnectar's motion, it is unclear precisely what they are in fact incorporating. Presuming they only incorporate the arguments of Defendant Bassmnectar as to the statute of limitations, that is addressed herein. To the extent Moving Defendant believes the term "untimeliness" in fact relates to any other argument made by Defendant Bassnectar, Plaintiffs' incorporate their reply to Defendant Bassnectar for the purposes of this reply.

abuse and those corporations are therefore vicariously liable for his conduct. *Cox v. M.A. Primary and Urgent Care Clinic*, 313 S.W.2d 240, 251 (Tenn. 2010); *Abshure v. Methodist Healthcare-Memphis Hospitals*, 325 S.W.3d 98, 105 – 06 (Tenn. 2010); *Boren ex rel. Boren v. Weeks,* 251 S.W.3d 426, 432 (Tenn. 2008).

The law in Tennessee related to the statute of limitations, addressed below, also clearly contemplates causes of action being brought against individuals or entities that are not a perpetrator; a claim of negligence *per se* is no different. T.C.A. § 28-3-116(e) (If an action is brought against someone other than the alleged perpetrator of the child sexual abuse, and if the action is brought more than one (1) year from the date the injured person attains the age of majority, the injured person must offer admissible and credible evidence corroborating the claim of abuse by the alleged perpetrator).

### 2. Count IV is not barred by the applicable statute of limitations

Moving Defendants incorporate by reference that the claim advanced at Count IV is barred by the applicable statute of limitations. Moving Defendants are mistaken. Pursuant to T.C.A. § 28-3-116(b)(1), "[f]or child sexual abuse that occurred before July 1, 2019, but was not discovered at the time of the abuse, within three (3) years from the time of discovery of the abuse by the injured person." Here Plaintiff Ramsbottom was sexually abused by Defendant Bassnectar before her eighteenth birthday and before July 1, 2019. As alleged in the FAC it was not until 2019 that Plaintiff Ramsbottom fully appreciated the injury from the abuse when she began uncovering same during therapy. *See* Ex. "A" at ¶ 96. Thereafter she confronted Defendant Bassnectar. *Id.* at ¶ 97. Then, it was not until June 2020 that Plaintiff Ramsbottom appreciated the true and full scope of Defendant Bassenctar's abuse, including the fact that he had abused numerous other women, including females who were minors. At that time Plaintiff Ramsbottom confronted Defendant

Bassnectar via telephone and recorded Defendant Bassnectar making damaging and incriminating admissions, including that he abused many women in part by exploiting the position of power, fame, and authority he possessed. *Id.* at ¶¶ 98–105.

Under the "discovery rule" applicable in tort actions, the cause of action accrues and the statute of limitations begins to run when the injury occurs or is discovered, or when in the exercise of reasonable care and diligence, it should have been discovered. *McCroskey v. Bryant Air Conditioning Co.,* 524 S.W.2d 487, 491 (Tenn. 1975); *see also Teeters v. Currey,* 518 S.W.2d 512 (Tenn. 1974). The discovery rule applies only in cases where the plaintiff does not discover and reasonably could not be expected to discover that she had a right of action. Furthermore, the statute is tolled only during the period when the plaintiff had no knowledge at all that the wrong had occurred and, as a reasonable person, was not put on inquiry. *Hoffman v. Hospital Affiliates, Inc.,* 652 S.W.2d 341, 344 (Tenn. 1983).

Critically, the question of whether a plaintiff "exercised reasonable diligence to discover [her] claims . . . *is a question of fact.*" *Redwig v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 466 (Tenn. 2012). Considering that this is a question of fact, and in light of the sufficient factual allegations made in Plaintiff's FAC, this cause of action cannot be dismissed at this stage and Plaintiff Ramsbottom must be permitted to proceed forward with discovery.

### D. Alternative Relief

To the extent the Court has any reservations about any aspect of the Plaintiffs' FAC and is inclined to grant some or all of the Movants' requested relief, Plaintiffs respectfully request that the Court grant any dismissals without prejudice and with leave to amend.

**RESPECTFULLY SUBMITTED:**

**MILLER LAW OFFICES**

By:    /s/ Phillip Miller
       Phillip Miller, #006873
       *Attorney for the Plaintiff*
       631 Woodland Street
       Nashville, TN 37206
       615-356-2000 phone
       615-242-1739 fax
       pmiller@seriousinjury.com

**LAFFEY, BUCCI & KENT, LLP**

Brian Kent*
M. Stewart Ryan*
Alexandra MacMaster*
LAFFEY, BUCCI & Kent, LLP
1100 Ludlow Street, Suite 300
Philadelphia, PA 19107
(T): (215) 399-9255
(E): bkent@lbk-law.com
     sryan@lbk-law.com
     amacmaster@lbk-law.com

*admitted pro hac vice*

*Attorneys for the Plaintiffs*

Dated: August 16, 2021

21

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of August 2021, I electronically filed the foregoing Plaintiffs'

Opposition to Defendants' Motion to Dismiss and Supporting Memorandum of Law with the Clerk or Courts

Using CM/ECF system, which will send notification of such filing to the following:

Russell B. Morgan, Esq.
Jason C. Palmer, Esq.
Rachel Sodée, Esq.
BRADLEY ARANT
BOULT CUMMINGS LLP
1600 Division Street, Suite 700
Nashville, Tennessee 37203
Email: rmorgan@bradley.com
jpalmer@bradley.com
rsodee@bradley.com

Paige Mills, Esq.
Ashleigh Karnell, Esq.
BASS, BERRY & SIMS PLC
150 Third Avenue South, Suite 2800
Nashville, TN 37201
615-742-7770
615-742-0429 fax
PMills@bassberry.com
ashleigh.karnell@bassberry.com

*Attorneys for Defendant Red Light Management*

Scott McCullough, Esq.
McNABB, BRAGORGOS,
BURGESS & SORIN, PLLC
81 Monroe, Sixth Floor
Memphis, TN 38103
Email: smccullough@mbbslaw.com

Cynthia A. Sherwood, Esq.
Davis F. Griffin, Esq.
201 Fourth Avenue North, Suite 1130
Nashville, TN 37219
(615) 873-5670
(615) 900-2312 (fax)
cynthia@sherwoodlitigation.com

*Attorneys for Defendant C3 Presents, L.L.C.*

*Attorneys for Defendants Carlos Donohue
and Gnarlos Industries, LLC*

Grace A. Fox, Esq.
Robert A. Peal, Esq.
Mark W. Lenihan, Esq.
SIMS FUNK, PLC
3322 West End Avenue
Suite 200
Nashville, TN 37203
(615) 292-9335
Fax: (615) 649-8565
Email: gfox@simsfunk.com
mlenihan@simfunk.com
rpeal@simsfunk.com

Philip Goodpasture, Esq.
Brendan D. O'Toole, Esq.
Williams Mullen, Esq.
200 South 10th St.
Richmond, VA 23219
(804) 420-6000
pgoodpasture@williamsmullen.com
botoole@williamsmullen.com
mhaynes@williamsmullen.com

Kimberly S. Hodde, Esq.
HODDE & ASSOCIATES
40 Music Square East

*Attorneys for Red Light
Management, Inc.*

Nashville, TN 37203
(615) 242-4200
Fax: (615) 242-8115
Email: kim.hodde@hoddelaw.com

Mitchell Schuster, Esq.
Stacey M. Ashby, Esq.
MEISTER, SEELIG & FEIN, LLP
125 Park Avenue, 7th Floor
New York, NY 10017
Email: ms@msf-law.com
Sma@msf-law.com

*Attorneys for Defendants Lorin Ashton,*
*Amorphous Music Inc.,*
*and Bassnectar Touring, Inc.*

**MILLER LAW OFFICES**

By:      /s/ Phillip Miller
         Phillip Miller, #006873
         *Attorney for the Plaintiff*
         631 Woodland Street
         Nashville, TN  37206
         615-356-2000 phone
         615-242-1739 fax
         pmiller@seriousinjury.com

**LAFFEY, BUCCI & KENT, LLP**

Brian Kent*
M. Stewart Ryan*
Alexandria MacMaster*
LAFFEY, BUCCI & KENT, LLP
1100 Ludlow Street, Suite 300
Philadelphia, PA 19107
(T): (215) 399-9255
(E): bkent@lbk-law.com
     sryan@lbk-law.com
     amacmaster@lbk-law.com

*admitted pro hac vice*

Dated: August 16, 2021 _____