IN THE UNITED STATE DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| RACHEL RAMSBOTTOM ) | |
| ALEXIS BOWLING and ) | |
| JENNA HOUSTON ) | |
| ) | CIVIL ACTION |
| ) | |
| Plaintiffs ) | No. 3:21-cv-00272 |
| ) | |
| v. ) | JURY TRIAL DEMANDED |
| ) | |
| LORIN ASHTON, ) | |
| AMORPHOUS MUSIC, INC., ) | |
| BASSNECTAR TOURING, INC., ) | |
| C3 PRESENTS, L.L.C., ) | |
| INTERACTIVE GIVING FUND, ) | |
| GNARLOS INDUSTRIES, LLC, ) | |
| CARLOS DONOHUE; ABC ) | |
| CORPORATIONS, ONE THROUGH ) | |
| TEN (said Names Being Fictitious), ) | |
| JOHN DOES, ONE THROUGH TEN ) | |
| (said Names Being Fictitious) ) | |
| ) | |
| Defendants. ) | |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR RESPONSE IN OPPOSITION TO DEFENDANT LORIN ASHTON'S PARTIAL MOTION TO DISMISS COUNT IV

### I. INTRODUCTION

This case arises from the solicitation and sexual victimization of underaged Plaintiffs who were coerced and/or defrauded into engaging in commercial sex acts and the manufacture and dissemination of child pornography. Plaintiffs were targeted, groomed, and sexually exploited by electronic dance music ("EDM") musician and Defendant Lorin Ashton known publicly as "Bassnectar" (hereinafter referred to as "Bassnectar" or "Moving Defendant") who utilized his

fame, shows, and organizations to engage in recruitment of underaged females, including Plaintiffs, for the purposes of grooming and, ultimately, sexually abusing, victimizing, and trafficking. With the funding and accommodation of the Defendant companies who knew or should have known that Bassnectar was trafficking minor females, Bassnectar used his position of power not only to coerce Plaintiffs into having sexual intercourse with him for money and other things of value but insisted that Plaintiffs take sexually explicit and/or pornographic photos of themselves and send them to Bassnectar for his sexual gratification. Bassnectar would utilize the services, funds, and support of Defendants to engage in this illegal sex trafficking venture.

Particularly pertinent here is the reality of Bassnectar's position with regard to Plaintiff Ramsbottom's claims: he has admitted to committing crimes against her, has pled (like many other guilty men before him) for her assistance in avoiding the consequences of his own conduct, and has, most recently, **admitted before this Court the truth of his admissions** related to the sexual abuse of Plaintiff Ramsbottom when she was under the legal age of consent. On June 3, 2020, Defendant Bassnectar spoke to Plaintiff Ramsbottom by phone. *See* Exhibit "A" Plaintiff's First Amended Complaint (hereinafter referred to as "FAC") at ¶ 100. The conversation, which was recorded legally pursuant to the laws of the state of Tennessee,[2] is available publicly for anyone wishing to listen and was quoted at length in Plaintiffs' FAC. *Id.* at ¶¶ 100 – 106. In the conversation, Bassnectar admits to sexually abusing Plaintiff Ramsbottom and admits that he could go to jail as a result. *Id.* While falsely claiming in his Answer to Plaintiffs' FAC that this

---

[2] Defendant Bassnectar and his lawyers knowingly misstate the law in this regard in Bassnectar's Answer to Plaintiffs' FAC. In the pleading, Bassnectar and his lawyers, *while admitting to the truth of the contents of the conversation*, make the false claim that this recording was "illegally recorded" pursuant to California law. Although not actually saying so, presumably, Bassnectar believes he was present in the state of California at the time he admitted to sexually abusing Plaintiff Ramsbottom in this recorded telephone call. Nonetheless, the law that governs this telephone call is that of the state of Tennessee, not California. *See* T.C.A. § 39-13-601 (Tennessee is a one-party consent state); *Stroup v. State*, 552 S.W.2d 418, 420 (Tn. Ct. App. 1977) (same).

conversation was not legally recorded, Bassnectar otherwise admits that it is him on the recording. *See Lorin Ashton's Answer and Affirmative Defenses to the First Amended Complaint.*

At the outset of their motion, it also appears Moving Defendant is unaware of the specific, and more generous, statute of limitations in Tennessee, T.C.A. § 28-3-116(b)(1) pertaining to child sexual abuse that puts Bassnectar's criminal behavior against a minor squarely within the statute of limitations. T.C.A. § 28-3-116(b)(1). Defendant Bassnectar then attempts to deny his unmatched position of trust as a mentor, advisor, and public figure offering a sense of belonging and activism in young adolescents (even referred to by some as "God-like") and specifically to Rachel Ramsbottom (hereinafter referred to as Ramsbottom") that satisfies the requisite element of Bassnectar's position pursuant to Tenn. Code Ann. 39-13-532. *See* Exhibit "A" at ¶¶ 5 – 12, 76 – 107, 224. And he does so even in light of having admitted that he was recorded stating, among other things, that he "exploit[ed] [her] and [took] advantage of [her] when [she was] so impressionable" due to the clear imbalance of power resulting from his age, the fan/celebrity dynamic, his male privilege, and his celebrity privilege. *Id.* at ¶¶ 102 – 103. In doing so, Moving Defendant fails to recognize that Plaintiffs' well-pled FAC clearly and sufficiently states a claim for relief under Negligence *Per Se* against Bassnectar. Regardless of Bassnectar's contentions relating to Count IV, Plaintiff's well pled Complaint sufficiently states Count IV, Negligence *Per Se*, against Bassnectar as needed and the discovery process will only serve to bolster this truth.

## II. <u>STANDARD OF REVIEW</u>

A motion to dismiss pursuant to the Federal Rules of Civil Procedure rule 12(b)(6) challenges the legal sufficiency of a complaint specifically arguing that a plaintiff "fail[ed] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). However, such a motion should not be brought as "a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*,

404 F.3d 950, 958-59 (6th Cir. 2005). When presented with a motion to dismiss, a court must construe the complaint in the light most favorable to the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008).[3] The Sixth Circuit has provided a three-step process for determining a complaint's sufficiency under 12(b)(6), in which the trial court must: (1) accept all of plaintiff's factual allegations as true; (2) draw all reasonable inferences in plaintiff's favor; and (3) determine whether the alleged facts and inferences plausibly give rise to an entitlement to relief. *Doe v. Baum*, 903 F.3d 575, 581 (6th Cir. 2018).

### III. ARGUMENT

a. Count IV, Negligence per se, has been properly pled

In Count IV of Plaintiffs' FAC, Plaintiff Rachel Ramsbottom alleges that Defendant Bassnectar and numerous other defendants, violated Tennessee state law as it relates to Aggravated Sexual Assault, T.C.A. § 39-13-506(C), and Statutory Rape by an Authority Figure, T.C.A. § 39-13-532. *See* Exhibit A at ¶¶ 221 – 223. These violations occurred when Defendant Bassnectar, who maintained a position of authority over Plaintiff Ramsbottom by way of his self-admitted position of power and fame, sexually abused Plaintiff Ramsbottom when she was under the age of 18. *Id.* at ¶¶ 100 – 106, 224 – 225. Defendant was postured as an altruistic activist who provided a sense of belonging and righteousness to youths, even holding himself out to be God-like. *Id.* at ¶¶ 5 – 12, 16. Bassnectar presented himself as an advisor to gain young girls trust and further attracted minors by utilizing his platform to encourage adolescents to become activists, even

---

[3] The Court is not required to accept mere legal conclusions unsupported by factual allegations, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and a complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The plausibility standard "is not akin to a probability requirement" but is a "context-specific" inquiry drawing on our "judicial experience and common sense." *Iqbal*, 556 U.S. at 678, 679, (citing *Twombly*, 550 U.S. at 556, 557) (internal quotations omitted).

offering to pay for therapy. *Id.* at ¶ 6. at Defendant Bassnectar not only admitted to the sexual abuse but admitted that he was able to commit the abuse as a result of his position of power, authority, and fame. *Id.* ¶¶ 5, 98 – 106. In his Answer and Affirmative defenses filed on July 15, 2021, Defendant Bassnectar admitted to the authenticity of the lawfully recorded telephone call referred to in Plaintiffs' FAC. Plaintiffs' FAC sufficiently pled details related to Bassnectar's position, the special relationship he sought to form with minors such as Plaintiff Ramsbottom, and his position of trust. The well-supported allegations by Plaintiff are dispositive at this stage.

### 1. Plaintiff Ramsbottom sufficiently stated her claim.

In order to survive a claim of negligence *per se* at the pleadings stage a plaintiff must allege: (1) the defendant violated a statute or ordinance which "imposes a duty or prohibits an act for the benefit of a person or the public;" (2) that the injured party was within the class of persons whom the legislative body intended to benefit and protect by the enactment of that particular statute or ordinance; and (3) such negligence was the proximate cause of the injury. *Smith v. Owen*, 841 S.W. 2d 828, 831 (Tenn. Ct. App. 1992).

Moving Defendant argues that he cannot be liable based on a theory of negligence *per se* because he has not been charged or convicted of the crimes pled in the FAC. For support they cite to *Ware v. Tow Pro Custom Towing & Hauling, Inc*., No. 3:04-0528, 2007 WL 108885, at *7 (M.D. Tenn. Jan. 12, 2007), a case decided at summary judgment. The decision turned on the fact that the plaintiffs were not able to support their initial allegation that the defendant towing company had made an improper demand of money that would constitute extortion. *Id.* The court, in *dicta*, went on to state an undisputed fact, which is that the defendant towing company had not been charged with or convicted of a crime. *Id.* But this by no means created a principle of law that in order to prove negligence *per se* that there must be a conviction for a crime. *Id.* Indeed, such a

requirement would turn the civil law concept of negligence per se on its head. Instead, Tennessee law is clear that a plaintiff need only prove that there was a violation of an ordinance or statute with competent evidence (at least as of summary judgement, which is not where this case stands). *McCracken v. City of Millington,* 1999 WL 142391 (Tenn. Ct. App. 1999) (violation of the statutory maximum speed limit where there was no arrest or conviction); *Smith v. Owen,* 841 S.W.2d 828 (Tenn. Ct. App. 1992) (housing code violation where there was no formal governmental finding of liability); *Kingsul Theaters v. Quillen*, 29 Tenn.App. 248, 196 S.W.2d 316, 318 (Tenn. Ct. App. 1946) (violation of a municipal regulation where there was no formal governmental finding of liability).

Moving Defendant also argues that Plaintiffs fail to show that the elements can be met as needed for the two statutes listed under Count IV of Negligence *Per Se*, specifically T.C.A. 39-13-532 (Aggravated Statutory Rape). To the contrary, Plaintiffs' FAC does more than enough to sufficiently plead the required facts. Looking at the first statute pled in the FAC under Negligence *Per Se*, pursuant to T.C.A. 39-13-506(c), Aggravated Statutory Rape is the unlawful sexual penetration of a victim by the defendant when the victim is at least thirteen years of age but less than eighteen (18) years of age and the Defendant is at least ten (10) years older than the victim. T.C.A. 39-13-506(c). Without question or dispute from Moving Defendant regarding the necessary elements, the FAC clearly pled that Bassnectar had intercourse with Ramsbottom while she was a minor between the ages of thirteen and eighteen and Moving Defendant was over ten years older than her. *See* Exhibit A at ¶ 222. As for the second statute pled in the FAC under Negligence Per Se, pursuant to T.C.A. 39-13-532 (Statutory Rape by an Authority Figure), the statute requires: (1) sexual penetration; (2) of victim who is between thirteen (13) but less than eighteen (18) years of age, (3) the defendant is at least four (4) years older than the victim; and 4) "the defendant was,

at the time of the offense, in a position of trust, or had supervisory or disciplinary power over the victim by virtue of the defendant's legal, professional, or occupational status and used the position of trust or power to accomplish the sexual penetration" T.C.A. § 39-13-532. Plaintiff sufficiently pled same. *See* Exhibit A at ¶¶ 100 – 106, 224 – 225.

While Moving Defendant focuses on the language of the statute of authority and supervisory power, they cannot disregard that the element at issue can be met under the broader language of "position of trust" and not just a "position of authority." *State v. Denton*, 149 S.W.3d 1, 19-20 (Tenn. 2004). Significantly to this case and the statute in question, Tennessee law differentiates the statutory language of a "position of authority" and a "position of trust." *Id.* In *State v. Denton*, the court concludes that an individual can hold a "position of trust" without being in a position of authority and goes on to state, "the General Assembly must have viewed a position of authority as being different from a position of trust, or there would have been no need to enact section 39–13–527. Accordingly, a position of trust is not synonymous with a position of authority." *Id.*

Several factors are considered when looking to whether a defendant held a "position of trust" under Tennessee Law. *State v. Kissinger*, 922 S.W.2d 482, 488–89 (Tenn. 1996). Accordingly, "[t]he determination of the existence of a position of trust does not depend on the length or formality of the relationship, but upon the nature of the relationship. *Id.* at 488-89. Thus, the court should look to see whether the offender formally or informally stood in a relationship to the victim that promoted confidence, reliability, or faith." *Id.* In *State v. McCrowder*, the court says "a personal relationship between the [appellant] and victim where the [appellant] acts as the victim's friend, paying for food and other items, is a sufficient basis for finding a private trust. *State v. McGrowder*, 2014 WL 4723100, at *8–10 (Tenn. Crim. App. Sept. 23, 2014). In *State v.*

*Hodges*, the defendant argued that the court erred when it determined that defendant abused his position of trust. *State v. Hodges*, M201601057CCAR3CD, 2017 WL 3085434, at *6–7 (Tenn. Crim. App. July 20, 2017). The court affirmed the trial court's sentence that considered such a position, stating, "[t]he summary of Defendant's psychosexual evaluation notes a concern that Defendant's actions were consistent with the sex offending behavior of 'Grooming: spending money on a potential victim, buying presents, going to movie, and setting up rules to not tell and progression of sexual contact.'" *Id.*

The Statutes such as T.C.A. § 39-13-532 that include the "position of trust" language cast a much wider net than statutes that only use the term "position of authority." Such distinction works against Bassnectar; while he fits the definition under both terms, there is no question that he held a position of trust that he exploited in order to accomplish his criminal sexual offenses. Ex. A at ¶ 5-12, 98-105, 224. Bassnectar boasted of having the ability of having "3,000 kids show up on a Monday night in Kentucky with my logo tattooed on their fucking neck." Ex. A at ¶ 5. He used his status to make adolescents feel a sense of righteousness and belonging, giving them purpose, presented himself as an advisor in order to gain the trust of minor females, including Plaintiff Ramsbottom, and has admitted to abusing what he knew to be that power dynamic in this specific case. *Id.* at ¶ 5-12, 98-105, 224.

Furthermore, in looking to the factors the courts rely upon in determining a position of trust as called for in T.C.A. § 39-13-532 (Aggravated Statutory Rape), Bassnectar's influence and relationship with Plaintiff Ramsbottom and other minors satisfy the final element that Bassnectar occupied a position of trust. For example, Bassnectar discussed school with Plaintiff Ramsbottom, reading her school assignments and asking her to write one for him, thus promoting confidence. *Id.* at ¶¶ 81-82. Bassnectar also first reached out to Plaintiff Ramsbottom via Twitter requesting to

her see her. When she was unable to initially meet him, Bassnectar maintained communication with Plaintiff Ramsbottom nearly every day for several months, thus promoting reliability. *Id.* at ¶¶ 78-81. Like in *McCrowder*, Bassnectar paid for Plaintiff Ramsbottom with things such as concerts and room service, while acting as a "friend," advisor, and mentor. *Id.* at ¶¶ 87-90. Like in *Hodges*, Bassnectar displayed classic signs of predatory grooming. *Id.* at ¶¶ 10-13, 89-92, 101-107. Plaintiffs have sufficiently stated their claim against Moving Defendant.

Moving Defendant proceeds to cite several cases with a variety of different relationships in an effort to show that the statute should not apply to Bassnectar's abusive relationship with Ramsbottom. These cases, however, are unavailing especially in light of Bassnectar's role as an older mentor, powerful musician with a cult-like following, reliable confidante that financially tended to Plaintiff while using that relationship to groom her and abuse her. None of the cases cited address this particular type of relationship nor do they cast doubt on the allegations in the FAC as pled. What these cases do demonstrate is that courts have considered a variety of different roles that could satisfy the element at issue, including non-relative who was "like a dad," pastors, and even family friends. *See* Defendant Lorin Ashton's Memorandum of Law in Support of Partial Motion to Dismiss Count IV, at 9 (collecting cases). If nothing else, the cases cited by Bassnectar show that the list is not as narrow as he hopes it to be. Rather those that fall into a position of trust or authority are people who had significantly *less* influence or power over their victims than Bassnectar had over Plaintiff Ramsbottom. Additionally, Moving Defendant's citations only further buttress Plaintiff's arguments in this regard as many feature the same sort of grooming techniques that Bassnectar used. *See State v. Berkley*, No. W201500831CCAR3CD, 2016 WL 3006941, at *4 (Tenn. Crim. App. May 17, 2016); See also *State v. Perry*, No. E201501227CCAR3CD, 2016 WL 2901817, at *2 (Tenn. Crim. App. May 13, 2016); *State v.*

*Fossett*, No. W2012-00885-CCA-R3CD, 2013 WL 2456403, at *1 (Tenn. Crim. App. June 5, 2013).

### 2. Count IV is not barred by the applicable statute of limitations.

Moving Defendant next argues that the claim advanced at Count IV is barred by the applicable statute of limitations. He is mistaken. Pursuant to T.C.A. § 28-3-116(b)(1) the statute of limitations "[f]or child sexual abuse that occurred before July 1, 2019 but was not discovered at the time of the abuse" is three (3) years "from the time of discovery of the abuse by the injured person." T.C.A. § 28-3-116(b)(1). Here Plaintiff Ramsbottom was sexually abused by Defendant Bassnectar as a minor and before July 1, 2019. As alleged in the FAC it was not until 2019 that Plaintiff Ramsbottom fully appreciated the injury from the abuse when she began uncovering same during therapy. *See* Exhibit A at ¶ 96. Thereafter she confronted Defendant Bassnectar. *Id.* at ¶ 97. Then, it was not until June 2020 that Plaintiff Ramsbottom appreciated the true and full scope of Defendant Bassnectar's abuse, including the fact that he had abused numerous other women, including females who were minors. *Id.* at ¶¶ 98 – 105. At that time Plaintiff Ramsbottom confronted Defendant Bassnectar via telephone and recorded Defendant Bassnectar making damaging and incriminating admissions, including that he abused many women in part by exploiting the position of power, fame, and authority he possessed. *Id*.

Under Tennessee's discovery rule applicable to tort actions such as this, the cause of action accrues and the statute of limitations begins to run when the injury occurs or is discovered, or when in the exercise of reasonable care and diligence, it should have been discovered. *McCroskey v. Bryant Air Conditioning Co.,* 524 S.W.2d 487, 491 (Tenn. 1975); *see also Teeters v. Currey,* 518 S.W.2d 512 (Tenn. 1974). The discovery rule applies only in cases where the plaintiff does not discover and reasonably could not be expected to discover that he or she had a right of action.

Furthermore, the statute is tolled only during the period when the plaintiff had no knowledge at all that the wrong had occurred and, as a reasonable person, was not put on inquiry. *Hoffman v. Hospital Affiliates, Inc.,* 652 S.W.2d 341, 344 (Tenn. 1983).

Critically, the question of whether a plaintiff "exercised reasonable diligence to discover [her] claims . . . ***is a question of fact.***" *Redwig v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 466 (Tenn. 2012). Considering that this is a question of fact, and in light of the sufficient factual allegations made in Plaintiff's FAC, this cause of action cannot be dismissed at this stage and Plaintiff Ramsbottom must be permitted to proceed forward with discovery.

### b. Alternative Relief

To the extent the Court has any reservations about any aspect of the Plaintiffs' First Amended Complaint and is inclined to grant some or all of the Movants' requested relief, Plaintiffs respectfully request that the Court grant any dismissals without prejudice and with leave to amend.

### IV. CONCLUSION

The Plaintiffs' First Amended Complaint thoroughly and robustly states the factual bases for their claims and otherwise properly states their claim for relief. To the extent the Court has any reservations about any aspect of the Plaintiffs' First Amended Complaint and is inclined to grant some or all of the Movants' requested relief, Plaintiffs respectfully request that the Court grant any dismissals without prejudice and with leave to amend. However, as the Plaintiffs have asserted throughout this Response, Defendant Bassnectar's requests for dismissal is unfounded and premature and contradicted by the face of the First Amended Complaint. Accordingly, his motion to dismiss is due to be denied in its entirety.

WHEREFORE, Plaintiffs move for an order denying Bassnectar's Partial Motion to Dismiss Count IV.

Respectfully Submitted,

**MILLER LAW OFFICES**

By: /s/ Phillip Miller
Phillip Miller, #006873
*Attorney for the Plaintiff*
631 Woodland Street
Nashville, TN 37206
615-356-2000 phone
615-242-1739 fax
pmiller@seriousinjury.com

**LAFFEY, BUCCI & KENT, LLP**

Brian Kent*
M. Stewart Ryan*
Alexandria MacMaster*
LAFFEY, BUCCI & KENT, LLP
1100 Ludlow Street, Suite 300
Philadelphia, PA 19107
(T): (215) 399-9255
(E): bkent@lbk-law.com
   sryan@lbk-law.com
   amacmaster@lbk-law.com

*admitted pro hac vice*

Dated: August 16, 2021

12
Case 3:21-cv-00272   Document 88-1   Filed 08/16/21   Page 12 of 15 PageID #: 875

# CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of August 2021, I electronically filed the foregoing Plaintiffs' Opposition to Defendants' Motion to Dismiss and Supporting Memorandum of Law with the Clerk or Courts Using CM/ECF system, which will send notification of such filing to the following:

Russell B. Morgan, Esq.
Jason C. Palmer, Esq.
Rachel Sodée, Esq.
BRADLEY ARANT
BOULT CUMMINGS LLP
1600 Division Street, Suite 700
Nashville, Tennessee 37203
Email: rmorgan@bradley.com
jpalmer@bradley.com
rsodee@bradley.com

Scott McCullough, Esq.
McNABB, BRAGORGOS,
BURGESS & SORIN, PLLC
81 Monroe, Sixth Floor
Memphis, TN 38103
Email: smccullough@mbbslaw.com

*Attorneys for Defendant C3 Presents, L.L.C.*

Grace A. Fox, Esq.
Robert A. Peal, Esq.
Mark W. Lenihan, Esq.
SIMS FUNK, PLC
3322 West End Avenue
Suite 200
Nashville, TN 37203
(615) 292-9335
Fax: (615) 649-8565
Email: gfox@simsfunk.com
mlenihan@simfunk.com
rpeal@simsfunk.com

Kimberly S. Hodde, Esq.
HODDE & ASSOCIATES
40 Music Square East

Paige Mills, Esq.
Ashleigh Karnell, Esq.
BASS, BERRY & SIMS PLC
150 Third Avenue South, Suite 2800
Nashville, TN 37201
615-742-7770
615-742-0429 fax
PMills@bassberry.com
ashleigh.karnell@bassberry.com

*Attorneys for Defendant Red Light Management*

Cynthia A. Sherwood, Esq.
Davis F. Griffin, Esq.
201 Fourth Avenue North, Suite 1130
Nashville, TN 37219
(615) 873-5670
(615) 900-2312 (fax)
cynthia@sherwoodlitigation.com

*Attorneys for Defendants Carlos Donohue and Gnarlos Industries, LLC*

Philip Goodpasture, Esq.
Brendan D. O'Toole, Esq.
Williams Mullen, Esq.
200 South 10th St.
Richmond, VA 23219
(804) 420-6000
pgoodpasture@williamsmullen.com
botoole@williamsmullen.com
mhaynes@williamsmullen.com

*Attorneys for Red Light Management, Inc.*

Nashville, TN 37203
(615) 242-4200
Fax: (615) 242-8115
Email: kim.hodde@hoddelaw.com

Mitchell Schuster, Esq.
Stacey M. Ashby, Esq.
MEISTER, SEELIG & FEIN, LLP
125 Park Avenue, 7th Floor
New York, NY 10017
Email: ms@msf-law.com
Sma@msf-law.com

*Attorneys for Defendants Lorin Ashton,*
*Amorphous Music Inc.,*
*and Bassnectar Touring, Inc.*

                      **MILLER LAW OFFICES**

By:   /s/ Phillip Miller
        Phillip Miller, #006873
        *Attorney for the Plaintiff*
        631 Woodland Street
        Nashville, TN 37206
        615-356-2000 phone
        615-242-1739 fax
        pmiller@seriousinjury.com

**LAFFEY, BUCCI & KENT, LLP**

Brian Kent*
M. Stewart Ryan*
Alexandria MacMaster*
LAFFEY, BUCCI & KENT, LLP
1100 Ludlow Street, Suite 300
Philadelphia, PA 19107
(T): (215) 399-9255
(E): bkent@lbk-law.com
     sryan@lbk-law.com
     amacmaster@lbk-law.com

**admitted pro hac vice*

Dated: August 16, 2021 _____