# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| RACHEL RAMSBOTTOM, ALEXIS BOWLING, JENNA HOUSTON, JANE DOE #1,<br><br>Plaintiffs,<br><br>v.<br><br>LORIN ASHTON, AMORPHOUS MUSIC, INC., BASSNECTAR TOURING, INC., REDLIGHT MANAGEMENT, INC., C3 PRESENTS, L.L.C, INTERACTIVE GIVING FUND, GNARLOS INDUSTRIES, LLC, CARLOS DONOHUE, ABC CORPORATIONS, ONE THROUGH TEN (said Names Being Fictitious), JOHN DOES, ONE THROUGH TEN (said Names Being Fictitious),<br><br>Defendants. | CIVIL ACTION NO. 3:21-cv-00272<br><br>JURY TRIAL DEMANDED |

**DEFENDANT LORIN ASHTON'S REPLY IN SUPPORT OF HIS
PARTIAL MOTION TO DISMISS COUNT IV**

Defendant Lorin Ashton ("Ashton") respectfully files this Reply in support of his Motion to Dismiss Count IV (Dkt. 67) of the First Amended Complaint (Dkt. 23) (the "FAC") pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

## INTRODUCTION

Ramsbottom spends the majority of her Response offering commentary that is neither based in fact nor relevant to the Motion at hand. (*See* Response (Dkt. 88-1), at 2, 2 n.2 (claiming repeatedly and without citation that Ashton "admitted before this Court the truth of his admissions" or "admit[ed] to the truth of the contents of the conversation . . . ."); and *id.* at 2 n.2 (asserting that "Bassnectar and his lawyers knowingly misstate the law"). But Ashton made no such admissions (*see* Dkt. 69 ¶¶ 88-106) ("**Denies each and every allegation** except admits that Ashton communicated with Ramsbottom via a telephone call in 2020 wherein Ramsbottom illegally recorded the conversation in violation of California Penal Code § 632(a)."); the California Penal Code is clear, *see* Cal. Penal Code §§ 632.7; 632(a); and the Court has not made choice of law determinations yet, *see, e.g.*, *Kearney v. Salomon Smith Barney, Inc.*, 137 P.3d 914, 937 (Cal. 2006) ("California law should apply in determining whether the alleged secret recording of telephone conversations at issue in this case [by entities located in Georgia, a one-party consent state,] constitutes an unlawful invasion of privacy.").

The sideshow concerning the contents of the Answer, however, is utterly irrelevant to the motion at issue. Ashton filed a partial motion to dismiss pursuant to Rule 12(b)(6), which "tests the sufficiency of the complaint." *Tri-Corp Mgmt. Co. v. Praznik*, 33 F. App'x 742, 745 (6th Cir. 2002). Wild assertions and overreaching interpretations regarding a defendant's well-pleaded denials cannot save the legally insufficient claim Ramsbottom presented here.

**I.  Ramsbottom's Count IV Is Not "Child Sexual Abuse" as Defined under the Tennessee Statutory Scheme.**

T.C.A. § 28-3-116(b)(1) provides for a three-year statute of limitations for "child sexual abuse," which is defined as any act set out in T.C.A. § 37-1-602(a)(3). But Ramsbottom – who was three weeks shy of her 18th birthday when she alleges that her sexual encounter with Ashton occurred (FAC ¶¶ 25, 84-86) – cannot expand the statutory definition of "child sexual abuse" to include the facts alleged in the FAC.

Child Sexual Abuse is addressed in "Erin's Law" and codified at T.C.A. § 37-1-601 *et seq. See* 2014 Tennessee Laws Pub. Ch. 706 (S.B. 2421). Erin's Law is a stand-alone set of laws primarily dealing with reporting of child sexual abuse. *Id.* At issue here[1] is subsection (C) of Section 37-1-602(a)(3), which provides in relevant part, "'[c]hild sexual abuse' also means one (1) or more of the following acts: (i) Any penetration, however slight, of the vagina or anal opening of one (1) person by the penis of another person, whether or not there is the emission of semen . . ."

This section is, on its face, problematic because, read in isolation, it defines "child sexual abuse" as any one of six different types of sexual acts without any age restriction. *See* T.C.A. § 37-1-602(a)(3)(C).[2] In other words, pursuant to the definition on the face of T.C.A. § 37-1-

---

[1] Subsections 37-1-602(a)(3)(A), (B), and (D), all contain age and other limitations within which Ramsbottom's claim does not fall. *See* T.C.A. §§ 37-1-602(a)(3)(A) ("'Child sexual abuse'" means the commission of any act involving the unlawful sexual abuse, molestation, fondling or carnal knowledge **of a child under thirteen (13) years** of age that prior to November 1, 1989, constituted the criminal offense of. . . ."); (3)(B) ("'Child sexual abuse' also means the commission of any act involving the unlawful sexual abuse, molestation, fondling or carnal knowledge **of a child under thirteen (13) years of age** that on or after November 1, 1989, constituted the criminal offense of . . . ."); and (3)(D) ("For the purposes of the reporting, investigation, and treatment provisions of §§ 37-1-603 -- 37-1-615 'child sexual abuse' also means the **commission of any act specified in subdivisions (a)(3)(A)-(C) against a child thirteen (13) years of age through seventeen (17) years of age if such act is committed against the child by a parent, guardian, relative, person residing in the child's home, or other person responsible for the care and custody of the child**") (emphasis added).

[2] Specifically, §§ 37-1-602(a)(3)(C)(i)-(iii) contain no mention of "child," which, although undefined, appears in (C)(iv)-(vi).

602(a)(3)(C)(i), consensual sexual intercourse between, for example, a married couple in their forties would qualify as "child sexual abuse."[3] Such a result would be a patent absurdity and would produce a result demonstrably at odds with the intentions of its drafters. This Court should not – as Ramsbottom's argument assumes without support – read child sexual abuse so broadly. To do so would ignore subsection (C)'s place in the statutory scheme of T.C.A. § 37-1-602. Subsection (C) clearly should have included the same age restriction – "a child under thirteen (13) years" – as the previous two subsections.

Whether subsection (C) should have included the same age restriction as the previous two subsections is a question of statutory interpretation. "The starting point for any question of statutory interpretation is the language of the statute itself." *United States v. Coss*, 677 F.3d 278, 283 (6th Cir. 2012) (internal quotation marks and citation omitted). In determining the meaning of a statute, the Court has several interpretative tools at its disposal, including the structure and context of the rest of the statute. *See Keen v. Helson*, 930 F.3d 799, 802-04 (6th Cir. 2019); *Arangure v. Whitaker*, 911 F.3d 333, 339-40 (6th Cir. 2018). "Statutory interpretation is a 'holistic endeavor' – the structure and wording of other parts of a statute can help clarify the meaning of an isolated term." *Keen*, 930 F.3d at 803 (quoting *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988)).

When looking at subsection (C) in the broader context of T.C.A. § 37-1-602 and with respect to the other subsections immediately preceding and following it, the only logical conclusion is that subsection (C) should contain an age restriction "of a child under thirteen (13) years of age." After all, this section is within Title 37 of the Tennessee Code titled "Juveniles,"

---

[3] This is not purely a hyperbolic hypothetical, but one with real possible consequences. If there is no age limitation on subsection (a)(3)(C), then it is a Class A misdemeanor in Tennessee for a "[n]eighbor, relative, friend or any other person" to knowingly fail to report the consensual sexual intercourse of the hypothetical married couple above. T.C.A. §§ 37-1-605; 37-1-615.

Chapter 1 titled "Juvenile Courts and Proceedings" and Part 6 titled "Child Sex Abuse."

*First*, it is clear that the legislature intended to include the same limiting phrase – "of a child under thirteen (13) years of age" – from subsections (A) and (B) in subsection (C). Even subsection (D), to the extent it expands the age limit to that between thirteen and seventeen based on certain relationships, specifically identifies the age range when it does so and is not silent on the issue. *See* T.C.A. § 37-1-602(a)(3)(D).

*Second*, the absence of the same age restriction in subsection (C) as that contained in subsections (A) and (B) would render the age range in subsection (D), i.e., individuals between thirteen and seventeen years of age, complete surplusage as the acts listed in subsection (C) would already be prohibited, no matter who committed the act.[4] Instead, subsection (D) <u>expands</u> "child sexual abuse" into a broader age category – thirteen to seventeen – but only if "if such act is committed against the child by a parent, guardian, relative, person residing in the child's home, or other person responsible for the care and custody of the child." T.C.A. § 37-1-602(a)(3)(D).

*Third*, the stated legislative intent and purpose section of the statutory scheme support the fact that subsection (C) should be limited to those sexual acts involving a child. The Tennessee General Assembly found and declared that "[t]he incidence of ***child*** sexual abuse has a tremendous impact on the victimized ***child***, siblings, family structure, and inevitably on all citizens of this state; . . . [t]he detection, intervention, prevention and treatment of ***child*** sexual abuse, including a focus on the sexual abuse that occurs within the home, shall be a priority of this state." T.C.A. §§ 37-1-601(a)(1)-(2); *see also* T.C.A. § 37-1-604.

*Finally*, although the caselaw is sparse, Tennessee courts that have examined this issue agree that the age limitations in subsections (A) and (B) should carry through to subsection (C).

---

[4] *Compare* T.C.A. § 37-1-602(a)(3)(D) *with* T.C.A. § 37-1-602(C).

In *Jarvis v. Hamilton Cty. Dep't of Educ.*, No. 1:17-CV-00172, 2019 WL 1368618, at *15 (E.D. Tenn. Mar. 26, 2019), the Court considered claims against a prosecutor for violations of Fourth Amendment rights through the commission of false arrest, abuse of process, and malicious prosecution. *Id.* at *1-3. The prosecutor had brought child sexual abuse claims against athletic staff and the principal at a high school where a student had been raped by his fellow teammates. *Id.* In examining whether the prosecutor had immunity, the Court had to examine "whether the prosecutor was acting within the scope of his prosecutorial duties as an advocate for the State, not whether he acted reasonably in doing so." *Id.* at *13. Although the Court found that the prosecutor had not acted unreasonably in interpreting the statute as he did, it noted:

> The Hamilton County Criminal Court considered this issue as a matter of first impression and reached a different conclusion—**finding that Subsection C implicitly included the requirement that the victim of abuse must be under the age of thirteen**. . . . The court reasoned, **"even though the language of subsection (a)(3)(C) is unconditional with respect to age, the logical effect of the conditions of age in the other three subsections is to make the definition in subsection (a)(3)(C) also conditional on age."** . . . Although this Court believes that the criminal court judge correctly decided the issue, it is conceivable that different jurists endeavoring to plumb the meaning of the same statute could arrive at different conclusions.

*Id*. at *15 (emphasis added) (citations omitted).

Similarly, the Tennessee Court of Appeals examined the definitions of child sexual abuse under T.C.A. § 37-1-602(a) and found that the relationship between a defendant – who had been convicted of statutory rape of a sixteen-year-old – did not fall under the definition of child sexual abuse. *See Green v. Metro. Gov't of Nashville*, No. M200101561COAR3CV, 2002 WL 1751436, at *4 (Tenn. Ct. App. July 30, 2002). Although *Green* examined the issue in the context of T.C.A. § 37-1-612 (which shields governmental records concerning reports of child sexual abuse from disclosure), it held that the statutory rape of a sixteen-year-old was not "child sexual abuse" and the government had to produce the records. Such an approach is consistent with the definition of

"child" in the context of sex crimes. *Cf. State v. Keen*, No. 01C01-9804-CR-00192, 1999 WL 254384, at *4 (Tenn. Crim. App. Apr. 30, 1999) ("In the context of sex crimes, a 'child' is defined as under thirteen years old."). The same underlying reasoning applies here.

To the extent Ramsbottom argues that her claim does not need to be based on "child sexual abuse" because the sexual acts she has alleged occurred while she was a minor, such an interpretation renders the statute of limitation meaningless. Such a broad reading of T.C.A. § 28-3-116(b)(1) would expand the statute of limitation to include any sexual act involving a minor, including consensual sex between two seventeen-year-olds. Ramsbottom cannot seize on the phrase "that occurred when the injured person was a minor" in T.C.A. § 28-3-116(b)(1) to shoehorn her negligence *per se* claim into a longer statute of limitation.

For all of these reasons, Ramsbottom should not be allowed to reframe her negligence *per se* claim as child sexual abuse (particularly when such statute is not raised once in the FAC). Ramsbottom – like the sixteen-year-old in *Green* – was well over the age of thirteen when the alleged sexual encounter occurred and therefore, cannot use the subsection (C) to sidestep the one-year statute of limitation.

## II. Ramsbottom Cannot Avoid the One-Year Statute of Limitation by Claiming that She Connected her Injury to the Wrongful Conduct in 2020.

Pursuant to Tennessee's discovery rule, Ramsbottom's claim accrued when she had knowledge of her injury as the result of Ashton's alleged actions. *Sherrill v. Souder*, 325 S.W.3d 584, 595 (Tenn. 2010) (cause of action accrues when the plaintiff discovers both the injury and the "identity of the person or persons whose wrongful conduct caused the injury"). As mentioned above, the "Child Sexual Abuse" statutes are not relevant or applicable in this case. Thus, the one-year statute of limitations found in T.C.A. § 28-3-104(a)(1)(A) applies. In 2019 Ramsbottom "was able to connect the injuries and damages complained of in this complaint" to Ashton's alleged

conduct. (FAC ¶ 96.) Assuming the latest possible date in 2019 upon which this connection could have occurred (December 31, 2019), Ramsbottom would have needed to file her complaint by December 31, 2020, for it to be timely. *See* T.C.A. § 28-3-104(a)(1)(A). The Complaint was filed on April 5, 2021. (Dkt. 1.) Count IV is untimely and should be dismissed.[5]

**III.     Ramsbottom has failed to allege a proper negligence *per se* claim.**

Ramsbottom has not pled the elements of a negligence *per se* claim. In order to recover under a negligence *per se* claim, the "plaintiff must demonstrate (a) a membership in the particular class of persons for whose benefit or protection the statute was enacted, (b) the inadequacy of existing remedies, and (c) that recognition of a cause of action would be consistent with the overall statutory scheme." *In re Tennessee Valley Auth. Ash Spill Litig.*, No. 3:09-CV-009, 2012 WL 3647704, at *60 (E.D. Tenn. Aug. 23, 2012) (recognizing "[t]he intent of the legislature is at the foundation of the analyses for both a negligence per se claim and a private right of action"). While Ramsbottom correctly quotes the factors found in *Smith v. Owen*, 841 S.W.2d 828 (Tenn. Ct. App. 1992), it is important to note:

> [o]ther factors apply, including, but not limited to, (1) the nature of the legislative provision; (2) the adequacy of existing remedies; (3) the extent to which recognizing a cause of action in negligence *per se* would aid, supplement, or interfere with existing remedies; (4) the significance of the purpose that the legislative body was seeking to effectuate in the statute, regulation, or ordinance; (5) the extent of the change in tort law that would result from recognizing the action; and (6) the burden that the new cause of action would place on the judiciary.

*Est. of French v. Stratford House*, 333 S.W.3d 546, 562 (Tenn. 2011) *superseded by statute as*

---

[5] The Response claims that "it was not until June 2020 that Plaintiff Ramsbottom appreciated the true scope of Defendant Bassnectar's abuse. . . ." (Resp., at 10.) It is unclear, however, whether she is attempting to allege June 2020 as the date of accrual. Should that be the case, Ramsbottom cites no Tennessee law for the proposition that a claim accrues only when a plaintiff "appreciates the ***true*** scope of abuse." This is probably because it would contradict directly the Tennessee law cited above, holding a claim accrues as soon as the plaintiff discovers the harm and the person who allegedly caused it.

*stated in Ellithorpe v. Weismark*, 479 S.W.3d 818, 828 (Tenn. 2015). Serious criminal statutes such as those alleged here fail to meet these factors, as they have corresponding intentional torts. "Each of the criminal offenses in Plaintiffs' list of alleged wrongs . . . corresponds to one or more intentional torts, actionable in its own right. Plaintiffs fail, however, to connect these wrongs to any complaint of negligence, or failure to exercise due care . . . ." *Brown v. City of Memphis*, 440 F. Supp. 2d 868, 876 (W.D. Tenn. 2006); *Fitzpatrick v. L. Sols. Chicago, LLC*, 584 B.R. 203, 222 (E.D. Tenn. 2018) ("The simple fact that the General Assembly has enacted a penal statute which defines criminal conduct does not require courts to adopt it as a standard of civil liability.").

Perhaps an intentional tort (such as battery or intentional infliction of emotional distress) would arguably have been available under facts alleged in the FAC and a more appropriate vehicle for the relief Ramsbottom seeks. *See, e.g.*, *Doe v. Mama Taori's Premium Pizza, LLC*, No. M1998-00992-COA-R9CV, 2001 WL 327906, at *2 (Tenn. Ct. App. Apr. 5, 2001) (minor bringing intentional tort claims against criminally prosecuted statutory rape defendant). The undersigned counsel, however, can find no Tennessee case with a negligence *per se* for statutory rape claim against an alleged perpetrator.[6] Statutory rape is not the proper basis of a negligence *per se* claim.[7]

As for the *Ware* case, the Response correctly points out (as did Ashton's memorandum) that the case was in a summary judgment posture. *See Ware v. Tow Pro Custom Towing & Hauling, Inc.*, No. 3:04-0528, 2007 WL 108885, at *7 (M.D. Tenn. Jan. 12, 2007), *aff'd*, 289 F. App'x 852 (6th Cir. 2008). The Response, however, fails to point out why that matters. Regardless of the posture, the case says exactly what Ramsbottom disregards, namely that "[i]t is undisputed that

---

[6] Presumably, if such a case existed, Ramsbottom would have brought it to the Court's attention.
[7] At least one commentator has questioned the availability of this cause of action in any jurisdiction. Caroline Forell, *Statutes and Torts: Comparing the United States to Australia, Canada, and England*, 36 Willamette L. Rev. 865, 880 (2000) ("There are some safety statutes for which it is not even clear whether a common-law negligence action, and therefore negligence *per se*, would be available. Statutory rape is a perplexing example.").

Defendant has never been charged with or convicted of the crime of extortion. Since Defendant is not guilty of the crime of extortion, Plaintiffs cannot establish the threshold element necessary to a claim of negligence *per se*, i.e., that Defendant violated a statute or ordinance." *Id*. Here, Ramsbottom has not alleged that Ashton has ever "been charged with or convicted of the crime(s)" asserted as the basis for her negligence *per se* claim. Thus, her claim fails as a matter of law.

**IV.     Ashton Was Not in a "Position of Trust" With Ramsbottom.**

A celebrity performing artist does not stand in a "position of trust" with a fan per T.C.A. § 39-13-532. None of the cases cited by Ramsbottom come close to supporting this proposition. *See State v. Denton*, 149 S.W.3d 1, 19 (Tenn. 2004) (doctor-patient); *State v. Kissinger*, 922 S.W.2d 482, 489 (Tenn. 1996) ("a surrogate father to the boys"); *State v. McGrowder*, No. M2013-01184-CCA-R3CD, 2014 WL 4723100, at *10 (Tenn. Crim. App. Sept. 23, 2014) ("[w]here the adult perpetrator and minor victim are members of the same household, the adult occupies a position of 'presumptive private trust' with respect to the minor"); *State v. Hodges*, No. M201601057CCAR3CD, 2017 WL 3085434, at *7 (Tenn. Crim. App. July 20, 2017) ("the victim was a friend of Defendant's son, and he would spend time at Defendant's house in her care as a friend's mother"); *State v. Berkley*, No. W201500831CCAR3CD, 2016 WL 3006941, at *8 (Tenn. Crim. App. May 17, 2016) ("[Defendant] was the pastor at the church [victim] attended and used the church facilities for at least two of the sexual encounters") *State v. Perry*, No. E201501227CCAR3CD, 2016 WL 2901817, at *3 (Tenn. Crim. App. May 13, 2016) ("trusting grandfather-type relationship" that began when victim was two-years old); *State v. Fossett*, No. W2012-00885-CCA-R3CD, 2013 WL 2456403, at *7 (Tenn. Crim. App. June 5, 2013) ("defendant's relationship with the victim was actually more akin to that of a stepfather having 'parental or custodial authority' than a mere boyfriend of her aunt").

The word "position" is an objective measurement of a guardianship-like role, not whether

the alleged victim had subjective trust in the alleged perpetrator. *See Kissinger*, 922 S.W.2d at 488 ("The position of parent, step-parent, babysitter, teacher, coach are but a few obvious examples."); *cf.* U.S. Sentencing Guideline § 3B1.3 (defining "a position of public or private trust" and focusing on objective characteristics noting, "'[p]ublic or private trust' refers to a position of public or private trust characterized by professional or managerial discretion (i.e., substantial discretionary judgment that is ordinarily given considerable deference"). No matter how many fans attended Ashton's concerts or had tattoos of his logo, he did not stand in a "position of trust" with them under Tennessee law. If Ramsbottom's argument were taking to its logical conclusion, any and all sexual partners in an alleged statutory rape situation would fulfill that "position of trust," so long as the alleged victim merely alleged some subjective facts describing a trusting relationship.

**V.     Ramsbottom Has Not Filed a Properly-Supported Motion for Leave to Amend.**

The Court should deny the request for "Alternative Relief" in the Response and not "grant leave to amend" unless and until Ramsbottom files a properly supported motion for leave to amend. (*See* Resp., at 11.) "A 'request for leave to amend almost as an aside, to the district court in a memorandum in opposition to the defendant's motion to dismiss is . . . not a motion to amend.'" *Tumminello v. Father Ryan High Sch., Inc.*, No. 3:15-CV-00684, 2015 WL 13215456, at *6 (M.D. Tenn. Dec. 7, 2015) (quoting *Kuyat v. BioMimetic Therapeutics, Inc.*, 747 F.3d 435, 444 (6th Cir. 2014)). If Ramsbottom files a motion for leave to amend in compliance with Local Rule 15.01, the defendants will respond in full, and the Court would be able to consider the issue with the benefit of the proposed amendments and complete briefing at that time.

## CONCLUSION

For the foregoing reasons and for those reasons outlined in his Memorandum of Law in Support of this Partial Motion to Dismiss, Ashton respectfully requests that the Court dismiss Ramsbottom's Count IV against him with prejudice.

Dated: August 30, 2021								Respectfully Submitted,

												s/ Robert A. Peal
												Robert A. Peal (No. 25629)
												Mark W. Lenihan (No. 36286)
												Grace A. Fox (No. 37367)
												Sims|Funk, PLC
												3322 West End Ave, Suite 200
												Nashville, TN 37203
												(615) 292-9335
												(615) 649-8565 (fax)
												rpeal@simsfunk.com
												mlenihan@simsfunk.com
												gfox@simsfunk.com

												Kimberly S. Hodde
												Hodde & Associates
												40 Music Square East
												Nashville, TN 37203
												(615) 242-4200
												(615) 242-8115 (fax)
												kim.hodde@hoddelaw.com

												Mitchell Schuster
												Stacey M. Ashby
												Meister, Seelig & Fein, LLP
												125 Park Avenue, 7th Floor
												New York, NY 10017
												ms@msf-law.com
												sma@msf-law.com

												*Counsel for Defendant Lorin Ashton, Amorphous Music, Inc., and Bassnectar Touring, Inc.*

# **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and exact copy of the foregoing was served on the following counsel via the Court's CM/ECF system on this 30th day of August, 2021:

Phillip H. Miller
631 Woodland Street
Nashville, TN 37206
(615) 356-2000
phillip@seriousinjury.com

Alexandria MacMaster
M. Stewart Ryan
LAFFEY, BUCCI & KENT, LLP
1100 Ludlow Street
Suite 300
Philadelphia, PA 19107
(215) 399-9255
amacmaster@lbk-law.com
sryan@lbk-law.com

Brian Kent
Laff, Whitesel, Conte & Saret, Ltd.
401 N. Michigan Avenue
Suite 1700
Chicago, IL 60611-4212
(215) 399-9255
bkent@lbk-law.com

*Counsel for Plaintiffs*

Ashleigh D. Karnell
Paige Waldrop Mills
Bass, Berry & Sims (Nashville Office)
150 Third Avenue South
Suite 2800
Nashville, TN 37201
(615) 742-7914
(615) 742-0453 (fax)
ashleigh.karnell@bassberry.com
pmills@bassberry.com

*Attorneys for Defendant Redlight Management, Inc.*

Russell B. Morgan
Jason C. Palmer
Rachel Sodée
Bradley Arant Boult Cummings LLP
1600 Division Street
Suite 700
P.O Box 340025
Nashville, TN 37203-0025
(615) 252-2311
 (615) 252-6311 (fax)
rmorgan@bradley.com
jpalmer@bradley.com
rsodee@bradley.com

R. Scott McCullough
McNabb, Bragorgos, Burgess & Sorin, PLLC
81 Monroe Avenue
Sixth Floor
Memphis, TN 38103-5402
(901) 924-0640
(901) 624-0650 (fax)
smccullough@mbbslaw.com

*Counsel for Defendant C3 Presents, L.L.C.*

Cynthia A. Sherwood
Davis Fordham Griffin
Sherwood Boutique Litigation, PLC
201 Fourth Avenue, N
Suite 1130
Nashville, TN 37219
(615) 873-5670
(615) 873-5671 (fax)
cynthia@sherwoodlitigation.com
davis@sherwoodlitigation.com

*Attorneys for Defendants Gnarlos Industries, LLC and Carlos Donohue*

Philip Goodpasture
Brendan D. O'Toole
Williams Mullen
200 South 10th St.
Richmond, VA 23219
804-420-6000
pgoodpasture@williamsmullen.com
botoole@williamsmullen.com
mhaynes@williamsmullen.com

*Attorneys for Defendant Redlight Management, Inc.*

                                                   *s/ Robert A. Peal*