**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**

| | | |
|---|---|---|
| **RACHEL RAMSBOTTOM, ALEXIS BOWLING, JENNA HOUSTON, JANE DOE#1,** | ) | |
| **Plaintiffs,** | ) | **CIVIL ACTION NO. 3:21-cv-00272** |
| **v.** | ) | **JURY TRIAL DEMANDED** |
| **LORIN ASHTON, AMORPHOUS MUSIC, INC., BASSNECTAR TOURING, INC., REDLIGHT MANAGEMENT, INC., C3 PRESENTS, L.L.C, INTERACTIVE GIVING FUND, GNARLOS INDUSTRIES, LLC, CARLOS DONOHUE, ABC CORPORATIONS, ONE THROUGH TEN (said Names Being Fictitious), JOHN DOES, ONE THROUGH TEN (said Names Being Fictitious),** | ) | **JUDGE ALETA A. TRAUGER** |
| **Defendants.** | ) | |

**AMORPHOUS MUSIC, INC.'S AND BASSNECTAR TOURING, INC.'S REPLY IN SUPPORT OF THEIR RULE 12(b)(2), 12(b)(3) AND 12(b)(6) MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

Defendants Amorphous Music, Inc. ("AMI") and Bassnectar Touring, Inc. ("BTI,") (collectively "Moving Defendants") respectfully submit this Reply in support of their Motion to Dismiss Counts II and IV of the First Amended Complaint (the "FAC") filed against them by Plaintiffs Rachel Ramsbottom ("Ramsbottom"), Alexis Bowling ("Bowling"), Jenna Houston ("Houston") and Jane Doe #1 ("Doe,[1]") (collectively, the "Plaintiffs") pursuant to: (i) Fed. R. Civ. P. 12(b)(2), because this Court lacks personal jurisdiction over AMI or BTI; (ii) Fed. R. Civ. P. 12(b)(3), because venue in this Court is improper; and (iii) Fed. R. Civ. P. 12(b)(6), because Plaintiffs have failed to state a claim upon which relief can be granted.

## ARGUMENT

### I. PLAINTIFFS, NOT DEFENDANTS, ARE CONFLATING AND CONFUSING THE ISSUES.

#### A. Plaintiffs Confuse Principal-Agency Relationships with an Alter Ego Theory but Have Actually Pled Neither.

In arguing that the FAC sufficiently states a claim under Section 1595 of the Trafficking Victims Protection Reauthorization Act ("TVPA"), Plaintiffs have accused every single defendant who has responded to the FAC so far of "conflat[ing] the Plaintiffs' factual allegations pursuant to [Plaintiffs'] stated beneficiary liability cause of action with a perpetrator liability cause of action…"[2] Plaintiffs have it backwards: the only conflation and confusion of issues that is taking place is being advanced by Plaintiffs, not Defendants.

According to Plaintiffs, "the actions of [Ashton] were the actions of AMI and BTI, particularly when it came to his predatory behavior and utilizing Moving Defendants to target and

---

[1] On June 28, 2021, the Court ordered Jane Doe #1 to file a notice regarding her true name by July 12, 2021. (Dkt. 59.) On July 13, 2021, Doe filed a Notice of Voluntary Dismissal of Claims Related to Jane Doe #1 Only Pursuant to F.R.C.P. 41(a)(1)(A)(i). (Dkt. 65.)

[2] *See* Dkt. 87-1, at 10; Dkt. 60-2, at 6; Dkt. 85-1, at 5; and Dkt. 73-1, at 10-11.

ultimately abuse young female fans such as Plaintiffs."[3] In order to make this leap, Plaintiffs argue a principal-agency relationship; however, neither in the FAC, nor in their brief in opposition to this motion, do Plaintiffs clearly identify the supposed principal and supposed agents. The word "agents" only appears twice in the FAC and in both instances, merely as oblique references to Defendants and/or their agents.[4]

The FAC fails to identify the functions of either Moving Defendant, let alone allege whether Ashton is the agent or the principal in his relationship with them. The failure to allege even those basic facts is detrimental to a proper pleading of an agency relationship. *See Houssain v. Sundowner of Ohio*, 2:08-CV-956, 2009 WL 1097242, at *4 (S.D. Ohio Apr. 22, 2009) ("It is insufficient to plead conclusory allegations of agency, and a plaintiff must allege sufficient facts that would amount to an agency relationship."); *see also Prochaska & Assocs., Inc. v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 798 F.Supp. 1427, 1433 (D. Neb. Feb. 26, 1992) ("The bald allegation that [the alleged agent] 'acted with the apparent authority of, and on behalf of, [alleged principal],' . . . is by itself a mere legal conclusion and is therefore insufficient to withstand a motion to dismiss.").[5]

By asserting that the actions (and knowledge) of Ashton are imputed to the Moving Defendants, thereby making them one in the same, Plaintiffs are really arguing an alter ego theory of the relationship between Ashton and the Moving Defendants. Given that the FAC does not

[3] *See* Dkt. 87-1, at 4.
[4] *See* Dkt. 23 ¶ 36 ("all Defendants in this action were acting…by and through their actual and/or ostensible agents…;"); FAC ¶ 211 ("Defendants' employees and agents…").
[5] Plaintiffs' citation to Tennessee law that a principal may be held vicariously liable for the negligence of its agent when the agent is acting within the scope of the agency is of no consequence. The FAC contains no allegations asserting that Ashton is an agent (or an employee) of the Moving Defendants or that he was acting within the scope of an agency relationship. Additionally, "federal common law [not Tennessee law] determines the parameters of the alter ego doctrine where the underlying cause of action is based on a federal question." *U.S. v. Carell*, 681 F.Supp.2d 874, 890 (M.D. Tenn. 2009).

attempt to plead an alter ego theory (or a corporate veil piercing theory), the FAC fails to contain any allegations about Ashton's supposed dominion and control over the Moving Defendants (or vice versa) or how that supposed control proximately caused the Plaintiffs' alleged injuries. *See Continental Bankers Life Ins. Co. of the South v. Bank of Alamo*, 578 S.W.2d 625, 632 (Tenn. 1979) (outlining the three elements required to show application of the instrumentality rule). The only FAC allegations that attempt to establish a relationship between Ashton and the Moving Defendants are found in paragraphs 26 and 27, where Plaintiffs allege, that Ashton is the "founder, chairman, figurehead, chief executive and icon of," the Moving Defendants. It is well-established that under both Tennessee law and federal common law, mere ownership of the Moving Defendants (which is not even alleged in the FAC) does not establish liability over the Moving Defendants. *See Carell*, 681 F. Supp.2d at 890 (mere dominion and control allegations, without adequately-alleged facts, will not alone support an alter ego theory).

The omission of allegations regarding either a principal/agency relationship or an alter ego theory defeats Plaintiffs' assertions that Ashton's alleged conduct subjects the Moving Defendants to liability under the TVPA and to the personal jurisdiction of this Court.

**B. Assuming *Arguendo* That Plaintiffs Are Correct that Ashton And the Moving Defendants Are Fundamentally Indistinguishable And That The Moving Defendants Recruited Plaintiffs, Then Plaintiffs Are Claiming That The Moving Defendants Are Actually Perpetrators Under Section 1591.**

Faced with the argument being made by every single entity defendant that the FAC does not sufficiently plead that those Defendants *knowingly* participated in a sex trafficking venture, Plaintiffs now state a revisionist theory in their opposition that, "Count Two of the the (sic) FAC explicitly and unequivocally states a beneficiary theory of liability against Moving Defendants pursuant to § 1595 of the TVPRA, not a perpetrator theory of liability pursuant to § 1591."[6]

[6] *See* Dkt. 87-1, at 10.

The fact that Plaintiffs are maintaining solely a Section 1595 claim against the Moving Defendants is anything but clear from the FAC. In the first instance, Count II, entitled, "Benefiting From A Sex Trafficking Venture In Violation Of The Trafficking Victims Protection Reauthorization Act, *18 U.S.C. §§ 1591* and 1595," includes citations to both sections and paragraph 201 states, "Defendants' acts . . . [were] violations of 18 U.S.C. § 1591(a)." More specifically, the FAC makes the following allegations: i) paragraph 63 states, "[o]ther employees of Bassnectar's companies also *recruited* young females at Bassnectar concerts…"; ii) paragraph 67: "[t]he Bassnectar Companies have actual knowledge…"; iii) paragraph 68: "…the Bassnectar Companies knowingly aided and abetted, facilitated and participated in…"; and iv) paragraph 72: "[t]he Bassnectar Companies also directly violated the TVPA because they knowingly benefitted…" Section 1591(a) states in relevant part:

> Whoever knowingly –
>
> (1) …*recruits*, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes or solicits by any means a person; or
>
> (2) *benefits*, *financially* or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1), knowing…such means will be used to cause the person to engage in a commercial sex act…or will be caused to engage in a commercial sex act…

The individual paragraph allegations in the FAC quoted above make clear that Plaintiffs are asserting Section 1591 liability, in both perpetrator trafficking *and* perpetrator financial beneficiary capacities, as to the Moving Defendants. Thus, Plaintiffs' assertion that Defendants are conflating factual allegations is plainly wrong; Moving Defendants are just reading the words recited in the FAC. Moving Defendants agree with Plaintiffs: "[t]he distinction between the knowledge requirement in a perpetrator claim as compared to a financial beneficiary claim is

significant in this case."[7] And, to quote Plaintiffs again, "perpetrator claims alleging a criminal violation of § 1591(a)(1)-(2) do require actual knowing participation in the sex trafficking venture,"[8] which Plaintiffs tacitly admit they did not plead as it relates to the Moving Defendants, hence their (unfounded) reliance on their argument that they have sufficiently pled the constructive knowledge element under Section 1595.

### C. Assuming *Arguendo* that Plaintiffs Only Alleged a Financial Beneficiary Claim Under Section 1595, The FAC Still Did Not Properly Plead the Requisite "Should Have Known" Elements.

#### *1. "Knowing Benefit" Element*

According to Plaintiffs, they have satisfied the "knowing benefit element" of a Section 1595 claim because the Moving Defendants knew or should have known that "Bassnectar [was] utilizing his fame, fortune, celebrity, live events, brand, and other employees and/or agents of AMI and BTI to recruit and groom underage female fans for the ultimate purposes of sexual abuse and manufactur[ing] of child pornography."[9] The foregoing sweeping conclusion (contained only in their opposition) is nothing more than a vague description of a benefit, not even tied to finances, that Ashton, not that the Moving Defendants, allegedly received. The majority of the paragraphs referenced by Plaintiffs (specifically, paragraphs 54-70), contain allegations about the conduct of former defendant, Interactive Giving Fund ("IGF").[10] Meanwhile, there are no allegations regarding specific conduct by the Moving Defendants in the entire FAC, which is why the only quote provided by Plaintiffs in opposition is "Defendants' employees and agents had actual knowledge or should have known that they were facilitating and participating in a scheme to profit

---

[7] *See* Dkt. 87-1 at p. 13.
[8] *Id.*
[9] *See* Dkt. 87-1, at 12.
[10] After being faced with incontrovertible evidence that IGF did not exist (nor did its predecessor) at the time of the alleged incidents, Plaintiffs stipulated to discontinue this action against it.

from a venture involved in commercial sex acts with minor children."[11] This sentence is nothing more than a formulaic legal conclusion which is insufficient under Rule 12(b)(6). *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### *2. "Knew or Should Have Known About Participation in a Sex Trafficking Venture" Element*

In arguing that they have sufficiently alleged that the Moving Defendants knew or should have known about participating in a sex trafficking venture, Plaintiffs continue to point to generalizations, rather than specific factual allegations, vaguely referring to "Bassnectar's operation." But the FAC provides no factual allegations regarding the "operation," in failing to identify any details about the operation itself, how Ashton's alleged "exploitative conduct" assisted the operation, or how the Moving Defendants assisted the operation. Plaintiffs skate around these infirmities by throwing about the names of few individuals, but do not, because they cannot, state that any of those individuals are or were specifically employed by the Moving Defendants.[12]

Plaintiffs then resort to referencing allegations that are absent from the FAC with the statement: "[t]his venture was organized and operated in broad daylight at shows, concerts, and venues that AMI and BTI assisted in scheduling, managing, and promoting, and used to further recruit young girls for Bassnectar."[13] Plaintiffs do not use the words, "scheduling," "managing," and "promoting" in the FAC in association with allegations against the Moving Defendants (which is why Plaintiffs could not include an FAC citation at the end of their sentence). Moreover, in

---

[11] *Id.*; Plaintiffs' assertion that the FAC is not an impermissible "group pleading" is facially wrong. The FAC does not mention the Moving Defendants with any specificity and certainly does not make "allegations specific to [the Moving Defendants'] failure to prevent [Plaintiffs'] sex trafficking." *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F.Supp.3d 959, 973 (S.D. Ohio 2019).
[12] In fact, Plaintiffs allege that Chris Madrigal was an employee of former defendant IGF (FAC ¶ 58), and Carlos Donohue is affiliated with defendant Gnarlos Industries (*id.* ¶ 32). Per the FAC, "Bri" and "Dom" are employees of the "Bassnectar Companies" (*id.* ¶ 63), a definition which includes every entity defendant.
[13] *See* Dkt. 87-1, at 16.

describing each of the alleged trafficking incidents with each of the Plaintiffs, the FAC does not contain a single allegation about the Moving Defendants' presence or involvement with these specific Plaintiffs. Plaintiffs rely completely on this newly-asserted principal/agency concept, which, as detailed above, is more aptly described as an alter ego theory, neither of which they set forth in the FAC. In contradistinction to the *M.A.* case, there are no allegations about control, or the participation of the Moving Defendants in Ashton's "operation" or vice versa. Thus, Plaintiffs' assertion that Ashton is a "high managerial agent" — and their citations to cases regarding the imputation of knowledge under an agency theory — are inapplicable.

## II. JURISDICTION OVER THE MOVING DEFENDANTS HAS NOT AND CANNOT BE ESTABLISHED.

### A. This Court Does Not Have Either General or Specific Personal Jurisdiction Over the Moving Defendants.

A court may assert general personal jurisdiction over a foreign corporation if the corporation's activities in the forum state are so "continuous and systematic" as to render it essentially "at home" in the forum state.[14] There is not a single allegation in the FAC demonstrating Moving Defendants had *any* activities in Tennessee. Without such facts, Plaintiffs fail to meet their burden with which they are tasked[15] to prove general personal jurisdiction.

Specific personal jurisdiction exists over a nonresident defendant when: "(1) the nonresident defendant purposefully directs his activities with the forum or resident thereof, or performs some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking benefits and protections of its laws, (2) the claims must be one which arises of or relates to the defendants forum-related activities, and (3) the exercise of jurisdiction must comport with fair play and substantial justice." *A.B. v. Hilton Worldwide*

---

[14] *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).
[15] *Id.*

*Holdings Inc.*, 484 F.Supp.3d 921, 933 (D.Ore. 2020); *see CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1263 (6th Cir. 1996).

The only Tennessee allegations pertain to Plaintiff Ramsbottom, none of which reference the Moving Defendants. While the FAC alleges that Ashton "utilized" Moving Defendants to engage in recruitment and victimization of underaged females, none of these allegations are alleged to have taken place in Tennessee. Even if Plaintiffs had properly alleged an agency or alter ego theory (or both) and used that to show that Moving Defendants are subject to specific jurisdiction through Ashton's alleged conduct in Tennessee – it is still not enough to meet the three-prong test. The FAC places Ashton in Tennessee on three separate occasions: i) the NYE 2012 show in Nashville, TN; ii) the 2013 Beale Street Music Festival; and iii) a stay in the Lowes Hotel in 2013. First, no claim arises from the 2012 NYE show where it is clear from the FAC that Ashton did not even meet up with Ramsbottom (let alone the Moving Defendants). Second, the FAC does not allege that Ashton's supposed conduct on those three occasions was taken in the scope of his relationship with Moving Defendants. It is these events that the FAC allege as giving rise to Ramsbottom's injuries – none of which are pled to involve Moving Defendants.

Plaintiffs now responsively argue for the first time that Moving Defendants purposefully directed themselves to Tennessee through regular and repeated performance in Tennessee, AMI's sale of merchandise, and BTI's concerts, including a festival in Manchester - none of which Plaintiffs actually alleged in the FAC. And even if they had pled these facts properly in the FAC, jurisdiction still fails as Plaintiffs alleged injuries do not arise from these contacts. *See A.B.,* 484 F.Supp.3d at 933.

**B. Plaintiffs' "Nationwide Service of Process" Argument Does Not Establish Jurisdiction Over Moving Defendants.**

Plaintiffs argue that since they have brought certain federal statutory claims, 18 U.S.C §

2255, "which provides for nationwide service of process," applies, and they need only show Defendants have sufficient contacts with the United States and not specifically Tennessee.[16] Plaintiffs are wrong. 18 U.S.C.§ 2255 provides in relevant part that: ". . . a victim of a violation of section 1589, 1590, 1591, 2241(c), 2242, 2243, 2251, 2251A, 2252, 2252A, 2260, 2421, 2422, or 2423 of this title . . . may sue in any appropriate United States District Court." Section 1595, the only section that Plaintiffs now claim matter as it relates to the Moving Defendants, is noticeably absent from the list of applicable sections.[17] Plaintiffs still must show Defendants have sufficient minimum contacts with Tennessee.

Plaintiffs' reliance on *Kammona v. Onteco Corp*., 587 F.App'x 575, 579 (11th Cir. 2014) is misplaced. In *Kammona*, nationwide service of process was authorized under a completely inapplicable securities federal statute, where service of process became a statutory basis for jurisdiction for defendants who violated specific federal statutes, none of which are at issue here. Additionally, service of process is not the same as conferring personal jurisdiction. Under Section 2255, Plaintiffs still must show that Defendants had sufficient contacts with Tennessee for this Court to have jurisdiction. *See Doe v. Hesketh*, 15 F.Supp.3d 586, 592 (E.D. Pa. 2014).

**C. Plaintiffs' Request for Jurisdictional Discovery Should Be Denied.**

While district courts have broad discretion in determining whether to permit jurisdictional discovery, Plaintiffs have failed to allege any facts that place Moving Defendants in this forum, much less justify how or why jurisdictional discovery might demonstrate that Moving Defendants are subject to personal jurisdiction in Tennessee. For those reasons, their throwaway request for

---

[16] The FAC does not allege 18 U.S.C. § 2255 as a basis for jurisdiction. Dkt. 23 ¶¶ 37-41.

[17] Moving Defendants are not challenging service of process. Section 2255(c)(2) states, ". . . process may be served in any district in which the defendant (A) is an inhabitant; or (B) may be found." Waivers of Service of Summons, preserving jurisdictional arguments, were filed making Plaintiffs' argument that process may be served in any district moot. *See* Dkt. 36 and Dkt. 38.

additional jurisdictional discovery should be denied.

## III. RAMSBOTTOM HAS NOT PROPERLY PLED HER COUNT IV CLAIM.[18]

### A. Plaintiffs Fail to State Negligence *Per Se* Against Moving Defendants.

While Ashton's Reply makes clear that Plaintiffs are blatantly misquoting his Answer, it bears repeating here. Ashton did not admit to the authenticity of the recorded call or to any sexual abuse. Rather, he answered each of the FAC paragraphs referenced by Plaintiffs with "[d]enies each and every allegation asserted in . . ."[19] The only thing Ashton admitted was having a phone call with Ramsbottom in 2020, which carries no legal import with it. Additionally, Plaintiffs cannot credibly argue that the Moving Defendants – two corporations – unlawfully penetrated (or sexually abused) Ramsbottom. Instead, Plaintiffs' only avenue for recovery under a negligence *per se* theory is vicarious liability, which is misplaced for all of the reasons stated above.

### B. The Discovery Accrual Rule Does Not Salvage the Count IV Claim

The Court should not countenance Ramsbottom's discovery accrual argument based on a Tennessee "child sexual abuse" statute that does not appear once in the FAC.

## CONCLUSION

For all the foregoing reasons, Plaintiffs' claims should be dismissed with prejudice.[20]

---

[18] In response to Plaintiffs' footnote 10 and to clear up any confusion, Moving Defendants "incorporate[] by reference the arguments regarding the deficiencies in Plaintiffs' Count IV as outlined in detail in Ashton's Motion to Dismiss and Memorandum in Support [filed on July 15, 2021]." (Dkt. 71, at 19.) Moving Defendants also incorporate by reference all of the arguments advanced by Ashton in his Reply in Support of his Partial Motion to Dismiss Count IV.
[19] Dkt. 69 ¶¶ 98-106.
[20] The Court should also deny Plaintiffs' request for "Alternative Relief" per the arguments advanced by Ashton in his Reply.

Dated: August 30, 2021

Respectfully Submitted,

*s/ Robert A. Peal*
Robert A. Peal (No. 25629)
Mark W. Lenihan (No. 36286)
Grace A. Fox (No. 37367)
Sims|Funk, PLC
3322 West End Ave, Suite 200
Nashville, TN 37203
(615) 292-9335
(615) 649-8565 (fax)
rpeal@simsfunk.com
mlenihan@simsfunk.com
gfox@simsfunk.com

Kimberly S. Hodde
Hodde & Associates
40 Music Square East
Nashville, TN 37203
(615) 242-4200
(615) 242-8115 (fax)
kim.hodde@hoddelaw.com

Mitchell Schuster, Esq. (admitted *pro hac vice*)
Stacey M. Ashby, Esq. (admitted *pro hac vice*)
Meister Seelig & Fein, LLP
125 Park Avenue, 7th Floor
New York, NY 10017
(212) 655-3500
(212) 655-3535 (fax)
ms@msf-law.com
sma@msf-law.com

*Counsel for Defendants Lorin Ashton, Amorphous Music, Inc., and Bassnectar Touring, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and exact copy of the foregoing was served on the following counsel via the Court's CM/ECF system on this 30th day of August, 2021:

Phillip H. Miller
631 Woodland Street
Nashville, TN 37206
(615) 356-2000
phillip@seriousinjury.com

Alexandria MacMaster
M. Stewart Ryan
LAFFEY, BUCCI & KENT, LLP
1100 Ludlow Street
Suite 300
Philadelphia, PA 19107
(215) 399-9255
amacmaster@lbk-law.com
sryan@lbk-law.com

Brian Kent
Laff, Whitesel, Conte & Saret, Ltd.
401 N. Michigan Avenue
Suite 1700
Chicago, IL 60611-4212
(215) 399-9255
bkent@lbk-law.com

*Counsel for Plaintiffs*

Russell B. Morgan
Jason C. Palmer
Rachel Sodée
Bradley Arant Boult Cummings LLP
1600 Division Street
Suite 700
P.O Box 340025
Nashville, TN 37203-0025
(615) 252-2311
(615) 252-6311 (fax)
rmorgan@bradley.com
jpalmer@bradley.com
rsodee@bradley.com

R. Scott McCullough
McNabb, Bragorgos, Burgess & Sorin, PLLC
81 Monroe Avenue
Sixth Floor
Memphis, TN 38103-5402
(901) 924-0640
(901) 624-0650 (fax)
smccullough@mbbslaw.com

*Counsel for Defendant C3 Presents, L.L.C.*

Ashleigh D. Karnell
Paige Waldrop Mills
Bass, Berry & Sims (Nashville Office)
150 Third Avenue South
Suite 2800
Nashville, TN 37201
(615) 742-7914
(615) 742-0453 (fax)
ashleigh.karnell@bassberry.com
pmills@bassberry.com

*Attorneys for Defendant Redlight Management, Inc.*

Cynthia A. Sherwood
Davis Fordham Griffin
Sherwood Boutique Litigation, PLC
201 Fourth Avenue, N
Suite 1130
Nashville, TN 37219
(615) 873-5670
(615) 873-5671 (fax)
cynthia@sherwoodlitigation.com
davis@sherwoodlitigation.com

*Attorneys for Defendants Gnarlos Industries, LLC and Carlos Donohue*

Philip Goodpasture
Brendan D. O'Toole
Williams Mullen
200 South 10th St.
Richmond, VA 23219
804-420-6000
pgoodpasture@williamsmullen.com
botoole@williamsmullen.com
mhaynes@williamsmullen.com

*Attorneys for Defendant Redlight Management, Inc.*

*s/ Robert A. Peal*