## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| **RACHEL RAMSBOTTOM,** | ) | |
| **ALEXIS BOWLING,** | ) | |
| **JENNA HOUSTON,** | ) | |
| **JANE DOE #1,** | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **No. 3:21-cv-00272** |
| | ) | |
| **LORIN ASHTON,** | ) | **Jury Trial Demanded** |
| **AMORPHOUS MUSIC, INC.,** | ) | |
| **BASSNECTAR TOURING, INC.,** | ) | **District Judge Aleta A. Trauger** |
| **REDLIGHT MANAGEMENT, INC.,** | ) | |
| **C3 PRESENTS, L.L.C.,** | ) | |
| **INTERACTIVE GIVING FUND,** | ) | |
| **GNARLOS INDUSTRIES, LLC,** | ) | |
| **CARLOS DONOHUE, ABC** | ) | |
| **CORPORATIONS, ONE THROUGH** | ) | |
| **TEN (said Names Being Fictitious),** | ) | |
| **JOHN DOES, ONE THROUGH TEN** | ) | |
| **(said Names Being Fictitious),** | ) | |
| **Defendants.** | ) | |

### MEMORANDUM IN SUPPORT OF DEFENDANT CARLOS DONOHUE'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

This Court should dismiss Plaintiffs' First Amended Complaint ("FAC") against Defendant Carlos Donohue with prejudice pursuant to: (i) Federal Rule of Civil Procedure 12(b)(2) because this Court lacks personal jurisdiction over Carlos Donohue; (ii) Federal Rule of Civil Procedure 12(b)(3) because venue in this Court is improper; and (iii) Federal Rule of Civil Procedure 12(b)(6) because Plaintiffs have failed to state a claim against Mr. Donohue upon which relief can be granted.

### Factual Background

The Complaint alleges that Defendant Lorin Ashton, known by his stage name Bassnectar, is an Electronic Dance Music ("EDM") entertainer, and the perpetrator of criminal conduct

governed under 18 U.S.C. §§ 1591(a) and 1595, known as the Trafficking Victims Protection Reauthorization Act ("TVPRA").[1] The TVPRA creates a private right of action for victims against not only the "perpetrators" but also "participants" who knowingly receive a benefit from a venture they know, or should have known, is engaged in sex trafficking.

The FAC alleges that Bassnectar used his fame and power to engage in sex trafficking and to solicit child pornography from the Plaintiffs for which they seek compensatory, punitive, and other damages (a "Perpetrator"). *See* Doc. No. 23. Plaintiffs also join in multiple counts a variety of Defendants the Plaintiffs deem "Bassnectar Companies," which notably do not include Mr. Donohue or Gnarlos Industries, LLC ("Gnarlos"). *See* Doc. No. 23 at ¶ 64. Instead, the Plaintiffs join Mr. Donohue and Gnarlos in a single count (Count II) alleging that Mr. Donohue and Gnarlos, along with the Bassnectar companies, worked with Bassnectar and benefitted from Bassnectar's alleged sex trafficking venture in violation of §1595 and §1591(a)(2) of the TVPRA (a "beneficiary"). *See* Doc. No. 23 at ¶¶ 17-18.

This Court should dismiss the FAC under Rule 12(b)(2) for lack of personal jurisdiction over Mr. Donohue. Mr. Donohue is an Oregon resident.[2] *See* Doc. No. 23 at ¶¶ 32-33; Exhibit A: Donohue Declaration.

This Court should also dismiss pursuant to Rule 12(b)(3) because this Court is not the proper venue. It is verifiably inaccurate that a "substantial part of the events or omissions giving rise to the claims asserted in this action" occurred in the Middle District of Tennessee. Instead, the FAC demonstrates that only one of the three Plaintiffs interacted with one of the Defendants

---

[1] Mr. Donohue accepts as true the factual allegations set forth in Plaintiffs' FAC only for the purposes of his Motion to Dismiss.
[2] Gnarlos was not incorporated until after the allegations against it in the FAC. Plaintiffs' counsel has been made aware of this fact and is filing a voluntary dismissal of Gnarlos.

(Bassnectar) in Tennessee. Accordingly, this Court should dismiss the action because transferring the claims as to Mr. Donohue would be futile.

Finally, this Court should dismiss the FAC pursuant to Rule 12(b)(6) because it fails to state a claim for which relief can be granted against Mr. Donohue or Gnarlos. Plaintiffs bring one cause of action against Mr. Donohue under TVPRA §1595. Plaintiffs' FAC is nothing more than threadbare recitals of legal conclusions and fails to allege any facts to show plausibility that Mr. Donohue knew or should have known of a sex trafficking venture, participated in a sex trafficking venture, or knowingly benefitted from a sex trafficking venture. Additionally, Plaintiffs have failed in establishing that Bassnectar was engaged in a sex trafficking venture that Mr. Donohue even could have benefitted from. The FAC fails to state a claim against Mr. Donohue or Gnarlos and should be dismissed under Rule 12(b)(6).

<u>**Argument**</u>

**I. THIS COURT LACKS PERSONAL JURISDICTION OVER MR. DONOHUE.**

    **A. Legal Standard**

        **1.** ***Fed. R. Civ. P. 12(b)(2)***

Federal Rule of Civil Procedure 12(b)(2) allows defendants to file a motion to dismiss for lack of personal jurisdiction. When, as in this case (in substantial part), "a federal court's subject-matter jurisdiction is based on a federal question, the court's exercise of personal jurisdiction must be authorized both by the forum state's long-arm statute and in accordance with the Due Process Clause of the fourteenth Amendment." *AlixPartners, LLP v. Brewington,* 836 F.3d 543, 549 (6th Cir. 2016).

Tennessee's long-arm statute, Tenn. Code Ann. § 20-2-214, has been interpreted to be "coterminous with the limits on personal jurisdiction imposed by the Due Process Clause of the

3

United States Constitution and, thus, the jurisdictional limits of Tennessee law and of federal constitutional due process are identical." *Williams v. Prisoner Transp. Servs.*, No. 3:19-cv-00599, 2021 U.S. Dist. LEXIS 56984, at *4 (M.D. Tenn. Mar. 25, 2021) (quoting *Intera Corp. v. Henderson,* 428 F.3d 605, 616 (6th Cir. 2005) (internal quotation marks and citation omitted)).

"Unlike for courts in some states, for a Tennessee court it is appropriate to collapse the two-part jurisdictional inquiry into one part, i.e., the due process inquiry." *Williams* at *4 (citing *EdgeAQ, LLC v. WTS Paradigm, LLC,* No. 3:14-CV-2264, 2015 U.S. Dist. LEXIS 69730, at *3 (M.D. Tenn. May 29, 2015)). The Due Process Clause requires that a non-resident defendant have at least "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Youn v. Track, Inc.*, 324 F.3d 409, 417 (6th Cir. 2003) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945)).

"There are two kinds of personal jurisdiction within the Federal Due Process inquiry: (1) general personal jurisdiction, where the suit does not arise from defendant's contacts with the forum state; and (2) specific jurisdiction, where the suit does arise from the defendant's contacts with the forum state." *Conn v. Zakharov*, 667 F.3d 705, 712-13 (6th Cir. 2012).

Dismissal in instances where there has not been an evidentiary hearing, but rather the court is solely considering the pleadings and affidavits, is proper when "all the specific facts which the plaintiff…alleges collectively fail to state a *prima facie* case for jurisdiction." *Williams* at *6 (quoting *Camps v. Gore Capital, LLC*, No. 3:17-cv-1039, 2019 U.S. Dist. LEXIS 110655, 2019 WL 2763902, at *4 (M.D. Tenn. July 2, 2019)). In such an instance, "the court does not weigh the facts disputed by the parties but may consider defendant's undisputed factual assertions." *Id.*

4

This court lacks both general and specific personal jurisdiction against Mr. Donohue. Indeed, Plaintiffs' allegations do not allege any facts establishing jurisdiction over Mr. Donohue. Below, Mr. Donohue discusses both general and specific jurisdiction.

## B.    Discussion

### 1.    *This Court Lacks General Jurisdiction Over Mr. Donohue.*

Plaintiffs fail to allege any fact connecting Mr. Donohue to Tennessee.

"General jurisdiction allows a plaintiff to sue a defendant on all claims regardless of the connection between the claim and the forum," *Williams* at *4 (citing *Tailgate Beer, LLC v. Boulevard Brewing Co.,* No. 3:18-cv-00563, 2019 U.S. Dist. LEXIS 94271, 2019 WL 2366948 at *2 (M.D. Tenn. June 5, 2019)). To determine general jurisdiction over an individual, courts look at whether a defendant's "affiliations with the State in which suit is brought are so constant and pervasive 'as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman,* 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 919 (2011)). A defendant's contacts with the forum state must be of "such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even when the action is unrelated to the defendant's contacts with this state." *Intera Corp. v. Henderson,* 428 f.3d 605, 615 (6th Cir. 2005) (internal quotation marks and citation omitted). Because no such pervasive contacts were alleged or even exist—general jurisdiction is not appropriate.

Plaintiffs allege that Mr. Donohue is a "resident of Oregon." *See* Doc. No. 23 at ¶ 33. They further allege that he is the "founder, chairman, figurehead, and chief executive of Gnarlos Industries." *See* Doc. No. 23 at ¶ 33.  Gnarlos "is incorporated in the state of Oregon and is headquartered at 3337 NE 79th Ave., Portland, OR, 97213."  Plaintiffs fail to allege a single fact concerning any contact Mr. Donohue has ever had with the state of Tennessee.  Mr. Donohue,

5

therefore, respectfully requests that this Court find it does not have general jurisdiction over Mr. Donohue.

### 2. *This Court Lacks Specific Jurisdiction Over Mr. Donohue.*

Specific personal jurisdiction does not exist over Mr. Donohue because Plaintiffs' singular cause of action against him does not arise from any alleged actions of Mr. Donohue in Tennessee or directed at Tennessee. "[S]pecific jurisdiction must arise out of or relate to the defendant's contacts with the forum—principally and activity or occurrence that takes place in the forum state." *Williams* at \*5 (citing *Bristol-Myers Squibb co. v. Superior Court of Cal., San Francisco Cty.,* 137 S. Ct. 1773, 1780, 198 L. Ed. 2d 395 (2017)).

The Supreme Court has held that there is no specific jurisdiction where the defendant's contacts with the state are unrelated to the claims in the lawsuit. *Bristol-Meyers Squibb,* 137 S. Ct. at 178.

The Sixth Circuit applies a three-part test to determine whether a nonresident defendant is subject to the court's specific personal jurisdiction:

> First, the defendant must purposefully avail himself of the privilege of action in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the fourm to make the exercise of jurisdiction of the defendant reasonable.

*CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1263 (6th cir. 1996) (quotations omitted). The failure to meet any one of the above factors means that a court may not invoke personal jurisdiction. *Conti v. Pneumatic Products Corp.*, 977 F.2d 978, 983 (6th Cir. 1992).

Where, as here, the only tie between Mr. Donohue and Tennessee stems from the Plaintiffs' connection to this forum, and where the Plaintiffs have failed to plead any facts whatsoever that specific jurisdiction over Mr. Donohue is proper, the FAC against him should be dismissed.

6

a. **Mr. Donohue did not take any overt actions to purposefully avail himself of the privilege of acting in Tennessee.**

The first prong, purposeful availment, examines "whether the defendant has engaged in some overt actions connecting the defendant with the forum state." *Fortis Corporate Ins. v. Viken Ship Mgmt.,* 450 F.3d 214, 218 (6th Cir. 2006) (internal citations and quotation marks omitted). The focus of this inquiry turns on whether the defendant's contacts with the forum state "proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State," *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985), and whether the defendant's conduct and connection with the forum are such that he "'should reasonably anticipate being haled into court there.'" *Id*. at 474 (quoting *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980)).

Plaintiffs have failed to plead that Mr. Donohue has "purposefully availed" himself of the privilege of conducting activities in Tennessee, *any* suit related conduct, or even any *non-suit* related conduct carried out by Mr. Donohue in Tennessee. The only mention of Tennessee at all in the FAC comes from Defendant Bassnectar's alleged *personal* actions relating to Plaintiff Ramsbottom. *See* Doc. No. 23 at ¶¶ 79-94, 105. The Plaintiffs allege there was a concert in Tennessee, but then specifically allege Plaintiff Ramsbottom *did not meet Bassnectar* at that concert. *See* Doc. No. 23 at ¶ 79. The remaining allegations regarding Tennessee involve Bassnectar and Plaintiff Ramsbottom meeting alone, with no allegations that Mr. Donohue and the other Defendants were even *in* the state or in any way involved in the interactions. *See* Doc. No. 23 at ¶¶ 80-94.

Furthermore, even though the relevance of the 2012 Nashville concert is unclear at best, the FAC is devoid of any allegations that Mr. Donohue had anything to do with said concert or with any of the other contacts between Bassnectar and Plaintiff Ramsbottom. Thus, there is nothing

within the FAC that alleges, or even attempts to allege, that Mr. Donohue, an Oregon resident, purposefully availed himself of the state of Tennessee or took any action that should cause him to reasonably expect to be haled to court here.

<p style="margin-left: 2em;">b.    <strong>The cause of action does not arise from Mr. Donohue's activities in Tennessee.</strong></p>

The second prong of the test requires Plaintiffs to "demonstrate a causal nexus between the defendant's contacts with the forum state and the plaintiff's alleged cause of action." *Beydoun v. Wataniya Restaurants Holding, Q.S.C.,* 768 F.3d 499, 506–07 (6th Cir. 2014) (recognizing "the cause of action must . . . have a substantial connection with the defendant's in-state activities"). There must be a sufficient link between the non-resident defendant's purposeful availment and the underlying lawsuit. *Walden*, 571 U.S. at 284. When that causal link does not exist, "specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1781 (citations omitted). The Sixth Circuit has also emphasized that this causation prong requires more than but-for causation. *Beydoun*, 768 F.3d at 508 (internal citations and quotations omitted).

Here, as stated above, the only connection between Tennessee and this action is the fact that Plaintiff Ramsbottom is a resident of Tennessee and that she and Bassnectar spent several days in a hotel together in Nashville. *See* Doc. No. 23 at ¶¶ 19, 79-94. There are no allegations that Mr. Donohue took any action or directed any action to the state of Tennessee. There are no acts alleged to provide a basis for this Court to find that this cause of action has a "substantial connection with [Mr. Donohue's] in-state activities." Thus, specific personal jurisdiction fails under the second prong of this test.

> c. **Mr. Donohue's actions are not substantial enough to make exercise of personal jurisdiction of Mr. Donohue in Tennessee reasonable.**

Even if Plaintiff has pleaded facts to establish sufficient contacts, the Court would still need to consider the following four factors to determine whether exercise of jurisdiction over the defendant is reasonable: "(1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the controversy." *Intera Corp.*, 428 F.3d at 618 (citing *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1268 (6th Cir. 1996)).

First, the burden on Mr. Donohue to travel and defend this action in Tennessee is significant given that he is a small-business owner based in Portland, Oregon and has absolutely no ties to the state of Tennessee. Second, Tennessee does not have a strong interest in resolving the dispute between Plaintiffs and Mr. Donohue, particularly regarding Plaintiff Bowling and Plaintiff Houston, whose alleged private interactions with Bassnectar have nothing to do with Tennessee. *See Sampson-El v. Georgia,* No. 1:12-CV-285, 2013 WL 1220015, at *12 (E.D. Tenn. May 3, 2013) (recognizing that an out-of-state federal court would just as capably protect a Tennessee citizen's rights).

Third, and similarly, although Plaintiffs' interest in obtaining relief (to the extent they are entitled to any relief) is significant, "there is again no reason to suppose such relief could not be had in a federal court in [Oregon, New York or California]." *See id.*

Finally, New York or California would have, at a minimum, an equal interest as Tennessee in securing the most efficient resolution of this controversy given the residency of Defendants Ashton, Bassnectar Touring, Inc., and Amorphous Music Inc. (Doc. No. 23 at ¶¶ 25-27), and that

any evidence, if any exists, of some sex trafficking scheme would likely be found there. *See, e.g., Intera Corp.,* 428 F.3d at 619.

For all the above reasons, the FAC should be dismissed against Mr. Donohue for lack of personal jurisdiction.

## II. THIS COURT IS THE IMPROPER VENUE FOR THE CLAIMS AGAINST MR. DONOHUE.

### A. Legal Standard

#### 1. *Fed. R. Civ. P. 12(b)(3)*

Plaintiffs have the burden on a 12(b)(3) motion "to prove venue is proper" in the district where the case was filed. *Bd. Of Forensic Doc. Exam'rs, Inc. v. Am. Bar Ass'n,* 16-CV-2641-JPM-TMP, 2017 WL 549031, at *10 (W.D. Tenn. Feb 9, 2017); *Gone To The Beach, LLC v. Choicepoint Servs., Inc.,* 434 F. Supp.2d 534, 536-37 (W.D. Tenn. 2006). In a case with multiple parties and multiple claims, the plaintiff "must show that venue is proper for *each* claim and as to *each* defendant in order for the court to retain the action." *Pioneer Surgical Tech v. Vikingcraft Spine, Inc.*, No 2:10-cv-251, 2011 WL 64239 at *2 (quoting *Verbis v. Iowa Dep't of Human Services.*, 18 F. Supp.2d 770, 774 (W.D. Mich. 1998)) (emphasis added). Once a court finds that venue is improper it is within the court's discretion to either dismiss the action or transfer the action to a more appropriate district. *Gone To The Beach,* 434 F. Supp.2d at 536 (citing *First Mich. Corp. v. Bramlet,* 1411 F.3d 260, 262 (6th Cir. 1998)).

Mr. Donohue hereby incorporates by reference and adopts the arguments with respect to Rule 12(b)(3) as laid out in AMI's and BTI's Memorandum in Support of Motion to Dismiss as those arguments apply to Mr. Donohue. *See* Doc. No. 71 at p. 9. There is nothing in the FAC that alleges any connection between Mr. Donohue and the Middle District of Tennessee nor that Bassnectar's actions in Tennessee had anything to do with his relationship to Mr. Donohue. *See*

Doc. No. 23 at ¶¶ 76-107. Venue is not proper in this Court and the FAC should be dismissed accordingly.

### III.    THE FAC FAILS TO STATE A "KNOWING BENEFICIARY" CLAIM AGAINST MR. DONOHUE UNDER TVPRA §1595.

Plaintiffs' TVPRA claim (Doc. No. 23 at ¶¶ 198-213) against Mr. Donohue should be dismissed because Plaintiffs fail to allege any fact showing the claim is plausible.

#### A.    Legal Standard

##### 1.    *Fed. R. Civ P. 12(b)(6)*

In order to survive a motion to dismiss under this rule, a complaint must state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556 (2007). Plausibility in a claim exists when facts are pled that allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Hutchinson v. Metro. Gov't of Nashville & Davidson, Cnty.,* 685 F. Supp. 2d 747, 7511 (M.D. Tenn. 2010). A plaintiff must plead facts that show more than a "sheer possibility" of unlawful action. *Id.* at 749. "If a complaint pleads facts that are merely consistent with liability, it stops short of the line between possibility and plausibility of relief." *Id.* at 751 (internal quotations omitted).

In deciding a motion to dismiss for failure to state a claim under Rule12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true and draw all reasonable inferences in favor of the plaintiff." *Directtv, Inc. v. Treesh,* 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.,* 281 F.3d 613, 619 (6th Cir. 2002). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937 (2009).

A pleading that offers no more than "labels and conclusions" and a "formulaic recitation of the elements of a cause of action will not do" *Twombly* at 555 (citing *Papasan v. Allain,* 478

U.S. 265, 286 (1986)). A claim is insufficient where it tenders "naked assertion[s]" devoid of "further factual enhancement." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly* at 557).

Thus, in order for Plaintiffs to survive a 12(b)(6) motion, a complaint must "contain either direct or inferential allegations respecting *all* material elements necessary for recovery under a viable legal theory." *D'Ambrosio v. Marino,* 747 F.3d 378, 383 (6th Cir. 2014). To establish the necessary "facial plausibility" required to "unlock the doors of discovery," Plaintiffs cannot rely on "legal conclusions" or "[threadbare] recitals of the elements of a cause of action," but, instead, must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678-79.

### B. Discussion

Chapter 18 of the United States Code makes it a criminal offense to engage in or benefit from a sex trafficking venture. Specifically, 18 U.S.C. § 1591(a) states:

(a) Whoever knowingly –

    (1) in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or

    (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),

    knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

18 U.S.C. § 1591(a). Thus, the first prong of § 1591(a) imposes liability on the parties that recruit, entice, harbor, transport, provide, obtain, advertise, maintain, patronize, or solicit a person to engage in a commercial sex act, while the second prong applies to those who benefit from participation in a sex trafficking venture. *Id*. Pursuant to 18 U.S.C. § 1595, a victim of a violation of § 1591 may bring a civil action against someone who is not the direct perpetrator under § 1591 but is instead a beneficiary from a violation under § 1591. Specifically, 18 U.S.C. § 1595(a) provides in relevant part that an action may be brought against:

> …whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter…

18 U.S.C. § 1595(a).

Thus, unlike a direct claim against a perpetrator of sex trafficking, Section 1595 permits a victim to pursue recovery against a person or entity who participates in and benefits from the sex trafficking venture. Here, through Count II of their FAC, Plaintiffs are asserting one claim against Mr. Donohue based on the allegations that he benefitted from his participation in a sex trafficking venture. *See* Doc. No. 23 at ¶¶ 198-213.

To make such a claim in a civil complaint, a plaintiff must allege sufficient facts to plausibly infer the defendant: (1) "knowingly benefit[ted], financially or by receiving anything of value"; (2) from "participation in a venture"; (3) that he "knew or should have known has engaged in" sex trafficking under Section 1591. *H.G. v. Inter-continental Hotels Corp.,* 489 F. Supp. 3d 697, 704 (E.D. Mich. 2020).

Because the Plaintiffs fail to allege facts supporting any of these elements, their claim against Mr. Donohue should be dismissed.

Plaintiffs have brought a salacious sex trafficking claim against Mr. Donohue based solely on the following:

32.     … Gnarlos Industries, L.L.C.,[3] at all relevant times, participated in a venture with Bassnectar in which it managed, promoted, recruited and profited from its' [sic] venture with Bassnectar. Carlos Donohue is the founder, chairman, figurehead, and chief executive of Gnarlos Industries. Gnarlos Industries knew, or should have known, Bassnectar was engaging in the trafficking of and unlawful conduct[4] with minors. Gnarlos Industries had a continuous business relationship with Bassnectar that enabled Bassnectar to engage in predatory behavior toward underage girls during the times that each Plaintiff was harmed.

***

33.     Defendant, Carlos Donohue, an individual, is an adult male and resident of Oregon. Carlos Donohue is the founder, chairman, figurehead, and chief executive of Gnarlos Industries. Carlos Donohue utilized Gnarlos Industries to arrange for and transport young girls, including Plaintiffs, to engage in commercial sex acts with Bassnectar. Carlos Donohue had a continuous business relationship with Bassnectar that enabled Bassnectar to engage in predatory behavior toward underage girls during the times that each Plaintiff was harmed.

***

111.    Around April 2014, Bassnectar provided Alexis with his personal email and contacted her via email offering her tickets to his Las Vegas show. Bassnectar informed Alexis that his [tour] manager, Defendant, Carlos Donohue, would be getting her tickets and backstage passes for the show. Upon information and belief, Donohue, the founder, chairman, figurehead, and chief executive of Gnarlos Industries, did in fact arrange to provide tickets for Alexis, who at that time was under the age of 18. Donohue, the founder, chairman, figurehead, and chief executive of Gnarlos Industries, knew, or should have known, Bassnectar was engaging in the trafficking of and unlawful conduct with minors.

***

---

[3] Based upon information provided to Plaintiffs that Gnarlos Industries was not created until after Mr. Donohue ceased work as Bassnectar's tour manager and after allegations against it in the FAC, the Plaintiffs are expected today to file a Motion to Dismiss without prejudice.

[4] Plaintiffs repeatedly allege knowledge of "trafficking of *and unlawful conduct* with minors." (emphasis added). Section 1951 liability does not attach to knowledge of "unlawful conduct," with minors, but, instead, knowledge of, participation in, and benefit from *sex trafficking* of minors.

112.    Alexis drove to Las Vegas but was not permitted in the venue because she was under the age of 18.[5]

*See* Doc. No. 23 at ¶¶ 32, 33, 111, and 112.

None of Plaintiffs' generic allegations as to the Bassnectar Companies (Doc. No. 23 at ¶¶ 64-72) are directed at Mr. Donohue.

1.      ***Plaintiffs Fail To Sufficiently Allege That Mr. Donohue Knowingly Benefitted Financially From His Participation In A <u>Sex Trafficking</u> Venture.***

The problem with Plaintiffs' claim here is two-fold: (1) Plaintiffs have not made even a plausible claim that Bassnectar took part in a sex trafficking venture; and (2) even had such a claim properly been alleged, Plaintiffs have failed to allege facts showing that Mr. Donohue knowingly benefitted from a sex trafficking venture.

To satisfy this element of a claim under Section 1595's "beneficiary theory"—that the Defendants knowingly benefitted from the alleged sex trafficking venture—Plaintiffs must plausibly allege Mr. Donohue "knowingly benefit[ted] financially or by receiving anything of value" from the trafficking venture. *A.B. v. Marriott Int'l, Inc*., 455 F. Supp. 3d 171, 190 (E.D. Pa. 2020).

In analyzing the "knowing benefit" prong, the Southern District of New York held that "participation giving rise to the benefit must be participation *in a sex-trafficking venture*, not participation in other activities engaged in by the sex traffickers that do not further the sex-trafficking aspect of their venture." *See Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d

---

[5] Additionally, In the now irrelevant Paragraph 168, Plaintiffs allege "In exchange [for having sex with Jane Doe #1], Bassnectar spoke with his tour manager, Carlos Donohue, to arrange transportation for Jane Doe #1 to take her to his show.  Bassnectar paid for the cab ride." Although Plaintiff Jane Doe #1 has nonsuited her claims, Mr. Donohue provides this paragraph as context for Plaintiffs' allegations in Paragraph 33 that Mr. Donohue provided transportation for girls to his concerts.

156, 169 (S.D. N.Y. 2019) (emphasis original) (citing *United States v. Afyare*, 632 F. App'x 272, 286 (6th Cir. 2016) *see also Noble v. Weinstein*, 335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018 ("Because…liability[] cannot be established by association alone, Plaintiff must allege specific conduct that furthered the sex trafficking venture…some participation in the sex trafficking act itself must be shown.").

In considering whether the Weinstein Companies ("TWC") had received a knowing benefit the *Geiss* court found that, while those defendants "undoubtedly benefited from H. Weinstein's continued employment at TWC…[t]he controlling question, however, is whether H. Weinstein provided any of those benefits to TWC *because of* TWC's facilitation of H. Weinstein's sexual misconduct." *Id*. at 169 (emphasis original). Because the court found the "FAC pleads no facts that would plausibly support such a conclusion[,]" the FAC must be dismissed. *Id*. at 169-170. Even *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 964, which Plaintiffs rely upon in their filings (*see* Doc. No. 85-1 at p. 9), does not reach as far as Plaintiffs would like or need. The *M.A.* court simply acknowledged that the *Geiss* court held that the "Plaintiff must show that the trafficker 'provided…benefits to [Defendants] because of [Defendants'] facilitation of [the trafficker's] sexual misconduct" while noting other courts have used a different standard. *M.A.*, 425 F. Supp. 3d at 964. The *M.A.* court ultimately held, however, that under the facts of the case before it, because the Plaintiff alleged that "Defendants rented rooms to the trafficker, and therefore benefitted financially…the rental of a room constitutes a financial benefit from a relationship with the trafficker sufficient to meet" the "knowing benefit" element. *M.A.*, 425 F. Supp. 3d at 965.

Plaintiffs fail to allege facts that are even close to satisfying this element of their claim. In fact, the only mention of Mr. Donohue "benefitting" from his alleged "participation" in sex

trafficking comes from the generic legal conclusory statements in Plaintiffs' FAC outlining of the TVPRA §1595 cause of action—in which they simply identify all Defendants. *See* Doc. No. 23 at ¶¶ 18, 203-204. Such conclusory, shot-gun pleading is clearly insufficient. *See Doe. v. Indyke*, 465 F. Supp. 3d 452, 466 (S.D.N.Y. 2020).

In Paragraph 204 of the FAC, Plaintiffs allege "Defendants have financially benefitted as a result of these acts, omissions, and/or commissions by their participation in managing, promoting, recruiting, and profiting off the success of the Bassnectar brand[,]" but fail to allege how such participation had *anything* whatsoever to do with the "trafficking" of the Plaintiffs.

If anything, the allegations show that Defendants benefitted not *from* the alleged sex trafficking but *in spite* of its alleged existence. Such an operation would have exposed Bassnectar, Mr. Donohue, and Defendants to a public controversy that cast Bassnectar in a light different than his allegedly carefully created public image. Indeed, Plaintiffs have alleged that the defendants profited because "Bassnectar was postured as an altruistic, activist organization originated by one man who provided a sense of belonging and righteousness to youth…." *See* Doc. No. 23 at ¶ 8. "Yet, Bassnectar's purported noble actions and reputation of being in service to some greater good were nothing more than a veil to mask to [sic] his sinister desires and actions and a means to use his power and influence to groom and ultimately sexually victimize underage girls." *See* Doc. No. 23 at ¶ 9.

Plaintiffs fail to allege anything plausible as to how Bassnectar's alleged grooming and statutory rape of young fans did anything to benefit or provide anything of value to the Defendants or their businesses. This type of case differs significantly from the hospitality industry line of cases relied upon by the Plaintiffs. There are no allegations that Mr. Donohue received special consideration or payment from any sex trafficking venture, nor any allegations that the "sex

trafficking" even resulted in any tangible benefit to be received by anyone but Bassnectar himself. *See Geiss v. Weinstein Co. Holdings, LLC,* 383 F. Supp. 3d 156, 170 (S.D.N.Y. 2019) ("[T]he FAC does not allege that any directors or officers to whom TWC [defendant's associated entity] paid a salary were compensated for their participation in H. Weinstein's assaults"). *See also Kolbek v. Twenty First Century Holiness Tabernacle Church, Inc.*, No. 10 Civ. 4124, 2013 U.S. Dist. LEXIS 180463, 2013 WL 6816174, at *16 (W.D. Ark. Dec. 24, 2013) ("The fact that sexual abuse was committed by the ministry's leader and that members of the ministry had their expenses paid for through ministry funds is simply not sufficient to establish a violation of 18 U.S.C. § 1591.").

Because Plaintiffs have failed to allege that Mr. Donohue benefitted from a sex trafficking venture, their claim against him should be dismissed.

### 2. *Plaintiffs Fail To Sufficiently Allege That Mr. Donohue Knowingly Participated In A Sex Trafficking Venture.*

Plaintiffs make one allegation[6] within the entire forty-one-page FAC that involves any specific action taken by Mr. Donohue with regard to any one of the Plaintiffs:

> 111. Around April 2014, Bassnectar provided Alexis with his personal email and contacted her via email offering her tickets to his Las Vegas show. Bassnectar informed Alexis that his manager, Defendant, Carlos Donohue, would be getting her tickets and backstage passes for the show. Upon information and belief, Donohue, the founder, chairman, figurehead, and chief executive of Gnarlos Industries, did in fact arrange to provide tickets for Alexis, who at that time was under the age of 18. Donohue, the founder, chairman, figurehead, and chief executive of Gnarlos Industries, knew, or should have known, Bassnectar was engaging in the trafficking of and unlawful conduct with minors.

Doc. No. 23 at ¶ 111. That is it.

---

[6] All claims, allegations, and causes of actions as related to Jane Doe #1 have been voluntarily dismissed. *See* Doc. No. 65

Although no reported cases on this issue have been found from this district, courts around the country are split on what is required to sufficiently allege participation. Some courts have interpreted the above quoted language from *Afyare* to require allegations of specific, overt acts on the part of the defendant that furthers the sex trafficking aspect of the venture in order to satisfy the "participation" element. *See, e.g., Noble v. Weinstein*, 335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018) (requiring factual allegations implicating the defendant as a participant in the perpetrator's conduct toward the victim); *Doe 1 v. Red Roof Inns, Inc.*, Civil Action No. 1:19-cv-03840-WMR, 2020 WL 1872335, at * 3 (N.D. Ga. April 13, 2020) (stating that "[a]ssociation alone cannot establish liability; instead, knowledge and 'some participation in the sex trafficking act itself must be shown.'") (citations omitted).

Other courts have distinguished *Afyare* as only applying to participation in a venture in connection with a claim made under Section 1591 of the statute and not Section 1595 beneficiary claims due to Section 1595's "knew or should have known" language. *See, e.g., M.A.*, 425 F. Supp. 3d at 969; *S.Y. v. Naples Hotel Co.*, 476 F. Supp. 3d 1251, 1256 (M.D. Fla., 2020); *J.C. v. Choice Hotels Int'l, Inc.*, Case No. 20-cv-00155-WHO, 2020 WL 3035794, at *1 n.1 (N.D. Cal., June 5, 2020). Those courts have held that actual overt acts of sex trafficking are not required as long as the defendant had constructive knowledge of the sex trafficking act. *Id.*

Here, Plaintiffs have failed to allege either actual or constructive participation on the part of Mr. Donohue in the alleged sex trafficking venture. Plaintiffs allege that Mr. Donohue arranged for Plaintiff Bowling to get a ticket to one of Bassnectar's shows in Las Vegas, but they do not allege she got the backstage pass she was promised by Bassnectar. *See* Doc. No. 23 at ¶ 111. There is no allegation that Mr. Donohue knew Plaintiff Bowling's age, knew she had any type of relationship with Bassnectar, ever saw Plaintiff Bowling, spoke to Plaintiff Bowling, saw Plaintiff

Bowling with Bassnectar, or otherwise saw or did anything inappropriate. Plaintiffs' own allegations in Paragraph 112 provide alleged facts indicating that Mr. Donohue did nothing inappropriate. He provided a routine ticket as requested; however, because Plaintiff Bowling was not over eighteen, she could not use it.

The Plaintiffs paint this act by Mr. Donohue of providing tickets and a backstage pass at the direction of the artist he worked for as a sinister act of participation in Bassnectar's trafficking scheme.[7]

"The participation giving rise to the benefit must be participation in a sex trafficking venture, not participation in other activities engaged in by the sex traffickers that do not further the sex-trafficking aspect of the venture." *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 169 (S.D.N.Y. 2019) (citing *U.S. v. Afyare*, 632 F. App'x 272, 286 (6th Cir. 2016) (stating that "§ 1591(a)(2) targets those who participate in sex trafficking; it does not target [those] who turn a blind eye to the source of their financial sponsorship")).

A tour manager providing tickets to a concert at the direction of the artist he is managing the tour for is exactly the type of conduct the statute would not consider, especially given the fact that Plaintiffs fail to allege *any* fact purporting to show that Mr. Donohue knew or should have known Bassnectar even had a relationship with Plaintiff Bowling, or ever had sex with her, much less any facts on participation as to trafficking. All that is alleged is that Mr. Donohue gave tickets to a person that Bassnectar requested he give tickets to. Plaintiffs have not alleged any facts so as to make plausible their claim that the tour manager providing a ticket shows participation in a sex

---

[7] Also, Plaintiffs assert that his liability comes through his association with Gnarlos Industries, which allegedly provided the tickets to Plaintiff Bowling in 2014. *See* Doc. No. 23 at ¶ 111. Plaintiffs are expected to voluntarily dismiss Gnarlos Industries today, however, because it did not exist in 2014.

trafficking venture. Taken to its logical conclusion, Plaintiffs' argument appears to be that if a tour manager does his job and gives out tickets, or even backstage passes (which is not alleged), and the entertainer happens to be sleeping with the recipient of the ticket, the tour manager has participated in sex trafficking. That result is untenable.

Also damaging to Plaintiffs allegations against Mr. Donohue regarding "participation" is the fact that Plaintiffs specifically declined to include him in their outlining of the "sex trafficking" process set out within the FAC. *See* Doc. No. 23 at ¶¶ 54-58, 64-72.

The *singular* and completely innocuous allegation (Doc. No. 23 at ¶ 111) from Plaintiff Bowling that Mr. Donohue, as part of his bona fide duty as a tour manager, provided her tickets to a Bassnectar show—to which she wound up not being able to attend—does not amount to an allegation plausible enough to show that Mr. Donohue participated in a "sex trafficking" endeavor as it was a mere "participation in a non-sex trafficking endeavor" that, even with all inferences read in favor of the Plaintiffs, did not "further the sex-trafficking aspect of the venture." *Weinstein* at 286. Thus, considering the *Afyare* requirement that a plaintiff must allege an overt act of the defendant in order to satisfy the participation element, the FAC is clearly insufficient.

Should the Court decide that only constructive participation in the sex trafficking act is required, the FAC is equally deficient. Nowhere in the FAC do Plaintiffs allege *any fact* showing that Mr. Donohue was aware or should have been aware of Bassnectar's alleged contacts with the Plaintiffs or that they committed specific acts that furthered the purported sex trafficking venture. In fact, there are no allegations that go beyond threadbare recitations of the legal standards of the TVPRA.  Plaintiffs do not even allege that Mr. Donohue's knowledge should be imputed from Bassnectar due to his being "intimately involved in their day-to-day operations" because, as mentioned earlier, Plaintiffs specifically exclude Mr. Donohue from inclusion in a majority of the

allegations involving the sex trafficking venture allegedly involving the Bassnectar Companies. *See e.g.,* Doc. No. 23 at ¶ 67. Even if Mr. Donohue was included in these claims, such conclusory allegations are insufficient to state a claim under § 1591(a)(2). *See Noble,* 335 F. Supp. 3d at 524; *Russell Barnett Ford of Tullahoma, Inc. v. H&S Bakery, Inc*., 398 F. Supp. 3d 287, 299 (E.D. Tenn. 2019). As such, Plaintiffs have failed to sufficiently allege that Mr. Donohue participated in the alleged sex trafficking venture.

### 3. *Plaintiffs Fail To Sufficiently Allege That Mr. Donohue Knew Or Should Have Known That Bassnectar Was Engaged In A Sex Trafficking Venture.*

Plaintiffs' failure to plead even a singular fact to support this element also is fatal to Plaintiff's claim against Mr. Donohue. A defendant cannot be liable under Section 1595's "beneficiary" theory unless *facts* are *alleged* to show that the defendant "knew or should have known" that the alleged venture was engaged in sex trafficking. *See H.H. v. G6 Hosp., LLC*, Case No. 2:19-CV-755, 2019 WL 6682152, at *3 (S.D. Ohio, Dec. 6, 2019). The standard under this section, based on the "should have known" language in the statute, is a negligence standard of constructive knowledge. *Id.* The FAC, however, fails to meet this low pleading requirement.

Plaintiffs attempt to satisfy this element of their claim against Mr. Donohue by alleging that "Donohue, the founder, chairman, figurehead, and chief executive of Gnarlos Industries, knew or should have known, Bassnectar was engaging in trafficking and unlawful conduct with minors." *See* Doc. No. 23 at ¶ 111. Plaintiffs repeatedly set out the threadbare legal conclusion that Mr. Donohue "knew or should have known" and each time fatally fail to allege *how* Mr. Donohue knew or *why* he should have known. *See e.g.,* Doc. No. 23 at ¶¶ 16, 17, 18, 32, 33; *but see* Doc. No. 23 at ¶¶ 67-72 (wherein Mr. Donohue is not included in the allegations because he is not defined by Plaintiffs as a "Bassnectar Company").

In Paragraph 111 of the FAC, it is alleged that Mr. Donohue, through Gnarlos Industries, provided tickets to Plaintiff Bowling, however, there are no allegations pleaded to show that Mr. Donohue knew that Bassnectar was involved in any type of relationship with Plaintiff Bowling, that he observed *anything* that would lead a reasonable person to believe Bassnectar was engaged in sex trafficking, or even that he should have known that by giving her tickets to a concert that he was engaging in sex trafficking. Plaintiffs' blind assertions that Mr. Donohue was in any way involved in some sort of scheme are incredulous and fail to set out with plausibility that Mr. Donohue knew or should have known of such actions by Bassnectar.

In both *M.A. v. Wyndham Hotels & Resorts, Inc.* 425 F. Supp. 3d 959 (S.D. Ohio 2019) and *A.B. v. Marriott v. Int'l, Inc.,* 455 F. Supp. 3d 171 (E.D. Pa. 2020), the complaints contained allegations that created a reasonable inference of a sex trafficking venture.

In *M.A.,*

Plaintiff points to behavior that she alleges hotel staff should have recognized as signs of her trafficking: her trafficker asked for rooms near exits, "the trash cans in the rooms in which M.A. was trafficked would contain an extraordinary number of used condoms," and M.A. was told to decline housekeeping, the rooms "were frequently paid for with cash." (ECF No. 1 at ¶ 52). M.A. asserts other "obvious signs of human trafficking" including "physical deterioration, no eye contact, and duration of stay" and "bottles of lubricants, boxes of condoms, used condoms in the trash, excessive requests for towels and linens, [and] cash payments." (ECF No. 1 at ¶ 53). Plaintiff alleges that, while she was at each hotel property, "the hotel staff would have or should have observed visible physical changes, such as bruising," (ECF No. 1 at ¶ 54) and that "[d]espite her desperate pleas and screams for help, after being beaten or choked at the Defendants' hotel properties, the hotel staff ignored her and did nothing to prevent the ongoing and obvious torture she endured." (ECF No. 1 at ¶ 55).

*M.A.,* 425 F. Supp. 3d at 962.

In *A.B.,* Plaintiff alleged that:

[H]er traffickers forced her into "in calls" at the three Marriott owned Philadelphia Airport hotels by as many as six men an evening. Each man entered and exited rooms at the three Philadelphia Airport hotels, and a "constant stream of male

23

visitors" went to her room "straight from the main lobby and front doors so that the foot traffic was both voluminous and obvious." Her traffickers frequently paid for rooms at all three hotels for at least a week at a time with a prepaid credit card and hotel staff were aware of A.B.'s presence there. A.B.'s traffickers brought her to each hotel with little, if any, luggage and she did not have a phone, wallet, or any form of identification. The hotel rooms where she performed commercial sex acts "were littered with multiple broken objects, used condoms, and other sex paraphernalia left behind in the rooms." The staff at each of the three hotels saw signs of her visible injury and were aware of frequent "loud altercations" as well as "constant" attacks on her by her trafficker loud enough for staff and hotel patrons to hear.

*A.B.,* 455 F. Supp. 3d at 175.

In direct contrast to those cases, here the FAC fails to identify *any* activity that would trigger any reasonable "should have known" inference. In fact, as noted above, the FAC fails to plead any direct connection between any Plaintiff and Mr. Donohue other than in Paragraph 111, which has been addressed.

In fact, the allegations in the FAC made by the named Plaintiffs seem to show quite the *opposite* of the obvious trafficking occurring in *M.A.* and *A.B.* Mr. Donohue finds it noteworthy that, while Plaintiffs allege numerous facts about the use of the "Bassnectar Companies" (of which neither Mr. Donohue nor Gnarlos are included) to "facilitate and enable the sex trafficking of minor girls," they fail to allege that a single one of the Plaintiffs came into contact with Bassnectar through the complicated channels of "trafficking" alleged in the FAC. *See* Doc. No. 23 at ¶¶ 54-72.

Each of the three Plaintiffs were contacted by Bassnectar, on his own accord through social media, and their allegations stem from his actions alone. *See* Doc. No. 23 at ¶¶ 78, 80, 110, 111, 138, 139, 162. The Plaintiffs do not allege any of them were shepherded in or "recruited" from the crowd at concerts with backstage passes and mystery hotel keys. They do not allege they were members of the AmBASSadors program or that Mr. Donohue had any association with that

program. Plaintiffs would meet Bassnectar privately, of their own volition, at various hotels across the country. *See* Doc. No. 23 at ¶¶ 84, 85, 88-90, 112-114, 116, 118, 126, 140, 141, 145, 148. Indeed, the FAC emphasizes multiple times that Bassnectar was very cautious of keeping their relationships *private*, refusing to allow them to leave the hotels, and telling them to keep the contact "between them a secret." *See e.g.,* Doc. No. 23 at ¶¶ 53(a-b), 89, 126, 148.

In sum, though they failed to state a claim under any of the three required prongs of proving a TVPRA beneficiary claim, if, however, this Court at least finds that they failed to sufficiently plead just one of the elements, the claim should fail and should be dismissed with prejudice as it relates to Mr. Donohue.

## <u>Conclusion</u>

For all the foregoing reasons, Plaintiffs' claims against Carlos Donohue should be dismissed with prejudice.

Respectfully submitted,

**Sherwood Boutique Litigation, PLC**

By:/s/ Cynthia A. Sherwood
Cynthia A. Sherwood (BPR #20911)
Davis F. Griffin (BPR #34555)
201 Fourth Avenue North, Suite 1130
Nashville, TN 37219
(615) 873-5670
(615) 900-2312 (fax)
cynthia@sherwoodlitigation.com

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was filed with the Court's electronic filing system and thereby sent via email to the following:

Brian Kent, Esq.
M. Stewart Ryan, Esq.
Alexandria MacMaster-Ho, Esq.
Laffey, Bucci & Kent, LLP
1100 Ludlow Street, Suite 300
Philadelphia, PA 19107
bkent@lbk-law.com
sryan@lbk-law.com
amacmaster@lbk-law.com
*Counsel for Plaintiffs*

Phillip H. Miller, Esq.
631 Woodland Street
Nashville, TN 37206
phillip@seriousinjury.com
*Counsel for Plaintiffs*

Robert A. Peal, Esq.
Grace A. Fox, Esq.
Mark W. Lenihan, Esq.
Sims Funk, PLC
3322 West End Avenue, Suite 200
Nashville, TN 37203
rpeal@simsfunk.com
gfox@simsfunk.com
mlenihan@simsfunk.com
*Counsel for Defendants Lorin Ashton, Amorbphous Music, Inc., and Bassnectar Touring, Inc.*

Kimberly S. Hodde, Esq.
Hodde & Associates
40 Music Square East
Nashville, TN 37203
kim.hodde@hoddelaw.com
*Counsel for Defendants Lorin Ashton, Amorbphous Music, Inc., and Bassnectar Touring, Inc.*

Mitchell Schuseter, Esq.
Stacey M. Ashby, Esq.
Meister, Seelig & Fein, LLP
125 Park Avenue, 7th Floor
New York, NY 10017

ms@msf-law.com
sma@msf-law.com
*Counsel for Defendants Lorin Ashton, Amorphous Music, Inc., and Bassnectar Touring, Inc.*

Ashleigh D. Karnell, Esq.
Paige Waldrop Mills, Esq.
Bass, Berry & Sims
150 Third Avenue South, Suite 2800
Nashville, TN 37201
Ashleigh.karnell@bassberry.com
*Counsel for Defendant Redlight Management, Inc.*

Philip Henry Goodpasture, Esq.
Brendan D. O'Toole, Esq.
Meredith M. Haynes, Esq.
Williams Mullen
200 S. 10th Ste., Ste. 1600
Richmond, VA 23219
pgoodpasture@williamsmullen.com
botoole@williamsmullen.com
mhaynes@williamsmullen.com
*Counsel for Defendant Redlight Management, Inc.*

Jason C. Palmer, Esq.
Rachel Sodee, Esq.
Russell B. Morgan, Esq.
Bradley Arant Boult Cummings LLP
1600 Division Street, Suite 700
P.O. Box 340025
Nashville, TN 37203-0025
jpalmer@bradley.com
rsodee@bradley.com
rmorgan@bradley.com
*Counsel for Defendant C3 Presents, L.L.C.*

R. Scott McCullough, Esq.
McNabb, Bragorgos, Burgess & Sorin, PLLC
81 Monroe Avenue, Sixth Floor
Memphis, TN 38103-5402
smccullough@mbbslaw.com
*Counsel for Defendant C3 Presents, L.L.C.*

on this the 30th day of August, 2021.

                                                    /s/ Cynthia A. Sherwood