IN THE UNITED STATE DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| RACHEL RAMSBOTTOM )<br>ALEXIS BOWLING )<br>JENNA HOUSTON )<br>JANE DOE #1 )<br>)<br>    Plaintiffs )<br>)<br>    v. )<br>)<br>LORIN ASHTON, )<br>AMORPHOUS MUSIC, INC., )<br>BASSNECTAR TOURING, INC., )<br>C3 PRESENTS, L.L.C., )<br>INTERACTIVE GIVING FUND, )<br>GNARLOS INDUSTRIES, LLC, )<br>CARLOS DONOHUE; ABC )<br>CORPORATIONS, ONE THROUGH )<br>TEN (said Names Being Fictitious), )<br>JOHN DOES, ONE THROUGH TEN )<br>(said Names Being Fictitious) )<br>)<br>    Defendants. ) | CIVIL ACTION<br><br>No. 3:21-cv-00272<br><br>JURY TRIAL DEMANDED<br><br>JUDGE ALETA A. TRAUGER |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR RESPONSE IN OPPOSITION TO DEFENDANT CARLOS DONOHUE'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

**I.    INTRODUCTION**

This case arises from the solicitation and sexual victimization of underaged Plaintiffs who were coerced and/or defrauded into engaging in commercial sex acts and the manufacture and dissemination of child pornography. Plaintiffs were targeted, groomed, and sexually exploited by electronic dance music ("EDM") musician "Bassnectar" (Defendant Lorin Ashton), who utilized his fame, shows, and business associates/agents, including Defendant Carlos Donohue (hereinafter "Donohue"), to engage in the recruitment of underaged females, including Plaintiffs, for the

1

purposes of grooming and, ultimately, sexually abusing, victimizing, and trafficking. Donohue, as alleged in Plaintiff's First Amended Complaint ("FAC"), was Bassnectar's tour manager and therefore, at all relevant times, an agent of Bassnectar and his Companies. *See* a true and correct copy of Plaintiffs' FAC attached hereto as Exhibit "A" at ¶¶ 33, 111, 168, 176. Donohue admits as much in his Motion to Dismiss. *See* Doc. No. 104 at 14 n.3, 15 n.5, 20, 21. Just as with his Companies, Bassnectar used Donohue (hereinafter "Moving Defendnat") in his venture and Donohue knew or should have known that Bassnectar was engaging in unlawful trafficking of and conduct with minors. *See* Exhibit "A" at ¶¶ 33, 17–18, 111, 168, 176, 201–204, 210–212.

## II. ARGUMENT

### A. Defendant Carlos Donohue's Motion to Dismiss: Fed. R. Civ. P. 12(b)(2)

#### i. Standard of Review

As it relates to jurisdiction, the principles espoused in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), remain canonical. Under *International Shoe*, a court's authority depends on the defendant having such "contacts" with the forum State that "the maintenance of the suit" is "reasonable, in the context of our federal system of government," and "does not offend traditional notions of fair play and substantial justice." *Id.* at 316–317. Jurisdiction may be general or specific. *See Ford Motor Co. v. Montana Eighth Judicial Dist.*, 141 S. Ct. 1017, 1024 (U.S. 2021).

Under general jurisdiction, a defendant may be sued for virtually any claim, even if unrelated to the defendant's contacts with the forum provided the defendant's activities in it can be characterized as "continuous and systematic" contacts. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984).

A lesser standard is required to sustain the exercise of specific jurisdiction, and the test to be met is whether the defendant has "purposely avail[ed] itself of the privilege of conducting activities within the forum state." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–75 (1985). A court can exercise specific jurisdiction over a non-resident defendant if the defendant "purposely directs [his] activities to the forum, and the litigation results from the alleged injuries that arise out of or relate to those activities." *Hughes v. Balemaster, Inc.*, 652 *F.Supp.* 1350, 1351–52 (E.D. Mo. 1987). The defendant must "purposefully avail[] itself of the privilege of conducting activities" in the forum such that the defendant can reasonably anticipate being sued in this State. *Burger King Corp.*, 471 U.S. at 75.

It is "black-letter law" that jurisdiction over corporations, which can act through their agents (be those individuals or other corporations), may be established by the actions or conduct of their agents in any particular forum. *International Shoe*, 326 U.S. 310, 316 (1945); *Grand Entertainment Group v. Star Media Sales, Inc.,* 988 *F.*2d 476, 483 (3d Cir. 1993).

Thus, personal jurisdiction may be asserted against a defendant based on a single act in the forum and regardless of whether the tortious act is negligent or intentional. *Id*. A nonresident defendant whose agent commits a tortious act in any forum can reasonably anticipate being haled into court in that same forum based on the commission of that act. *Rosenblatt v. American Cyanamid Co.*, 86 S.Ct. 1, 4 (1965) (citing *Hess v. Pawloski*, 274 U.S. 352 (1927)).

### ii. This Court maintains jurisdiction over Defendant Donohue

As alleged in Plaintiffs' FAC, and specifically with regard to Donohue:

> "Defendant Carlos Donohue, an individual, is an adult male and resident of Oregon. Carlos Donohue is the founder, chairman, figurehead, and chief executive of Gnarlos Industries. Carlos Donohue utilized Gnarlos Industries, LLC to arrange for, and transport young girls, including Plaintiffs, to engage in commercial sex acts with Bassnectar. Carlos Donohue had a continuous business relationship with

3

Case 3:21-cv-00272    Document 107-2    Filed 09/28/21    Page 3 of 17 PageID #: 1062

Bassnectar that enabled Bassnectar to engage in predatory behavior toward underage girls during the times that each Plaintiff was harmed."

*See* Ex. "A" at ¶ 33. In this regard the actions of Bassnectar were directly aided and made possible by the actions of Donohue, particularly when it came to his predatory behavior and utilizing Moving Defendant to target and ultimately abuse young female fans such as Plaintiffs. In their FAC Plaintiffs demonstrated multiple instances by which Moving Defendant aided Bassnectar's scheme. *See* Exhibit "A" at ¶¶ 111, 168, 176.[2] In addition, it is apparent that Bassnectar, his companies, and Moving Defendant, all do and/or at all relevant times did business throughout the United States.

Moving Defendant knew or should have known that this systematic targeting of young girls was being perpetrated by Bassnectar, with the support and accommodation of Moving Defendant and the other Defendants, and that it was occurring at shows and concerts being scheduled, promoted, and managed by Moving Defendant. By participating in a business venture with Bassnectar and the remaining Defendants, Moving Defendant knowingly received a financial benefit and other things of value. *Id*. at ¶¶ 72, 191, 201–204, 210–212. Therefore, Donohue received a knowing benefit from his participation in a venture that he knew or should have known was engaged in sex trafficking and other offenses in violation of the Trafficking Victim Protection Reauthorization Act (TVPRA). *See* 18 U.S.C. § 1591; 18 U.S.C.§ 1595.

Plaintiffs have alleged that Bassnectar, along with agents like Donohue, all knowingly participated in a venture to traffic Plaintiffs and other underage girls for the purpose of having

---

[2] In two footnotes, Moving Defendant makes the curious argument that the factual allegations pertaining to Jane Doe #1 are either "irrelevant" or have been "voluntarily dismissed." *See* Doc. No. 104 at 15 n.5 and 18 n.6. This is not accurate. After this Court granted Defendant Lorin Ashton's Motion to Reconsider the Order Granting Plaintiff Jane Doe #1 Leave to Proceed Anonomously, Plaintiff Jane Doe #1 voluntarily dismissed all claims and causes of action related to her. Plaintiff's did not, as Moving Defendant claims, dismiss the factual allegations pertaining to Jane Doe #1 in their FAC.

4
Case 3:21-cv-00272   Document 107-2   Filed 09/28/21   Page 4 of 17 PageID #: 1063

sexual intercourse. *See* Ex. "A" ¶¶ 32-33, 111, 168. This venture was organized and operated in broad daylight at shows, concerts, and venues all with the participation and assistance of Moving Defendant. This venture operated for *years* while Bassnectar was utilizing Defendant Bassnectar Companies, as well as Donohue and GIL, as a pipeline of new and vulnerable females to victimize. This also included numerous instances of abuse that occurred within the state of Tennessee. *Id*. at ¶¶ 74–89, 221–225.

Each and every act of abuse undertaken by Bassnectar, including those acts that took place in this judicial district, are also the acts of Defendant Donohue for the purposes of the FAC. Donohue and Bassnectar participated in the same venture, and that venture included the trafficking of minors in the forum state. It is well settled that in Tennessee, a principal may be held vicariously liable for the negligence of his or her agent, where the agent is acting within the actual or apparent scope of the agency. *Boren ex rel. Boren v. Weeks*, 251 S.W.3d 426, 432 (Tenn. 2008). Whether an agency relationship exists between two persons is a question of fact "and is determined by examining the agreement between the parties or the parties' actions." *Id*. It is, at the pre-discovery stage, difficult to determine the exact nature of agency relationships between Bassnectar and the complex network of business entities and individuals he developed and maintained which allowed him to sexually exploit children. However, Plaintiff has specifically alleged that Donohue was a fundamental cog in Bassnectar's trafficking machine and that Donohue knowingly participated in the venture that helped Bassnectar select, groom and abuse underaged children, including within the State of Tennessee. It is nonsense for Moving Defendant to suggest that there are not any, let alone sufficient, allegations in the Plaintiffs' FAC directed at the conduct of Donohue by and through Defendant Bassnectar to establish jurisdiction before this Court.[3]

---

[3] Moreover, Donohue purposefully availed himself to the forum state. "Purposeful availment" is established when the defendant's contacts with the forum "proximately result from actions by the defendant himself that create a 'substantial

### iii. To the extent that jurisdiction is not clearly established by the pleadings, this Court should order a period of jurisdictional discovery

While the allegations and supporting facts in Plaintiffs' FAC are sufficient to establish personal jurisdiction over Moving Defendant, in the event that the Court disagrees, Plaintiff should be permitted to conduct discovery. A district court ruling on a 12(b)(2) motion before trial has the discretion to, *inter alia*, permit discovery which would aid in resolution of the motion. *Serras v. First Tenn. Bank Nat'l Ass'n.*, 875 F.2d 1212, 1214 (6th Cir. 1989).

## B. Defendant Donohue's Motion to Dismiss: Fed. R. Civ. P. 12(b)(3)

### i. Standard of Review

A defendant may move to dismiss a claim under Fed. R. Civ. P. 12(b)(3) for improper venue. Under 28 U.S.C. § 1391(b), "the plaintiff may file [her] complaint in any forum where a substantial part of the events or omissions giving rise to the claim arose; this includes any forum with a substantial connection to the plaintiff's claim." *First of Mich. Corp. v. Bramlet*, 141 F.3d 260, 263 (6th Cir. 1998); *see also* 28 U.S.C. § 1391(b)(2). Plaintiffs are not required to file a complaint in the district where the most substantial events giving rise to the claim occurred. *See Capitol Specialty Ins. Corp. v. Splash Dogs, LLC*, 801 F. Supp. 2d 657, 671 (S.D. Ohio 2011). In other words, venue may be proper in more than one district even though most of the events occurred in only one of the districts. *Id.* at 672. Nevertheless, "only those acts or omissions with

---

connection' with the forum state," and when the defendant's conduct and connection with the forum are such that he "should reasonably anticipate being haled into court there." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1263 (6th Cir. 1996) (quoting *Burker King Corp. v. Rudzewicz*, 471 U.S. 462, 474–75 (1985). This requirement can be met and personal jurisdiction established so long as a commercial actor's efforts are purposefully directed toward residents of another state. *Compuserve*, 89 F.3d at 1264. There is no question that Bassnectar purposefully availed himself to Tennessee by regularly and repeatedly performing music in the state over the course of his career. There is also no question that Donohue also directed its business activities towards Tennessee, as pled in Plaintiffs' FAC. Donohue was Bassnectar's Tour Manager—that tour included the annual New Year's Eve concerts in Nashville (attended by Plaintiff Ramsbottom in 2012) and festivals in Memphis and Manchester. *See* Ex. "A" at ¶ 79, 83–87. Thus, Moving Defendant's commercial efforts were directed towards residents of Tennessee. The cause of action involving Plaintiff arose out of Bassnectar's solicitation and sexual abuse of Plaintiff in Tennessee. Thus, the exercise of personal jurisdiction over Moving Defendant is reasonable.

substantial, rather than tangential, connections to a plaintiff's claims can establish venue." *Reilly v. Meffe*, 6 F. Supp. 3d 760, 765 (S.D. Ohio 2014).[4] Courts consider both the plaintiff's and defendant's activities in analyzing whether venue is proper under § 1391(b)(2). *Id.* at 767. In addressing a 12(b)(3) motion to dismiss, "[t]he Court may examine facts outside the complaint but must draw all reasonable inferences and resolve factual conflicts in favor of the plaintiff." *Good v. City of Southhaven*, No. 16-02029, 2017 WL 11316500, at *5 (W.D. Tenn. Mar. 30, 2017) (citing *Gone to the Beach, LLC v. Choicepoint Servs., Inc.,* 434 F. Supp. 2d 534, 536–37 (W.D. Tenn. 2006) (quotation marks omitted).

### ii. Venue is Proper in the Middle District of Tennessee

Defendant Donohue asserts that venue in the Middle District of Tennessee is improper pursuant to Fed. R. Civ. P. 12(b)(3). With regard to tortious conduct occurring in Tennessee, it is alleged in the FAC that: (1) Bassnectar solicited, enticed, and coerced Plaintiff Ramsbottom to meet him at his show in Nashville (*See* Ex. "A" at ¶ 79); (2) Bassnectar engaged in a commercial sex acts with Plaintiff Ramsbottom, who was a minor at the time, by paying her $1,000 for sex at a hotel in Memphis (*Id.* at ¶¶ 83–87); and (3) Bassnectar engaged in commercial sex acts with Plaintiff Ramsbottom, while still a minor, in a Nashville hotel for four days (*Id.* at ¶¶ 88–90). The solicitation and sexual abuse of underage Plaintiff Ramsbottom in Nashville are substantial parts of the events or omissions giving rise to Plaintiffs' claims.

"The Sixth Circuit has held that [28 U.S.C. § 1391(b)(2)] does not require the court to determine where the most substantial events giving rise to the claim occurred; rather, venue is proper in 'any forum with a substantial connection to the plaintiff's claim.'" *See Am. Earth Sols.,*

---

[4] "Substantiality" is intended to preserve fairness so that a defendant is not forced to defend litigation in a remote district with no relationship to the dispute. *Sazerac Co. v. Hood River Distillers, Inc.*, No. 3L12CV-79-S, 2012 WL 6645730, at *3 (W.D. Ky. Dec. 20, 2012).

*LLC v. Peacock,* No. 3:13-CV-1097, 2014 WL 1007285, at *2 (M.D. Tenn. Mar 14, 2014) (quoting *First of Mich. Corp. v. Bramlet*, 141 F.3d 260, 263 (6th Cir. 1998)). Plaintiffs' FAC pleads that a substantial part of the events, which apply to all defendants and all claims, occurred in Nashville, Tennessee. Therefore, the pleaded facts properly establish venue.

### C. Defendant Donohue's Motion to Dismiss: Fed. R. Civ. P. 12(b)(6)

#### i. Standard of Review

A motion to dismiss pursuant to the Fed. R. Civ. P. 12(b)(6) challenges the legal sufficiency of a complaint specifically arguing that a plaintiff "fail[ed] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). However, such a motion should not be brought as "a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958-59 (6th Cir. 2005). When presented with a motion to dismiss, a court must construe the complaint in the light most favorable to the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008).[5] The Sixth Circuit has provided a three-step process for determining a complaint's sufficiency under 12(b)(6), in which the trial court must: (1) accept all of plaintiff's factual allegations as true; (2) draw all reasonable inferences in plaintiff's favor; and (3) determine whether the alleged facts and inferences plausibly give rise to an entitlement to relief. *Doe v. Baum*, 903 F.3d 575, 581 (6th Cir. 2018).

#### ii. Plaintiffs have sufficiently pled their claims under the Trafficking Victim Protection Reauthorization Act

The Trafficking Victim Protection Reauthorization Act (TVPRA), 18 U.S.C. § 1591, *et seq.,* criminalizes the sex trafficking of children and the sex trafficking of adults by force, fraud,

---

[5] The Court is not required to accept mere legal conclusions unsupported by factual allegations, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and a complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The plausibility standard "is not akin to a probability requirement" but is a "context-specific" inquiry drawing on our "judicial experience and common sense." *Iqbal*, 556 U.S. at 678, 679, (citing *Twombly*, 550 U.S. at 556, 557) (internal quotations omitted).

or coercion. Separately, § 1595 of the TVPRA provides victims of sex trafficking with a civil remedy against the perpetrators or beneficiaries of sex trafficking. *See* 18 U.S.C. § 1595(a). Count Two of the the FAC explicitly and unequivocally states a beneficiary theory of liability against Moving Defendant pursuant to § 1595 of the TVPRA, not a perpetrator theory of liability pursuant to § 1591. *See* Plaintiffs' FAC at ¶¶ 198–213. The references to § 1591(a) in this count are directed toward the Plaintiffs' status as "victims" of human trafficking, *Id.* at ¶¶ 205–208, and Moving Defendant's participation in a venture which it knew or should have known was engaged in sex trafficking. *See Id.* At ¶ 201–204, 209–212. Despite Moving Defendant's efforts to conflate the Plaintiffs' factual allegations pursuant to their stated beneficiary liability cause of action with a perpetrator liability cause of action, the FAC clearly and sufficiently states a claim for relief under § 1595 of the TVPRA.

### 1. The Relevant History of the TVPRA

Congress passed the Victims of Trafficking and Violence Protection Act in 2000 ("TVPA"). Pub. L. No. 106–386, 114 Stat. 1466 (2000) (codified as amended in Title 22, Chapter 78, and Title 18, Chapter 77, of the U.S. Code). In 2008, 18 U.S.C. 1595(a) was intentionally amended with substantially different language that created a category of defendants that could be held liable civilly even in the absence of criminal culpability. *See* Amended Pub. L. No. 110–457, title II, § 221(2), Dec. 23, 2008 (the TVPRA was amended "by inserting '(or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter)' after 'perpetrator'"). This amendment to our nation's human trafficking legislation necessitated a paradigm shift in the music and entertainment industry.[6] Since this amendment to the TVPRA,

---

[6] For example, Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, *et seq.*, introduced an even broader paradigm shift by requiring change nationally across all business sectors. Employers could no longer discriminate on the basis

some businesses have elected to comply with § 1595, as amended, while others have chosen not to comply.

The significance of this change in the statutory language are supported by well-established principles of statutory interpretation. As a general rule, when interpreting a statute, one must "consider not only the bare meaning of the critical word or phrase but also its placement and purpose in the statutory scheme." *Holloway v. United States*, 526 U.S. 1, 6 (1999) (internal citation and quotations omitted); *see also Williams v. Taylor*, 529 U.S. 362, 364 (2000) ("In light of the cardinal principles of statutory construction that courts must give effect to every clause and word of a statute."). There is "a canon of construction that remedial statutes should be liberally construed." *Peyton v. Rowe*, 391 U.S. 54, 65 (1968). This canon of statutory construction is especially applicable to the TVPRA considering that the language of 18 U.S.C. §1595(a) was amended in 2008 to be even broader, for when a "statute is remedial in nature, its terms must be construed in a liberal fashion." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 499 (1985).

### 2. Defendant Donohue Knowingly Benefitted Financially in Violation of § 1595

The Congressionally mandated mechanism to civilly enforce the TVPRA is explicitly stated in § 1595. Since 2008, victims of sex trafficking have been empowered to bring civil claims against whoever financially benefits from what they should have known was a sex trafficking venture. The Plaintiffs have plausibly alleged Moving Defendant, the self-admitted tour manager

---

of race, religion, sex, or national origin. *Id.* Employers were of course free to maintain the status quo and continue to discriminate against their employees, but because of the new law they were liable for damages on a going forward basis for continuing to discriminate after discrimination was prohibited by law. Similarly, businesses within the music and entertainment industry are free to maintain the status quo pre-2008 and do nothing to determine whether they benefit financially from sex trafficking being perpetrated at concerts, shows, or festivals they organize, manage, and promote or from sex trafficking perpetrated by musical artists, their agents, employees, or associates such businesses manage, promote, or otherwise partner. However, choosing to maintain this status quo post-2008 following the amendment to § 1595 of the TVPRA exposes businesses in the music and entertainment industry to liability for their purposeful inaction and noncompliance with the law.

for Bassnectar at all relevant times, knew or should have known he financially benefitted from his participation in a sex trafficking venture. *See* Ex. "A" at ¶¶ 17–18, 33, 54–72, 75, 191, 201–204, 209–212. Defendant Bassnectar had a continuous business relationship with Donohue. *Id*. at ¶ 33, 111, 168, 176. Bassnectar utilized Donohue to target, recruit and ultimately victimize young girls, like Plaintiffs, for sexual exploitation. *Id.* Moving Defendant knew or should have known of, *inter alia*, Bassnectar utilizing his fame, fortune, celebrity, live events, brand, and other employees and/or agents like Donohue to recruit and groom underage female fans for the ultimate purposes of sexual abuse and manufacturing of child pornography. *See Id.* at ¶¶ 54–70. As alleged in the FAC: "Defendants' employees and agents had actual knowledge or should have known that they were facilitating and participating in a scheme to profit from a venture involved in commercial sex acts with minor children." *See Id.* at ¶ 211. As such Plaintiffs' have clearly, and sufficiently, alleged a beneficiary theory of liability against Moving Defendant for purposes of a claim under the TVPRA.

Since 2008 there have been at least three distinct causes of action under § 1595 to include § 1595 financial beneficiary claims against a civil defendant who has not violated § 1591 at all, but who "knowingly benefits, financially or by receiving anything of value from participation in a venture which that *person knew or should have known* has engaged in an act in violation of this chapter." *See* 18 U.S.C.A. § 1595(a) (emphasis added). The distinction between the knowledge requirement in a perpetrator claim as compared to a financial beneficiary claim is significant in this case. To state either a perpetrator trafficking claim or a perpetrator financial beneficiary claim, a victim must allege actual knowledge and knowing participation in the sex trafficking venture itself because the plaintiff must prove the criminal violation of § 1591. In the 2008 amendment to the TVPRA, however, Congress determined that civil liability would attach to a financial

11
Case 3:21-cv-00272   Document 107-2   Filed 09/28/21   Page 11 of 17 PageID #: 1070

beneficiary if that person or entity knew or should have known the venture in which it was engaged involved a violation of the TVPRA. A financial beneficiary claim, therefore, need not allege knowing assistance or actual knowledge that the venture in which it participated violated the TVPRA, only that the entity should have known the venture from which it benefitted violated the TVPRA.

Criminal cases under the TVPRA such as *United States v. Afyare*, 632 F. App'x 272, 286 (6th Cir. 2016) are inapposite to civil financial beneficiary claims because in *Afyare* the Sixth Circuit considered only the type of participation which Congress criminalized under § 1591(a)(2). As discussed, perpetrator claims alleging a criminal violation of § 1591(a)(1)–(2) do require actual knowing participation in the sex trafficking venture. A financial beneficiary claim does not require actual knowing participation in the sex trafficking venture. Unlike *Afyare*, the case of *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959 (S.D. Ohio Oct. 7, 2019), a civil case in this very jurisdiction dealing with civil liability under the TVPRA, is directly on point. In *M.A.*, the corporate defendant's motions to dismiss were denied when they advanced essentially identical arguments to those of Moving Defendant. The court in *M.A.* distinguished *Afyare* especially given its reliance on criminal, and not the more "salient" civil, concepts in the law. *M.A.*, 425 F. Supp. at 969.

Further, in his motion Moving Defendant unwisely and specifically quoted the Court in *Geiss* and *Noble* in a support of their position, noting that the Court in *Geiss* held that "participation giving rise to the benefit must be participation *in a sex-trafficking venture*, not participation in other activities engaged in by the sex traffickers that do not further the sex trafficking aspect of their venture" and in *Noble:* "liability cannot be established by association alone […] some participation in the sex trafficking at itself must be shown." Plaintiffs' FAC explicitly goes beyond

12

Case 3:21-cv-00272   Document 107-2   Filed 09/28/21   Page 12 of 17 PageID #: 1071

allegations of association and demonstrates clearly and specifically how Donohue contributed to the actual trafficking of underaged girls; by organizing their transport and supplying them with tickets and back-stage passes. *See* Ex. A at ¶¶ 111, 168. Moving Defendant's arguments in that regard are therefore inapposite.

In *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 959, 965–66 (S.D. Ohio 2019), the court acknowledged that "collecting money through sponsorships, licensing, grants, [and] publicity" satisfied the "knowing benefit" element of the § 1595(a) standard. *Wyndham Hotels*, 425 F. Supp. at 966 (quoting *Gilbert v. United States Olympic Comm.*, 423 F. Supp. 3d 1112, 1138–1139 (D. Colo. 2019).[7] Further, in *M.A.* the court held that "[i]n the absence of a direct association, Plaintiff must allege at least a showing of a continuous business relationship between the trafficker and the [other entity] such that it would appear that the trafficker and the [other entity] have established a pattern of conduct or could be said to have a tacit agreement." *Id*. at 970. The court in *M.A.* determined that the plaintiff made sufficient allegations to survive a Motion to Dismiss and that, in fact, a plaintiff need not allege knowledge of a specific or particular sex trafficking venture. *Id.* at 970–71 ("Having found that 'participation' under § 1595 does not require actual knowledge of participation in the sex trafficking itself, this Court must then examine whether there was 'participation in a venture' here. . . . Defendant need not have actual knowledge of the sex trafficking in order to have participated in the sex trafficking venture for civil liability under the TVPRA, otherwise the 'should have known' language in § 1595(a) would be meaningless.").

This is precisely what Plaintiffs have alleged here as it relates to Moving Defendant and Bassnectar. *See* Ex. "A" at ¶¶ 32-33, 111, 201–04, and 210–12. Similar results have occurred in

---

[7] The *Wyndam Hotels* court also held that the Plaintiff's allegation that defendant Wyndam Hotels' rental of rooms to a human trafficker constituted a knowing benefit for purposes of § 1595(a). *Wyndam Hotels*, 425 F. Supp. at 966.

other jurisdictions as well. *See A.B. v. Marriott Int'l, Inc.*, 455 F. Supp. 3d 171, 192 ("[W]e are persuaded the clear language of section 1595 favors the approach taken by Judge Marbley [in *M.A.*] focusing on a hotel's possible civil liability best conforms to Congress's intent in amending the Act to include a civil remedy provision[.]").

### 3. Defendant Donohue Knew or Should Have Known of his Participation in a Sex Trafficking Venture.

Defendant Donohue misconstrue the legal standard of knowledge the Plaintiffs must allege in this case. The legal standard stated in *Ayfare* and the *Weinstein* cases[8] as cited by Moving Defendant is not applicable to this case. The source of the appropriate legal standard in this case is 18 U.S.C. § 1595, as cited in the title of Count Two of the FAC and as outlined in *M.A.* and *A.B.* Moving Defendant is liable for Plaintiffs' damages if they: (1) knowingly benefitted; (2) from participation in a venture; (3) that it knew *or should have known* engaged in sex trafficking. 18 U.S.C. § 1595(a) (emphasis added).

The plain language of § 1595 irrefutably demonstrates that the definition of "participation in a venture" from § 1591(e)(4) cannot apply to "participation in a venture" as used in § 1595(a). If the definition from § 1591 did apply, civil liability would be limited only against a criminal perpetrator and most of § 1595(a)—everything in parentheses—would be rendered meaningless. That is because if a person knowingly supports or facilitates a violation of § 1591(a)(1) as the definition in § 1591(e)(4) provides, that person has criminally violated § 1591(a)(2) and is in fact a perpetrator. Thus, if the definition from § 1591 applied to § 1595, a civil cause of action would only be available against "the perpetrator" and the parenthetical in § 1595(a) would mean nothing. This interpretation cannot apply because courts must "avoid a reading which renders some words

---

[8] *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156 (S.D.N.Y. 2019); *Noble v. Weinstein*, 335 F. Supp. 3d 504 (S.D.N.Y. 2018).

altogether redundant*." Gustafson v. Alloyd Co.*, 513 U.S. 561, 574–75 (1995) (emphasis added). The words "should have known" in § 1595(a) were not intended by Congress to be meaningless.

Moving Defendant also argue that Plaintiffs has failed to establish that Bassnectar was engaged in a sex trafficking venture that Donohue could have benefitted from. As discussed herein, in order to state a financial beneficiary claim, Plaintiffs do not have to show that Donohue participated in any sex trafficking act himself (although Plaintiff has, in this case, established exactly that). Again, Moving Defendant attempts to blur the lines between the civil and criminal statutes and blur the lines between very different cases.

Moving Defendant claims that Plaintiffs have failed to allege sufficient facts that would trigger a reasonable inference that Defendant Donohue knew or should have known about the sex trafficking of Plaintiffs and other similarly situated minor females who were recruited and groomed through Bassnectar's operation. Moving Defendant erroneously ignores the fact that a substantial portion of Bassnectar's exploitative conduct was conducted out in the open and assisted by the Moving Defendant. Plaintiffs have alleged that Bassnectar, Carlos Donohue, Chris Madrigal, "Bri," "Dom," John Does 1 – 10, and other employees, agents, or servants of Defendant Bassnectar Companies, all knowingly participated in a venture to traffic Plaintiffs and other underage girls for the purpose of having sexual intercourse. *See* Ex. "A" ¶¶ 58–64, 68. This venture was organized and operated in broad daylight at shows, concerts, and venues that Defendant Donohue assisted in scheduling, managing, and promoting, and used to further recruit young girls for Bassnectar. Plaintiffs' have specifically pled in their FAC particular conduct by Donohue in support of this trafficking venture. *See* Ex. "A" at ¶¶ 111, 168, 176. Moving Defendant completely ignores his own conduct along with Bassnectar's solicitation and exploitation of young girls that ran rampant at shows, concerts, and festivals and was inextricably intertwined with his musical

career. Not only that, but Donohue took an active role in that solicitation and exploitation, literally arranging Bassnectar's access to these underaged females along with the transport of underage females at the request of Bassnectar. Significantly, the Plaintiff that Donohue procured tickets and backstage passes for was *too young to be allowed* ("under 18") into the venue. *Id.* at ¶ 112. Donohue arranged and otherwise facilitated the sexual exploitation of a minor for his own profit *vis-à-vis* his continued relationship with Bassnectar.

On the face of these allegations, taken together with the remaining balance of the FAC, it is clear that Donohue engaged in a venture he knew or should have known was engaged in trafficking that and Plaintiffs' FAC specifically pleads such. Plaintiffs have alleged that Donohue profited from a continuous business relationship with Bassnectar that included Donohue promoting and managing his tours. It is clear from the facts alleged that part of that very job was the procurement and transportation of underaged women for the purpose of their abuse. As a result, the knowledge on the part of Donohue, be it actual or constructive, particularly when it came to his predatory behavior and utilizing Moving Defendant to target and ultimately abuse young female fans such as Plaintiffs, is beyond dispute.

Plaintiffs have sufficiently alleged facts which illustrate that Defendant Donohue, who benefitted financially from its partnership and participation in this business venture with Bassnectar and the other Bassnectar Companies, knew or should have known that the *specific* sexual exploitation and trafficking of Plaintiffs was occurring. Bassnectar made a concerted effort to keep his direct communications with Plaintiffs as private as possible, but the conduct violative of the TVPRA alleged by Plaintiffs certainly establishes knowledge—or, at the very least, a reasonable "should have known" inference—on the part of Donohue. Thus, Plaintiffs have pled specific and sufficient facts to demonstrate that the trafficking of underage Plaintiffs for

commercial sex acts was known or should have been known to Donohue and the remaining Defendants.

### D. Alternative Relief

To the extent the Court has any reservations about any aspect of the Plaintiffs' FAC and is inclined to grant some or all of the Movants' requested relief, Plaintiffs respectfully request that the Court grant any dismissals without prejudice and with leave to amend.

**RESPECTFULLY SUBMITTED:**

| **MILLER LAW OFFICES** | **LAFFEY, BUCCI & KENT, LLP** |
|---|---|
| By: /s/ Phillip Miller<br>Phillip Miller, #006873<br>*Attorney for the Plaintiff*<br>631 Woodland Street<br>Nashville, TN 37206<br>615-356-2000 phone<br>615-242-1739 fax<br>pmiller@seriousinjury.com | Brian Kent*<br>M. Stewart Ryan*<br>Alexandria MacMaster*<br>LAFFEY, BUCCI & Kent, LLP<br>1100 Ludlow Street, Suite 300<br>Philadelphia, PA 19107<br>(T): (215) 399-9255<br>(E): bkent@lbk-law.com<br>    sryan@lbk-law.com<br>    amacmaster@lbk-law.com<br><br>*admitted pro hac vice*<br><br>*Attorneys for the Plaintiffs* |

Dated: September 28, 2021