IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| RACHEL RAMSBOTTOM et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 3:21-cv-00272 |
| ) | Judge Aleta A. Trauger |
| LORIN ASHTON et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM and ORDER**

Before the court is the plaintiffs' Motion in Limine No. 9 to Preclude Reference to or Evidence of Plaintiffs' Non-Testifying Expert Alexandra Wright (Doc. No. 334), which the defendant opposes (Doc. No. 385) and in further support of which the plaintiffs have filed a Reply (Doc. No. 449). For the reasons set forth herein, the motion will be granted in part and denied in part.

**I. BACKGROUND**

Plaintiffs Rachel Ramsbottom, Alexis Bowling, and Jenna Houston bring claims against defendant Lorin Ashton under the Trafficking Victims Protection Reauthorization Act, 18 U.S.C. § 1595(a) ("TVPRA"), which authorizes a civil action for sex trafficking in violation of 18 U.S.C. § 1591, claims based on Ashton's alleged receipt and possession of child pornography, in violation of 18 U.S.C. §§ 2252 and 2252A, and a claim on behalf of Ramsbottom alone for negligence *per se* under Tennessee state law. (Doc. No. 23, Am. Compl.)

Prior to their depositions, each plaintiff met with their attorneys to prepare. "At certain times those preparations included the presence of Alexandra Wright," who was retained by plaintiffs' counsel for that purpose. (Doc. No. 334 at 5.) According to the plaintiffs, Wright is a

"consultant with an advocacy communication services company, Act of Communication,[1] a company that offers, among other things, litigation consulting and witness preparation assistance." (*Id.*) The plaintiffs state that counsel informed them during these meetings that "the meetings were privileged and protected by the attorney client privilege and/or work product doctrine." (*Id.* at 2.) When they were deposed, the plaintiffs testified that they met with Wright prior to their depositions, and they were asked generally about the nature of these meetings. Defense counsel referred to Wright as an acting coach during the depositions. During Bowling's deposition, defense counsel attempted to ask about the substance of Bowling's communications with Wright, and Bowling was instructed by her own counsel not to answer those questions on the basis that her conversations with Wright, who was "retained to consult" with plaintiffs and their counsel, were privileged. (Doc. No. 334-2, Bowling Dep. 12.) Plaintiffs state that they expect defense counsel to reference the retention of Wright, to attempt to elicit testimony from the plaintiffs relating to their pre-deposition consultations with Wright, and to continue to characterize Wright as an acting coach.

The plaintiffs have now filed their Motion in Limine No. 9 to exclude from trial "[a]ny reference or attempt at eliciting testimony related to Plaintiffs' consultation with their attorneys and non-testifying expert" on the basis that such communications are privileged and generally undiscoverable under Federal Rule of Civil Procedure 26(b)(4)(D) and, alternatively, because such testimony would constitute improper impeachment evidence and would be unfairly prejudicial and/or misleading. (Doc. No. 334 at 6–7.)

The defendant argues in his Opposition to Plaintiffs' Motion in Limine No. 9 that he should be entitled to "question Plaintiffs about their deposition preparation with Ms. Wright and their trial

---

[1] *See* https://actofcommunication.com/.

testimony preparation with Ms. Wright (or another acting coach) if applicable," because (1) Wright's online presence establishes that she is a trained actor who markets herself as an acting coach; (2) the plaintiffs have failed to satisfy their burden of demonstrating that Wright qualifies as a non-testifying expert under Rule 26(d)(4)(D) or that her communications with the plaintiffs fall within the scope of any recognized privilege; (3) even if they had satisfied that burden, the defendant should be permitted to question the plaintiffs about their preparation with Wright, in her capacity as an acting coach, under the "exceptional circumstances" exception set forth in Rule 26(b)(4)(D)(ii); and (4) the fact that the plaintiffs met with an acting coach "strikes directly at their credibility" and should be evaluated by the jury. (Doc. No. 385 at 2, 9.)

In their Reply, the plaintiffs argue for the first time that "[l]itigation consultants retained to aid in witness preparation may qualify as non-attorneys who are protected by the work product doctrine." (Doc. No. 449 at 2 (quoting *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 665 (3d Cir. 2003)).)

## II. DISCUSSION

The work product doctrine is governed by Rule 26(b)(3), which "shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *United States v. Nobles*, 422 U.S. 225, 238 & n.11 (1975). Rule 26(b)(3)(A) provides that "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's . . . consultant . . . )," unless such materials are "otherwise discoverable under Rule 26(b)(1)" *and* "the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Although Rule 26(b)(3) refers only to "tangible" things, it is well recognized that the "work production

protection extends to both tangible and intangible work product." *In re Cendant Corp. Sec. Litig.*, 343 F.3d at 662 (citing *Hickman v. Taylor*, 329 U.S. 495, 510–11 (1947)).

Rule 26(b)(4)(D)—the rule on which the plaintiffs' motion relies—pertains to non-testifying experts. It provides that "a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial" except "on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means." Fed. R. Civ. P. 26(b)(4)(D)(ii).[2]

These rules generally pertain to discovery, which has been concluded in this case. Perhaps more relevant to the plaintiffs' motion are the Federal Rules of Evidence that govern trial testimony. Rule 611, which pertains to the scope of cross-examination, states:

> Cross-examination should be limited to the subject matter of the direct examination and *matters affecting the credibility of the witness*. The court may allow inquiry into additional matters as if on direct examination.

Fed. R. Evid. 611(b) (emphasis added). "It is well-established that the government has wide latitude in attacking the credibility of a witness by exposing reasons why he or she ought not to be believed . . . ." *United States v. Lang*, 717 F. App'x 523, 539 n.4 (6th Cir. 2017) (citing *United States v. Dexta*, 136 F. App'x 895, 906 (6th Cir. 2005), and Fed. R. Evid. 611(b)).

While "[t]here is sparse case law on whether a court should permit cross-examination regarding how a witness prepared for his or her testimony," one of the few courts to consider the question has held, based on the breadth of Rule 611(b), that "inquiry regarding a witness'

---

[2] Another exception applies for medical examiners' reports, which does not apply here. *See* Fed. R. Civ. P. 26(b)(4)(D)(i) and 35(b).

preparation at the hands of a jury consultant is permissible cross-examination and relevant, absent privilege or FRE 403 concerns of undue prejudice." *Hynix Semiconductor Inc. v. Rambus Inc.*, No. CV-00-20905 RMW, 2008 WL 397350, at *1 (N.D. Cal. Feb. 10, 2008). In *Hynix*, the court recognized as an initial matter that "[k]nowledge that a jury consultant . . . served as an acting coach, picked the witness' clothing, rehearsed the witness's testimony, taught the witness to sit up straight, or otherwise aided a witness in appearing more credible could affect the weight the jury gives to the witness' testimony." *Id.* The question there, as here, was whether such cross-examination was limited based on Rule 403 or some applicable privilege.

The court rejected the defendant's argument that the probative value of any such evidence was substantially outweighed by the danger of unfair prejudice and, therefore, should be excluded under Rule 403. The court, however, found more persuasive the defendant's argument that "cross-examination regarding how a witness prepared to testify treads on the attorney-client privilege and work-product protection," citing *In re Cendant Corp. Hynix*, 2008 WL 397350, at *2. On this point, the court adopted the Third Circuit's conclusion in *In re Cendant*, which held generally that a deponent could not be compelled to disclose the *substance* of communications between the deponent, his counsel, and a non-testifying consultant who was "an expert in trial strategy and deposition preparation," because these communications "merit work product protection." *In re Cendant Corp.*, 343 F.3d at 660, 667–68. However, while leaving the exact scope of permissible questioning to the district court's discretion, the court indicated that the deponent could be asked "whether he has met with [the consulting expert], the date and duration of any meetings, who was present and the purpose for same," and "whether his anticipated testimony was practiced or rehearsed." *Id.* at 660, 668. In reaching this holding, the Third Circuit accepted the proposition that "[l]itigation consultants retained to aid in witness preparation may qualify as non-attorneys who

are protected by the work product doctrine" and explained that the protection applied in the case before it, where the "communications took place during a consultation that focused on those issues that counsel and [the consultant] perceived to be central to the case," "were intended to be confidential," and were "made in anticipation of litigation." *Id.* at 665, 667 (citations omitted). "As such, the communications are at the core of the work product doctrine and are only discoverable upon a showing of rare and exceptional circumstances"—a showing not made in that case. *Id.* at 667.

The district court in *Hynix* adopted the reasoning of *In re Cendant* "as the foundation for framing what will be permitted at trial." *Hynix*, 2008 WL 397350, at *2. In deciding how to "circumscribe" the scope of permissible questioning, the court concluded that a witness could be asked "whether he or she met with a jury consultant, the purpose of any such meeting, who was present, the duration of the meeting and whether the witness practiced or rehearsed his or her testimony." *Id.* at *4. The court declined to "permit questioning beyond those limited points because inquiring into work-product protected materials creates unfair prejudice and doing so will lead to both confusion and delay," either of which reason would "justify precluding some of the proposed questioning under Rule 403." *Id.*

This court is persuaded both by *In re Cendant* and the application of that holding in *Hynix*. The fact that the plaintiffs met with Wright is clearly a matter affecting their credibility and is a proper subject of cross examination under Federal Rule of Evidence 611(b). The scope of that inquiry, however, is circumscribed by the work-product doctrine. Accordingly, the defendant will be permitted to ask the same type of questions allowed in *Hynix* but may not inquire about the substance of the plaintiffs' communications with Wright. The defendant has not made a showing of the requisite "rare and exceptional circumstances" that would entitle him to inquire further. *In*

*re Cendant Corp.*, 343 F.3d at 663. Moreover, the defendant has not presented any basis for presuming that Wright coached the plaintiffs to testify untruthfully and, therefore, may not suggest to the jury that, if the plaintiffs' stories were "truthful and compelling," they would have no need for "coaching." (*See* Doc. No. 385 at 9.) There is nothing inherently inappropriate about a party's seeking assistance from a litigation consultant.

## III. CONCLUSION AND ORDER

The plaintiffs' Motion in Limine No. 9 (Doc. No. 334) is **GRANTED IN PART AND DENIED IN PART**, as follows: The defendant may ask the plaintiffs during cross-examination whether they met with Wright or any other deposition- or trial-preparation consultant, the purpose of such meeting, who was present, the number and duration of the meetings, and whether the plaintiffs practiced or rehearsed their testimony. The defendant may not inquire about the substance of Wright's (or other consultants') communications with the plaintiffs or imply that she (or they) coached the plaintiffs to testify untruthfully.

In addition, the defendant may not refer to Wright as an "acting coach" at trial. While it is clear from the online biography the defendant has introduced that Wright's background is in acting (*see* Doc. No. 385-1), the link to her company's website provided by the plaintiffs (https://actofcommunication.com/) establishes that her company characterizes itself as a litigation consulting firm. Permitting the defendant to refer to her simply, and derogatorily, as an "acting coach" would be unduly prejudicial and potentially misleading. Further, because the plaintiffs themselves are not knowledgeable, or qualified to testify, about Wright's qualifications, the parties are encouraged to reach a stipulation regarding how her qualifications will be explained to the jury.

It is so **ORDERED**.

ALETA A. TRAUGER
United States District Judge