IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| RACHEL RAMSBOTTOM, ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil No. 3:21-cv-00272 |
| | ) | |
| v. | ) | JUDGE TRAUGER |
| | ) | |
| LORIN ASHTON, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT LORIN ASHTON'S MOTION TO RECONSIDER
THE COURT'S ORDER EXCLUDING THE EXPERT TESTIMONY OF
DR. KIMBERLY MEHLMAN-OROZCO**

NOW COMES Defendant, Lorin Ashton ("Defendant"), by and through his undersigned counsel, and hereby submits this Motion to Reconsider the Court's Order (Doc. No. 470) excluding the testimony of Defendant's sex trafficking expert, Dr. Kimberly Mehlman-Orozco, from trial.

## Argument

"[T]he culture and dynamics of sex trafficking are not the subject of common knowledge." *United States v. Jenkins*, 2024 WL 4891180 (4th Cir. Nov. 26, 2024) (quotation omitted). Yet, as it stands today, common knowledge will alone decide the sex trafficking claims at issue in this case. At trial, Plaintiffs will testify that Defendant paid them for sex, while Defendant will testify that he shared occasional gifts with Plaintiffs as tokens of his generosity without any connection to sex. Faced with these conflicting stories — and armed only with their common knowledge and jury instructions — the jury will then decide whether sex trafficking in fact occurred. Because that weighty decision ought to be informed by insights only a sex trafficking expert can provide,

1

this Court should reconsider its recent Order and allow Dr. Mehlman-Orozco to opine — at least as to sex trafficking's general principles — at trial.

This Court may reconsider any interlocutory order — including one granting a motion *in limine* — to the extent the Court determines that it clearly erred. *See* Fed. R. Civ. P. 54(b); *see also Parker v. Robertson*, 34 F. Supp. 3d 859, 861 (M.D. Tenn. 2014) (court may amend interlocutory order "to correct a clear error of law"). Of course, this is not an invitation for parties to "reargue . . . prior position[s] in the hope that the court will change its mind." *Al-Sadoon v. FISI*Madison Fin. Corp.*, 188 F. Supp. 2d 899, 902 (M.D. Tenn. 2002) (Trauger, J.). So, without waiving any objections, Defendant will not quibble with the vast majority of the Court's Order.

Caveats aside, however, this Court committed a clear error of law when it excluded Dr. Mehlman-Orozco's opinions in whole cloth.[1] At a minimum, the portion of Dr. Mehlman-Orozco's testimony that merely conveys the common indicia of sex trafficking — without any comparison of those indicia to the specific facts of this case — is admissible and not objectionable to Plaintiffs. The relatively modest relevance standard inherent in Rule 702 and the overwhelming weight of the caselaw command this conclusion.

It is a fundamental tenet of evidence that where an expert is otherwise qualified and her methods deemed reliable, "[t]he relevancy bar is low." *United States v. LaVictor*, 848 F.3d 428, 442 (6th Cir. 2017). That is to say, "rejection of expert testimony is the exception, rather than the rule," and when it comes to relevance, a district court should admit an expert's opinion whenever it "will assist the trier of fact." *Id.* (quoting *Mactec, Inc. v. Bechtel Jacobs Co.*, 346 F. App'x 59,

---

[1] It bears note that not even Plaintiffs requested such a sweeping limitation on Dr. Mehlman-Orozco's testimony. In their motion *in limine,* Plaintiffs sought only to exclude Dr. Mehlman-Orozco's opinions (1) about the particular Plaintiffs' allegations, including Defendant's conduct, in light of legal precedent of human trafficking, (2) regarding "secondary exploitation," (3) regarding prior *pro bono* work, and (4) regarding letters of recommendation. (Doc. No. 318.)

2

77 (6th Cir. 2009)); *see also United States v. Gray*, 121 F.4th 578, 584 (6th Cir. 2024) (expert opinion relevant so long as it "advance[s] a material aspect of the proponent's case." (quotation omitted)).

Equally fundamental is the premise that, aside from any application to the specific facts of a case, expert testimony on "general principles" is oftentimes helpful to the trier of fact. *See* Fed. R. Evid. 702 advisory committee notes to 2000 amendments ("[I]t might . . . be important in some cases for an expert to educate the factfinder about general principles, without ever attempting to apply these principles to the specific facts of the case."). This is particularly true where the subject matter at issue is complex or commonly misunderstood. *Id.* (expert instruction "on the principles of thermodynamics, or bloodclotting, or on how financial markets respond to corporate reports" may be helpful to the jury); *see also United States v. Johnson*, 488 F.3d 690, 698 (6th Cir. 2007) ("There are innumerable trades and practices that employ their unique devices, feints, and codes that may mean nothing to the untrained observer but may speak volumes to a maven qualified by experience or training.").

Drug trafficking, for example, is one such topic, and courts routinely admit expert testimony for the purpose of explaining the indicia and characteristics emblematic of distributing drugs. *See United States v. Swafford*, 385 F.3d 1026, 1030 (6th Cir. 2004) (no abuse of discretion to admit expert testimony "that large-capacity pistols are commonly used in drug trafficking"); *United States v. Lopez-Medina*, 461 F.3d 724, 742 (6th Cir. 2006) (no abuse of discretion to admit expert testimony "regarding the common practices of drug traffickers"); *United States v. Combs*, 369 F.3d 925, 940 (6th Cir. 2004) (no abuse of discretion to admit expert testimony "regarding conduct that would be consistent with an intent to distribute"); *United States v. List*, 200 F. App'x 535, 545 (6th Cir. 2006) (no abuse of discretion to admit expert testimony regarding "how drug

3

dealers sometimes use code words to disguise their transactions, how possession of large drug quantities indicates commercial rather than personal use, how drugs are packaged and shipped, and how drug dealers typically use and carry firearms").[2]

Sex trafficking is another such topic. *United States v. Jackson*, 535 F. Supp. 3d 809, 818 (N.D. Ind. 2021) ("The average juror will undoubtedly find this world of sex trafficking as foreign to the juror's everyday experience."). As Dr. Mehlman-Orozco makes clear in her report, sex trafficking is often conflated with other forms of crime, and the popular understanding of sex trafficking is rife with sensationalized and fictionalized stories. It therefore makes sense that <u>in the context of sex trafficking, the circuit courts of appeal agree that general-principles testimony is helpful to the jury</u>. *See United States v. Shine*, 2022 WL 761520, at *4 (2d Cir. Mar. 14, 2022) (*per curiam*) (expert testimony "about common practices and methods used in the sex trafficking industry" helpful to the jury and not "within the grasp of average juror"); *United States v. Bridges*, 2022 WL 4244276, at *8 (3d Cir. Sept. 15, 2022) ("[A]n expert educating a jury on general principles of sex trafficking and sexual abuse can be helpful to the fact finder in assessing fact witnesses' credibility."); *United States v. Warren*, 774 F. App'x 778, 782 (4th Cir. 2019) (no abuse of discretion for court to allow expert "to testify broadly about the typical human trafficking experiences of its victims and the common behaviors of traffickers."); *United States v. Anderson*, 560 F.3d 275, 280 (5th Cir. 2009) (expert testimony on the "typical characteristics" of child sex trafficking relevant to child sex trafficking prosecution); *United States v. Bryant*, 654 F. App'x 807, 813 (6th Cir. 2016) (*per curiam*) (not abuse of discretion for district court to conclude that "a jury is not generally equipped to evaluate testimony on sex trafficking cases" and therefore sex trafficking expert would assist the jury); *United States v. Young*, 955 F.3d 608, 615–16 (7th Cir.

---

[2] This Court has admitted drug trafficking experts in the past. *See United States v. Miller*, 2019 WL 164104, at *1 (M.D. Tenn. Apr. 16, 2019).

2020) (Barrett, *J.*) (expert testimony that "defined key terms and explained common sex-trafficking dynamics" was "helpful to the jury"); *United States v. Redd*, 81 F. 4th 822, 830 (8th Cir. 2023) ("[E]xpert testimony about how individuals generally react to being trafficked can help a trier of fact evaluate an alleged victim's behavior."); *United States v. Llerenas*, 743 F. App'x 86, 89 (9th Cir. 2018) (sex trafficking expert's testimony relevant because it would "help put the testimony and past behavior of trafficked persons in context"); *United States v. Brinson*, 772 F.3d 1314, 1319 (10th Cir. 2014) (sex trafficking expert testimony that explained meaning of common sex-trafficking terms relevant because "[t]o process [fact witness] testimony, the jurors had to know what the words meant"); *United States v. Anderson*, 851 F.2d 38, 393 (D.C. Cir. 1988) (expert testimony on "pimping patterns and the pimp-prostitute relationship" was relevant because it "might have shed light on critical issues in the case").

Dr. Mehlman-Orozco's opinions, insofar as they explain the "indicia and contours of modern-day sex trafficking," are no different from the "general principles" expert testimony that the circuit courts universally find helpful to jurors in sex trafficking cases; thus, at least that portion of her testimony should be admitted. It cannot be gainsaid that her generic testimony explaining basic terminology and principles will be educational, informative, and helpful to the jury. The Court found Dr. Mehlman-Orozco "imminently qualified" in the field of sex trafficking, and it raised no concerns about the reliability of her methods. (Doc. No. 469, Mem., at PageID 11682.) So, even if the Court feels that the majority of Dr. Mehlman-Orozco's testimony is irrelevant,[3] it

---

[3] On several fronts, Defendant concedes that this conclusion can hardly be gainsaid. The Court is correct that in light of its findings at summary judgment, Dr. Mehlman-Orozco's opinions concerning sex trafficking by force, fraud, and coercion are of diminished probative value. (Doc. No. 469, Mem., at PageID 11684.) So too with Dr. Mehlman-Orozco's opinions on the "beneficiary" theory of sex trafficking liability. (*Id.*) And because the Court excluded Rebecca Bender's testimony from trial, the same logic applies to Dr. Mehlman-Orozco's opinions rebutting Ms. Bender's expected testimony. (*Id.*) Without waiving any objections, Defendant acknowledges the strength of these points.

5

goes against both Rule 702's modest relevance standard *and* the overwhelming weight of authority to hold that her "common indicia" testimony would be of no use to the jury. By not contemplating that this narrow portion of Dr. Mehlman-Orozco's testimony could be admitted standing alone, the Court committed a clear error of law. For that reason, the Court should reconsider.

## Conclusion

For the foregoing reasons, Defendant respectfully requests that the Court reconsider its Order excluding Dr. Mehlman-Orozco from trial (Doc. No. 470) and allow her to testify to the "general principles" of sex trafficking that she has derived from her extensive training, knowledge, and experience.

Dated: February 1, 2025                        Respectfully Submitted,

/s/Kimberly S. Hodde
Kimberly S. Hodde
HODDE & ASSOCIATES
40 Music Square East
Nashville, TN 37203
(615) 242-4200
kim.hodde@hoddelaw.com

-and-

/s/ Robert A. Peal
Robert A. Peal (#025629)
SIMS|FUNK, PLC.
3102 West End Ave., Suite 1100
Nashville, TN 37203
(615) 292-9335
rpeal@simsfunk.com

-and-

                                                            /s/Mitchell Schuster
                                                            Mitchell Schuster (admitted *pro hac vice*)
Stacey M. Ashby (admitted *pro hac vice*)
Richard J. Jancasz (admitted *pro hac vice*)
MEISTER, SEELIG & FEIN, LLP
125 Park Avenue, 7th Floor
New York, NY 10017
(212) 655-3500
ms@msf-law.com
sma@msf-law.com
rj@msf-law.com

*Attorneys for Defendant Lorin Ashton*

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that a true and exact copy of the foregoing was served on all parties of record via the Court's CM/ECF system and/or electronic mail on this 1st day of February, 2025.

                                                            /s/ Robert A. Peal
                                                            Robert A. Peal